*AARON & GIANNA, PLC*
LISA A. MARCY (#5311)
2150 South 1300 East, Ste. 500
Salt Lake City, UT 84106
Telephone: (801) 359-2501
Facsimile: (801) 990-4601
lmarcy@aarongianna.com

*JOHN K. JOHNSON, LLC*
JOHN K. JOHNSON (#3815)
10 West 300 South, Suite 800
Salt Lake City, Utah 84101
Telephone: (801) 915-2616
Facsimile: (801) 359-1088
jkjohnson1080@hotmail.com

*Attorneys for Joshua Chatwin*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>        Plaintiff,<br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity, and JOHN DOES 1-10,<br><br>        Defendants. | Case No.:<br><br>Judge: |

## COMPLAINT AND JURY DEMAND

## PRELIMINARY STATEMENT

This is a civil rights action against the City of Draper, the Draper Police Department, the

Police Chief and its Officers. The Plaintiff, Joshua Chatwin, seeks relief for the Defendants'

violation of his Constitutionally-guaranteed rights guaranteed, specifically the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, § 1985 and § 1988, and by the laws and the Constitution of the State of Utah.

Defendants' conduct was willful, as defined by Utah Code Ann.§63G-7-102(10), resulting in a waiver of qualified immunity.

Plaintiff seeks damages, both compensatory and punitive; affirmative relief; an award of attorney's fees, costs, and interest; and other further relief as this Court deems just and equitable.

This is further an action at law to redress a deprivation under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the applicable provisions of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under Article I §§1, 7, 9, and 14 of the Constitution of the State of Utah.

## JURISDICTION AND VENUE

1. This action arises in part under the United States Constitution and Federal law, particularly under the provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985 and 1988.

2. This action also seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3. This action also arises in part under the Utah Constitution, Article I, §§1, 7, 9 and 14, which protect a citizen from false arrest and the taking of his property (money for resulting medical bills) without due process of law.

4. Accordingly, jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a), and 1983.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because: the events giving rise to the claims asserted herein occurred in the District of Utah, one or more defendant(s) resides in the District of Utah and all defendants are residents of Utah, and the issues present a federal question.

## PARTIES

6. Plaintiff, Joshua Chatwin is a resident of Draper City, Utah.

7. At all times relevant hereto, Defendant, Draper City (a/k/a Draper City Corporation), was a municipality and political subdivision of the State of Utah, as defined by Utah Code. Ann. § 63G-7-102(3) which employed Defendants, J. Patterson, David Harris, Heather Baugh, and John Does 1-10, through the Draper City Police Department.

8. At all times relevant hereto, Defendant, the Draper City Police Department, was a statutorily created agency organized and existing under the laws of the State of Utah.

9. At all times relevant hereto, Defendant, Mac Connole ("Connole"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department, including as defined by Utah Code Ann. §63G-7-102(2), and was acting as Chief of Police of the Draper City Police Department.

10. At all times relevant hereto, Defendant, J. Patterson ("Patterson"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department,

including as defined by Utah Code Ann. §63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

11. At all times relevant hereto, Defendant, David Harris ("Harris"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department, including as defined by Utah Code Ann. §63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

12. At all times relevant hereto, Defendant, Heather Baugh ("Baugh"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department, including as defined by Utah Code Ann. §63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

13. Defendants, John Does 1-10, are individuals and entities whose true identities are presently unknown, but whose acts and omissions have caused or contributed to the Plaintiff's injuries and damages as more specifically described in this Complaint. Plaintiff names these Defendants by a fictitious name because Plaintiff is presently ignorant as to the actual name of the individuals. If and when the identity of the individuals is discovered, this Complaint will be amended to identify these Defendants by their true names.

## FACTUAL ALLEGATIONS

14. On or about May 18, 2010, while driving through a residential area of Draper, Utah, Plaintiff was stopped at 12534 South 150 East, by Defendant, Draper City Police Officer D. Harris, for suspicion of driving under the influence of alcohol.

15. After stopping Plaintiff, Officer Harris had Plaintiff perform field sobriety tests and thereafter, arrested him for driving under the influence of alcohol.

4

16. Shortly thereafter, Defendant Officer J. Patterson and Officer Heather Baugh arrived in a second Draper City Police vehicle to assist in the arrest.

17. Upon their arrival, Plaintiff was physically tendered into the custody of Officers Patterson and Baugh.

18. Thereafter, Officer Patterson performed a "search incident to arrest" on Plaintiff. That search escalated when Officer Patterson threw Plaintiff to the ground. Plaintiff, at the time, was compliant, immobilized, and handcuffed behind his back.

19. An independent witness, Kathy Ann Torrence, who did not know Plaintiff prior to the assault, corroborated Plaintiff's account of the events, both in a written statement made to Draper police and at a preliminary hearing held on February 8, 2011.

20. At the preliminary hearing, Ms. Torrence testified in detail about the attack. She stated that she saw the two Officers (Patterson and Harris) across the street with Plaintiff from her home.

21. According to Ms. Torrence, the Officers administered field sobriety tests to Plaintiff. They handcuffed Plaintiff and took him to the back of one of their trucks. Plaintiff turned to look towards Ms. Torrence's direction.

22. The Officers administered field sobriety tests to Plaintiff. They handcuffed Plaintiff and took him to the back of one of their trucks.

23. Ms. Torrence testified she saw Plaintiff say something to Officer Patterson. Immediately afterward, Officer Patterson whipped Plaintiff around and threw him to the ground by his handcuffs causing his head to hit the pavement and bounce off of it.

24. While leaning on the truck, Plaintiff said something to Officer Patterson. Immediately afterward, Officer Patterson whipped Plaintiff around and threw him to the ground by his handcuffs causing his head to hit the pavement and bounce off of it.

25. According to Ms. Torrence, this attack was not physically provoked. Plaintiff never made any movements at all, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary. She was "absolutely positive" of this fact and "guarantee[d]" under oath at the hearing that it did not happen.

26. This attack was not physically provoked. Plaintiff never made any movements at all, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary.

27. Plaintiff was not in any way actively resisting arrest.

28. Ms. Torrence testified at the preliminary hearing that she was also "absolutely positive" that Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

29. Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

30. Ms. Torrence characterized Officer Patterson as seeming angry when he "whipped" Plaintiff onto the street's gutter.

31. Ms. Torrence's testimony at the preliminary hearing corresponded with the statement she made to police investigators at the scene.

32. After Officer Patterson threw Plaintiff to the ground, according to Ms. Torrence, Officers Patterson, Harris, and Baugh neglected to investigate whether Plaintiff was injured and/or to check on his condition thereafter at all.

33. Officers Patterson, Harris, and Baugh neglected to investigate whether Plaintiff was injured and/or to check on his condition thereafter at all.

34. Instead, they propped Plaintiff up against one of their trucks, and kept him in handcuffs, despite his immobility resulting from his injuries and the fact that blood had begun emanating from Plaintiff's head. His face and head became discolored.

35. A second witness, Mr. Jason Scott, observed the events that occurred immediately after the assault, including the Officers' refusal to help Plaintiff.

36. Instead of assisting Plaintiff, Officers Patterson and Harris "high-fived" each other after they propped an unconscious or nearly unconscious Plaintiff against one of their vehicles.

37. Mr. Scott stated to Draper police in writing at the scene that he saw Officers Patterson and Harris laughing.

38. Ms. Torrence, Mr. Scott, and two other witnesses, Mr. Mehdi Mahmoudi and Mr. Steve Merrin, all confirm that they saw Plaintiff in a state of complete lack of consciousness.

39. Plaintiff lost consciousness at the scene of the injury.

40. Plaintiff suffered extensive injuries as a result of Officer Patterson's violent act. He fractured his skull, lost noticeable hearing in his left ear (the ear which hit the curb), developed tinnitus in that ear, lost a significant amount of blood, received

contusions and gashes, lost consciousness, suffered a concussion and head injury, including bleeding in his brain, a separated shoulder, and has scarring.

41. Plaintiff spent two days in the hospital in critical and serious condition in the Intensive Care Unit. Plaintiff has since been released from medical care, as surgery is not an option for the tinnitus from which he suffers.

42. Plaintiff is a young man and had no pre-existing conditions.

43. At this time, Plaintiff's audiologist cannot be sure "if the assault will accelerate the use of hearing aids in the future."

44. In addition, Plaintiff reports that the tinnitus worsens at night and in quiet backgrounds, preventing him from sleeping well and from performing activities of daily living, like reading.  The relentless ringing causes him to re-live the assault every night and during those quiet times.

45. Objectively, tinnitus can be very distressing, causing depression and anxiety.

46. Plaintiff has not received treatment for his depression and anxiety but reports suffering from both illnesses as a result of his difficulty in coping with the loud ringing in his ears. He describes the sounds as "torture."

47. Officer Patterson's violence caused Plaintiff to incur over $35,000 in medical bills. At the time of the assault, he had no health insurance.  This amount will increase as Plaintiff receives additional treatment.

48. Plaintiff must make monthly payments that he cannot afford to his health providers for these medical bills.

49. Officers Patterson and Harris charged Plaintiff with Disarming a Peace Officer, Assault by a Prisoner, Driving Under the Influence of Alcohol, Interference with

Arresting Officer, Driving on a Suspended License, Alcohol Restricted Driver, and Operating or Being In Actual Physical Control Without an Ignition Interlock System "Ignition Interlock."

50. Defendants City of Draper, the Draper City Police Department, and Connole sent ten "SWAT-team" members and their canine units to Plaintiff's house to arrest him within days of his injuries at the hands of Officer Patterson.

51. Plaintiff pled to Driving Under the Influence of Alcohol and Ignition Interlock. The Salt Lake County District Attorney's Office dismissed the remaining charges with prejudice.  Ultimately, Plaintiff spent two months in jail for these baseless charges.

52. The actions of Officers Patterson, Baugh, and Harris "shock the conscience." The Officers acted with malice, thereby invoking the exception to the general grant of immunity.

53. Upon information and belief, the City of Draper, the Draper City Police Department, Connole and the officers conspired to hide the acts of these police officers and/or negligently supervised the officers, thereby exhibiting "deliberate indifference" to the officers' malfeasance.

54. Upon information and belief, these entities have allowed similar acts to occur without the requisite discipline.

55. Some or all of the actions of Defendants Patterson, Harris, Baugh, Draper City, Draper City Police Department, and Connole were the result of willful and malicious conduct, and/or manifested a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and of others.

**FIRST CAUSE OF ACTION**
<u>Civil Rights Violation, 42 U.S.C. § 1983:</u>
**(Against Officer Patterson)**

56. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

57. At all relevant times, Officer Patterson was employed as a police officer with the Draper Police Department.

58. Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as government official, when he stopped, detained, physically assaulted Plaintiff, using excessive force, then failed to seek immediate medical treatment for Plaintiff.

59. At all times relevant hereto and in performance of the acts set forth herein, Officer Patterson actively and personally caused the violations of Plaintiff's constitutional rights.

60. The officer's actions were "arbitrary, or conscience shocking, in a constitutional sense."

61. Defendant Patterson's conduct as alleged herein subjected Plaintiff to the deprivation of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

62. Officer Patterson used excessive force against Plaintiff without justification and deprived Plaintiff of his liberty without due process of law.

63. Officer Patterson had no probable cause to use excessive force, because he had no belief that Plaintiff posed a serious threat of physical harm either to the officer or to others.

64. The seizure occurred, yet it was unreasonable, given the totality of the circumstances.

65. Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from subjection to excessive force, unlawful detention, and failure to seek immediate medical attention.

66. The officer's conduct manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

67. Officer Patterson's actions as alleged herein were the proximate cause of the injuries sustained by Plaintiff.

68. As a result of the actions of Officer Patterson, Plaintiff's substantive liberty interest was violated and he suffered the damages set forth more fully below.

**SECOND CAUSE OF ACTION**
**Civil Rights Violation, 42 U.S.C. § 1983:**
**(Against Officer Harris)**

69. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

70. At all relevant times, Officer Harris was employed as a police officer with the Draper Police Department.

71. Officer Harris was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as government official, when he failed to seek immediate medical treatment for Plaintiff and for unlawful seizure.

11

72. At all times relevant hereto and in performance of the acts set forth herein, Officer Harris actively and personally caused the violations of Plaintiff's constitutional rights.

73. The officer's actions were "arbitrary, or conscience shocking, in a constitutional sense."

74. Defendant Harris' conduct as alleged herein subjected Plaintiff to the deprivation of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

75. Officer Harris used unlawfully seized Plaintiff without justification and deprived Plaintiff of his liberty without due process of law.

76. The seizure occurred, yet it was unreasonable, given the totality of the circumstances.

77. Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from subjection to unlawful detention and failure to seek medical treatment.

78. The officer's conduct manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

79. Officer Harris' actions as alleged herein were the proximate cause of the injuries sustained by Plaintiff.

80. As a result of the actions of Officers Harris, Plaintiff's substantive liberty interest was violated and he suffered the damages set forth more fully below.

**THIRD CAUSE OF ACTION**
**Civil Rights Violation, 42 U.S.C. § 1983:**
**(Against Chief of Police Connole)**

81.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

82. At all relevant times, Officer Connole was employed as a police officer with the Draper Police Department.

83. Officer Connole was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official.

84. At all times relevant hereto and in performance of the acts set forth herein, Officer Connole actively and personally caused the violations of Plaintiff's constitutional rights.

85. At all relevant times and in performance of the acts set forth herein, Defendant Connole was charged with the duty of supervising Officers Patterson, Harris, and Baugh.

86. Officer Connole owed Plaintiff a duty to protect Plaintiff from the violations of his constitutional rights committed by Officers Patterson, Harris, and Baugh, who were under the supervision of Officer Connole.

87. The officer's actions were "arbitrary, or conscience shocking, in a constitutional sense."

88. Defendant Connole's conduct as alleged herein subjected Plaintiff to the deprivation of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution in that Officer Connole failed to supervise Officers

13

Patterson, Harris, and Baugh to prevent Officer Patterson's use of excessive force and unlawful seizure, Officer Harris' unlawful seizure and failure to seek immediate medical care, and Officer Baugh's failure to seek immediate medical care.

89. Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from subjection to unlawful detention , excessive force, and failure to seek immediate medical treatment.

90. The officer's conduct manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

91. Officer Connole's actions as alleged herein were the proximate cause of the injuries sustained by Plaintiff.

92. As a result of the actions of Officers Connole, Plaintiff's substantive liberty interest was violated and he suffered the damages set forth more fully below.

**FOURTH CAUSE OF ACTION**
**Deprivation of Constitutional Rights, 42 U.S.C. § 1983:**
**(Against Defendants Draper City, Draper City Police Department, and Connole)**

93.  Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

94. The Fourth Amendment of the United States Constitution, applicable to the States through the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

14

95. Defendants, Draper City, its political subdivision, the Draper City Police Department, and Connole are "persons" for purposes of a § 1983 action.

96. The actions of Draper City, the Draper City Police Department, and Connole alleged herein were intentional, willful, and deliberate.

97. These defendants had the final decision-making authority to create the unconstitutional policy or practice.

98. These defendants were the "moving force" behind the Constitutional violations.

99. At all times relevant, Officers Harris, Patterson, and Baugh were acting under the direction and control of Draper City, the Draper City Police Department, and Connole, and those defendants, through its agents and employees, were responsible for their officers and the policies and practices of the Draper City Police Department.

100. As a direct and proximate result of the above-referenced unreasonable, unlawful, fraudulent, willful, and malicious detention and seizure by Officers Harris and Patterson, Plaintiff was deprived of his rights to be secure in his person and free from an unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

101. Officers Harris, Patterson, and Baugh acted under the color and pretense of Utah State law.

102. Officers Harris, Patterson, and Baugh knew that their actions violated the Plaintiff's rights to be free from an unlawful seizure, excessive force, and failure to seek immediate medical attention but proceeded to violate those rights anyway. The

illegality of Defendants' actions were well established at the time they were committed.

103. The officers' conduct clearly violated established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

104. As a direct and proximate result of the unwarranted, willful, malicious, fraudulent and outrageous conduct of Defendants, as set forth above, Plaintiff suffered and continues to suffer the damages set forth herein. These damages include, without limitation, financial expenditures, physical pain and suffering, and distrust and fear of law enforcement officials.

105. As a direct and proximate result of the unwarranted, malicious, fraudulent and outrageous conduct of the Defendants as set forth above, Plaintiff suffered and continues to suffer embarrassment and humiliation.

106. Defendants, Draper City, the Draper City Police Department, and Connole had a duty (and therefore were required) to train and supervise their employees concerning the lawful seizure of an individual, and a duty to implement policies, procedures, practices and customs to insure that no unlawful seizures, excessive force, and the failure to seek immediate medical care were undertaken by its employee Officers.

107. By omissions, or acts of commission, Defendants Draper City, the Draper City Police Department and Connole failed to properly train, supervise and/or discipline Officers Harris, Patterson, and Baugh and failed to implement or follow policies, procedures, customs, and practices that would have prevented Officers Harris and

Patterson from unlawfully and illegally seizing Plaintiff and from all three officers' failure to seek immediate medical treatment for Plaintiff. These procedures either were officially adopted, informally accepted or condoned by Defendants.

108.  Alternatively, the Defendants developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the laws prohibiting unlawful seizures, excessive force, and medical care, and the constitutional rights of citizens, including Plaintiff.

109.  Defendants Draper City, the Draper City Police Department and Connole engaged in the herein-described conduct pursuant to and as a result of Draper City, the Draper City Police Department and Connole's policy, practice, custom, and/or decision.

110.  The actions of Draper City, the Draper City Police Department and Connole alleged herein involved reckless and callous indifference to Plaintiff's rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

111.  The above-described violations of Plaintiff's rights are actionable under 42 U.S.C. § 1983, and Plaintiff is entitled, under that section, to judgment against the Defendants named herein in their individual capacities, for damages in an amount to be proven at trial.

112.  As a direct and proximate result of Defendants' actions or inactions, Plaintiff suffered pecuniary loss in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1983.

113. Additionally, under 42 U.S.C. § 1988, and other provisions of Utah law, Plaintiff

is entitled to attorney's fees and costs from Defendants.

114. The actions of Draper City, the Draper City Police Department and Connole as

alleged herein were the proximate cause of the injuries sustained by Plaintiff.

### FIFTH CAUSE OF ACTION
### Civil Rights Violation, 42 U.S.C. § 1983:
### Conspiracy to Deprive Plaintiff of His Civil Rights
### (Against Officers Patterson, Harris, Draper City, the Draper City Police Department, Connole, and John Does 1-10)

115. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth

herein.

116. Defendants conspired for the purpose of directly depriving Plaintiff of his civil

rights under the laws of the United States and of the State of Utah, which resulted in

injury to both Plaintiff's person and property.

117. Defendants conspired through an express and/or implied agreement or

understanding among Defendants to deprive Plaintiff of his constitutional rights.

118. As a result of said express and/or implied agreement or understanding, Plaintiff

was indeed deprived of said rights.

119. Upon information and belief, the City of Draper, the Draper City Police

Department, Connole and the officers conspired to hide the acts of these police

officers and/or negligently supervised the officers, thereby exhibiting "deliberate

indifference" to the officers' malfeasance.

120. Upon information and belief, these entities have allowed similar acts to occur

without the requisite discipline.

121. The actions of Draper City, the Draper City Police Department, and Connole alleged herein were intentional, willful, and deliberate.

122. These defendants had the final decision-making authority to create the unconstitutional policy or practice.

123. These defendants were the "moving force" behind the Constitutional violations.

124. The officers' conduct clearly violated established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

125. Plaintiff is therefore entitled to recover damages occasioned by such injury and/or deprivation, including attorney fees.

## SIXTH CAUSE OF ACTION
### Utah Constitution Article I, §§ 1, 7, 9 and 14 Violations
### (Against All Defendants)

126. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

127. Utah Constitution Article I, § 7 states: "No person shall be deprived of life, liberty, or property without due process of law." This provision mirrors part of the Fourteenth Amendment to the United States Constitution (". . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . .").

128. Utah Constitution, Article I, § 14 states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized."

129. Utah Constitution, Article I, § 9 states: "…[C]ruel and unusual punishments [shall not] be inflicted. *Persons arrested or imprisoned shall not be treated with unnecessary rigor.*" (Emphasis added.)

130. Utah Constitution, Article I, § 1 states: "All men have the inherent and inalienable right to enjoy and defend their lives and liberties."

131. Based upon the text, historical context, and other considerations, the protections and rights afforded by Article I, §§1,7, 9, and 14 are broader than interests and rights afforded by the U.S Constitution.

132. The notice provision of the Utah Governmental Immunity Act, as delineated in Utah Code Ann. § 63G-7-401(2), does not apply to a plaintiff's State constitutional claims because such claims are self-executing.

133. A Utah State Constitutional provision is self-executing: "… if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if 'no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed . . . .'" *Spackman v. Box Elder School Dist.*, 2000 UT 87, 16 P.3d 533, 535.

134. No notice of claim is required for a self-executing Utah constitutional claim. "[W]hen a plaintiff brings suit under a 'self-executing' Utah constitutional clause, no notice of claim is required." *Tiscareno v. Frasier*, 2009 WL 4730785 (D. Utah 2009) (citing *see, e.g., Heughs Land, L.L.C. v. Holladay Ciry*, 113 P.3d 1024, 1027 (Utah Ct. App.2005)).

135. The Utah Governmental Immunity Act does not apply to claims alleging state constitutional violations. *See Jensen v. Cunningham.* 2011 UT 17, 250 P.3d 465, ¶ 51.

136. In order to assert State Constitutional claim, a plaintiff must prove that the constitutional violation was "flagrant," that existing remedies do not redress the injuries, and that equitable relief is wholly inadequate to protect the plaintiff's rights.

137. Plaintiff suffered flagrant violations of his constitutional rights by being stopped, detained and restrained by Officers Harris and Patterson, assaulted by Officer Patterson, and denied immediate medical attention by Officers Harris, Patterson, and Baugh.

138. The actions of Draper City, the Draper City Police Department, and Connole alleged herein were intentional, willful, and deliberate.

139. Draper City, the Draper City Police Department, and Connole had the final decision-making authority to create the unconstitutional policy or practice.

140. Draper City, the Draper City Police Department, and Connole were the "moving force" behind the Constitutional violations.

141. Existing remedies do not redress the violations of the rights of Plaintiff, primarily since the violations have already occurred, and the damage to Plaintiff's rights has already accrued.

142. Equitable relief would be and is wholly inadequate to redress the injuries and damages sustained by Plaintiff, primarily since the violations have already occurred, and the damage to Plaintiffs' rights has occurred.

143. Injunctive relief cannot redress Plaintiff's injuries.

144. The only remedy for these violations of the Utah Constitution is under the common law, and because of the repugnance of the Defendants' conduct and the strong interests of the State of Utah in discouraging future conduct, no special factors are necessary to be determined by this Court in fashioning an appropriate remedy for the violations of Plaintiff's State constitutional rights in this case.

145. Officers Harris, Patterson and Baugh exhibited a shocking degree of disregard to the rights of citizens of Utah and of Plaintiff to be free from unlawful and unreasonable searches and seizures, excessive force, and failure to provide immediate medical care.

146. As a direct and proximate result of the Officers' deliberate and violative actions, Plaintiff suffered significant physical injury, severe embarrassment, humiliation, mortification, and fear of being again subjected to an unlawful search and seizure, as well as to excessive force at the hands of law enforcement officials.

147. Plaintiff is entitled to recover from and against Defendants, jointly and severally, all damages sustained by Plaintiff as a proximate and direct result of Defendants' constitutional violations.

148. Plaintiff seeks compensatory damages and attorney fees allowed by law for these constitutional violations in an amount to be determined at trial.

149. Plaintiff also seeks punitive damages against the individual defendants as may be allowed by law.

## SEVENTH CAUSE OF ACTION
### Assault and Battery
### (Against Officer Patterson)

150. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

151. Without probable cause, reasonable suspicion, or legal justification and authority, Defendant Officer Patterson stopped, detained, restrained then assaulted Plaintiff, using excessive force and causing great injury to Plaintiff.

152. These acts were committed with unlawful force and violence, were done with malice and a wanton disregard for Plaintiff's rights, and said acts proximately caused bodily injury to Plaintiff as set forth more fully herein.

153. Officer Patterson was acting within the course and scope of his employment as a police officer for Defendants, Draper City, the Draper City Police Department and Connole.

154. Officer Patterson knew that his actions were wrongful for which immunity was waived under Utah Code Ann. §63G-7-202(3)(c)(i).

155. As a result of such malice and wanton disregard, Plaintiff is entitled to an award of punitive damages against Defendant.

## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Officers Patterson, Harris, Baugh and John Does 1-10)

156. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

157. The actions and conduct of Defendants, Officers Harris, Patterson, and Baugh, as set forth more fully herein, constitutes extreme and outrageous conduct under the circumstances. Said action was intentional and malicious.

158. The actions of Officers Patterson, Harris, and Baugh offended generally accepted standards of decency and morality.

159. Any reasonable person would have known that the intentional and/or reckless actions of these officers would result in severe emotion distress to Plaintiff.

160. As a direct and proximate result of such conduct, Plaintiff was injured and suffered, and continues to suffer from, severe mental and emotional distress, as intended, or reasonably foreseen by Defendants.

161. Plaintiff is entitled to damages for such mental and emotional distress as a result of such conduct in an amount to be determined at trial.

162. The conduct of Defendants, as set forth above, was extreme and outrageous as well as intentional and malicious. The Defendants' conduct, at a minimum, demonstrates a wanton disregard for the rights and feelings of the Plaintiff, entitling the Plaintiff to an award of punitive damages against the Defendants in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### Fraud
### (Against Officer Patterson)

163. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

164. At the preliminary hearing, Officer Patterson testified that he threw Plaintiff to the ground because Plaintiff "head butted" him, unlocked his belt clip, and placed his hand on Patterson's gun.

165. According to witness Ms. Torrence, who testified at the preliminary hearing, and did not know any of the actors involved, the officers administered field sobriety tests to Plaintiff. They handcuffed Plaintiff and took him to the back of one of their trucks. Plaintiff turned to look towards Ms. Torrence's direction.

166. Ms. Torrence testified she saw Plaintiff say something to Officer Patterson. Immediately afterward, Officer Patterson whipped Plaintiff around and threw him to the ground by his handcuffs causing his head to hit the pavement and bounce off of it.

167. According to Ms. Torrence, this attack was not physically provoked. Plaintiff never made any movements at all, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary. She was "absolutely positive" of this fact and "guarantee[d]" under oath at the hearing that it did not happen.

168. Ms. Torrence testified at the preliminary hearing that she was also "absolutely positive" that Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

169. Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

170. Ms. Torrence characterized Officer Patterson as seeming angry when he "whipped" Plaintiff onto the street's gutter.

171. Ms. Torrence's testimony at the preliminary hearing corresponded with the statement she made to police investigators at the scene.

172. Officer Patterson intentionally and knowingly gave, upon lawful oath at the preliminary hearing, false testimony material to the issue and matter of inquiry.

173. As a result, Plaintiff suffered injuries and damages, and is entitled to an award of punitive damages.

## COMPLIANCE WITH THE GOVERNMENT IMMUNITY ACT OF UTAH

To the extent required, Plaintiff has complied and/or will comply with the applicable provisions of the Government Immunity Act of Utah, Utah Code Ann.§63G-7-101 et seq.

## UNDERTAKING

Plaintiff has currently filed an undertaking as required by Utah Code Ann.§63G-7-601 in the amount of $300.00

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment in favor of Plaintiff and against Defendants, jointly and severally, where applicable, as follows:

I.   That this pleading be deemed to conform to the proof presented at the time of trial;

II.  That Plaintiff be permitted a trial by jury;

III. For general compensatory damages in an amount to be determined at trial;

IV.  For special damages as are shown at trial;

V.     For punitive damages against named individuals for willful, malicious conduct, where appropriate and as may be allowed by law;

VI.     For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

VII.     For Plaintiff's reasonable attorney's fees costs incurred herein, pursuant to 42 U.S.C. §§ 1983 and 1988;

VIII.     For Plaintiff's reasonable attorney's fees and costs incurred herein, pursuant to any other provision of State law as may be applicable, including the Court's inherent power to award attorney fees for wrongful conduct;

IX.     For such other damages as are stated or implied in this Complaint; and

X.     For such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action for which a jury is permitted.

Dated this 15th day of May, 2014.


/s/Lisa A. Marcy
LISA A. MARCY
*AARON & GIANNA, PLC*
2150 South 1300 East, Ste. 500
Salt Lake City, UT 84106
Telephone: (801) 359-2501
Facsimile: (801) 990-4601
lmarcy@aarongianna.com



/s/ John K. Johnson
JOHN K. JOHNSON

27

*JOHN K. JOHNSON, LLC*
10 West 300 South, Suite 800
Salt Lake City, Utah 84101
Telephone: (801) 915-2616
Facsimile:  (801) 359-1088

*Attorneys for Joshua Chatwin*

Plaintiff's Address:

c/o Aaron & Gianna, PLC