*AARON & GIANNA, PLC*
LISA A. MARCY (#5311)
2150 South 1300 East, Ste. 500
Salt Lake City, UT  84106
Telephone:  (801) 359-2501
Facsimile:  (801) 990-4601
lmarcy@aarongianna.com

*JOHN K. JOHNSON, LLC*
JOHN K. JOHNSON (#3815)
10 West 300 South, Suite 800
Salt Lake City, Utah 84101
Telephone: (801) 915-2616
Facsimile:  (801) 359-1088
jkjohnson1080@hotmail.com

*Attorneys for Joshua Chatwin*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>      Plaintiff,<br><br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity, and JOHN DOES 1-10,<br><br>      Defendants. | Case No.: 2:14-cv-00375<br><br>Judge: Dale A. Kimball |

## AMENDED COMPLAINT
## AND REQUEST FOR TRIAL BY JURY

Plaintiff, Joshua Chatwin, by and through his counsel of record, Lisa A. Marcy of *Aaron & Gianna, PLC* and John K. Johnson of *John K. Johnson, LLC,* complains against Defendants,

Draper City, the Draper City Police Department, Police Chief Mac Connole, Officer J. Patterson,

Officer David Harris, Officer Heather Baugh, and Officers John Does 1-10, and request a trial by

jury, as follows:

## **INTRODUCTION**

1. This is a civil rights action against Defendants, the City of Draper, the Draper City Police
   Department, the Draper City Police Chief and three Draper City Police Officers.

2. Plaintiff, Joshua Chatwin, seeks relief for the Defendants' violation of his Constitutionally-
   guaranteed rights, specifically those guaranteed under the Fourth, Fifth and Fourteenth
   Amendments to the United States Constitution, which rights are further secured by the Civil
   Rights Act of 1871, 42 U.S.C. § 1983, § 1985 and § 1988, and by the laws and the
   Constitution of the State of Utah.

3. Defendants' conduct was willful, as defined by Utah Code Ann. § 63G-7-102(10), resulting
   in a waiver of qualified immunity.

4. Plaintiff seeks damages, both compensatory and punitive; affirmative relief; an award of
   attorney's fees, costs, and interest; and other further relief as this Court deems just and
   equitable.

5. This is further an action at law to redress a deprivation under color of statute, ordinance,
   regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the
   applicable provisions of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of
   the United States, and under Article I §§ 1, 7, 9, and 14 of the Constitution of the State of
   Utah.

## JURISDICTION AND VENUE

6.   This action arises in part under the United States Constitution and Federal law, particularly under the provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985 and 1988.

7.   This action also seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

8.   This action also arises in part under the Utah Constitution, Article I, §§ 1,7, 9 and 14, which protect a citizen from false arrest and the taking of his property (money for resulting medical bills without due process of law.

9.   Accordingly, jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a), and 1983.

10.  Jurisdiction is also conferred upon this Court pursuant to Utah Code Ann.§§63G-7-401 and -402,as Plaintiff issued the requisite Notice of Claim to Defendants listed herein on May 16, 2011, through the hand-delivery and facsimile transmission of the Notice of Claim , attached hereto as Exhibit "A," to Draper City through the City Recorder, Tracy B. Norr, the Draper City Police Department, Police Chief Mac Connole, Officer J. Patterson, Officer David Harris, and Officer Heather Baugh, at   Draper City and Draper City Police Department, 1020 East Pioneer Road, Draper, UT  84020.

11.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because: the events giving rise to the claims asserted herein occurred in the District of Utah, one or more Defendant(s) resides in the District of Utah and all Defendants are residents of Utah, and the issues present a federal question.

## PARTIES

12. Plaintiff, Joshua Chatwin is a resident of Draper City, Utah.

13. At all times relevant hereto, Defendant, Draper City (a/k/a Draper City Corporation), was a municipality and political subdivision of the State of Utah, as defined by Utah Code. Ann. § 63G-7-102(3) which employed Defendants, J. Patterson, David Harris, Heather Baugh, and John Does 1-10, through the Draper City Police Department.

14. At all times relevant hereto, Defendant, the Draper City Police Department, was a statutorily created agency organized and existing under the laws of the State of Utah.

15. At all times relevant hereto, Defendant, Mac Connole ("Connole"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department, including as defined by Utah Code Ann. § 63G-7-102(2), and was acting as Chief of Police of the Draper City Police Department.

16. At all times relevant hereto, Defendant, J. Patterson ("Patterson"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department, including as defined by Utah Code Ann. § 63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

17. At all times relevant hereto, Defendant, David Harris ("Harris"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department,  including as defined by Utah Code Ann. § 63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

18. At all times relevant hereto, Defendant, Heather Baugh ("Baugh"), was a resident of Salt Lake County, Utah and an employee of the Draper City Police Department,  including as

4

defined by Utah Code Ann. § 63G-7-102(2), and was acting as an employee officer of the Draper City Police Department.

19. Defendants, John Does 1-10, are individuals and entities whose true identities are presently unknown, but whose acts and omissions have caused or contributed to the Plaintiff's injuries and damages as more specifically described in this Complaint. Plaintiff names these Defendants by a fictitious name because Plaintiff is presently ignorant as to the actual name of the individuals. If and when the identity of the individuals is discovered, this Complaint will be amended to identify these Defendants by their true names.

**FACTUAL ALLEGATIONS**

20. On or about May 18, 2010, while driving through a residential area of Draper, Utah, Plaintiff was stopped at 12534 South 150 East, by Defendant, Draper City Police Officer D. Harris, for suspicion of driving under the influence of alcohol.

21. After stopping Plaintiff, Officer Harris had Plaintiff perform field sobriety tests and thereafter, arrested him for driving under the influence of alcohol.

22. Thereafter, Defendants Officer J. Patterson and Officer Heather Baugh arrived in a second Draper City Police vehicle.

23. Officer Patterson then performed a search incident to arrest of Plaintiff and of his automobile.

24. During Officer Patterson's search incident to arrest of Plaintiff, Officer Patterson threw Plaintiff to the ground.

25. At the time Officer Patterson performed his search incident to arrest of Plaintiff, Plaintiff was handcuffed behind his back, immobilized and compliant.

26. At the time Officer Patterson threw Plaintiff to the ground, Plaintiff was handcuffed behind his back, immobilized and compliant.

27. A witness, Ms. Kathy Ann Torrence, corroborated Plaintiff's account of the events described in Paragraphs 20-26 twice.

28. Ms. Torrence corroborated Plaintiff's account of the events described in Paragraphs 20-26 in a written statement made to the Draper City Police Department on May 18, 2010, attached hereto as Exhibit "B."

29. Ms. Torrence corroborated Plaintiff's account of the events described in Paragraphs 20-26 via oral testimony at a preliminary hearing held on February 8, 2011. Transcript entitled "Preliminary Hearing-February 8, 2011, Before The Honorable Charlene Barlow,  State of Utah v.Joseph Chatwin (sic), Case No. 101401517fs, In the Third District Court-Salt Lake, Salt Lake County, State of Utah, attached hereto as Exhibit " C."

30. Ms. Torrence did not know Plaintiff prior to witnessing the events described in Paragraphs 20-26. *Ex. C, p. 65:14-17.*

31. At the preliminary hearing, Ms. Torrence testified that she saw two Officers (Patterson and Harris) (referred to as "the two Officers" for purposes of Paragraphs 31-38) with Plaintiff across the street from her home. *Ex. C, pp. 65:6-7; 66:22-25; 67:6-8.*

32. At the preliminary hearing, Ms. Torrence testified that the two Officers administered field sobriety tests to Plaintiff. *Ex. C, p. 67:6-7.*

33. At the preliminary hearing, Ms. Torrence testified that the two Officers handcuffed Plaintiff after the two Officers administered field sobriety tests to Plaintiff. *Ex. C, p. 71:13-18.*

34. At the preliminary hearing, Ms. Torrence testified the two Officers took Plaintiff to the back of one of their trucks after the two Officers handcuffed Plaintiff. *Ex. C, p. 73:14-19.*

35. At the preliminary hearing, Ms. Torrence testified Plaintiff turned to look toward her direction as the two Officers took Plaintiff to the back of one of their trucks. *Ex. C, p. 74:21-23.*

36. The two Officers administered field sobriety tests to Plaintiff.

37. Thereafter, the two Officers handcuffed Plaintiff.

38. Thereafter, the two Officers took him to the back of one of their trucks.

39. At the preliminary hearing, Ms. Torrence testified she saw Plaintiff say something to Officer Patterson. *Ex. C, p. 74:22-23.*

40. At the preliminary hearing, Ms. Torrence testified that immediately after she saw Plaintiff say something to Officer Patterson, Officer Patterson spun Plaintiff around and threw him to the ground by his handcuffs. *Ex. C, p. 75:2-5.*

41. At the preliminary hearing, Ms. Torrence testified that when Officer Patterson threw Plaintiff to the ground by his handcuffs, she saw Plaintiff's head hit the pavement and bounce off of it. *Ex. C, p. 77:1-5.*

42. While leaning on the truck handcuffed, Plaintiff said something to Officer Patterson.

43. After Plaintiff said something to Office Patterson, Officer Patterson spun Plaintiff around and threw him to the ground by his handcuffs.

44. When Officer Patterson threw Plaintiff to the ground by his handcuffs, Plaintiff's head hit the pavement and bounced off of it.

45. At the preliminary hearing, Ms. Torrence testified that Plaintiff did not physically provoke Officer Patterson. *Ex. C, p. 75:16-76:25.*

46. At the preliminary hearing, Ms. Torrence testified Plaintiff did not make any movements toward Officer Patterson. *Ex. C, p. 75:16-76:25.*

47. At the preliminary hearing, Ms. Torrence testified Plaintiff did not make any movements towards Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun. *Ex. C, p. 75:16-76:25.*

48. At the preliminary hearing, Ms. Torrence testified Plaintiff did not make any movements towards Officer Patterson, despite Officer Patterson's claims to the contrary. *Ex. C, p. 75:16-76:25.*

49. At the preliminary hearing, Ms. Torrence testified Plaintiff did not make any movements towards Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary.  *Ex. C, p. 75:16-76:25.*

50. At the preliminary hearing, Ms. Torrence testified she was absolutely positive that Plaintiff did not make any movements toward Officer Patterson. *Ex. C, p. 75:16-76:25.*

51. At the preliminary hearing, Ms. Torrence testified that she was absolutely positive that Plaintiff did not make any movements towards Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun. *Ex. C, p. 75:16-76:25.*

52. At the preliminary hearing, Ms. Torrence testified that she guaranteed under oath that Plaintiff did not make any movements towards Officer Patterson. *Ex. C, p. 75:16-76:25.*

53. At the preliminary hearing, Ms. Torrence testified that she guaranteed under oath that Plaintiff did not make any movements towards Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun. *Ex. C, p. 75:16-76:25.*

54. Plaintiff did not physically provoke Officer Patterson.

55. Plaintiff did not make any movements toward Officer Patterson.

56. Plaintiff did not make any movements toward Officer Patterson, despite Officer Patterson's claims to the contrary.

57. Plaintiff did not make any movements toward Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun.

58. Plaintiff did not make any movements toward Officer Patterson, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary.

59. Plaintiff did not actively resist arrest in any way.

60. At the preliminary hearing, Ms. Torrence testified she was absolutely positive Plaintiff did not head-butt Officer Patterson. *Ex. C, p. 75:16-76:25.*

61. At the preliminary hearing, Ms. Torrence testified she was absolutely positive Plaintiff did not head-butt Officer Patterson, despite Officer Patterson's claims to the contrary in his report. *Ex. C, p. 75:16-76:25.*

62. At the preliminary hearing, Ms. Torrence testified she was absolutely positive Plaintiff did not head-butt Officer Patterson, despite Officer Patterson's claims to the contrary through his testimony at the preliminary hearing. *Ex. C, p. 75:16-76:25.*

63. Plaintiff did not head-butt Officer Patterson.

64. Plaintiff did not head-butt Officer Patterson, despite Officer Patterson's claims to the contrary in his report.

65. Plaintiff did not head-butt Officer Patterson, despite Officer Patterson's claims to the contrary through his testimony at the preliminary hearing.

66. At the preliminary hearing, Ms. Torrence testified that Officer Patterson appeared angry when he threw Plaintiff onto the pavement/ground. *Ex. C, p. 88:15-21.*

67. At the preliminary hearing, Ms. Torrence's testimony corresponded with the statement she made to police investigators at the scene of Plaintiff's arrest. *See Exhibits "B" and "C."*

68. At the preliminary hearing, Ms. Torrence testified that after Officer Patterson threw Plaintiff to the ground, handcuffed, Officers Patterson, Harris and Baugh did not investigate whether Plaintiff was injured. *Ex. C, p. 78:6-18.*

69. At the preliminary hearing, Ms. Torrence testified that after Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh did not check on Plaintiff's condition. *Ex. C, p. 78:6-18.*

70. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris, and Baugh did not investigate whether Plaintiff was injured.

71. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh did not check on Plaintiff's condition.

72. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs.

73. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh leaned Plaintiff against one of their trucks.

74. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, even though his injuries had rendered him immobile.

75. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, even though blood had begun emanating from Plaintiff's head.

76. After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, even though Plaintiff's face and head had become discolored.

77. A second witness, Mr. Jason Scott, observed the events that occurred immediately after Officer Patterson threw Plaintiff to the ground handcuffed.

78. Mr. Scott witnessed Officers Patterson, Harris and Baugh's refusal to assist Plaintiff after Officer Patterson threw Plaintiff to the ground, handcuffed.

79. Mr. Scott gave a written statement, to Draper Police at the scene of Plaintiff's arrest, attached hereto as Exhibit "D."

80. Mr. Scott's written statement provides that he saw the Draper Police Officers at the scene of the arrest, laughing. *Ex. D.*

81. Mr. Scott's written statement provides that he saw Plaintiff handcuffed. *Ex. D.*

82. Mr. Scott's written statement provides that when he saw Plaintiff handcuffed, Plaintiff appeared to be unconscious. *Ex. D.*

83. Ms. Torrence's written statement also provides that she saw Plaintiff lying motionless on the cement ground. *Ex. B, p. 2.*

84. A third witness, Mr. Mehdi Mahmoudi, confirms he saw Plaintiff in a state of unconsciousness. Witness Statement of Mr. Mahmoudi is attached hereto as Exhibit "E."

85. A fourth witness, Mr. Steve Merrin, confirms he saw Plaintiff in a state of unconsciousness. Witness Statement of Mr. Merrin  is attached hereto as Exhibit "F."

86. Plaintiff lost consciousness at the scene of the injury.

87. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered extensive injuries.

88. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff fractured his skull.

89. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff lost noticeable hearing in his left ear (the ear that hit the ground).

90. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff developed tinnitus in his left ear.

91. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff lost a significant amount of blood.

92. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered contusions and gashes.

93. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff lost consciousness.

94. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered a concussion.

95. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered additional head injuries.

96. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered bleeding in his brain.

97. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff suffered a separated shoulder.

98. As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff has scarring.

99. Plaintiff spent two days in the hospital in the Intensive Care Unit.

100. Plaintiff spent two days in the hospital in critical and serious condition.

101.    As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff spent two days in the hospital in the Intensive Care Unit.

102.    As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff spent two days in the hospital in critical and serious condition.

103.    Surgery is not an option for the tinnitus from which Plaintiff suffers.

104.    Because surgery is not an option for the tinnitus from which Plaintiff suffers, Plaintiff has been released from medical care.

105.    Plaintiff had no pre-existing conditions at the time of his arrest.

106.    Plaintiff had no pre-existing conditions before Officer Patterson threw Plaintiff to the ground handcuffed.

107.    At this time, Plaintiff's audiologist cannot determine with any certainty whether the injuries suffered by Plaintiff as a result of Officer Patterson throwing him to the ground handcuffed will accelerate Plaintiff's use of hearing aids in the future.

108.    Plaintiff's tinnitus worsens at night and in quiet backgrounds.

109.    Because Plaintiff's tinnitus worsens at night and in quiet backgrounds, Plaintiff is unable to sleep well.

110.    Because Plaintiff's tinnitus worsens at night and in quiet backgrounds, Plaintiff is unable to perform quiet activities of daily living, like reading.

111.    Plaintiff recently obtained a new job which requires him to use a telephone all day.

112.    The tinnitus prevents Plaintiff from hearing the customers talking on the telephone, so Plaintiff cannot use his left ear.

113.    Plaintiff's tinnitus causes a constant ringing in his ears at night and during quiet times.

114.    The constant ringing in Plaintiff's ears causes him to re-live Officer Patterson throwing him to the ground handcuffed every night and during those quiet times.

115.    Medical literature provides that tinnitus can be very distressing, causing depression and anxiety.

116.    Plaintiff has not received treatment for his depression and anxiety.

117.    Plaintiff suffers from depression and anxiety as a result of his difficulty in coping with the ringing in his ears.

118.    Plaintiff describes the ringing in his ears as torture.

119.    As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff incurred more than $35,000 in medical bills.

120.    As a result of Officer Patterson throwing Plaintiff to the ground handcuffed, Plaintiff will incur additional undermined amounts in medical bills as Plaintiff receives additional treatment.

121.    At the time Officer Patterson threw Plaintiff to the ground handcuffed, Plaintiff had no health insurance.

122.    Plaintiff must make monthly payments, which he cannot afford, to his health providers for the medical bills described in Paragraph 119.

123.    Officers Patterson and Harris charged Plaintiff with Disarming a Peace Officer, Assault by a Prisoner, Driving Under the Influence of Alcohol, Interference with Arresting Officer, Driving on a Suspended License, Alcohol Restricted Driver, and Operating or Being In Actual Physical Control Without an Ignition Interlock System "Ignition Interlock."

124.    Defendants, the City of Draper, the Draper City Police Department, and Police Chief Connole, sent ten (10) SWAT-team members and their canine units to Plaintiff's house to

14

arrest him within days of Plaintiff suffering the injuries resulting from Officer Patterson throwing him to the ground, handcuffed.

125.    Plaintiff pled guilty to Driving under the Influence of Alcohol and Ignition Interlock.

126.    The Salt Lake County District Attorney's Office dismissed with prejudice the three remaining charges relating to allegations of provoking a police officer.

127.    Plaintiff spent two months in jail relating to the three charges associated with allegations of provoking a police officer, which were ultimately dismissed.

128.    Plaintiff lost his job as a direct result of this two-month period in jail.

129.    The actions described above of Officers Patterson, Baugh and Harris shock the conscience.

130.    Officers Patterson, Baugh and Harris acted with malice.

131.    Because Officers Patterson, Baugh and Harris acted with malice, their actions invoke the exception to the general grant of immunity for police officers.

132.    The City of Draper, the Draper City Police Department, Police Chief Connole and Officers Patterson, Baugh and Harris conspired to hide the acts of Officers Patterson, Baugh and Harris. The City of Draper, the Draper City Police Department, and Police Chief Connole negligently supervised Officers Patterson, Baugh and Harris, thereby exhibiting deliberate indifference to the malfeasance of Officers Patterson, Baugh and Harris.

133.    Upon information and belief, the Defendants have allowed similar acts to occur without the requisite discipline.

134.    Some or all of the actions of Defendants Patterson, Harris and Baugh, Draper City, the Draper City Police Department, and Police Chief Connole were the result of willful and

malicious conduct, and/or manifested a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff.

**FIRST CAUSE OF ACTION**
**Civil Rights Violation, 42 U.S.C. § 1983:**
**(Against Officer Patterson in his Individual Capacity)**

135.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

136.   At all relevant times, Officer Patterson was employed as a police officer with the Draper City Police Department.

137.   Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official, when he stopped and detained Plaintiff. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

138.   Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official, when he handcuffed Plaintiff. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

139.   Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as government official, when he engaged in an unlawful seizure of Plaintiff. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

140.   Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official, when he threw Plaintiff to the ground handcuffed, thereby constituting excessive force. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

141.   Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official, when he

threw Plaintiff to the ground handcuffed, using excessive force, causing Plaintiff's head to strike the pavement. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

142.    Officer Patterson was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official, when he failed to seek necessary and immediate medical treatment after Plaintiff's head struck the pavement. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

143.    At all times relevant hereto and in performance of the acts set forth herein, Officer Patterson actively and personally caused the violations of Plaintiff's constitutional rights.

144.    Officer Patterson's actions and/or omissions were "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 & n.8 (1998).

145.    Officer Patterson's conduct, as alleged herein, deprived Plaintiff of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

146.    Officer Patterson's behavior against Plaintiff constituted excessive force without justification when he threw Plaintiff to the ground handcuffed causing Plaintiff's head to strike the pavement.

147.    Officer Patterson's behavior against Plaintiff described in Paragraphs 137-146, which constituted excessive force, deprived Plaintiff of his liberty without due process of law.

148.    Officer Patterson had no probable cause to use the excessive force described in Paragraphs 137-146, because Officer Patterson could not have believed Plaintiff posed a serious threat of physical harm either to Officer Patterson or to others since Plaintiff was handcuffed at the time Officer Patterson used the excessive force described in Paragraph 137-146.

149.   Officer Patterson's seizure of Plaintiff was unlawful given the totality of the circumstances surrounding the seizure.

150.   The seizure occurred, yet it was unreasonable, given the totality of the circumstances.

151.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from subjection to excessive force.

152.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful detention.

153.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful seizure.

154.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from deprivation of necessary and immediate medical attention.

155.   Officer Patterson's actions manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights.

156.   A reasonable person and/or police officer at the scene of Plaintiff's arrest would have known and recognized Plaintiff's clearly established constitutional rights.

157.   Unlike a reasonable person and/or police officer, Office Patterson violated Plaintiff's constitutional rights as protected by clearly established law.

158.   Officer Patterson's actions and/or omissions, as alleged herein, were the proximate cause of the injuries sustained by Plaintiff described above.

159.   As a result of Officer Patterson's actions and/or omissions, Plaintiff's substantive liberty interests were violated.

160.   As a result of Officer Patterson's actions and/or omissions, which violated Plaintiff's substantive liberty interests, Plaintiff suffered the damages described more fully herein.

## SECOND CAUSE OF ACTION
## Civil Rights Violation, 42 U.S.C. § 1983:
### (Against Officer Harris in his Individual and Capacity)

161.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

162.    At all relevant times, Officer Harris was employed as a police officer with the Draper Police Department.

163.    Officer Harris was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as government official, when he failed to seek necessary and immediate medical treatment for Plaintiff after Plaintiff's head struck the pavement. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

164.    Officer Harris was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as government official, when he engaged in an unlawful seizure of Plaintiff. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

165.    At all times relevant hereto and in performance of the acts set forth herein, Officer Harris actively and personally caused the violations of Plaintiff's constitutional rights.

166.    Officer Harris' actions and/or omissions were "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 & n.8 (1998).

167.    Officer Harris' conduct, as alleged herein, deprived Plaintiff of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

168.    Officer Harris unlawfully seized Plaintiff without justification.

169.    Officer Harris' seizure of Plaintiff was unlawful given the totality of the circumstances surrounding the seizure.

170.    When Officer Harris unlawfully seized Plaintiff, Officer Harris deprived Plaintiff of his liberty without due process of law.

171.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful detention.

172.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful seizure.

173.   Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from deprivation of necessary and immediate medical attention.

174.   Officer Harris' actions manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights.

175.   A reasonable person and/or police officer at the scene of Plaintiff's arrest would have known and recognized Plaintiff's clearly established constitutional rights.

176.   Unlike a reasonable person and/or police officer, Office Harris violated Plaintiff's constitutional rights as protected by clearly established law.

177.   Officer Harris' actions and/or omissions, as alleged herein, were the proximate cause of the injuries sustained by Plaintiff described above.

178.   As a result of Officer Harris' actions and/or omissions, Plaintiff's substantive liberty interests were violated.

179.   As a result of Officer Harris' actions and/or omissions, which violated Plaintiff's substantive liberty interests, Plaintiff suffered the damages described more fully herein.

**THIRD CAUSE OF ACTION**
**Civil Rights Violation, 42 U.S.C. § 1983:**
**(Against Police Chief Connole in his Individual and Capacity)**

180.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

181.   At all relevant times, Police Chief Connole was employed as the police chief with the Draper Police Department.

182.    Police Chief Connole was acting in the course and scope of his employment with the Draper City Police Department, and "under color of state law" as a government official at all times relevant hereto. *See, e.g., United States v. Classic,* 313 U.S. 299 (1941).

183.     At all times relevant hereto and in performance of the acts set forth herein, Police Chief Connole actively and personally caused the violations of Plaintiff's constitutional rights.

184.    At all relevant times and in performance of the acts set forth herein, Police Chief Connole was charged with the duty of supervising Officers Patterson, Harris and Baugh.

185.    Police Chief Connole owed Plaintiff a duty to protect Plaintiff from the violations of his constitutional rights committed by Officers Patterson, Harris and Baugh, described herein, who were under the supervision of Police Chief Connole.

186.    Police Chief Connole's actions and/or omissions were "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 & n.8 (1998).

187.    Police Chief Connole's conduct, as alleged herein, deprived Plaintiff of his rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

188.    Police Chief Connole failed to supervise Officers Patterson, Harris and Baugh.

189.    Police Chief Connole failed to supervise Officer Patterson so as to prevent Officer Patterson's use of excessive force against Plaintiff, as described above.

190.    Police Chief Connole failed to supervise Officer Patterson so as to prevent Officer Patterson's unlawful seizure of Plaintiff, as described above.

191.    Police Chief Connole failed to supervise Officer Patterson so as to prevent Officer Patterson's failure to seek necessary and immediate medical care for Plaintiff, as described above.

192.    Police Chief Connole failed to supervise Officer Harris so as to prevent Officer Harris' unlawful seizure of Plaintiff, as described above.

193.    Police Chief Connole failed to supervise Officer Harris so as to prevent Officer Harris' failure to seek necessary and immediate medical care for Plaintiff, as described above.

194.    Police Chief Connole failed to supervise Officer Baugh so as to prevent Officer Baugh's failure to seek necessary and immediate medical care for Plaintiff.

195.    Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from subjection to excessive force.

196.    Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful detention.

197.    Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from unlawful seizure.

198.    Plaintiff possessed a constitutionally-protected substantive liberty interest in being free from deprivation of necessary and immediate medical attention.

199.    Police Chief Connole's actions manifested malicious, reckless and callous indifference to Plaintiff's clearly established constitutional rights.

200.    A reasonable person and/or police officer and/or police chief would have known and recognized Plaintiff's clearly established constitutional rights.

201.    Unlike a reasonable person and/or police officer and/or police chief, Police Chief Connole violated Plaintiff's constitutional rights as protected by clearly established law through his failure to supervise Officers Patterson, Harris and Baugh.

202.    Police Chief Connole's actions and/or omissions, as alleged herein, were the proximate cause of the injuries sustained by Plaintiff described above.

203.     As a result of Police Chief Connole's actions and/or omissions, Plaintiff's substantive liberty interests were violated.

204.     As a result of Police Chief Connole's actions and/or omissions, which violated Plaintiff's substantive liberty interests, Plaintiff suffered the damages described more fully herein.

### FOURTH CAUSE OF ACTION
### Deprivation of Constitutional Rights, 42 U.S.C. § 1983:
### (Against Draper City, Draper City Police Department, and Police Chief Connole, Officer Patterson, Officer Harris, and Officer Baugh in their Individual Capacities)

205.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

206.     The Fourth Amendment of the United States Constitution, applicable to the States and its political subdivisions through the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

207.     Defendants, Draper City, its political subdivision, the Draper City Police Department, and Police Chief Connole are "persons" for purposes of a § 1983 action. *See, e.g., Will v. Michigan Department of State Police,* 491 U.S. 58 (1989).

208.     The actions and/or omissions of Draper City, the Draper City Police Department, and Police Chief Connole, as alleged herein, were intentional, willful, and deliberate.

209.     Draper City, the Draper City Police Department, and Police Chief Connole possessed the final decision-making authority to create the unconstitutional policies or practices, which resulted in the deprivation of rights suffered by Plaintiff.

210.     Draper City, the Draper City Police Department, and Police Chief Connole possessed the final decision-making authority to create the unconstitutional policies or practices, which resulted in the damages suffered by Plaintiff.

211.   Draper City, the Draper City Police Department, and Police Chief Connole were the moving forces behind the constitutional violations suffered by Plaintiff.

212.   At all times relevant, Officers Patterson, Harris and Baugh were acting under the direction and control of Draper City, the Draper City Police Department, and Police Chief Connole.

213.   Draper City, the Draper City Police Department, and Police Chief Connole, through their agents and employees, were responsible for the Draper City Police Officers, including Officers Patterson, Harris and Baugh.

214.   Draper City, the Draper City Police Department, and Police Chief Connole, through their agents and employees, were responsible for the policies and practices of the Draper City Police Department.

215.   Officers Patterson and Harris' detention of Plaintiff was unreasonable, unlawful, fraudulent, willful, and malicious.

216.   Officers Patterson and Harris' seizure of Plaintiff was unreasonable, unlawful, fraudulent, willful, and malicious.

217.   As a direct and proximate result of the unreasonable, unlawful, fraudulent, willful, and malicious detention and seizure by Officers Harris and Patterson, Plaintiff was deprived of his rights to be secure in his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

218.   As a direct and proximate result of the unreasonable, unlawful, fraudulent, willful, and malicious detention and seizure by Officers Harris and Patterson, Plaintiff was deprived of his rights to be free from an unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

219.    Officers Patterson, Harris and Baugh acted under the color and pretense of Utah State law.

220.    Officers Patterson, Harris and Baugh acted with the knowledge that their actions violated the Plaintiff's right to be free from an unlawful seizure.

221.    Officers Patterson, Harris and Baugh acted with the knowledge that their actions violated the Plaintiff's right to be free from subjection to excessive force.

222.    Officers Patterson, Harris and Baugh acted with the knowledge that their actions violated the Plaintiff's right to necessary and immediate medical attention.

223.    The illegality of Officers Patterson, Harris and Baugh's actions was well established at the time Officers Patterson, Harris and Baugh committed those actions.

224.    Despite possessing the knowledge described in Paragraphs 220-222, Officers Patterson, Harris and Baugh violated Plaintiff's rights anyway.

225.    Officers Patterson, Harris and Baugh's conduct violated clearly established constitutional rights.

226.    A reasonable person and/or police officer at the scene of Plaintiff's arrest would have known of the clearly established constitutional rights, which Officers Patterson, Harris and Baugh.

227.    Officers Patterson, Harris and Baugh's conduct also violated clearly established law.

228.    A reasonable person and/or police officer at the scene of Plaintiff's arrest would have known of the clearly established law, which Officers Patterson, Harris and Baugh.

229.    As a direct and proximate result of the unwarranted, willful, malicious, fraudulent and outrageous conduct of Defendants, as set forth herein, Plaintiff suffered and continues to suffer the damages set forth herein.

230.    The damages which Plaintiff suffered and continues to suffer include, without limitation, financial expenditures, physical pain and suffering, and distrust and fear of law enforcement officials.

231.    As a direct and proximate result of the unwarranted, malicious, fraudulent and outrageous conduct of the Defendants, as set forth herein, Plaintiff suffered and continues to suffer embarrassment and humiliation.

232.    Draper City, the Draper City Police Department, and Police Chief Connole had the duty to train and supervise their employees, the Draper City Police Officers, concerning the lawful seizure of an individual.

233.    Draper City, the Draper City Police Department, and Police Chief Connole had the duty to implement policies, procedures, practices and customs to ensure that no unlawful seizures were undertaken by Draper City Police Officers.

234.    Draper City, the Draper City Police Department, and Police Chief Connole had the duty to implement policies, procedures, practices and customs to ensure that excessive force was not used by Draper City Police Officers.

235.    Draper City, the Draper City Police Department, and Police Chief Connole had the duty to implement policies, procedures, practices and customs to ensure that the Draper City Police Officers did not fail to seek necessary and immediate medical care for individuals, such as Plaintiff.

236.    By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Patterson.

237.    By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Harris.

238.    By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Baugh.

239.    By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to implement or follow policies, procedures, customs, and practices that would have prevented Officers Harris and Patterson from unlawfully and illegally seizing Plaintiff.

240.    By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to implement or follow policies, procedures, customs, and practices that would have prevented Officers Patterson, Harris and Baugh from failing to seek necessary and immediate medical treatment for Plaintiff.

241.    The actions and/or omissions by Officers Patterson, Harris and Baugh, described herein, were procedures either officially adopted, informally accepted or condoned by Draper City, the Draper City Police Department and Police Chief Connole.

242.    Alternatively, Draper City, the Draper City Police Department and Police Chief Connole developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the laws prohibiting unlawful seizures.

243.    Alternatively, Draper City, the Draper City Police Department and Police Chief Connole developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the laws prohibiting the use of excessive force.

244.    Alternatively, Draper City, the Draper City Police Department and Police Chief Connole developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the laws requiring the provision of necessary and immediate medical care.

245.    Alternatively, Draper City, the Draper City Police Department and Police Chief Connole developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the laws prohibiting deprivation of the constitutional rights of citizens, including Plaintiff.

246.    Draper City, the Draper City Police Department and Police Chief Connole engaged in the conduct described herein pursuant to and as a result of Draper City, the Draper City Police Department and Police Chief Connole's policies, practices, customs, and/or decisions.

247.    The actions of Draper City, the Draper City Police Department and Police Chief Connole described herein involved reckless and callous indifference to Plaintiff's rights protected under the Fourth and Fourteenth Amendments to the United States Constitution.

248.    The actions of Draper City, the Draper City Police Department and Police Chief Connole as alleged herein were the proximate cause of the injuries and damages sustained by Plaintiff

249.    The legal and constitutional violations of Plaintiff's rights described herein are actionable under 42 U.S.C. § 1983.

250.    Plaintiff is entitled, under 42 U.S.C. § 1983, to judgment against the Draper City, the Draper City Police Department and Police Chief Connole, Officers Patterson, Harris and Baugh, named herein in their individual capacities, for damages in an amount to be proven at trial.

251.   As a direct and proximate result of Defendants' actions or inactions, Plaintiff suffered pecuniary loss in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1983.

252.   Additionally, under 42 U.S.C. § 1988, and other provisions of Utah law, Plaintiff is entitled to attorney's fees and costs from Defendants.

**FIFTH CAUSE OFACTION**
**Civil Rights Violation, 42 U.S.C. § 1983:**
**Conspiracy to Deprive Plaintiff of His Civil Rights**
**(Against Officers Patterson, Harris, Baugh, Draper City, the Draper City Police**
**Department, Connole, and John Does 1-10)**

253.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

254.   Defendants conspired for the purpose of directly depriving Plaintiff of his civil rights under the laws of the United States and of the State of Utah, which resulted in injury to both Plaintiff's person and property.

255.   Defendants conspired through an express and/or implied agreement or understanding among Defendants to deprive Plaintiff of his constitutional rights.

256.   As a result of said express and/or implied agreement or understanding, Plaintiff was indeed deprived of said rights.

257.   Upon information and belief, the City of Draper, the Draper City Police Department, Connole and the officers conspired to hide the acts of these police officers and/or negligently supervised the officers, thereby exhibiting deliberate indifference to the officers' malfeasance.

258.   Upon information and belief, these entities have allowed similar acts to occur without the requisite discipline.

259.   The actions of Draper City, the Draper City Police Department, and Connole alleged herein were intentional, willful, and deliberate.

260.    These defendants had the final decision-making authority to create the unconstitutional policy or practice.

261.    These defendants were the moving force behind the Constitutional violations.

262.    The officers' conduct clearly violated established constitutional rights which a reasonable person and/or officer at the scene would have known, and they violated Plaintiff's rights as protected by clearly established law.

263.    Plaintiff is therefore entitled to recover damages occasioned by such injury and/or deprivation, including attorney fees.

## SIXTH CAUSE OF ACTION
### Utah Constitution Article I, §§ 1, 7, 9  and 14 Violations
**(Against All Defendants)**

264.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

265.    Utah Constitution Article I, § 7 states: "No person shall be deprived of life, liberty, or property without due process of law." This provision mirrors part of the Fourteenth Amendment to the United States Constitution (". . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . .").

266.    Utah Constitution, Article I, § 14 states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized."

267.    Utah Constitution, Article I, § 9 states: "…[C]ruel and unusual punishments [shall not] be inflicted.  *Persons arrested or imprisoned shall not be treated with unnecessary rigor."* (Emphasis added.)

268.    Utah Constitution, Article I, § 1 states: "All men have the inherent and inalienable right to enjoy and defend their lives and liberties."

269.    Based upon the text, historical context, and other considerations, the protections and rights afforded by Article I, §§ 1, 7, 9, and 14 are broader than interests and rights afforded by the U.S Constitution.

270.    The notice provision of the Utah Governmental Immunity Act, as delineated in Utah Code Ann. § 63G-7-401(2), does not apply to a plaintiff's State constitutional claims because such claims are self-executing.

271.    A Utah State Constitutional provision is self-executing: "... if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if 'no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed . . . .'" *Spackman v. Box Elder School Dist.,* 2000 UT 87, 16 P.3d 533, 535.

272.    No notice of claim is required for a self-executing Utah constitutional claim. "[W]hen a plaintiff brings suit under a 'self-executing' Utah constitutional clause, no notice of claim is required." *Tiscareno v. Frasier,* 2009 WL 4730785 (D. Utah 2009) (citing *see, e.g., Heughs Land, L.L.C. v. Holladay Ciry,* 113 P.3d 1024, 1027 (Utah Ct. App.2005)).

273.    The Utah Governmental Immunity Act does not apply to claims alleging state constitutional violations. *See Jensen v. Cunningham.* 2011 UT 17, 250 P.3d 465, ¶ 51.

274.    In order to assert State Constitutional claim, a plaintiff must prove that the constitutional violation was "flagrant," that existing remedies do not redress the injuries, and that equitable relief is wholly inadequate to protect the plaintiff's rights.

275.    Plaintiff suffered flagrant violations of his constitutional rights by being stopped, detained and restrained by Officers Harris and Patterson, assaulted by Officer Patterson, and denied immediate medical attention by Officers Harris, Patterson, and Baugh as described herein.

276.    The actions of Draper City, the Draper City Police Department, and Connole, as described herein, were intentional, willful, and deliberate.

277.    Draper City, the Draper City Police Department, and Connole had the final decision-making authority to create the unconstitutional policy or practice.

278.    Draper City, the Draper City Police Department, and Connole were the moving force behind the Constitutional violations.

279.    Existing remedies do not redress the violations of the rights of Plaintiff, primarily since the violations have already occurred, and the damage to Plaintiff's rights has already accrued.

280.    Equitable relief would be and is wholly inadequate to redress the injuries and damages sustained by Plaintiff, primarily since the violations have already occurred, and the damage to Plaintiffs' rights has occurred.

281.    Injunctive relief cannot redress Plaintiff's injuries.

282.    The only remedy for these violations of the Utah Constitution is under the common law, and because of the repugnance of the Defendants' conduct and the strong interests of the State of Utah in discouraging future conduct, no special factors are necessary to be determined by this Court in fashioning an appropriate remedy for the violations of Plaintiff's State constitutional rights in this case.

283.    Officers Harris, Patterson and Baugh exhibited a shocking degree of disregard to the rights of citizens of Utah and of Plaintiff to be free from unlawful and unreasonable searches and seizures, excessive force, and failure to provide immediate medical care.

284.    As a direct and proximate result of the Officers' deliberate and violative actions, Plaintiff suffered significant physical injury, severe embarrassment, humiliation, mortification, fear of being again subjected to an unlawful search and seizure, excessive force (being thrown to the concrete while handcuffed) and the denial of immediate medical care at the hands of law enforcement officials.

285.    Plaintiff is entitled to recover from and against Defendants, jointly and severally, all damages sustained by Plaintiff as a proximate and direct result of Defendants' constitutional violations.

286.    Plaintiff seeks compensatory damages and attorney fees allowed by law for these constitutional violations in an amount to be determined at trial.

287.    Plaintiff also seeks punitive damages against the individual defendants as may be allowed by law.

## SEVENTH CAUSE OF ACTION
### Assault and Battery
### (Against Officer Patterson)

288.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

289.    Without probable cause, reasonable suspicion, or legal justification and authority, Defendant Officer Patterson stopped, detained, restrained then assaulted Plaintiff, using excessive force and causing great injury to Plaintiff by throwing Plaintiff down on to the concrete, while Plaintiff was handcuffed, causing Plaintiff's head to hit the concrete curb.

290.   Plaintiff suffered the injuries described herein as the result of Officer Patterson's acts described herein.

291.   These acts were committed with unlawful force and violence, were done with malice and a wanton disregard for Plaintiff's rights, and said acts proximately caused bodily injury to Plaintiff as set forth more fully herein.

292.   Officer Patterson was acting within the course and scope of his employment as a police officer for Defendants, Draper City, the Draper City Police Department and Connole.

293.   Officer Patterson knew that his actions were wrongful for which immunity was waived under Utah Code Ann.§ 63G-7-202(3)(c)(i).

294.   As a result of such malice and wanton disregard, Plaintiff is entitled to an award of punitive damages against Defendant.

**EIGHTH CAUSE OF ACTION**
**<u>Intentional Infliction of Emotional Distress</u>**
**(Against Officers Patterson, Harris, Baugh and John Does 1-10)**

295.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

296.   The actions and conduct of Defendants, Officers Harris, Patterson, and Baugh, as set forth more fully herein, including stopping, detaining, throwing Plaintiff to the ground while Plaintiff was handcuffed, causing Plaintiff's head to hit the curb, using excessive force, then failing to seek immediate medical treatment, constitute extreme and outrageous conduct under the circumstances. Said action was intentional and malicious.

297.   These actions as set forth herein of Officers Patterson, Harris, and Baugh offended generally accepted standards of decency and morality.

298.   Any reasonable person would have known that the intentional and/or reckless actions of these officers would result in severe emotion distress to Plaintiff.

299.   As a direct and proximate result of such conduct, Plaintiff was injured and suffered, and continues to suffer from, severe mental and emotional distress, as intended, or reasonably foreseen by Defendants.

300.   Plaintiff is entitled to damages for such mental and emotional distress as a result of such conduct in an amount to be determined at trial.

301.   The conduct of Defendants, as set forth above, was extreme and outrageous as well as intentional and malicious. The Defendants' conduct, at a minimum, demonstrates a wanton disregard for the rights and feelings of the Plaintiff, entitling the Plaintiff to an award of punitive damages against the Defendants in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**<u>Fraud</u>**
**(Against Officer Patterson)**

302.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

303.   At the preliminary hearing, Officer Patterson testified that he threw Plaintiff to the ground because Plaintiff "head butted" him, unlocked his belt clip, and placed his hand on Patterson's gun.

304.   As described above, according to witness Ms. Torrence, who testified at the preliminary hearing, and did not know any of the actors involved, the officers administered field sobriety tests to Plaintiff.  They handcuffed Plaintiff and took him to the back of one of their trucks. Plaintiff turned to look towards Ms. Torrence's direction.

305.   Ms. Torrence testified she saw Plaintiff say something to Officer Patterson. Immediately afterward, Officer Patterson whipped Plaintiff around and threw him to the ground by his handcuffs causing his head to hit the pavement and bounce off of it.

306.    According to Ms. Torrence, this attack was not physically provoked. Plaintiff never made any movements at all, including toward Officer Patterson's belt, gun clip, and/or gun, despite Officer Patterson's claims to the contrary. She was "absolutely positive" of this fact and "guarantee[d]" under oath at the hearing that it did not happen.

307.    Ms. Torrence testified at the preliminary hearing that she was also "absolutely positive" that Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

308.    Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.

309.    Ms. Torrence characterized Officer Patterson as seeming angry when he "whipped" Plaintiff onto the street's gutter.

310.    Ms. Torrence's testimony at the preliminary hearing corresponded with the statement she made to police investigators at the scene.

311.    Officer Patterson intentionally and knowingly gave, upon lawful oath at the preliminary hearing, false testimony material to the issue and matter of inquiry.

312.    As a result, Plaintiff suffered injuries and damages, as described herein, and is entitled to an award of punitive damages.

313.    **COMPLIANCE WITH THE GOVERNMENT IMMUNITY ACT OF UTAH**

To the extent required, Plaintiff has complied and/or will comply with the applicable provisions of the Government Immunity Act of Utah, Utah Code Ann.§ 63G-7-101 et seq

314.    **UNDERTAKING**

Plaintiff has currently filed an undertaking as required by Utah Code Ann.§ 63G-7-601 in the amount of $300.00

36

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment in favor of Plaintiff and against Defendants, jointly and severally, where applicable, as follows:

I.     That this pleading be deemed to conform to the proof presented at the time of trial;

II.    That Plaintiff be permitted a trial by jury;

III.   For general compensatory damages in an amount to be determined at trial;

IV.    For special damages as are shown at trial;

V.     For punitive damages against named individuals for willful, malicious conduct, where appropriate and as may be allowed by law;

VI.    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

VII.   For Plaintiff's reasonable attorney's fees costs incurred herein, pursuant to 42 U.S.C. §§ 1983 and 1988;

VIII.  For Plaintiff's reasonable attorney's fees and costs incurred herein, pursuant to any other provision of State law as may be applicable, including the Court's inherent power to award attorney fees for wrongful conduct;

IX.    For such other damages as are stated or implied in this Complaint; and

X.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action for which a jury is permitted.

Dated this 15th day of January, 2015.

*/s/Lisa A. Marcy*_____
LISA A. MARCY
*AARON & GIANNA, PLC*
2150 South 1300 East, Ste. 500
Salt Lake City, UT  84106
Telephone:  (801) 359-2501
Facsimile:  (801) 990-4601
lmarcy@aarongianna.com


*/s/ John K. Johnson*_____
JOHN K. JOHNSON
*JOHN K. JOHNSON, LLC*
10 West 300 South, Suite 800
Salt Lake City, Utah 84101
Telephone: (801) 915-2616
Facsimile:  (801) 359-1088

*Attorneys for Joshua Chatwin*


Plaintiff's Address:

c/o Aaron & Gianna, PLC

38