AARON & GIANNA, PLC
LISA A. MARCY (#5311)
2150 South 1300 East, Ste. 500
Salt Lake City, Utah 84106
Telephone: (801) 359-2501
Facsimile: (801) 990-4601
lmarcy@aarongianna.com

JOHN K. JOHNSON, LLC
JOHN K. JOHNSON (#3815)
10 West 300 South Ste. 800
Salt Lake City, Utah 84101
Telephone: (801) 915-2616
Facsimile: (801) 359-1088
Jkjohnson1080@hotmail.com

*Attorneys for Joshua Chatwin*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>        Plaintiff,<br><br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>        Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Case No.: 2:14-cv-00375<br><br>Judge: Dale A. Kimball |

I.   <u>**Plaintiff's Amended Complaint Meets the Pleading Standards of *Twombly/Iqbal***</u>

The crux of Defendants' Motion for Judgment on the Pleading is that Plaintiff's Amended Complaint fails to plead certain elements ("no elements") or fails to plead the facts necessary to support the elements pled ("no facts"). This Court should reject Defendants' assertions and Defendants' Motion should be dismissed because Plaintiff's Amended Complaint fairly notifies Defendants as to each of the asserted causes of action in accordance with the U.S. Supreme Court's *Twombly/Iqbal* pleading standard. Defendants contend that a number of Plaintiff's causes of action are deficiently pled. Each of these purported deficiencies is addressed individually below. In an abundance of caution, however, Plaintiff has asked opposing counsel for a stipulation, allowing him to file a Motion to Amend his Complaint, along with his Second Amended Complaint which does not add additional facts or add causes of action.  Instead, it addresses Defendants' concerns about lack of clarity and uses the exact verbiage of Tenth Circuit case law as it relates to the use of excess force and failure to provide medical attention.  Notwithstanding the propriety of the pleading of Plaintiff's causes of actions, Plaintiff has stipulated to the dismissal without prejudice of Counts III (Against Police Chief Connole in his Individual Capacity),  IV (only against the individual officers), V (Conspiracy), and VI (Utah Constitution). Before addressing each allegation made by Defendants, it is imperative to set out the chronology preceding Defendants' Motion and the purpose of the pleading requirements of *Twombly/Iqbal.*

A.  **RELEVANT CHRONOLOGY**

Plaintiff filed his Original Complaint on May, 16, 2014.[1] Thereafter, counsel for Defendants sent a letter to counsel for Plaintiff promising a forthcoming Motion for Judgment on the Pleadings if Plaintiff did not amend his Complaint to rectify the deficiencies claimed by

---

[1] R. Doc. 1, Plaintiff's Complaint.

Defendants to exist.  In response to said letter, Plaintiff moved for leave to amend his Complaint on January 15, 2015.[2] The Court granted Plaintiff's motion on February 3, 2015.[3] Plaintiff filed his Amended Complaint on March 6, 2015.[4] Defendants did not lodge any objection (formally or informally) to the form and/or substance of the Amended Complaint when Plaintiff's moved for leave to amend,[5] when leave to amend was granted, or in the months that followed.

In the meantime, Plaintiff and Defendants exchanged Rule 26 disclosures on January 15, 2015.[6] Defendants neglected to produce any documents besides those *already* in Plaintiff's possession.[7] Specifically, Defendants failed to produce any Draper City Police Department ("DCPD") policy or procedure manuals; the disciplinary files of Officers Patterson, Harris, and Baugh; or any internal investigatory documentation prepared following Plaintiff's arrest. Defendants' lack of cooperation (their failure to produce relevant documentation) in this regard is significant, as more fully described in subsection B below.

The deadline to amend pleadings passed on January 15, 2015.[8] It was not until July 7, 2015, over six (6) months after the deadline to amend, that Defendants formally expressed their objection to Plaintiff's Amended Complaint through the filing of the instant Motion.[9] For the purposes of this discussion, Defendants' Motion contends many of Plaintiff's causes of action lack the necessary specificity to meet the pleading standard of *Twombly/Iqbal*. Defendants' arguments evidence a misunderstanding of the purpose and requirements of *Twombly/Iqbal* and must fail as

---

[2] R. Doc. 9, Plaintiff's Motion for Leave to Amend/Correct.
[3] R. Doc. 11, Docket Text Order granting Motion to Amend/Correct.
[4] R. Doc. 9-1, Plaintiff's Amended Complaint.
[5] R. Doc. 10, Notice of Non-Opposition.
[6] The deadline for Rule 26 disclosures was January 15, 2015. R. Doc. 8, Scheduling Order, § 1(c).
[7] Defendants produced the police report from the arrest underlying this lawsuit, as well as the preliminary hearing transcript . Plaintiff already possessed all of this information from his criminal proceeding. *See* Exhibit 1, Letter from Lisa A. Marcy to R. Blake Hamilton, Aug. 7, 2015.
[8] R. Doc. 8, Scheduling Order, § 3.
[9] R. Doc. 17, Defendants' Rule 12(c) Motion for Judgment on the Pleadings.

a result. Moreover, Defendants' position as the **only** party with access to the documents that would allow for more precise pleading, coupled with their lack of cooperation in producing said documents when requested and due under Rule 26, should lead this Court to deny Defendants' Motion here as it did in *Western Ins. Co. v. Rottman* where the circumstances were similar.

**B. THIS COURT'S DECISION IN *WESTERN INS. CO. V. ROTTMAN* SHOULD GUIDE THE RESULT HERE**

On February 25, 2014, in *Western Ins. Co. v. Rottman*, 2014 U.S. Dist. LEXIS 29184, *1 (D. Utah 2014), this Court denied the defendants' motion to dismiss in consideration of circumstances similar to those presently before this Court. In *Rottman,* the plaintiff was the appointed liquidator of the named insurance company in its insolvency proceeding and the defendants were former "insiders, officers, and/or directors" of the insurance company. *Id.* at *2. The defendants filed a motion to dismiss all of the plaintiff's thirteen causes of action in its complaint alleging they were "based upon conclusory, unsupported facts that do not satisfy Plaintiff's pleading obligations under *Iqbal* and *Twombly*, and/or that the claims simply do not state a claim for relief against the Defendants." *Id.* at *3. The plaintiff argued:

> that given the nature and extent of the Defendants' influence, their exclusive custody and control of certain business and accounting records, and their very positions and titles, they cannot plausibly suggest that the Complaint fails to provide notice of the claims against them. Plaintiff argues that Defendants have overstated the requirements of *Iqbal* and *Twombly* and that Defendants have provided no support for their arguments that the claims have not been sufficiently plead. Plaintiff also seeks leave to amend if the court finds that any claim is not adequately plead.

*Id.* (footnote omitted). Of the thirteen causes of action claimed to be insufficiently pled, this Court dismissed three claims with prejudice for failure to state a claim (plaintiff conceded the three claims should be dismissed at oral argument), and one without prejudice (plaintiff was granted leave to file an amended complaint within thirty days of the date of the Court's order). *Id.* at *5-7. Only one of the ten causes of action in dispute was determined by this Court to be insufficiently pled under the

4

*Twombly/Iqbal* standard; that cause of action alleged fraud, which required more specific pleading. *Id.* at *5-6.

Most importantly, for the purposes of the instant Motion, when it rejected the defendants' attempts to have all of the plaintiff's claims dismissed for failure to state a claim, the Court in *Rottman* considered: (a) the manner in which the plaintiff had already pled its causes of action; and (b) the lack of cooperation by the defendants in providing access to various documents (that presumably would allow for further specificity in pleading). Specifically, this Court stated:

> Moreover, given the circumstances surrounding this case, **it would be premature to dismiss Plaintiff's claims given the alleged lack of cooperation from Defendants** and the fundamental disagreements between the parties as to the existence of and Plaintiff's access to various documents. **This is not a case in which Plaintiff has made mere conclusory allegations in an effort to embark on a fishing expedition to discover unknown wrongs.**

*Id.* at *5 (emphasis added). Further, besides denying the defendant's motion to dismiss in large part, the Court granted the plaintiff leave to amend its complaint regarding the one cause of action dismissed without prejudice, *id.* at *6, and it "direct[ed] counsel, if they have not already done so, to meet and confer about existence of various records and Plaintiff's access to such records." *Id.* a *7. Such a result here is warranted and would affect the interests of justice.

The facts here are analogous to those considered determinative in *Rottman*. Specifically, Plaintiff here has not "**made mere conclusory allegations in an effort to embark on a fishing expedition to discover unknown wrongs,**" *id.* at *5. Rather, Plaintiff has set forth the who, what, where, when, why and how as to each of its causes of action.[10] The only *further* specificity missing as to any of Plaintiff's causes of action are: (i) precise citation to DCPD policy provisions; (ii) the precise chain of command under which the DCPD Officers operate, (iii) and disciplinary records

---

[10] *See, e.g.,* Plaintiff's Amended Complaint, ¶¶ 42-44, 54-59, 141, 146-48 (Count I – Excessive Force); 71-76, 163 (Count II – Failure to Seek Medical Treatment).

of any officers (which would have included any possible use of force allegations, including those directed at Officer Patterson, as well as his violation of any ethics code for false testimony under oath). Although Plaintiff's Amended Complaint is sufficient without further specificity under *Twombly/Iqbal,* as discussed in the following subsection, had Defendants produced the documents required under Rule 26 when they were due, Plaintiff could have further amended his Complaint at that time to include the information Defendants now claim is absent. Plaintiff has not levied any allegations solely to undertake a fishing expedition. Every allegation is grounded in fact based upon the actions or inactions by Draper City and the DCPD Officers and supported by law.

Further, it is Plaintiff's position that Defendants' lack of cooperation in producing relevant and discoverable documents in accordance with Rule 26 contributed to Defendants' complaints of any alleged deficient pleading. This Court should follow its earlier proclamation from *Rottman* and find here that "it would be premature to dismiss Plaintiff's claims given the lack of cooperation from Defendants and the fundamental disagreements between the parties as to the existence of and Plaintiff's access to various documents." *Id.* at *5. Had Defendants disclosed the relevant documents they possess, as is their duty under Rule 26, <u>when the disclosures were due</u>, which was before the pleading deadline, then Plaintiff could have included much of the information Defendants allege Plaintiff's Amended Complaint lacks at that time. This notwithstanding, Plaintiff's thirty-eight (38) page, three-hundred and fourteen (314) plus paragraph Amended Complaint *still* contains sufficient information to put Defendants **fairly on notice** of Plaintiff's causes of action as is more fully described below.

C. **DEFENDANTS MISCONSTRUE AND OVERSTATE THE *TWOMBLY/IQBAL* STANDARD**

Defendants' Motion ignores the <u>purpose</u> of the *Twombly/Iqbal* standard and hinges upon technical pleading imperfections to support dismissal of Plaintiff's claims. Applying the

*Twombly/Iqbal* standard to the ends would subvert the interests of justice and greatly misconstrue and overstate the pleading requirements recognized by the Tenth Circuit and U.S. Supreme Court. The Supreme Court clarified the pleading requirement of Federal Rule of Civil Procedure 8(a)(2) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

In *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012), the Tenth Circuit set forth and analyzed the pleading requirements to survive dismissal post-*Twombly/Iqbal*:

> to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id.*

*Id.* at 1190. The *Khalik* Tenth Circuit court continued:

> We noted in *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010), that "the plausibility standard has been criticized by some as placing an improper burden on plaintiffs," where **a chief criticism "is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence**."

> We recently stated this new standard is a "refined standard." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In applying this new, refined standard, we have held that plausibility refers "to the scope of the allegations in a complaint: **if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"** *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Further, we have noted that "[**t]he nature and specificity of the allegations required to state a plausible claim will vary based on context**." *Kansas Penn*, 656 F.3d at 1215; *see also Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, we have concluded the *Twombly/Iqbal* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which

7

the Court stated will not do." *Robbins*, 519 F.3d at 1247 (internal quotation marks and citations omitted).

In other words, Rule 8(a)(2) still lives. **There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements**. *See Iqbal*, 129 S. Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . ."). And in fact, the Supreme Court stated in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), a pre-*Twombly* case, that "[a] requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Id.* at 515 (internal quotation marks omitted). Thus, as the Court held in *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), which it decided a few weeks after *Twombly*, under Rule 8, "[s]**pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'**" *Id.* at 93 (quoting *Twombly*, 550 U.S. at 555 (alteration in original)); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. *See Swierkiewicz*, 534 U.S. at 515; *see also Twombly*, 550 U.S. at 570.

*Id.* at 1191-92 (emphasis added).

Based upon the above interpretation of the *Twombly/Iqbal* pleading standard, as interpreted by this Circuit, the allegations of Plaintiff's Amended Complaint are sufficient to give Defendants "**fair notice** of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 1192 (quoting *Erickson*, 551 U.S. at 93) (emphasis added). Each of Plaintiff's claims sets forth what the claim is and provides the factual basis for the claim. Defendants cannot reasonably argue to this Court that they are unaware what Plaintiff is alleging and why. Moreover, Plaintiff is not alleging a "wide swath of conduct" that is "so general." *Id.* at 1192 (quoting *Robbins,* 519 F.3d at 1247). Plaintiff's claims seek recourse only for the police brutality and excessive force practiced by the DCPD Officers, which was allowed to occur because of the significant failings in the training and supervision of these Officers beginning from the top (with Draper City and the DCPD) down to

8

DCPD Chief Connole and eventually to the individual DCPD Patterson, Harris, and Baugh. Finally, this Court cannot discount the reality that Plaintiff will be able to more fully satisfy the plausibility requirement of *Twombly/Iqbal* with more information and that here, "there is asymmetry of information, with the defendants having all the evidence." *Id.* at 1191 (quoting *Gee v. Pacheco*, 627 F.3d at 1185). Again, had Defendants produced the documents requested pursuant to Rule 26, this matter might not be before the Court today.

1. When making this dismissal determination, this Court "must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). While Defendants contend each cause of action is deficiently pled because it either only recites the claim's elements, fails to set forth all necessary elements to establish the claim, or fails to adequately plead facts to support the claim's necessary elements, reviewing Plaintiff's allegations in the light most favorable to the Plaintiff, this Court should conclude that the allegations for each cause of action are sufficient to put Defendants on fair notice of what each claim is and the grounds upon which it rests. For this reason alone, Defendants' Motion should be dismissed. Defendants' objections as to each of Plaintiff's causes of action is addressed specifically below.

**II.**   **Plaintiff's Second Cause of Action against Officer Harris Is Adequately Pled**

In their Motion, Defendants contend that Plaintiff's Second Cause of action is inadequately pled. Defendants make two allegations in this context: that (a) Plaintiff failed to establish an unlawful seizure claim; and, (b) that Plaintiff's allegation of Officer Harris' failure to seek immediate medical attention was entirely based on conclusory statements.

### A.  PLAINTIFF ADEQUATELY PLED UNLAWFUL SEIZURE

Defendants misunderstood Plaintiff's unlawful seizure claim. Plaintiff is not claiming that Officer Harris had no probable cause to believe that Plaintiff committed a crime. Plaintiff alleged facts establishing that Officer Harris violated the Fourth' Amendment's prohibition against unreasonable seizures.  "Any force used 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures…. [T]he Fourth Amendment… governs excessive force claims arising from 'treatment of [an] arrestee detained *without a warrant" and "prior to* any probable cause hearing."  *Estate of Booker v. Gomez,* 745 F.3d 405, 419 (10th Cir. 2014). (Emphasis in original.) (citations omitted).  The Court confirmed that when excessive force occurs before a probable cause determination, it constitutes a "continuing seizure" under the Fourth Amendment.  *Id.* at 420.

Defendants also incorrectly assert that Plaintiff provided only conclusory statements and no specific factual allegations. In particular, the following facts contained in the "Factual Allegations" section of the Amended Complaint, when taken together, establish that Officer Harris violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures: paragraphs 20-21, 31-38, 68-86, 123-28.[11]

### B.  PLAINTIFF ADEQUATELY PLED FAILURE TO SEEK MEDICAL TREATMENT

Defendant is correct that a claim for failure to seek immediate medical treatment requires an objective and subjective component. *Id.* at 429.  Plaintiff may not have used these specific words; however, Plaintiff did plead objective and subjective facts to support his claim. For instance, contained in Plaintiff's "Factual Allegations" section of the Amended Complaint, Plaintiff stated:

---

[11] Because there are numerous paragraphs, Plaintiff only makes reference to them for the sake of adhering to his page limitations established by the Local Rules.

71.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh did not check on Plaintiff's condition.

72.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs.

73.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh leaned Plaintiff against one of their trucks.

74.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, even though his injuries had rendered him immobile.

75.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, *even though blood had begun emanating from Plaintiff's head.*

76.   After Officer Patterson threw Plaintiff to the ground handcuffed, Officers Patterson, Harris and Baugh kept Plaintiff in handcuffs, *even though Plaintiff's face and head had become discolored.*

\* \* \*

86.   Plaintiff lost consciousness at the scene of the injury.[12]

Moreover, a layperson *did* "easily recognize the necessity for a doctor's attention." *Id.* at 430:

82.   Mr. Scott's written statement provides that when he saw Plaintiff handcuffed, Plaintiff appeared to be unconscious. *Ex. D.*[13]

Plaintiff also alleged facts to satisfy the subjective component requiring deliberate indifference to his serious medical needs because the officers failed to act despite their knowledge of a substantial risk of serious harm.  In paragraphs 77-80, Plaintiff asserted the following:

77.   A second witness, Mr. Jason Scott, observe the events that occurred immediately after Officer Patterson threw Plaintiff to the ground handcuffed.

---

[12] Plaintiff's Amended Complaint, ¶¶ 71-76, 86 (emphasis added).
[13] Plaintiff's Amended Complaint, ¶ 82.

11

78.   Mr. Scott witnessed Officers Peterson, Harris and Baugh's refusal to assist Plaintiff after Officer Patterson threw Plaintiff to the ground, handcuffed.

79.   Mr. Scott gave a written statement, to Draper Police at the scene of Plaintiff's arrest, attached hereto as Exhibit "D."

80.   Mr. Scott's written statement provides that he saw the Draper Police Officers at the scene of the arrest, laughing. *Ex. D.*[14]

As for Defendants' assertions that Plaintiff's allegations of unlawful seizure should be dismissed because Plaintiff failed to allege any facts to show that Officer Harris had knowledge of a substantial risk of serious harm, no case law exists establishing that a plaintiff must use that exact phrase. Plaintiff alleged that Officer Harris acted with malice. "Malice" is defined as: "[i]n its legal sense, malice… signifies a wrongful act done intentionally, without just cause or excuse." *www.thelawdictionary/org/malice/.* In other words, if an officer commits an act with malice, he thereby **intentionally** commits that wrongful act. Moreover, where the law concerning certain behavior is clear, an officer who engages in that behavior cannot plead ignorance of the law after the fact. For example, a police officer who throws a handcuffed individual onto the pavement would have to know of the risk of injury this wrongful, malicious behavior would create because the law on this issue is clearly established. *See, e.g, Morris v. Noe,* 672 F.3d 1185, 1196-97 (10th Cir. 2012) (pre-handcuff throw down could constitute excessive force); *Thomas v. Adrahtas,* 530 Fed. Appx. 830 (10th Cir. 2013) (summary judgment on qualified immunity denied where handcuffed Plaintiff was stepped on, kicked and rendered unconscious); *Tweed v. Bertram,* 2003 U.S. Dist. LEXIS 28262 (D. Utah 2003) (summary judgment precluded where court found: "it is abundantly clear that Sergeant Bertram lost any and all justification for using force once Mr. Tweed was restrained in handcuffs on his stomach on the ground.").

### III.   Plaintiff's *Monell* Claim is Adequately Pled as to Draper City

---

[14] Plaintiff's Amended Complaint, ¶¶ 77-80.

In their Motion, Defendants contend Plaintiff's Fourth Cause of Action is inadequately pled. Defendants make two allegations in this context: that (a) the necessary elements of a *Monell* claim against Draper City have not been pled; and (b) a *Monell* claim cannot be pled against the individual Officers. Each allegation is addressed below.

### A.  *Monell* Claim against Draper City Adequately Pled

Defendants allege what they perceive to be Plaintiff's *Monell* claim (they are correct – it is a *Monell* claim for municipal liability against Draper City) does not meet the Rule 8 pleading requirements. Specifically, Defendants claim Plaintiff's *Monell* claim is inadequately pled because Plaintiff's Amended Complaint "merely restate[s] the element [sic] and do not provide well-pled facts identifying a policy, custom or practice to support these naked assertions."[15] To the contrary, Plaintiff's Amended Complaint asserts a *Monell* claim for municipal liability upon three bases (unreasonable seizure; use of excessive force; and failure to seek/administer immediate medical treatment) and sets forth the elements of that claim along with the factual support for these elements.

Under the U.S. Supreme Court case of *Monell v. Department of Social Services,* 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978):

> When an officer deprives a citizen of a constitutional right, however, municipal governments may incur liability under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Monell,* 436 U.S. at 690).

> "[I]t is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 385, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) (internal citation omitted). In the absence of an explicit policy or an entrenched custom, "**the inadequacy of police training may serve as a basis of § 1983 liability . . . where**

---

[15] R. Doc. 17, Defendants' Rule 12(c) Motion for Judgment on the Pleadings, p. 8.

> **the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact**." *Id.*

*Id.* (emphasis added). In fact, the Tenth Circuit has recognized the deliberate indifference prong of this analysis:

> may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). Although a single incident generally will not give rise to liability, *Okla. City v. Tuttle*, 471 U.S. 808, 823, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985), "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney*, 143 F.3d at 1307 (internal citations omitted). The official position must operate as the "moving force" behind the violation, and the plaintiff must demonstrate a "direct causal link" between the action and the right violation. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 399, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997). **That is, "would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"** *City of Canton*, 489 U.S. at 391. **With regard to any attempted showing of "deliberate indifference" by a municipality, the existence of "material issues of material fact precludes summary judgment."** *Cruz v. City of Laramie*, 239 F.3d 1183, 1191 (10th Cir. 2001).

*Id.* (emphasis added).

Further, it is critical to remember the purpose of § 1983 the purpose of § 1983 is "to provide a federal forum for litigants who ha[ve] been deprived of their constitutional rights." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 76 (1989) (Brennan, J., dissenting). Likewise, the Supreme Court has recognized that the availability of adequate damages remedies are vitally important to protect citizens' "cherished constitutional guarantees, and the importance of assuring [their] efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." *Owen v. City of Independence*, 445 U.S. 622, 651 (1980).

14

Considering the purpose of *Twombly/Iqbal* and the purpose of *Monell* and § 1983 claims, as explained in the preceding Section, Plaintiff's Amended Complaint provides enough facts (save for identifying the specific policies by number) to put Defendants on fair notice as to what alleged failures occurred, which led to Plaintiff's harm and thereby triggered  the municipality's liability.

In the Factual Allegations section of the Amended Complaint, Plaintiff sets forth generally (as it concerns all three bases for municipal liability) that the "City of Draper, the Draper City Police Department, and Police Chief Connole negligently supervised Officers Patterson, Baugh and Harris, thereby exhibiting deliberate indifference to the malfeasance of Officers Patterson, Baugh and Harris[,]"[16] and that "**[u]pon information and belief, the Defendants have allowed similar acts to occur without the requisite discipline.**"[17] Thereafter, the section setting forth the *Monell* claim begins by incorporating these paragraphs (and all others) by reference.[18] While it would have been clearer to include these specific (and other) factual allegations again under Count Four, rather than incorporating them by reference, this should not lead to dismissal with prejudice of this cause of action. For example, recently, the Wisconsin Eastern District Court, in a slew of opinions issued on the same day, reached this same conclusion:

> To be sure, the plaintiff's complaint is not a model of clarity in relation to his *Monell* claim: some of its assertions are vague and border on the sort of conclusory statements that the Court can disregard (*e.g.*, Compl. ¶¶ 55-58); **meanwhile, many of the concrete factual allegations are listed early in the complaint and merely incorporated by reference into each section** (Compl. ¶¶ 10-22; 32-39), **when it would have been beneficial to draw specific connections between the alleged facts and the alleged policies of the City.** But the Court is not the plaintiff's scrivener. Rather, at this stage of the proceedings, its job is to take the alleged factual content as true, draw reasonable inferences in the plaintiff's favor, and then determine whether, with that information, the plaintiff has stated a plausible claim for relief. *E.g., Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892); *Iqbal*, 556 U.S. at 678.

---

[16] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶ 132.
[17] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶ 133 (emphasis added).
[18] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶ 205.

> Doing so, and for the reasons more fully discussed above, the Court determines that the plaintiff has alleged facts that state a *Monell* claim against the City that is plausible on its face. **The evidence adduced during discovery may ultimately prove that this is not the case, but that is an inquiry for another day. At this stage of the proceedings, the Court is obliged to deny the defendants' motion for judgment on the pleadings on the plaintiff's *Monell* claim against the City**.

*Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 747 (E.D. Wis. 2014) (emphasis added).[19]

Admittedly, Plaintiff did not identify specific policies (by number) in his Amended Complaint. While Plaintiff will rectify this with his Second Amended Complaint, this omission should not be fatal to Plaintiff's *Monell* claim as pled in the Amended Complaint. First, Plaintiff alleged that the supervisory Defendants, Draper City, DCPD, and Police Chief Connole, "possessed the final decision-making authority to create the unconstitutional policies or practices, which resulted in the deprivation of rights and damages suffered by Plaintiff," and "which resulted in the deprivation of rights suffered by Plaintiff."[20]

The Amended Complaint further alleged the supervisory Defendants had the "the duty to implement policies, procedures, practices and customs" to prevent unlawful seizures, the use of excessive force, and the failure to seek necessary and immediate medical care for individuals by DCPD Officers,[21] "had the duty to train and supervise their employees, the Draper City Police Officers, concerning the lawful seizure of an individual,"[22] and that the supervisory Defendants failed in this regard.[23]

Citing the Tenth Circuit's decision in *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013), Defendants claim Plaintiff has not adequately pled the

---

[19] *See also Freeman v. City of Milwaukee*, 994 F. Supp. 2d 957, 968 (E.D. Wis. 2014); *Venable v. City of Milwaukee*, 2014 U.S. Dist. LEXIS 5111, *24-25 (E.D. Wis. 2014); *Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 982-83 (E.D. Wis. 2014) (different internal paragraph citations in all).
[20] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 209-210.
[21] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 233-235.
[22] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶ 232.
[23] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 236-238.

causation element of the *Monell* claim (i.e., "closely related" and "moving force"). Defendants only reference Paragraphs 246 and 248 of Plaintiff's Amended Complaint, claiming those Paragraphs are insufficient. Defendants ignore Paragraphs 211 and 212 wherein Plaintiff alleges the supervisory Defendants "were the *moving forces* behind the constitutional violations suffered by Plaintiff," and that Officers Patterson, Harris, and Baugh "were acting under the direction and control" of the supervisory Defendants.[24] They also ignore the allegations contained in three other Paragraphs that the damages suffered by Plaintiff were "[a]s a direct and proximate result of" Defendants' conduct (actions or inactions).[25] Considering the above-quoted allegations, plus those actually cited by Defendants, that the supervisory Defendants – Draper City, DCPD, and Police Chief Connole – "engaged in the conduct described herein pursuant to and *as a result of* Draper City, the Draper City Police Department and Police Chief Connole's policies, practices, customs, and/or decisions" and "the actions of Draper City, the Draper City Police Department and Police Chief Connole as alleged herein were the *proximate cause* of the injuries and damages sustained by Plaintiff,"[26] it should be clear Plaintiff's Amended Complaint adequately alleges the causation element.

As for the deliberate indifference element, Plaintiff's Amended Complaint alleges that the supervisory Defendants "developed and maintained policies, practices and/or customs exhibiting *deliberate indifference* to the laws prohibiting deprivation of the constitutional rights of citizens," "unlawful seizures," "the use of excessive force," and "requiring the provision of necessary and immediate medical care."[27] The Amended Complaint further alleges "[t]he actions and/or omissions by Officers Patterson, Harris and Baugh, described herein, were procedures either

---

[24] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 211-212 (emphasis added).
[25] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 229, 231, 251.
[26] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 246, 248 (emphasis added).
[27] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶¶ 242-245 (emphasis added).

officially adopted, informally accepted or condoned by Draper City, the Draper City Police Department and Police Chief Connole."[28] Beyond this, and considering the dearth of information available in the public domain, it should be unsurprising to this Court that Plaintiff's Amended Complaint lacks further specificity. Defendants failed to produce information pursuant to Rule 26 as was their obligation under the law and now, they complain Plaintiff's Amended Complaint lacks this very same information. Considering Defendants have played hide-the-ball with the very information they complain Plaintiff's Amended Complaint lacks, this Court should reject Defendants' Motion, then order Defendants to produce said information and allow Plaintiff to amend his Complaint further, if necessary, to include the pertinent information.

Plaintiff's inartful (but not inadequate) pleading should not lead to outright dismissal at this juncture. **Defendants are clearly able to discern the existence of a** *Monell* **claim and if allowed, Plaintiff will provide further, clarified support for it.** At worst, if Defendants' Motion is granted as to this Count, Plaintiff should be permitted leave to amend (especially since Defendants first produced the policies on the evening of August 24, 2015, and now, more exact pleading is possible) to clarify and supplement this cause of action. This same result was permitted this year in *Williams v. FedEx Corp. Servs.*, where the District Court of Utah stated:

> This alone is insufficient to support Plaintiff's breach of fiduciary duty claim under the Rule 12(c) standards set forth above. Because Plaintiff has not sufficiently alleged the harm necessary to support simultaneous § 1132(a)(1)(B) and §1132(a)(3) claims, **the Court will grant Defendant's Motion, but without prejudice to allow Plaintiff to amend his Complaint** to allege such an injury.

*Williams v. FedEx Corp. Servs.*, 2015 U.S. Dist. LEXIS 6919, *14 (D. Utah 2015) (emphasis added). Permitting Plaintiff to amend is a clearly recognized practice by the District Court of Utah. *See Catlin v. Salt Lake City Sch. Dist.,* 2009 U.S. Dist. LEXIS 131373, *13 (D. Utah 2009). It is

---

[28] R. Doc. 9-1, Plaintiff's Amended Complaint, ¶ 241.

also a practiced that has been utilized, albeit by a District Court from another Circuit, for a *Monell*

claim. *See, e.g., Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1208-09 (E.D. Cal. 2009).[29]

Allowing Plaintiff to amend now would be in the interests of justice, and also, would not

be futile.[30]

> Plaintiff's request for leave to amend her complaint is governed by rule 15(a)(2) of
> the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(a)(2). Under that rule,
> "[t]he court should freely give leave" to amend pleadings "when justice so
> requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.
> 2d 222 (1962). However, even under this liberal standard, "the district court may
> deny leave to amend where amendment would be futile. A proposed amendment is
> futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-
> Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citation omitted).

*Catlin v. Salt Lake City Sch. Dist.,* 2009 U.S. Dist. LEXIS 131373, *13 (D. Utah Sept. 9, 2009).

Plaintiff has presented additional facts supporting all necessary elements for a *Monell* claim

against Draper City in the form of a Second Amended Complaint, which will be filed before the

hearing on the Defendants' Motion.[31] Of course, if this Second Amended Complaint is deemed

insufficient by Defendants, then Defendants can, and surely will, file another motion to dismiss.

However, at this time, Plaintiff's claims do not warrant dismissal with prejudice.

---

[29] In *Creighton,* because the plaintiff's allegations were nonexistent or unclear, the court granted the motion for partial judgment on the pleadings, but granted leave to amend.

[30] *Cf. Catlin v. Salt Lake City Sch. Dist.,* 2009 U.S. Dist. LEXIS 131373, *13-14 (D. Utah Sept. 9, 2009). ("While Plaintiff has provided additional factual allegations in her memorandum in opposition to the USEA Defendants' motion, those additional allegations do not have any effect on the court's overall conclusion with respect to the USEA Defendants' motion for judgment on the pleadings. Therefore, even if the court were to allow Plaintiff to amend her complaint to include those additional allegations, it would still be subject to dismissal and, consequently, providing Plaintiff with leave to amend would be futile. *See [Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citation omitted)]. Accordingly, Plaintiff's request for leave to amend her complaint should be denied.").

[31] *Cf. Rivas v. Us Bank, N.A.*, 486 Fed. Appx. 752, 753 (10th Cir. 2012) ("After hearing oral argument on the matter, the district court granted Defendant's motion for judgment on the pleadings and dismissed Plaintiff's claims with prejudice. The court denied Plaintiff's motion for leave to amend because she failed to attach a proposed amended complaint and because 'the proposed amendment as described in Plaintiff's brief and in Plaintiff's oral argument would be futile because the material terms of the purported contract that Plaintiff claims was breached remain open and Plaintiff's 'robo-signing' allegations are too vague.'").

In sum, while Plaintiff's Amended Complaint adequately pleads the necessary elements and facts to support a *Monell* claim, considering Defendants' objections and the admitted improvements to clarity that Plaintiff's amendment will affect, granting Plaintiff leave to amend here would be in the interests of justice and more appropriate than dismissal.

B.   **PLAINTIFF AGREES *MONELL* CLAIM CANNOT BE PLED AGAINST OFFICERS IN THEIR INDIVIDUAL CAPACITIES**

Plaintiff and Defendants are in agreement that the *Monell* claims against the Officers in their individual capacities should not proceed here because *Monell* claims cannot be asserted against individuals, *see Christiansen v. W. Valley City*, 2015 U.S. Dist. LEXIS 81150, *5-6 (D. Utah 2015). Plaintiff also agrees that any *Monell*-like claims in the Fourth Count that may be duplicative of other claims asserted against each Officer individually in Counts One through Three of the Amended Complaint, should also be removed. If permitted by this Court, Plaintiff intends to remove these claims from its Second Amended Complaint and re-position or separate out any allegations more properly brought against the individual Officers elsewhere in the Complaint.

IV.   **Plaintiff's Tort Claims are not Barred by the Governmental Immunity Act**

Defendants argue that the Plaintiff's state law tort claims against should be dismissed under the Utah Governmental Immunity Act ("The Act"). In his Amended Complaint, Plaintiff alleged three tort claims:  assault/battery, intentional infliction of emotional distress, and fraud.

Defendants are correct:  the Act provides an exception to immunity where it is shown that "the employee acted or failed to act through fraud or willful misconduct." Utah Code Ann. § 63G-7-202(c)(i). Because the officers are Draper City employees, not a governmental entity, their immunity is waived when it is shown that they "acted or failed to act through fraud or willful misconduct."  *Id.* In *Cavanaugh v. Woods Cross City,* 2009 WL 4981591 (D. Utah 2009), the Court stated:

20

> The UGIA defines "willful misconduct" as "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." *Id.* § 63G–7–102 (10). " 'Injury' means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to the person or estate, that would be actionable if inflicted by a private person or the private person's agent." *Id.* § 63G–7–102 (5).
>
> Defendants argue that, first, willful misconduct was not plead and, second, that there is no factual indication of willful misconduct. Defendants' first argument is misplaced as the complaint specifically pleads that "Officer Davis tasered Shannon in the back, in an act of willful misconduct." (Compl.¶ 26.) Plaintiffs argue that Officer Davis would have been aware of the possible physical consequences of using a taser, primarily that the victim could lose control over her limbs and fall to the ground with no ability to break the fall. They argue that because Ms. Cavanaugh was standing on concrete steps, a reasonable jury could find that Officer Davis knew that Ms. Cavanaugh could be severely injured if he tasered her. Summary judgment on the intentional tort claims (assault, battery, and intentional infliction of emotional distress) is accordingly DENIED.

*Cavanaugh,* 2009 WL 4981591 at **6-7.

As in *Cavanaugh,* Plaintiff pled facts about the Officer Patterson's use of excessive force while he was handcuffed and compliant. He pled facts about how the officers propped him against a vehicle, leaving him handcuffed, bleeding, and becoming discolored. He added that he lost consciousness and that independent witnesses saw that he was unconscious. He stated that the officers were laughing.  As in *Cavanaugh,* he pled that the acts of the officers *"were the result of willful and malicious conduct."*[32] He described how the facts of the officers "stopping, detaining, throwing Plaintiff to the ground while handcuffed, causing Plaintiff's head to hit the curb, using excessive force, then failing to seek immediate medical treatment, constitute extreme and outrageous conduct under the circumstances.  *Said action was intentional and malicious.*"[33]

As in *Cavanaugh,* because Plaintiff had no ability to break his fall on concrete (in this case, because he was handcuffed), a reasonable jury could find that Officer Patterson knew that Plaintiff

---

[32] R.Doc. 9-1,Plaintiff's Amended Complaint, ¶ 135 (emphasis added).
[33] R.Doc .9-1 Plaintiff's Amended Complaint, ¶ 296 (emphasis added).

could be severely injured. " If violence against a handcuffed individual was "well established" in 2008, it certainly was in 2010." (the year Plaintiff was handcuffed, thrown to the ground and injured). *See, e.g., Miller v. Woodhead,* 2011 U.S. Dist. LEXIS 20936, *12-13 (D. NJ 2011).

As for the allegations of fraud, Plaintiff did assert the facts in his Amended Complaint necessary to plead with specificity under Rule 9 of the Federal Rules of Civil Procedure as follows:

1.  that a representation was made:

    *303.  At the preliminary hearing, Officer Patterson testified that he threw Plaintiff to the ground because Plaintiff "head butted" him, unlocked his belt clip, and placed his hand on Patterson's gun.*

2.  concerning a presently existing material fact:

    *303. (whether) Plaintiff "head butted" Officer Patterson, unlocked his belt clip, and placed his hand on Patterson's gun.*

3.  which was false and:

    *307.  Ms. Torrence testified at the preliminary hearing that she was also "absolutely positive" that Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.*

    *308.  Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.*

    *311.  Officer Patterson intentionally and knowingly gave, upon lawful oath at the preliminary hearing, false testimony material to the issue in matter of inquiry.*

4.  which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation:

    *307.  Ms. Torrence testified at the preliminary hearing that she was also "absolutely positive" that Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.*
    *308.  Plaintiff did not "head butt" Officer Patterson, despite Officer Patterson's claims to the contrary in his report and through his testimony at the preliminary hearing.*

5.  for the purpose of inducing the other party to act upon it and:

*123.  Officers Patterson and Harris charged Plaintiff with Disarming a Piece Officer, Assault by a Prisoner, ... Interference with Arresting Officer....*
*126.  The Salt Lake County District Attorney's Office dismissed with prejudice the three remaining charges relating to allegations of provoking a police officer.*

6.  that the other party, acting reasonably and in ignorance of its falsity:

*126.  The Salt Lake County District Attorney's Office dismissed with prejudice the three remaining charges relating to allegations of provoking a police officer.*

7.  did in fact rely upon it:

*126.  The Salt Lake County District Attorney's Office dismissed with prejudice the three remaining charges relating to allegations of provoking a police officer.*

8.  and was thereby induced to act:

*126.  The Salt Lake County District Attorney's Office dismissed with prejudice the three remaining charges relating to allegations of provoking a police officer.*

9.  to that party's injury and damage:

*312.  As a result, Plaintiff suffered injuries and damages, as described herein, and is entitled to an award of punitive damages.*

Finally, the policies which Defendants provided the day before this Responsive Memorandum was due provide certain ethical obligations of officers not to falsify records or testimony.[34]  If Plaintiff had those policies at the time of the exchange of initial disclosures, he would have amended his Complaint to include that language.

### V.    Conclusion

In light of the foregoing, Defendants' Motion should be denied. Plaintiff meet the *Twombly/Iqbal* and Rule 8 standards for notice pleading.  Defendants had sufficient notice of Plaintiff's *Monell* allegations as well as the causes of action against Officers Harris and Baugh.

---

[34] *See* Exhibit "2," Draper City Police Department Policies, pp. DRAPER-CHT-0130-31.

As a result of their willful and malicious conduct, the officers are subject to liability for their intentional torts.

DATED this 25th day of August, 2015.

AARON & GIANNA, PLC


__/s/ Lisa A. Marcy_____
Lisa A. Marcy


JOHN K. JOHNSON, LLC


__/s/ John K. Johnson_____
Attorneys for Plaintiff Joshua Chatwin

24

**CERTIFICATE OF DELIVERY**

I certify that a true and accurate copy of PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS was served this 25th day of August, 2015 via electronic filing upon the following:

R.BLAKE HAMILTON
ASHLEY M. GREGSON
DURHAM JONES & PINEGAR, P.C.
111 E. Broadway, Ste. 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
bhamilton@djplaw.com
agregson@djplaw.com

*/s/ Lisa A. Marcy*_____

25