R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

---

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN, <br><br>          Plaintiff, <br><br> v. <br><br> DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10, <br><br>          Defendants. | **DEFENDANTS' RULE 26(a)(2) EXPERT DISCLOSURE** <br><br><br> Civil No. 2:14-cv-00375 <br> Judge Dale A. Kimball <br> Magistrate Judge Pead |

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Defendants' Draper

City, Joshua Patterson, David Harris and Heather Baugh, (collectively "Defendants") by and

through their undersigned counsel, hereby submit their expert testimony disclosure.

1. Kenneth R. Wallentine
   5272 South College Drive, Suite 200
   Murray, Utah 84123

Mr. Wallentine should be contacted through Defendants' counsel. Mr. Wallentine's signed Expert Report is attached hereto as Exhibit A, which includes his opinions, facts considered, curriculum vitae, history of publications and testimony, and his fee schedule.

There may be other expert witnesses that Defendants may use to support their claims and defenses, which are unknown to Defendants at this time. Defendants reserve the right to identify and disclose any additional expert witness(es) as necessary. Also, to the extent that Plaintiffs' anticipated rebuttal disclosures change Defendants' experts' disclosures in any way, Defendants reserve the right to modify their Rule 26(a)(2) disclosures accordingly, including the remittance of counter reports, as required.

Furthermore, as discovery is ongoing, should Defendants learn additional facts relevant to expert disclosures, these disclosures will be supplemented according to Fed. R. Civ. P. 26(e).

DATED this 18th day of March, 2016.

**DURHAM JONES & PINEGAR, P.C.**

/s/ R. Blake Hamilton
R. Blake Hamilton
Ashley M. Gregson
ATTORNEYS FOR DEFENDANTS

SLC_2699167.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the forgoing was served this 18th day of

March, 2016, via electronic filing, upon the following:


Lisa A. Marcy
CLYDE SNOW & SESSIONS
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

John K. Johnson
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, UT 84101


/s/ Sarah Peck

SLC_2699167.1

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

---

|  | : |  |
| JOSHUA CHATWIN, | : |  |
| Plaintiff, | : |  |
| vs. | : | No. 2:14-cv-375 |
| DRAPER CITY, *et al.*, | : | Report of Kenneth R. Wallentine |
| Defendants. | : |  |
|  | : |  |

---

The following report of Kenneth R. Wallentine is submitted after review of the following

documents, pleadings, records, and reports:

Draper City Police Department report and DUI report

Draper City Police policies relating to use of force

Joshua Chatwin deposition transcript

Joshua Patterson deposition transcript

Mehdi Mahmoudi deposition transcript

David Harris deposition transcript

John Eining deposition transcript

Heather Baugh deposition transcript

Kathy Torrence deposition transcript

Steven Merrin deposition transcript

Jason Scott deposition transcript

Miscellaneous photographs relating to incident

Kirk Torgensen report

Trevor Petersen report

Kenneth R. Wallentine states as follows:

1.     In the instant matter, I have relied upon the documents, pleadings, records, reports, and

statements previously described.  I have formed a number of opinions based upon the

aforementioned, as well as my experience, education, and familiarity with professional

publications.  I have relied on a variety of professional publications, including, but not limited to,

my own publications and court decisions cited therein.  Those opinions, and a summary of the

circumstances known or reported to me upon which those opinions are based, are set forth herein

as follows.  My opinions are based on information currently available to me, within a reasonable

degree of professional certainty, and are subject to amendment and supplementation upon receipt

of additional information.  I have provided an abbreviated synopsis of events based on the

documents, pleadings, records, reports, and statements provided to me to help explain the

circumstances and environment of the incident.

**Abbreviated synopsis:**

On the morning of May 8, 2010, Joshua Chatwin (plaintiff) went to a liquor store and

tried to buy liquor.  However, the clerk perceived that plaintiff was too intoxicated and she

refused to sell alcohol to him.  Utah law prohibits the sale of alcohol to a person who is

apparently intoxicated.  The clerk observed plaintiff wobbling and unstable, and saw that he had

parked his car outside of the parking stall lines.  The clerk called the police dispatcher to report

plaintiff's intoxication as he drove away.  She provided plaintiff's car license number to the

dispatcher.

Draper City Police Sergeant David Harris heard the dispatcher broadcast information

about a suspected drunk driver in a white Honda sedan, with Utah license 031NYH.  Sergeant

Harris saw the Honda turn into a driveway and stop at 12534 South 150 East in Draper.  Sergeant

Harris approached the car.  Plaintiff turned and handed his car keys to Sergeant Harris without

any explanation.  Sergeant Harris could smell alcohol and asked plaintiff how much he had to

drink.  Plaintiff said nothing, even after Sergeant Harris repeated the question.

Sergeant Harris asked plaintiff for his driver license and vehicle documents.  Plaintiff was

apparently unable to discern the registration and insurance documents.  Once Officer Patterson

and Officer Baugh arrived, Sergeant Harris asked plaintiff to perform standard field sobriety tests

and to submit to a portable breath test.  Plaintiff became progressively more agitated and

aggressive during the sobriety tests.  Based on plaintiff's actions, Sergeant Harris arrested

plaintiff for driving while under the influence of alcohol.  Sergeant Harris handcuffed plaintiff.

Sergeant Harris then turned his attention to plaintiff's car.

Officer Patterson began to search plaintiff after he was arrested.  Officer Patterson asked

plaintiff whether he had any weapons or drugs and plaintiff responded, "Dude I ain't got shit on

me."  Plaintiff said "fuck you" repeatedly to Officer Baugh and Officer Patterson.  Plaintiff

squirmed and pulled.  Officer Patterson walked plaintiff to one of the police cars, intending to

lean plaintiff, who was obviously intoxicated, against the car.

Plaintiff told Officer Patterson, "fuck you asshole let go of me" as he pulled away. Officer Patterson told plaintiff to stop resisting. Plaintiff again said, "fuck you" as he struggled. Officer Patterson heard the sound of his holster retention strap break open. He looked at his holster and saw that plaintiff was gripping his gun in his right hand. Officer Patterson ordered plaintiff to let go of the gun. At the same time, plaintiff arched his back and swung his head forward in an apparent head-butt attempt.

Officer Patterson grabbed plaintiff's handcuffs with his left hand, pulling plaintiff's hands away from the gun, and grabbed plaintiff's right upper arm with his right hand. Officer Patterson rotated plaintiff and told him to let go of the gun. Plaintiff went to a prone position, striking his left ear on the pavement. Plaintiff lost consciousness temporarily.

Sergeant Harris turned away from searching plaintiff's car and saw plaintiff unconscious on the pavement. He noticed blood coming from the area of plaintiff's left ear. Sergeant Harris called for medical assistance. Shortly thereafter, perhaps after approximately a minute, plaintiff regained consciousness. He began to roll on his side and apparently attempt to rise. Sergeant Patterson asked plaintiff to not move. Plaintiff continued to roll and try to get up. Sergeant Patterson and Officer Patterson leaned plaintiff against the police car.

Unified Fire Department medics arrived and provided medical treatment. Plaintiff was still moving about and he continued to tell the medics and others around him, "fuck you" many times. The Unified Fire Department personnel asked the officers to move the handcuffs to plaintiff's front, and subsequently asked the officers to handcuff plaintiff to the gurney. Plaintiff was taken to a hospital for further assessment and treatment.

a.   **The force used to move plaintiff away from Officer Patterson's gun was reasonable and was consistent with generally accepted police policies, practices and training.**

1.   Neutralizing the threat of plaintiff obtaining a loaded gun was the epitome of circumstances that are tense, uncertain and rapidly evolving. An officer's reaction to such an action must be virtually instantaneous. Preventing plaintiff–in his highly intoxicated state and his chosen aggressive and agitated behavior–from obtaining a loaded gun and possibly killing and/or injuring many persons, was an urgent priority. A reasonable and well-trained officer would have responded swiftly and decisively with whatever force was reasonably necessary to thwart plaintiff's efforts. Officers are taught in basic training the unfortunate reality that, each year, law enforcement officers are disarmed by assailants who use the officer's gun to murder police officers.

2.   Law enforcement officers are commonly taught several firearm retention techniques to interrupt and defeat an attempt to disarm an officer. These techniques include trapping the assailant's hand and potentially breaking the assailant's grasp by downward force, with the attendant likelihood of fracturing the assailant's fingers and other bones of the hand. Other techniques include rapid movement of the holstered gun in a direction that defeats withdrawing the gun, or at least offers very little chance of withdrawing the gun. A number of variables may influence an officer's effort. For example, there are numerous types of gun holsters in common use in police agencies. The holsters have varying safety and retention features. An officer must be highly skilled in the particular holster's

operation, and must be able to recognize when one or more of the safety features are disabled or defeated. One common outcome of an attempt to disarm an officer is for the suspect or the officer to be shot. Officers are trained to use any method and any technique that prevents such an outcome.

3. Officer Patterson recognized the urgency of separating plaintiff from his gun grip. The release of the primary safety feature presented an urgency of truly alarming proportions. Rotating in such a fashion that broke plaintiff's grip is well within the realm of reasonable tactical responses.

4. Officers are taught that prone control generally facilitates maximum control for resistive subjects. Prone control is particularly appropriate for a subject who has made some effort to disarm an officer and who is otherwise aggressive. Officer Patterson directed plaintiff's momentum toward a prone position on the ground. Unfortunately, this step to place plaintiff into a prone control position did not end as intended. Officer Patterson's effort to control plaintiff's motions was complicated by plaintiff suddenly going limp. As plaintiff went toward a prone position, he struck his head on the pavement. Officer Patterson did not intend for plaintiff's head to strike the pavement.

5. A perfect technique to move a subject into a prone control position, as may be achieved under choreographed conditions in a police training situation may not necessarily occur in the course of an arrest where the subject is resisting the officer and where the situation is dynamic and rapidly-evolving. Techniques taught and practiced in the controlled police academy training environment with

skilled instructors and compliant role-players often cannot be executed with precision in the field. The application of a defensive tactics technique is significantly dependent on the level of resistence or cooperation presented by the individual subject, the forcefulness of the subject's resistence, including a sudden change in muscle tension by going limp and by the location and terrain where the subject chooses to resist. Plaintiff was uncooperative and physically resisting efforts to control his movements, complicating the transition to a prone control position.

6.    Kathy Torrence reports that she watched plaintiff's movement from a standing to a prone position from inside her home across the street. The photographs that I have been provided suggest that it is a significant distance and that seeing detail would be difficult at best. I have requested, but have not yet been permitted, to inspect the site from Torrence's stated point of observation. Kathy Torrence's description of her perception from her vantage point was that "Officer Patterson throws [plaintiff] to the ground." This account clearly contravenes the statements of Officer Patterson and Officer Baugh.

b.    **The Draper Police Department Use of Force Policy in effect at the time of this incident comported with constitutional law and generally-accepted law enforcement policies.**

1.    The Draper Police Department policy governing use of force that was in effect in 2010 contained a restatement of the law governing use of force, accompanied by some additional discussion. This policy was similar to many policies that were

commonly in use throughout the State of Utah at the time. In fact, prior to adopting a policy that is nearly word-for-word identical to the 2013 Draper Police Department Policy 300, the Investigation Division of the Office of the Attorney General had in effect a use of force policy that offered little guidance beyond restating the laws of Utah and some factors suggested by federal courts.

2 The 2010 Draper Police Department use of force policy, and the many that were markedly similar to that policy, should be read in tandem with the training provided to all certified Utah peace officers. As a Bureau Chief at Utah Peace Officer Standards and Training Division, I was responsible for the learning objectives, curriculum and certification examinations for courses mandated to all police academy trainees. Several courses featured discussion of use of force issues addressed broadly in the 2010 Draper Police Department policy. Those courses included Laws of Reasonable Force, Laws of Arrest, Liability of Peace Officers, Defense Techniques, parts one and two. Police trainees were also required to successfully complete scenario exercises and demonstrate appropriate use of force in compliance with state and federal constitutional parameters and statutes.

2. In reaching my opinions in this matter I have relied upon my training and experience in public safety acquired throughout my career. A summary of my qualifications, publications, litigation history and fee schedule are recited herein.

3. **My qualifications as an expert in this subject matter include the following:** I am a law enforcement officer in the State of Utah. I became certified as a law enforcement officer in

the State of Utah in 1982.  Until April 1, 2014, I was employed with the Utah Attorney General, where I served as the Chief of Law Enforcement.  I am currently employed as a Special Agent with the Utah Attorney General Investigation Division, coordinating use of force training and force investigation training throughout the state.  I also work part-time as a consultant and Senior Legal Advisor for Lexipol.

I was formerly employed as a Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training Division, where I supervised investigations into allegations of improper and excessive force, officer integrity, and criminal acts alleged to have been committed by law enforcement officers and supervised in-service training administration and certification for all peace officers in the State of Utah.  I also supervised the police service dog training and certification program for the State of Utah.  I had responsibility for policy drafting and review for the parent agency, the Utah Department of Public Safety.

My duties included direct supervision and command of various investigative units and agents throughout the State of Utah, supervising law enforcement officers, forensic specialists, and technicians.  I commanded the State of Utah Child Abduction Response Team.  I commanded the State of Utah Officer-Involved Fatality Investigation Team.  I am a member of the Board of Review of the Utah Technical Assistance Program, consulting in cold case homicide and complex violent person crimes investigations.  In 2010, Governor Herbert selected me for the Governor's Leadership in Public Service award for my work in public safety leadership.

I was formerly responsible for providing delivery of the Basic Training Curriculum related to all legal subjects, as well as certain tactical subjects, at the Utah Law Enforcement Academy.  I continue to teach at the Utah Law Enforcement Academy.  I am the author of the

police academy curriculum currently in use for several subjects, including, but not limited to, use of force, reasonable force, use of force and police service dog teams, search and seizure, search and seizure for police service dog teams, and use of force/firearms instructor liability.

I regularly teach in the following specialized courses: Advanced Officer Course, Firearms Instructor Course, Utah Sheriffs' Association Command College, First Line Supervisor Course, POST K9 Unit Administrator Course, POST Patrol Dog Handler Course, POST Narcotics Detector Dog Course, and others. I am a former police service dog handler and worked with the Uintah County Sheriff's K9 Unit from 1995 to 2001. I continue to provide instruction and evaluation services for the POST Police Service Dog program.

I am a certified POST Firearms Instructor, often serving as the lead instructor for POST Firearms courses. I am a certified TASER® Instructor. I am a certified Excited Delirium and Sudden Death Investigation Instructor. I was certified by the Los Angeles Police Department in Officer-Involved Shooting Investigation. In cooperation with the Utah Sheriffs Association and the Utah Jail Commanders Association, I teach employee selection, employee discipline, internal affairs and in-custody and officer-involved fatality investigation courses to county law enforcement and corrections command staff. I am a certified Force Science Analyst, certified by the Force Science Research Center at Minnesota State University. I am a Certified Litigation Professional, certified by the Americans for Effective Law Enforcement.

I am a licensed attorney, having practiced law since 1990. I am admitted to practice before the United States Supreme Court, the Courts of Appeals for the Fifth and Tenth Circuits, and the State and Federal courts in the State of Utah. I am a Master of the Bench of the American Inns of Court, Inn One, where I also serve as immediate past-President of the Inn of

Court.  I have served both as a Hearing Officer and as the advising Administrative Law Judge for appeals before the Utah Career Service Review Board.  I have also served as an Administrative Law Judge appointed in certain counties and cities in Utah, providing hearing officer and appellate hearing services for hearings involving allegations of police officer misconduct and other police employment matters.

I serve as Chairman of the Salt Lake County Peace Officer Merit Service Commission, appointed by the Salt Lake County Mayor and the Mayors of the various municipalities that comprise the Unified Police Department of Greater Salt Lake County.  In that capacity, I chair the commission that oversees the hiring, promotion, discipline and termination of all sworn officers of the Salt Lake County Sheriffs Office, Salt Lake County Protective Services Office and the Unified Police Department.

I was the longest serving member of the Utah Board of Mandatory Continuing Legal Education, an independent committee serving on behalf of the Utah Supreme Court.  I was first appointed in 1996 and was reappointed by the Chief Justice to serve through 2015.

In addition to my primary employment, I occasionally consult and provide expert opinions on police procedures, and use of force issues.  I provide law enforcement academy curriculum consulting and accreditation review services for the United States Department of Justice.  I have also served as a contract consultant to the United States Department of Justice, assigned to provide technical assistance and management consulting to various public safety entities in the United States.

I am the co-founder of, and legal advisor to, a best practices advisory group charged with developing model policies and best practices under the authority of the Utah Chiefs of Police

Association, the Utah Sheriffs' Association and various state law enforcement agencies. I occasionally perform in-custody death investigations and officer-involved shooting death investigations for agencies which may lack the requisite expertise. I am the author of a number of best practice policies for law enforcement agencies, and have provided policy drafting and policy review services for several agencies, including full policy drafting responsibility for one of the state's larger law enforcement agencies.

I am a former member of the Scientific Working Group on Dog and Orthogonal Factors, an international organization facilitated by the Federal Bureau of Investigation, the Department of Homeland Security, and the Transportation Security Administration, with research and peer review coordinated by the International Forensic Research Institute at Florida International University, established to identify consensus based best practices for the use of canine detection teams. Other professional activities pertinent to law enforcement include serving as a Past-President of the Utah Peace Officers Association, former Board Member of the Utah SWAT Association, member of the International Association of Law Enforcement Educators and Trainers Association, consultant to and member of the California Narcotics and Explosive Canine Association, member of the International Association of Chiefs of Police and the Utah Chiefs of Police Association, member of the National Tactical Officers Association, member of the International Association of Law Enforcement Firearms Instructors, member of the International Association of Directors of Law Enforcement Standards and Training, member of the International Law Enforcement Educators and Trainers Association, and member of the United States Police Canine Association.

I serve as co-Chairman of the Utah Law Enforcement Legislative Committee. In that capacity, I have been involved with all major law enforcement legislative initiatives in the State of Utah for more than the past decade. I formerly served as a gubernatorial appointee to the Council on Peace Officer Standards and Training, under Governor Michael Leavitt, where I heard many dozens of contested disciplinary matters and helped direct policy and training for all peace officers and corrections officers. I served as a member on the Council on Peace Officer Standards and Training, under appointment of the Attorney General from January 2013 until my retirement.

4.      **My publications (limited to ten years) include the following:** I have previously published a number of other professional articles, many of which have been subjected to peer review. My most recent book, *The K9 Officer's Legal Handbook*, 2nd ed., was published by Lexis/Nexis Matthew Bender in February 2014, with the 2015 Supplement published in January 2015. Another book, *Street Legal: A Guide to Pre-trial Criminal Procedure for Police, Prosecutors, and Defenders* was published in 2007 by the American Bar Association Publishing Division. It is a treatise on public safety and criminal procedure. My other published works include: *Supreme Court Decision Casts Doubt on Hotel Registry Ordinances*, Police Chief, V. 81, No. 10 (2015); *Body Worn Cameras: Plan Before Your Office Buys In*, The Sheriff (June 2015); *Legal Risks of Failing to Care for Children of Arrested Persons*, Police Chief, V. 82, (September 2015); *A Rational Foundation for Use of Force Policy, Training and Assessment*, 2014 (2) AELE Mo. L. J. 101; *Post Incident Video Review*, Police Chief, V. 68, No. 12 (2011); *Cell Site Location Evidence: A New Frontier in Cyber-Investigation*, 2011 (2) AELE Mo. L. J. 501, *Prospects, Pitfalls and Pains of Social Media and Public Safety*, The Municipal Lawyer,

September 2010; *Police Department May Read Text Messages Sent on Agency-issued Pagers: City of Ontario, California v. Quon*, Police Chief, V. 57, No. 8 (2010); *Collection of DNA Upon Arrest: Expanding Investigative Frontiers*, Police Chief, V. 57, No. 1 (2010); *Targeting TASER: The New TASER Aim Points,* Law Officer, January 2010; *The Risky Continuum: Abandoning the Use of Force Continuum to Enhance Risk Management*, The Municipal Lawyer, July 2009; *Explosive Detector Dog Legal Issues*, K9 Cop, February 2009; *Does Police Service Dog Deployment Equal Deadly Force?*, K9 Cop, April 2009; *Human Scent Line-up Evidence*, Police K9 Magazine, August 2009; *Acknowledging Gender in Fitness Standards for Police: An Invitation to Liability?*, The Municipal Lawyer, January 2008; *K9 Court Testimony*, Police K9, December 2006; *United States Supreme Court Review for Corrections Managers*, Corrections Managers Report, October 2006.

5.      **My fee schedule is established as follows:** I charge $250.00 per hour for examination of reports and documents, site visits, interviews, administrative tribunal, deposition or court testimony, with a minimum of $1,000.00 for deposition or court testimony.  I bill for actual travel expenses and a travel fee of $1,000.00 per day/part-day for travel to western states and $1,500.00 per day/part-day outside western states.

6.      **My prior experience as an expert witness (limited to the past four years) includes the following cases:**  I have been qualified as an expert in the subject matter of police procedures, including use of TASER® devices, excessive force, shootings and wrongful death claims, search and seizure, police service dog use, both in drug detection and dog bites, and I have never had a court decline to find that I am a qualified expert witness.  I have testified and/or provided depositions and trial testimony in the following cases which may be generally related to

the subject of the instant litigation in the past four years:  *McDonald v. Dupnik*, No. C20142895

Superior Court, State of Arizona, Pima County, 2016.  Trial and deposition testimony given on

behalf of defendants.  Subject matter: excessive force.  *Talley v. City of Charlotte*, No. No. 3:14

CV 683, United States District Court for the Western District of North Carolina, 2016.

Deposition testimony given on behalf of the defendants.  Subject matter: negligent custody.

*McKenney v. Mangino*, No. 2:15-CV-73-JDL, United States District Court for the District of

Maine, 2015.  Deposition testimony given on behalf of defendant.  Subject matter: wrongful

death.  *Moore v. City of Lakeland*, No. 8:13-cv-02660-T-26TBM, United States District Court

for the Middle District of Florida, 2015.  Trial testimony given on behalf of defendant.  Subject

matter: excessive force.  *Frasier v. McCallum, et al.*, No. 1:14-cv-00009-MP-GRJ, United States

District Court for the Northern District of Florida, 2015.  Deposition testimony given on behalf

of defendant.  Subject matter: mistaken arrest.  *Wolffis v. City of Gainesville*, No. 1:14-cv-130,

United States District Court for the Northern District of Florida, 2015.  Deposition testimony

given on behalf of defendant.  Subject matter: excessive force.  *Castillo v. City of Tempe*, No.

2:12-CV-02225-ROS, United States District Court for the District of Arizona, 2015.  Trial

testimony given on behalf of defendants.  Subject matter: excessive force.  *Stoedter v. Salt Lake

County, et al.*,  No. 2:12-CV-255-BJ, United States District Court for the District of Utah, 2015.

Trial and deposition testimony given on behalf of the defendants.  Subject matter: police force to

effect arrest.  *Williams v. TASER, Internat'l and the City of Charlotte*, No. 3:12-CV-838, United

States District Court for the Western District of North Carolina, 2014.  Deposition testimony

given on behalf of the defendants.  *Clark v. Box Elder County et al.,* No. 1:13-cv-00079-CW,

United States District Court for the District of Utah, 2014.  Deposition testimony given on behalf

of the defendants. *Campbell & Gemperline v. City of Springboro et al.*, No. 1:08-cv-00737, United States District Court for the Southern District of Ohio, 2013. Deposition testimony given on behalf of the defendants. *Thompson v. City of Lebanon*, No. 1:10-CV-0035, United States District Court for the Middle District of Tennessee, 2013. Deposition testimony given on behalf of the defendants. *Chief v. West Valley City Police, et al.*, No. 2:11-CV-643, United States District Court for the District of Utah, 2013. Deposition testimony given on behalf of the defendants. *Stoedter v. Salt Lake County, et al.*, No. 2:12-CV-255-BJ, United States District Court for the District of Utah, 2013. Deposition testimony given on behalf of the defendants. *Texiera v. United States of America, et al.*, No. 2:11-CV-02022, United States District Court for the District of Nevada, 2013. Deposition testimony given on behalf of the defendants. *Boggs v. City of Waterloo*, No. LACV116584-CW, Blackhawk County District Court, 2013. Deposition testimony given on behalf of defendants. *Schmidtke v. Marion County Sheriff et al.*, No. 5:10-CV-293-OC- 10prl, United States District Court for the Middle District of Florida, 2012. Deposition testimony given on behalf of the defendants. *Alusa v. Salt Lake County Sheriff, et al.*, No. 2:11-CV-00184-CW, United States District Court for the District of Utah, 2012. Deposition testimony given on behalf of the defendants. *Woodward v. City of Gallatin, et al.*, No. 3:10-CV-01060, United States District Court for the Middle District of Tennessee, 2012. Deposition testimony given on behalf of the defendants. *Minor v. Johnson, et al.*, No. 1016-CV08762, Circuit Court of Jackson County, Missouri, 2012. Deposition testimony given on behalf of defendants. *Garcia v. Sacramento City, et al.*, No. 2:10-CV-00826-JAM-KJN, United States District Court of California, Eastern Division, 2012. Deposition testimony given on behalf of the defendants.

The observations and opinions stated herein are preliminary, insofar as additional information may be provided to me through the course of discovery and other incidents of the litigation process. They are based on the best information presently known to me. I have assumed the general accuracy of the documents, statements, and reports, excepting those expressed as opinions and those conflicting one with another and/or conflicting with physical evidence, that were provided to me. The opinions herein may be supplemented and/or revised upon receipt of additional information, including, but not limited to, further deposition testimony, consideration of any report submitted by plaintiff's experts, further investigation and/or further witness interviews. I may supplement this report upon completion of depositions of witnesses in this matter and/or upon being provided with other investigative documents, and/or diagrams, video and photographs. I may also supplement this report upon being granted leave to inspect the site from the various perspectives of witnesses who claim to have observed plaintiff's arrest.

My trial testimony may be supported by exhibits that include the pleadings, documents, statements, depositions, diagrams, photographs, and reports listed herein, as well as illustrative evidence such as a visual presentation of computer-generated slides and visual images projected onto a screen, charts, graphs, or illustrations created to better illustrate the aforementioned documents.

CONCLUSION

Plaintiff chose to drive while highly intoxicated, posing a dangerous threat to the public and himself. When questioned and arrested by police, plaintiff decided to grasp Officer Patterson's gun and create the threat of an armed struggle over an obviously deadly weapon. Officer Patterson made reasonable tactical and force decisions under the circumstances presented to him by plaintiff. Plaintiff's injuries are the unfortunate unintended result of lawful and proper police actions.

The Draper City Police Department promulgated policies that clearly bound its officers to limits on use of force imposed by constitutional law and federal and state statutes. The use of force policy was substantially the same as policies in use throughout police agencies in Utah. The core elements of that policy have not materially changed and plainly express the state of the law of force both then and now.

Kenneth R. Wallentine
March 18, 2016

Kenneth R. Wallentine
5272 South College Drive, Suite 200
Murray, Utah 84123