R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>                    Plaintiff,<br><br>v.<br><br>DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>                    Defendants. | **OPPOSITION TO MOTION TO QUASH SUBPOENA TO CYBER OPS**<br><br>Civil No. 2:14-cv-00375<br>Judge Dale A. Kimball |

Defendants Draper City, Officer Patterson, Officer Harris, and Officer Baugh ("Defendants") hereby oppose Cyber Ops' motion to quash the subpoena ("Motion"), and respectfully request that this Court order Cyber Ops to produce the documents requested in the subpoena.

## BACKGROUND

The subpoena in question, which is attached hereto as **Exhibit A**, requested two categories of documents: (1) documents regarding the employment of Trevor Petersen, and (2) documents involving the scene inspection.

**Documents regarding Trevor Petersen**

Plaintiff has identified Kirk Torgensen and Trevor Petersen as experts and submitted reports from these two individuals.[1] Plaintiff's disclosure of these experts did not identify an address or other contact information. The report of Trevor Petersen identified an address matching that of Cyber Ops, LLC or Private Ops, LLC, and both individuals indicated that they were currently working at that address.[2] Upon receiving the reports, Defendants issued subpoenas to both of the experts for their files on the matter in order to prepare for expert depositions. However, it proved very difficult to serve either expert because they could not be located at the address listed on their reports. Employees at Cyber Ops indicated to Defendants' staff that Trevor Petersen has nothing to do with their company whatsoever. Kirk Torgensen was eventually located and served personally at a different location. Trevor Petersen has yet to be located. Defendants have requested counsel for Plaintiffs for assistance in locating him for service but no contact information has been provided.

The statements made by Cyber Ops employees regarding Trevor Petersen's affiliation with their company contradict Mr. Peterson's CV, which represents that he was the Director of Investigations at Cyber Ops at the time of his report, and that he had previously worked for Court Ops (which operates at the same address) as a private investigator.

---

[1] *See* Docket Entries 33 and 34.
[2] See Docket Entry 33-1 at 10, and 34-1 at 7.

Concerned that Mr. Petersen's CV may contain misrepresentations regarding his professional experience, Defendants issued a subpoena to Cyber Ops seeking documents regarding Mr. Petersen's employment at, and departure from, Cyber Ops.

**Documents from Scene Inspection**

Pursuant to this Court's Order, a scene inspection was held on April 5, 2016 to allow Defendants' expert to gather information and make observations necessary to prepare his report. Plaintiff brought expert Kirk Torgensen to the scene inspection, along with at least one other employee of Cyber Ops. Counsel for Defendants observed that these individuals were taking photographs during the scene inspection. Therefore, Defendants included in their subpoena a request for all photographs, notes, and other documents associated with the scene inspection.

**Service of the Subpoena**

As described more fully in the Affidavit of Robert Taylor Hampton ("Hampton Aff."), attached hereto as **Exhibit B**, Mr. Hampton attempted to serve Michael Gulbraa of Cyber Ops on or about April 25, 2016 at Cyber Ops' office, located at 5693 S. Redwood Rd., Suite 13, Taylorsville, Utah 84123. Hampton Aff. ¶¶ 2-3. Mr. Hampton arrived at the office around 4:05 p.m. and asked for Mr. Gulbraa. *Id.* at ¶¶ 4, 10. The Cyber Ops employee that greeted Mr. Hampton responded by turning to look at a nearby office that had its door slightly ajar. *Id.* at ¶¶ 8, 11. Inside that office, a man could be heard talking on the phone. *Id.* at ¶ 8. Upon noticing this, the Cyber Ops employee told Mr. Hampton that Mr. Gulbraa was on the phone and that Mr. Hampton would have to wait to talk with him. *Id.* at ¶ 12.

Shortly thereafter, a man emerged from the aforementioned office. *Id.* at ¶ 15. Mr. Hampton asked the man if he was Mike Gulbraa and told him he had some legal papers for him,

to which the man responded, "I can't help you." *Id.* at ¶ 16. The man proceeded to ignore Mr. Hampton, despite the repeated questions as to whether he was Michael Gulbraa. *Id.* at ¶¶ 17-19. After walking past Mr. Hampton a few times and ignoring him, the man returned to the aforementioned office and slammed the door. *Id.* at ¶ 19.

Another Cyber Ops employee then came down the stairs to the area where Mr. Hampton was standing, and Mr. Hampton told her that he was looking for Mike Gulbraa. *Id.* at ¶ 20. The woman walked over to the door of the same office the Mr. Gulbraa had walked into and put her ear to the door. *Id.* She stated that Mike was on the phone. *Id.* Due to the fact that two different people in the office had confirmed that that particular office was Michael Gulbraa's office, Mr. Hampton was confident that the man inside was Mr. Gulbraa. *Id.* at ¶ 21. Mr. Hampton therefore left the papers outside the closed door of the man's office and stated loudly that he was serving the papers outside the closed door. *Id.* at ¶¶ 23-24.

In Cyber Ops' Motion, Mr. Gulbraa admits that he was indeed in the aforementioned office on a phone call when Mr. Hampton came to serve the documents, and also admits that he found the documents outside his office door. (Motion at 2). The declaration of Cory Warnick (Exhibit A to Cyber Ops' Motion) also confirms many of Mr. Hampton's statements, and does not contradict any of them.

## ARGUMENT

Cyber Ops appears to raise three types of objections to the subpoena: (1) that service of the subpoena was not proper, (2) that Cyber Ops' employment records regarding Mr. Petersen are confidential, and (3) that anything relating to the work Cyber Ops has done for Plaintiffs is work product or attorney-client privileged.

4

SLC_2806547.1

I.    SERVICE OF THE SUBPOENA ON CYBER OPS WAS EFFECTIVE.

As stated above, Mr. Hampton has provided a detailed affidavit that describes the steps taken to serve Mr. Gulbraa, who apparently attempted to avoid service. (Hampton Aff.). A process server's return of service "is presumptively correct and can be disproved only by clear and convincing evidence." *Kenny v. Rich*, 2008 UT App 209, ¶ 33, 186 P.3d 989, 1000 (internal quotation marks and citation omitted). Mr. Hampton's account is therefore presumptively correct, and Mr. Gulbraa has not provided any evidence that disproves Mr. Hampton's account.

Indeed, Mr. Gulbraa admits that he found the subpoena served by Mr. Hampton outside his office door. (Motion at 2). The Declaration of Cory Warnick also confirms Mr. Hampton's account, and does not disprove any of it. Mr. Warnick states that he told Mr. Hampton to wait in the reception area, that Mr. Warnick left the building, and that when he returned papers were on the floor outside Mr. Gulbraa's office. Mr. Gulbraa has therefore provided zero evidence that rebuts Mr. Hampton's account. For these reasons, service of the subpoena on Cyber Ops was effective.

II.   PETERSEN'S EMPLOYMENT RECORDS ARE RELEVANT AND NOT CONFIDENTIAL.

Trevor Petersen has been identified as an expert witness in this case and wrote an expert report regarding use of force. He attached a CV to his report in which he made representations regarding his professional experience. Defendants are entitled to subpoena an expert witness' file to discover the documents the expert reviewed, notes he took, and amounts he billed for his services in preparing his expert report, among other things. Such materials are entirely relevant and discoverable during expert discovery. It is also appropriate for Defendants to probe an expert witness' professional experience and background for weaknesses with respect to his

5

qualifications as an expert in a particular field. Furthermore, the credibility of any witness, including experts, is always a relevant inquiry.

In this case, it became evident to Defendants that Cyber Ops had information regarding Trevor Petersen that may contradict what he represented regarding his professional experience in his report, and may call into question his qualifications to testify as an expert in this case. Such evidence would be highly relevant to Defendants' case and their responses to Mr. Petersen's opinions. Therefore, it was relevant and appropriate for Defendants to pursue discovery regarding Mr. Petersen's employment with Cyber Ops via subpoena.

Cyber Ops claims that all of its company records are confidential, without any further explanation. Merely making a blanket claim of confidentiality for all documents requested is not sufficient to assert a valid objection to a subpoena. Defendants requested a variety of documents relating to Mr. Petersen, including his "personnel records, payroll records, HR records, contracts, agreements, applications, resumes," "disciplinary action" taken against him, and documents containing "dates of affiliations with Cyber Ops and his departure." It is disingenuous to state that each and every one of these documents are simply "confidential" without any specific analysis or identification of a legal basis for that type of designation. Cyber Ops is withholding highly relevant evidence requested through a valid subpoena. Therefore, this Court should order Cyber Ops to comply.

### III. DOCUMENTS REGARDING THE SCENE INSPECTION ARE NOT PRIVILEGED AND ARE NOT WORK PRODUCT AND CYBER OPS DOES NOT HAVE THE RIGHT TO ASSERT THE PRIVILEGE.

As an initial matter, Cyber Ops does not have the right to assert either of the attorney client and work product privileges. "The attorney-client privilege is a right that belongs to the

client . . . ." *Sorenson v. Riffo*, No. 2:06-CV-749 TS, 2008 WL 2465454, at *3 (D. Utah June 16, 2008). The privilege may be asserted by either the client or the attorney on the client's behalf. *See, e.g., Haines v. Liggett Grp.,* 975 F.2d 81, 90 (3d Cir.1992) (citing McCormick on Evidence § 92 (4th ed.1992). Cyber Ops appears to argue in its motion that it may assert the privilege because it is somehow a "representative" of the Plaintiff as a private investigator. This claim is unsupported by and contrary to the law. Moreover, Plaintiff and his counsel have not objected to the subpoena, nor have they asserted any privilege as to the documents requested under the subpoena.[3] The privileges therefore do not apply to the requested documents.

Additionally, even if Cyber Ops had the right to assert the attorney client or work product privileges, which it does not, it has failed to point to specific documents to which the privileges apply. The purpose of the attorney-client privilege "is to preserve confidential communications between attorney and client that are related to legal advice or strategy sought by the client." *United States v. Badger*, 2013 WL 3937023, *2 (D. Utah July 30, 2013) (unpublished) (internal quotations omitted) (citing *In re Grand Jury Subpoenas*, 906 F.2d 1492 (10th Cir. 1990) and *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)). The party claiming the privilege bears the burden of proving that the privilege applies by addressing specific claims and documents. *Id.* The privilege "extends only to communications and not to facts." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

Cyber Ops has not identified any specific documents that it claims are attorney-client privileged. Rather, it claims that all of the documents requested regarding the scene inspection,

---

[3] Pursuant to DUCivR 45-1, Defendants provided notice to Plaintiffs of the Cyber Ops subpoena via email dated April 13, 2016. A true and correct copy of the April 13 email is attached hereto as **Exhibit C**. Plaintiffs have not objected to the subpoena, nor have they asserted any privilege with regard thereto.

7

including photographs, notes, invoices, correspondence, and contracts, are subject to the privilege.  However, "[t]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Id.*  It is apparent from the very nature of these documents that few, if any, of them could actually be subject to the privilege because they would merely convey facts about the scene inspection, not communications between an attorney and a client.

      The work product protection in Rule 26(b)(3) of the Federal Rules of Civil Procedure protects documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . .."  It "is intended only to guard against divulging the attorney's strategies and legal impressions," and "does not protect facts concerning the creation of work product or facts within the product."  *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D. Utah 2002).  The party claiming the protection bears the burden of proving that the protection applies.  *Id.*

      Cyber Ops has failed to explain why the Photographs taken during a scheduled scene inspection attended by both parties, and other documents relating to the scene inspection, are attorney work product.  Without specific explanation as to why these documents are protected, it appears that they simply contain facts concerning the scene inspection (i.e. photographs, notes, and emails regarding the events at the scene inspection).  To the extent that there are some communications between an attorney and Cyber Ops, or other documents revealing "mental impressions, conclusions, opinions, or legal theories" of Plaintiff's attorney or other representative, those need not be produced but should be identified in a privilege log.

As no privilege or work product protection applies to these documents, and Cyber Ops has failed to identify any specific document that qualifies as privileged or work product, this Court should compel Cyber Ops to comply with the subpoena and produce all non-privileged documents. To the extent any documents do contain privileged or work product materials, those can be redacted and a privilege log produced.

## CONCLUSION

For the foregoing reasons, this Court should deny Cyber Ops' motion to quash, and should require Cyber Ops to fully comply with Defendants' subpoena.

DATED this 16th day of June, 2016.

                                            **DURHAM JONES & PINEGAR, P.C.**

                                            /s/ R. Blake Hamilton
                                            R. Blake Hamilton
                                            Ashley M. Gregson
                                            ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the **OPPOSITION TO MOTION TO QUASH SUBPOENA TO CYBER OPS** was served this 16th day of June, 2016, via electronic filing, upon the following:

>Lisa A. Marcy
>CLYDE SNOW & SESSIONS
>One Utah Center, Thirteenth Floor
>201 South Main Street
>Salt Lake City, UT 84111
>
>John K. Johnson
>JOHN K. JOHNSON, LLC
>10 West 300 South, Suite 800
>Salt Lake City, UT 84101

Service was completed via U.S. Mail to the following:

>Mike Gulbraa
>Cyber Ops LLC
>5693 S. Redwood Road, #13
>Taylorsville, UT 84123

/s/ Sarah Peck