# EXHIBIT B

R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN, <br><br> Plaintiff, <br><br> v. <br><br> DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10, <br><br> Defendants. | **AFFIDAVIT OF ROBERT TAYLOR HAMPTON** <br><br> Civil No. 2:14-cv-00375 <br> Judge Dale A. Kimball <br> Magistrate Judge Pead |

STATE OF UTAH           )
                        ) ss.
COUNTY OF SALT LAKE  )

Robert Taylor Hampton, licensed Private Investigator, deposes and says:

1.  I am an adult residing in the State of Utah. I work for Anderson Investigations and part of my duties include serving legal papers for them.

2.  On or about April 25, 2016 Anderson Investigations asked me to serve a Subpoena Duces Tecum upon the registered agent for Cyber Ops, Michael Gulbraa (hereafter sometimes referred to as "Mike").

3.  Cyber Ops is located at 5693 S. Redwood Rd., Suite 13, Taylorsville, Utah 84123.

4.  I arrived at Cyber Ops on April 25, 2016 at 4:05 p.m.

5.  As required by Anderson Investigations, I used the "iPST" application on my iPhone to photograph the building, log my exact coordinates using GPS and log the time of the service attempt.

6.  I entered Suite 13, which is the business location for Cyber Ops and was greeted by a white male, mid to late 30's, close to 6 feet tall, wearing a white button down shirt, tie, dress pants and shoes (later identified as Cory Warnick)

7.  On the right of the hallway there was a single office, kitty-corner to Cory's office.

8.  The door was slightly ajar and I could hear a man inside that office talking on the phone.

9.  My Private Investigator's (hereafter "PI") badge with my PI license was worn around my neck and displayed openly in a clear plastic cover.

10. Cory asked what he could help me with to which I replied I was looking for Mike Gulbraa and asked if he was there.

11. Cory looked toward the back of the office at the door that was slightly open, the same office within which I could hear the male inside talking on the phone.

12. Cory stated Mike was busy and asked if he could assist me. I replied that I had legal papers for Mike.

13. Cory asked to see the papers and I declined. Cory then stated that Mike was on the phone and I would have to wait to talk with him, but that he did not know how long he would be on the phone Cory then invited me to have a seat on the couch and wait for Mike to conclude his phone call.

14. Cory then left the building and upon returning went to Mike's office, poked his head inside, said something to Mike that I could not hear, then closed Mike's door completely.

15. At approximately 4:10 p.m. a white male, approximately 45 years old, around 6 feet tall, close to 220 pounds, gray hair and wearing glasses emerged from Mike's office.

16. I asked the man if he was Mike Gulbraa and told him I had some legal papers for him, to which he responded, "I can't help you" and then proceeded into the first room in the front of the building that had a copy machine/printer in it, where he began rummaging through some papers.

17. I asked him "You're not Michael Gulbraa?" The man completely ignored me and began to walk past the couch to leave the building.

18. As he was walking, I said "Does Michael Gulbraa work here, because I was told that you are Michael Gulbraa." The man continued to ignore me and walked upstairs.

19. A few minutes later the man returned downstairs, and walked toward his office. I asked him again if he was Michael Gulbraa, he continued to ignore me and walked back into his office, slamming the door behind him.

20. Then a woman came downstairs and I told her I was looking for Mike Gulbraa. The woman walked over the same door that the man had walked into after ignoring my questions

and put her ear to his door. She stated that Mike was on the phone and asked if she could assist me. I replied no thank you and she exited the building.

21. Based on the fact that two different people in the office confirmed that this particular office was Michael Gulbraa's office, I was confident the man inside was indeed Michael Gulbraa.

22. Moreover, I had seen the man who was in that office, attempted to talk to him, told him I was attempting to serve legal papers on Michael Gulbraa, and witnessed his unwillingness to cooperate with me, or answer any of my questions.

23. Michael's failure to respond to my questions, accompanied by his blatant disrespect towards me by acting as if he couldn't hear me asking questions, and his deliberate decision to avoid service of the legal papers, led me to drop serve the papers outside of his office door.

24. I stated loudly and clearly outside of his door that I had received two separate confirmations that he was Michael Gulbraa and that I was drop serving the papers outside his closed door.

25. I made notes after returning to my car and left the premises at 4:25 p.m.

**FURTHER AFFIANT SAITH NAUGHT**

4

DATED this 16th day of June, 2016.

        /s/ Robert Taylor Hampton
        Robert Taylor Hampton
        Private Investigator

SUBSCRIBED and SWORN TO before me this 16th day of June, 2016.

        /s/ Heidi Anderson
        Notary Public
        State of Utah
        Commission # 661615
        Comm. Exp. 01/01/2017