DEPOSITION OF JOSHUA PATTERSON                                1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

-oo0oo-

JOSHUA CHATWIN,                : CIVIL NO. 2:14-cv-375
         Plaintiff,            : DEPOSITION OF:
                                 JOSHUA PATTERSON
    v.                         :
                                 TAKEN: December 7, 2015
DRAPER CITY; DRAPER CITY       :
POLICE DEPARTMENT;               Judge Dale A. Kimball
OFFICER J. PATTERSON, in       :
his individual and
official capacity;             :
OFFICER HEATHER BAUGH,
in her individual and
official capacity;
OFFICER DAVID HARRIS, in
his individual and
official capacity;
OFFICER KURT IMIG, in
his individual capacity;
SUPERVISOR TBA; and JOHN
DOES 1-10,

         Defendants.
_____

-oo0oo-

Deposition of JOSHUA PATTERSON, taken on
behalf of the plaintiff, at 201 South Main Street,
Suite 1300, Salt Lake City, Utah, before PHOEBE S.
MOORHEAD, Certified Shorthand Reporter for the State
of Utah, pursuant to Notice.

**SOME PORTIONS CONSIDERED CONFIDENTIAL**

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

---

DEPOSITION OF JOSHUA PATTERSON                                2

A P P E A R A N C E S

For the Plaintiff JOSHUA CHATWIN:

    Lisa A. Marcy
    CLYDE SNOW & SESSIONS
    One Utah Center, Thirteenth Floor
    201 South Main Street
    Salt Lake City, UT 84111

For the Defendant DRAPER CITY, ET AL:

    R. Blake Hamilton
    DURHAM, JONES & PINEGAR
    111 East Broadway
    Suite 900
    Salt Lake City, UT 84111

For the Defendant DRAPER CITY:

    Mike Barker
    DRAPER CITY ATTORNEY
    1020 East Pioneer Road
    Draper, UT 84020

Also Present:      Libby Lowther
                   Defendant

                   Dave Harris
                   Defendant

                   Heather Baugh
                   Defendant

                   John Eining
                   Defendant

                   Dominic Gianna
                   Plaintiff

                   Josh Chatwin
                   Plaintiff

                   Videographer

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

---

DEPOSITION OF JOSHUA PATTERSON                                3

C O N T E N T S
                                                         PAGE
Deposition of JOSHUA PATTERSON:

    Examination by Ms. Marcy......................    4
    Examination by Mr. Hamilton...................  187

-oo0oo-

E X H I B I T S

Exhibit    Description                              Page

    1   Field Training Manual of Officer
        Patterson.........................           49
    2   Draper City Police Department
        Policies and Procedures -
        Arrests/Laws Of...................           65
    3   Draper City's Training Records....           77
    4   Case File for Joshua Chatwin's
        Arrest............................           83
    5   Photos............................          120
    6   Defendant Josh Patterson's
        Response to Plaintiff's First
        Set of Interrogatories............          151
    7   Defendants Mac Connole and
        Draper City's Responses to
        Plaintiff's First Set of
        Interrogatories...................          153
    8   Crime Report Dated 5/18/2010......          159
    9   Transcript of Preliminary
        Hearing, 2/8/2011.................          170

-oo0oo-

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

---

DEPOSITION OF JOSHUA PATTERSON                                4

December 7, 2015                                   9:00 a.m.

**P R O C E E D I N G S**

    VIDEOGRAPHER:  This is the deposition of
Joshua Patterson.  Today's date is December 7th, 2015.
The time is 8:57 a.m.  This is the case of Joshua
Chatwin vs. Draper City.  Case No. 214-cv-375.  This
deposition is held at Clyde Snow Sessions in Salt Lake
City.  Will counsel please state their names and who
they represent?

    MS. MARCY:  Lisa Marcy for Joshua Chatwin.

    MR. HAMILTON:  Blake Hamilton, on behalf of
all the defendants.

    VIDEOGRAPHER:  Will the court reporter please
swear the witness?

    JOSHUA PATTERSON
called as a witness herein, having been first duly sworn
by the Certified Court Reporter to tell the truth, was
    examined and testified as follows:
            EXAMINATION
BY MS. MARCY:

    Q.  All right, Mr. Patterson.  Good morning.  As
I'm sure your attorney has told you, we're here to talk
about some events around May 18, 2010, and some things
before and some things afterward that happened in
Draper, Utah.

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON                                                             9

1  excavators, loaders, any yellow equipment, you could
2  say, that you see.
3      Q.  And do they offer a degree?
4      A.  Yes.  Certificate of completion.
5      Q.  And you got the degree?
6      A.  Uh-huh.
7      Q.  And so would that be considered graduating?
8      A.  Yes.
9      Q.  All right.  And when did you graduate?
10     A.  I believe it was '96, March of '96.
11     Q.  And after that, did you start working in
12 construction?
13     A.  Mm-hmm.
14     Q.  That's a "yes"?
15     A.  Yes.  I apologize.
16     Q.  No.  No.  No.  It's fine.  Everybody does it.
17         Where did you start working?
18     A.  In California.  Fairfield, California.
19     Q.  What company?
20     A.  Wetland Construction.
21     Q.  So maybe just give me -- so I don't have to
22 keep asking questions, just give me your work history
23 after that, through moving to Draper.
24     A.  My work history after that, just worked for
25 different construction companies in California; was

DEPOSITION OF JOSHUA PATTERSON                                                            10

1  there for quite a while; went back to Illinois and
2  worked construction -- heavy equipment there.  The
3  winters were real bad, so then transferred here into
4  Local 3 here, which is the same as California.
5          And then the winters were still bad -- the
6  work was slow here at the time, so that was the end of
7  that.  So 2010 was when I was done in the construction
8  field.
9      Q.  So you --
10     A.  With Grant Mackay Demolition here.
11     Q.  Okay.  I'm sorry.  See?  I talked over you.
12 Sorry.
13         So you worked with -- what was it?  Grant
14 Mackay?
15     A.  Mm-hmm.
16     Q.  Through 2010?
17     A.  Mm-hmm.
18     Q.  When -- when did you --
19         MR. HAMILTON:  If you can make sure you give a
20 "yes" or a "no."
21         THE WITNESS:  Yes.
22 BY MS. MARCY:
23     Q.  When did you work -- when did you complete
24 working at Grant Mackay?
25     A.  It was the fall of 2010, I believe.  August or

DEPOSITION OF JOSHUA PATTERSON                                                            11

1  September.  It was right -- I stopped with Grant Mackay
2  when I went to work for Draper, when I was hired by
3  Draper City.
4      Q.  Okay.  When were you hired by Draper City?
5      A.  I believe it was 2010.
6      Q.  Let me get the time line -- let me back up
7  just a little bit.
8          We're going to be talking today about events
9  that happened with Mr. Chatwin on May 18, 2010.
10     A.  Okay.  So that was -- September of 2009.
11     Q.  Okay.
12     A.  Is when I was done with Grant Mackay.
13     Q.  All right.  While you were at Grant Mackay,
14 were you training to become a police officer?
15     A.  Yes.  I was going to the police academy at
16 night.
17     Q.  When did you start going to the police
18 academy?
19     A.  So that would be January of 2009, I believe.
20     Q.  What made you decide to become a police
21 officer?
22     A.  The work was slow -- construction work was
23 slow.  The outlook didn't look good.  I had -- like I
24 said, I previously studied criminal justice back in
25 college.  So...

DEPOSITION OF JOSHUA PATTERSON                                                            12

1      Q.  Was it something that interested you, becoming
2  a police officer?
3      A.  Yes.
4      Q.  And why is that?
5      A.  Pardon me?
6      Q.  Why is that?
7      A.  To help people, to have an ability to do the
8  job, and to make a difference.
9      Q.  Okay.  You -- what month did you begin
10 training at the academy?
11     A.  I believe it was January.
12     Q.  Okay.  January of 2009?
13     A.  Yes.
14     Q.  Now, when -- when you say things like
15 "academy," I'll have to ask you questions about that,
16 because I don't know.  When you say the "academy," what
17 is the name of the academy?
18     A.  Salt Lake Community College, Class 060.
19     Q.  I'm sorry.  What --
20     A.  Class 060, which is the start of the class.
21 That's when the classes started in January.
22     Q.  So is it actually -- is it actually -- are
23 they classes that are offered by the community college?
24     A.  No.  It's the police academy itself.  It has
25 their own building here in Sandy.

DEPOSITION OF JOSHUA PATTERSON  13

Q. I see. So it's at the -- oh, it's at the Sandy Community --
A. Correct.
Q. -- College?
A. Yes. It's at its own facility in Sandy; and it's just the police academy, only, is what it is.
Q. Where is that located?
A. I don't know the address anymore.
Q. But roughly.
A. Somewhere around 90th South on the west side of the -- of the highway.
Q. Okay. Does it have a -- does it have a specific name for the academy?
A. SLCC Academy.
Q. Do you know if it's affiliated with SLCC?
A. I have no idea.
Q. Okay. So let's talk a little bit about those classes. What was required to graduate?
A. To graduate?
Q. Mm-hmm. Yes.
A. Well, it was ten months of training, two different levels. You had to pass the first levels. Everything -- you name it. Criminal procedure, physical training, defensive tactics, law, ethics, you know, you name it.

DEPOSITION OF JOSHUA PATTERSON  14

Q. Well, give me an idea when you say -- let's take -- you said you were taking the classes at night.
A. Correct.
Q. And it's --
A. Evening, if you will. 5:30 to whenever we were done.
Q. And how many months was that?
A. Ten months.
Q. So give me an example. When you -- when you say you took classes, you were trained. Let's talk about the defensive tactics. That's what you called it, right?
A. Yes.
Q. All right. Let's talk about your training for defensive tactics. Is that a phrase used by the police?
A. Yes.
Q. What does it mean?
A. Everything from arrest control, officer safety, controlling a scene, controlling a suspect.
Q. And what do they -- what do they teach about these defensive tactics?
    MR. HAMILTON: Objection. Form.
    THE WITNESS: They're -- I mean, the list is huge. I don't know what -- I mean, everything. Everything from first interaction with the suspect to an

DEPOSITION OF JOSHUA PATTERSON  15

arrest, to any kind of resistance.
BY MS. MARCY:
Q. Well, who teaches -- who teaches those courses?
A. The law enforcement instructor. They are law enforcement officers themselves, who are -- I don't know to say -- certified by POST. So a POST-certified instructor.
Q. Do you know any of the names of those instructors?
A. Not anymore, no.
Q. Well, let's talk about -- instead of talking about all the defense -- what did you say? Defensive tactics?
A. Yeah.
Q. Let's talk about -- let's talk about the training you got for somebody who you've detained.
A. Okay.
Q. All right. What do they teach you about -- from the time you -- you have to face that particular person?
    MR. HAMILTON: Objection. Form.
    THE WITNESS: I mean, I guess you would say about arrest control is what you're talking about. Just everything about safety, search incident to arrest, and

DEPOSITION OF JOSHUA PATTERSON  16

all the techniques of doing a safe search, of officer safety, of suspect safety. I'm not sure what else you want -- I'm not sure what you want to know.
BY MS. MARCY:
Q. Okay. What about an intoxicated person? What do they teach you about when you have to approach someone who you think is intoxicated?
A. It's the same as any other suspect -- any other subject. There's not anything different. Officer safety should always be the same.
Q. Okay. So -- but when you're approaching someone who's intoxicated, you have to give them, I'm assuming, those tests that you give them?
A. That's a whole different subject. If you're just talking FSTs, field sobriety tests.
Q. Okay. But as far as defensive tactics, there's no difference?
A. No.
Q. As far as anybody else that you have to approach?
A. Correct.
Q. Okay. All right.
A. Officer safety should always be the same.
Q. Okay. What about once you've -- what about the use of handcuffs? Are there specific training

DEPOSITION OF JOSHUA PATTERSON 49

1    MR. HAMILTON: Objection. Form.
2    THE WITNESS: No.
3  BY MS. MARCY:
4    Q. I'm sorry. What was your answer?
5    A. No.
6    Q. All right. When was the last time, when you
7  were a police officer, that you were trained on the use
8  of force?
9    A. While I was employed at Draper?
10   Q. Yes.
11   A. In the academy.
12   Q. And what was that training at the academy?
13   A. Are you talking classroom? Or physical? What
14 are you talking?
15   Q. Let's talk -- was there training in Part 1 of
16 the --
17   A. I don't recall.
18   MS. MARCY: Okay. Well, let me show you
19 something here. Mark this as Exhibit 1, please.
20   (Whereupon, Exhibit No. 1 was marked for
21 identification.)
22 BY MS. MARCY:
23   Q. Just take a look at it.
24   A. Okay.
25   Q. Do you recognize Exhibit 1?

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 50

1    A. No. Oh, it looks like FTO -- FTO Manual.
2    Q. The what?
3    A. Field Training Officer Manual, I believe.
4    Q. And what is the Field -- what is that?
5    A. When you're on field training, your field
6  training officer has to make sure to cover all these
7  topics in training and make sure that you are
8  satisfactory in being able to do those.
9    Q. All right. Now, on the -- on the bottom -- on
10 the bottom right of all these pages, you'll see these --
11 it will say -- there's a numbering system that says,
12 "Draper CHD" -- like on the -- "0668." Do you see that?
13   A. Yeah. Yes.
14   Q. I'm going to refer to just those last three
15 numbers as page numbers. It just makes it easier.
16   A. Okay.
17   Q. All right. Those are numbers that your
18 attorney stamped on the -- had stamped on the bottom.
19 That's how we do it.
20   A. Okay.
21   Q. Okay? So if you look at -- if you look at
22 669, it says, "January 2010." Have you seen that chart
23 before? Do you know what it is?
24   A. Yeah. That's the rotation schedule.
25   Q. Oh, is this -- is this the rotation schedule

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 51

1  for Draper City Police Department?
2    A. It appears so.
3    Q. So what is the field training manual? What is
4  this document?
5    A. What is this -- as I said, it's your field
6  training officer has this -- is given this to make sure
7  that the trainee is able to complete, satisfactory, all
8  these different items, all these different actions.
9    Q. Okay. So the field training manual, this --
10 this was -- this was done after you graduated from SLCC
11 Academy?
12   A. Correct.
13   Q. All right. This is -- you're being -- now, at
14 this point, with this field training manual, this is
15 documentation of -- of while you were -- what would you
16 call yourself at this point?
17   A. In training.
18   Q. In training. Got it. Okay.
19   A. And the field training officer is who has
20 this.
21   Q. All right. And who was your field training
22 officer?
23   A. I had three. I had Officer Holst, Officer
24 Newman, and I had -- hold on. I just went blank. I
25 apologize.

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 52

1    Q. Well, that reminds me. If you think of
2  anything during the deposition, if you forget something,
3  just come back and say, "Hey, I forgot to tell you this.
4  I forgot this name, or I forgot this training," or
5  whatever it is. Like I said, it's your deposition. You
6  can interrupt me. It's fine.
7    A. Okay.
8    Q. So you had another officer. How long did this
9  training -- for this field training manual -- how long
10 did this field training session last?
11   A. I don't recall. A few months, I believe.
12   Q. So they -- did they -- did Draper City train
13 you with all of these subjects before you actually were
14 on your own on the streets?
15   A. Correct. You have to pass this
16 satisfactorily.
17   Q. So is this fair to say part of this is a test?
18   A. Sure. Yes.
19   Q. Now -- so on -- on -- and look at 71 -- 671.
20 Oh, that could be the name you forgot. Eric Braegger?
21   A. Eric Braegger, no.
22   Q. No? Above that, it says, "Received." Is that
23 your signature?
24   A. Yes.
25   Q. So that's indicating the equipment that was

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON                    53

1  issued to you on October 29, 2009.
2      A.  Mm-hmm.  Yes.
3      Q.  When they issued that equipment to you at that
4  point, does that mean your training was over?
5      A.  No.
6      Q.  Does it mean anything?
7      A.  It means that -- this means the equipment that
8  you're issued, this is the document which you have.
9  That's what this checklist is.
10     Q.  So back on 669, you say January 2010, this
11 is -- this is the rotation schedule for January 2010?
12     A.  Yes.  It appears that way.
13     Q.  What does "Swing Street" mean?
14     A.  "Swing shift."  Officer Street is who I was
15 with.  So "swings" is the schedule, with "Officer
16 Street."
17     Q.  And what does -- I imagine -- "Graves," is
18 that nighttime?
19     A.  Correct.
20     Q.  And it says, "Aside swings" on the bottom
21 there.  What's that?  See on the 27th and 28th?
22     A.  "A side."  There's "A side" and "B side."  So
23 one side works certain days; and the B side works the
24 other days.
25     Q.  Okay.  I don't see monthly training here.  Is

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON                    54

1  that -- do you see it somewhere?
2      A.  On this one, no.
3      Q.  Why is -- why do you think that --
4      A.  I have no idea.
5      Q.  Okay.  Did you ever have the opportunity to --
6  if you look at 674 through -- through 685, it looks
7  like, at the top of that document, it says, "Field
8  Training Guideline/Tasks."  Have you seen this section
9  of the manual before?
10     A.  Of this?  Yes.
11     Q.  Okay.  So what is this document -- from 674 to
12 685, explain what this is for.
13     A.  These are the different tasks that you go over
14 with -- with your field training officer.  And if you
15 have completed those, or if you have experienced those
16 on duty, then it is checked off while you are a field
17 training officer.  If you have not, of course, then it's
18 not checked off.
19     Q.  All right.  So on the first column there, on
20 674, it says, "Recruit:  JP."  Is that you?
21     A.  Yes.
22     Q.  All right.  "FTO," what's that?
23     A.  Field training officer.
24     Q.  So do you know who that is right there?
25     A.  That's probably Brian Holst.

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON                    55

1      Q.  Okay.  And then, of course the date.  And it
2  says, "Discussed."  And then next to that, "Demo."  I
3  guess that means "demonstration"?
4      A.  Yeah.  I don't know.
5      Q.  Okay.  It's not checked anywhere; you would
6  agree with me, right?
7      A.  Correct.
8      Q.  Until the very bottom there, where it says,
9  "Daily Log Codes"?
10     A.  Correct.
11     Q.  So -- so that I understand this -- so you went
12 through on these particular dates and discussed each of
13 these subjects along the chart here, correct?
14     A.  Correct.
15     Q.  So for instance, if you go down to, under
16 "Alarms," where it says -- on the third line, it says,
17 "Panic Alarms."  And you go over here -- so that means
18 it was you; he was there; it was on November 6; and you
19 discussed panic alarms?
20     A.  Correct.
21     Q.  But there was no demonstration?
22     A.  Correct.
23     Q.  All right.  Okay.  I just want to make sure I
24 understand this.  When you discussed it, what do you
25 mean by "discussed it"?

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON                    56

1      A.  Generally means you've experienced it and
2  discuss it after:  What you've done wrong, what you've
3  done right, what to do better the next time.
4      Q.  Okay.  Do they -- and when they say
5  "discussed," is there any other place where the -- that
6  you know of -- where the FTO has to write down what you
7  discussed?
8      A.  I have no idea.
9      Q.  So look on 675.  Down at the bottom, it talks
10 about -- under "Behavioral Cues," the second one says,
11 "Extremely agitated."  And underneath, "Demonstrates
12 violent or bizarre behavior."
13     A.  Yes.
14     Q.  All right.  Thank you.  It says, this, that
15 you both discussed those two topics.  Do you know what
16 you discussed there?
17     A.  No.
18     Q.  Then on 676, right about in the middle, under
19 this "Behavioral Cues," it says, "Violently Resist
20 During Control and Restraint."  Underneath that,
21 "Violently Resist After Being Restrained."  What did you
22 talk about there?
23     A.  I have no idea.  I don't recall back then.
24     Q.  So you don't -- you don't have any information
25 about what you discussed about those two topics?

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 57

1    A.  That's correct.  I have no idea.
2    Q.  Let's see.  On 677, just on the top there, it
3  says, "Location of Draper City Ordinances," and "Discuss
4  Draper City Ordinances."  Do you -- so what did you
5  discuss there?
6    A.  I have no idea.
7    Q.  Same thing for "Department Policy," under
8  that.  Do you know what you discussed there?
9    A.  No.
10   Q.  So you don't have any information, either,
11 about what you discussed on those topics?
12   A.  That's correct.
13   Q.  Okay.  And then on 681, the fourth topic down,
14 entitled "Intoxicated Persons."  And it looks like it's
15 referring here, the first line, "Public Intoxication,
16 UCA" -- that's Utah Code Annotated, right?  So that's
17 code, state code, 76-9-601.  It looks like you discussed
18 that.  What did you discuss about that?
19   A.  I don't recall that either.  That was a long
20 time ago.
21   Q.  So you don't have information about what you
22 discussed about --
23   A.  Correct.
24   Q.  -- about -- let me finish -- about public
25 intoxication?

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 58

1    A.  Correct.
2    Q.  Oh, yeah.  If you look here, it says, "Public
3  Intoxication" -- "Demo" is checked for all of those.
4  Because there have not been very many that have been
5  checked here.  Do you know why that one would be
6  checked?
7    A.  I have no idea.
8    Q.  And then on 685 -- let's see -- one, two,
9  three, four -- four on the way down, it says, "Use of
10 Force."
11   A.  I'm sorry.  Which page?
12   Q.  I'm sorry.  685.  The fourth category down, it
13 talks about -- it's entitled "Use of Force."  And again,
14 it's got "Department Policy," "UCA," "Reasonable
15 Force/Escalation" -- I don't know what it says the use
16 of force is -- but those first three columns right there
17 says -- it looks like you discussed that Utah code
18 section on deadly force.  You would agree with me,
19 right?  Do you see it right there?  It's checked?
20   A.  Yes.
21   Q.  Okay.  And then under that, "Reasonable Force
22 and Escalation of Force."  That's checked underneath
23 there --
24   A.  Yes.
25   Q.  -- so you've discussed that.  What did you

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 59

1  discuss on those subjects?
2    A.  I have no idea.  I don't recall.
3    Q.  So you don't have any information on what you
4  discussed about those two subjects?
5    A.  Correct.
6    Q.  All right.  And then on 687, it's got -- up at
7  the top, it says, "Draper City Police Department, Field
8  Training Daily Observation Report.  Recruit: J.
9  Patterson."  That's down a little bit.  And it's dated
10 November 6, 2009.  Did you just have one report like
11 this?
12   A.  One report like this?  No.  I don't recall if
13 this was weekly, if this is -- I don't recall how long
14 these were, but that's through the entire process,
15 these.
16   Q.  So who -- because there's no -- there's no --
17 if you look on 688, that's part of the same document.
18 It has "Recruit Signature" and "Trainer Signature," and
19 this one is not signed.  So do you know who the trainer
20 was?
21   A.  I do not.
22   Q.  Maybe look down on the -- look down on the
23 comment section there.  Maybe that will remind you.  It
24 says, "This is your" -- it says, "first day on the road
25 with the trainer.  Had some issues with equipment and

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**

DEPOSITION OF JOSHUA PATTERSON 60

1  getting issues settled.  Day 1 was spent driving and
2  getting to know the area," and so on and so forth.  I
3  read that part correctly, up to the "so on and so
4  forth," right?
5    A.  Correct.
6    Q.  Does that -- does that refresh your
7  recollection of who the trainer was?
8    A.  No.
9    Q.  Okay.  So you don't know who put the X's on
10 the chart?
11   A.  That's correct.  I have no idea what happens
12 in this FTO process.
13   Q.  And I noticed down under "Field Performance,"
14 on that, you've got different topics there.
15 "Non-stress," "Stress," "Self-Initiated Activity,"
16 "Control of Conflict."
17   A.  I'm sorry.  Where is this?
18   Q.  I'm sorry -- okay.  If you go down to -- let's
19 see.  In the box itself, six -- the sixth one down, it
20 says, "Field Performance."
21   A.  Okay.
22   Q.  Does "field performance" mean that's something
23 that the trainer observed you in the field doing?
24   A.  Correct.
25   Q.  And I notice, it says, four down, "Control of

Phoebe S. Moorhead, CSR, RPR
**Reporters, Inc. 801-746-5080**