Lisa A. Marcy (#5311)
lmarcy@clydesnow.com
**CLYDE SNOW & SESSIONS, P.C.**
201 South Main Street, 13th Floor
Salt Lake City, Utah  84111
Telephone:  801-322-2516
Facsimile:  801-521-6580

John K. Johnson (#3815)
jkjohnson1080@hotmail.com
**JOHN K. JOHNSON, LLC**
10 West 300 South, Suite 800
Salt Lake City, Utah  84101
Telephone:  801-915-2616

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>　　　　Plaintiff,<br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>　　　　Defendants. | MEMORANDUM IN OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PROPOSED EXPERT WITNESS TREVOR PETERSEN<br><br><br>Civil No. 2:14-cv-375<br>Judge Dale A. Kimball<br>Magis. Judge Dustin B. Pead |

　　　　Plaintiff, Joshua Chatwin, by and through his counsel of record, hereby submits this

Memorandum in Opposition to Defendants' *Daubert* Motion *in Limine* to Exclude Testimony of

Proposed Expert Witness Trevor Petersen ("Defendants' Motion").

{01034609-1}

## ARGUMENT

**I.     Mr. Petersen is Qualified to Offer his Opinions in this Case.**

Trevor Petersen's ("Petersen") education, training and experience qualifies him to testify in this case on the use of force. In applying the liberal standard regarding expert qualification under Rule 702, there is no "specific method" by which the trial judge must determine the qualification of an expert. *Vondrak v. City of Las Cruces*, 2009 WL 3241555 *13 (D. New Mexico 2009). In the *Vondrak* case, the court found that the expert was qualified because he had taught certification courses, had been an adjunct professor, a lieutenant in the highway patrol, a classroom instructor, and developed policies concerning the use of force. *Id*. at *13. Petersen has a similar background. He is a police officer, served as a field training officer, SWAT member for the Weber County Sheriff's office as well as a use of force committee member. Exhibit 1, Curriculum Vitae of Trevor Petersen. He conducted classes on the use of force involving individuals under the influence of alcohol. He trained international forces on the use of force and worked for the United Nations Special Weapons and Tactics (SWAT) Unit.

Defendants claim that Petersen only made conclusions and provided no methodology about his opinion. However, Petersen stated, without making legal conclusions, that "[i]t is my opinion that Officer Joshua Patterson, the day of May 18, 2010, did not take the proper safety precautions, considering the intoxication level of Josh Chatwin and being handcuffed, on a concrete surface, as it pertains to the prisoner's safety, and did not use the proper arrest control tactics, weapon retention tactics, and use of force, while interacting with an arrestee, as proper law enforcement training would have provided." Exhibit 2, Petersen Expert Report, ¶ V. He explains that in his experience, the proper safety precautions when dealing with a heavily intoxicated person would be to place that person into a kneeling or prone position and consider

the surface on which the search is being conducted. Significantly, he explains how using proper weapons retention tactics would mean that Officer Patterson should have placed his hand on top of Chatwin's hand, if his version were accurate, to move the duty weapon away from the threat. He opined that if the retention lock really were not engaged, turning Chatwin 270 degrees away would allow the weapon to come out of the holster, causing a greater threat to everyone around. Obviously, Petersen could not recreate the situation. He would have had to find someone tall, willing to be placed in handcuffs, willing to become heavily intoxicated and then removed 270 degrees around until that person's head hit concrete. Instead, he analyzed the situation, in part, based upon Officer Patterson's own testimony. *Id*.

Petersen explained that his experience qualified him to evaluate use of force, because of his practice as a police officer, as a certified instructor, as an evaluator on the use of force committee, and the training that he received through POST as well as Weber County Sheriff's office. Weber County was a CALEA-accredited law enforcement agency, which is a nationally recognized accreditation to make sure that the office is up to the national standards. *Id*., 68:6-14. Petersen was also a use of force investigator. Exhibit 3, Portions of Trevor Petersen Deposition, July 13, 2016 ("Petersen Dep.") 71:15-23.

> A     It is my understanding that as a CALEA accredited law enforcement agency, that as long as we meet these standards, then that's the accepted practices nationwide. So that is my opinion of that being a standard methodology.

*Id.*, 70:5-9.

If this Court determines that other opinions by Petersen constitute legal conclusions, those portions of his testimony can be eliminated. Moreover, Rule 702 sets forth what the Tenth Circuit has described as a "liberal standard" regarding expert qualification. *United States v.*

{01034609-1}                                                         3

*Gomez*, 67 F.3d 1515, 1526 (1995). Rule 702 states: "A witness qualified as an expert by knowledge, skill, experience, training, or education" can offer opinion testimony. However, "[n]either Rule 702 nor any other rule or precedent. . .sets forth a specific method by which the trial judge must determine the qualification of an expert." *Id*. Petersen's experience qualified him.

Federal Rules of Evidence 704(a) provides "that an expert's opinion testimony 'is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' Opinions embracing legal standards may, however, be excluded for other reasons, such as the likelihood of jury confusion, the danger of unfair prejudice or the inability of such evidence to assist the trier of fact. *See* Fed. R. Evid. 403, 702 (citations omitted). *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987); 704(a). If legal terms are not so complex or shaded with subtle meaning to be beyond the understanding of the average person, then those opinion should be allowed. *Id*. In Petersen's testimony, he explained that he was talking about facts. In fact, Petersen never uses the phrase "objectively reasonable," the legal standard, or even the term "reasonable" anywhere in his deposition testimony. Exhibit 1, Word Index, p. 10.

Finally, Defendants claim that the safety procedures discussed by Petersen are irrelevant and will not aid the jury. Yet they are relevant. Petersen explained that training involving safety is important in analyzing how much force to be used:

> A   That is not correct, because as you see here, as my publications, these are things that I have written, and there are things in here that talk about the safety of law enforcement officers. The less lethal training talks about the safety of law enforcement officers. Policies that I have drafted, dealing with the –
> . . .
> Q   So I want to now focus in on your opinions that you gave. You state that 'he did not take the proper safety precautions.'
> . . .

> Q  Again, so your first opinion, as I understand it, is that Officer Patterson did not take the proper safety precautions. Is that fair to say, that's your first opinion you list in that paragraph? A. That is correct.
> Q  Okay. What methodology did you use to come to the conclusion that he didn't use the proper safety precautions?
> MS. MARCY: Objection, form.
> THE WITNESS: After reading through the reports, with there being multiple officers on scene, also as Officer Patterson describes, the intoxication level of Mr. Chatwin at the point of where they were on the grassy surface, where they first initially took him into custody, where they could have taken the safety precautions to perform the search of Mr. Chatwin's person at that point, where both Officer Harris and Officer Patterson were present while they were taking him into custody. And also using two officers to escort Mr. Chatwin to the police truck, or to where they were going to place him in the vehicle for transport.
> Q  So, really what you're saying, is that you think it was improper for them not to have done the search of Mr. Chatwin on the grass?
> MS. MARCY: Objection, form.
> THE WITNESS: It's an option for them to do it on that position where they took him initially into custody, while they had two officers present, and to also take that precaution to where they say that Mr. Chatwin was under such a highly intoxicated level to where they could have used two officers to escort him to the vehicle, because as he describes, that officer -- or Mr. Chatwin is unable to stand because of his highly intoxicated level.

*Id.*, 41:13-18; 53:4-6, 11-25; 54:1-19.

Petersen is discussing safety in regard to the use of force.

> Q  Is it really your whole opinion regarding safety, really does it just boil down to the fact that he was taken on to the concrete surface?
> A  No.
> Q  What else does it include?
> A  Having multiple officers to assist with handling Mr. Chatwin.
> Q  What do you mean by multiple officers?
> A  You have two sworn Draper City police officers on scene, Officer Harris and Officer Patterson. You also have a animal control officer, who I believe was Officer Balm. It's my opinion that if you have multiple individuals there to assist with taking an intoxicated person, as they put in their reports is barely capable of standing on his own, why wouldn't you use those multiple individuals to assist this highly intoxicated person to the vehicle to prevent him from harming officers and/or himself? Because at this point, to go and search Mr. Chatwin's vehicle, there are no other individuals inside the vehicle. There is no urgency, there is no threat of the

> vehicle harming them. The highest safety consideration is Mr. Chatwin himself.
>
> Q  So really, wouldn't you agree with me that your main critique is that this whole situation basically could have been avoided if they would have done the search there on the grass, and just put him in the prone position there on the grass?
>
> A  Could have put him in a prone, could have put him in a kneeling position. A second officer could have helped stabilize him. You could have done -- each officer take a side of Mr. Chatwin, and conduct the search of his person for any weapons or contraband. There you have two individuals helping support him, and if he's unable to be supported, then yes, you can put him in a kneeling position or in a prone position.

*Id.*, 59:16-25; 60:1-25; 61, line 1.

Petersen's assessment of the safety of Mr. Chatwin as well as bystanders and the officers is therefore intertwined with his analysis of use of force.

## **CONCLUSION**

Based on the foregoing argument, this court should deny Defendants' Motion.

DATED this 15th day of August 2016.

CLYDE SNOW & SESSIONS

/s/ Lisa A. Marcy
Lisa A. Marcy
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August 2016, I caused a true and accurate copy of the foregoing Memorandum in Opposition to Defendants' *Daubert* Motion *in Limine* to Exclude Testimony of Proposed Expert Witness Trevor Petersen to be filed via the Court's ECF system, which in turn sent copies to counsel of record in accordance with the Court's protocols.

/s/ Michelle Carter