# EXHIBIT 2

# Expert Witness Report of Trevor Petersen in the Matter of

# Josh Chatwin v. Draper City et al

## I. Statement of the Assignment

I have been retained to perform an evaluation of facts, and evidence and offer opinions regarding the actions of the Defendants which pertain to the Use of Force towards the Plaintiff, as well as, respond to proper training procedures, weapon retention, arrest control tactics, and safety considerations;
1) Whether Officer Patterson used proper force and adequate procedures designed to ensure the safety of the officers and arrestee
2) Whether Officer Patterson used excessive force under the circumstances present.
3) Did Draper City provide adequate training and procedures when interacting with intoxicated subjects.

My opinions expressed herein are based upon my examination of the materials itemized in Section III, and I reserve the right to revise my opinions if new information comes to light. I am being compensated at a rate of $150 per hour for all tasks performed in connection with this matter.

## II. Background and Qualifications

I completed my Category I Law Enforcement Officer (LEO) certification from the Utah Police Officer Standards and Training (POST) in 2000. After receiving my LEO certification, I was employed by the Utah State Parks and Recreation. Where I provided marine enforcement on Lake Powell in Utah.

Following my employment with the Utah State Parks and Recreation, I was employed by the Kane County Sheriff's Office as a narcotic agent. I worked several years as an undercover agent, posing as a student, in several high schools in Utah. I also worked as an investigative agent investigating cases involving the manufacturing, trafficking, distribution, and use of controlled substances. I worked with local, state, and federal law enforcement.

After my employment with the Kane County Sheriff's Office, I was employed with the Weber County Sheriff's Office. I served in many capacities during my employment which included; patrol, Field Training Officer (FTO), SWAT, less-lethal weapons/chemical munitions instructor, firearms instructor, gang /organized crime investigator, homicide investigator, Use of Force committee member (Weber County Sheriff's Office), criminal intelligence, financial crime investigator, Internet Crimes Against Children (ICAC) investigator, and Utah (POST) police academy instructor. During this time, I also instructed

many law enforcement related courses involving cyber crimes and digital forensics, crimes in progress, vehicle searches, felony stops, active shooter, hostage rescue, rappelling, weapons retention, decision making, firearms safety and marksmanship, less-lethal munitions deployment, and arrest control. I drafted department policy and procedures regarding financial and Internet crimes. In the course of my employment over the years, I have written, drafted, and instructed training and policies designed to ensure the safety of a law enforcement officer, arrestee, and citizens. I also conducted training classes involving the use of force involving individuals under the influence of alcohol. I currently hold instructor certifications with the Federal Bureau of Investigations (FBI) and the National Tactical Officer's Association (NTOA).

After my employment with the Weber County Sheriff's Office, I was employed with the Engility Corporation. I served as a Law Enforcement Professional (LEP) in Afghanistan. I trained the Afghanistan National Police (ANP) and coalition forces on law enforcement related subjects, including but not limited to; firearms safety and marksmanship, tactical questioning, battle damage assessments, post Improvised Explosive Device (IED) blast assessments, post mortem DNA and fingerprint collection/Enemy Killed In Action (EKIA) identification, detainee operations, investigation techniques, and digital forensics/biometrics. During my time in Afghanistan, I instructed and certified coalition forces on the use of less lethal munitions and use of force.

After my employment with the Engility Corporation, I was employed with DynCorp International. I served as a Police Advisor working with the United States Department of State and the United Nations in Haiti. I served as the assistant team leader for the United Nations Special Weapons And Tactics (SWAT) unit. I provided training and oversight of the Haitian and Jordanian SWAT teams. I trained and evaluated the SWAT teams on subjects, including but not limited to; firearms safety and marksmanship, arrest control tactics, use of force, human rights violations, hostage rescue, rappelling, physical fitness, street survival, vehicle assaults, open area searches, dynamic entry techniques, detainee operations, and community policing.

### III. Publications and Expert Testimony

During the course of my career, I have not commercially published anything and I have not testified in a deposition, court hearing, or any civil hearing, as an expert witness. I have drafted, published, and demonstrated several training presentations and department policies and procedures, such as:

a) (ISEE) Identifying & Seizing Electronic Evidence Training Power Point- December 2011
b) (ICAC) Internet Crimes Against Children Awareness Video- April 2011
c) Financial Crimes Training Power Point- April 2010
d) Robbery Training Power Point- October 2009
e) Weber Metro SWAT Less Lethal Training Power Point- August 2011
f) Identity Crimes Policy and Procedure (Weber County Sheriff's Office) April 2008

## IV. Materials Examined

I have reviewed:
a) The complaint in Chatwin v. Draper City et al
b) The deposition of Officer Joshua Patterson
c) The deposition of Officer David Harris
d) The deposition of Officer Heather Baugh
e) Witness statement of Kathy Torrence
f) Preliminary Hearing testimony Kathy Torrence
g) Witness statement of Mehdi Mahmudi
h) Witness statement of Steve Merrin
i) The deposition of Steve Merrin
j) Witness statement of Chris Middlemiss
k) Witness statement of Mike Washburn
l) Witness statement Jason Scott
m) The deposition of Jason Scott
n) Crime report and information for May 18th 2010

## V. Opinions

After reviewing all the materials stated herein, in Section IV of this report, it is my opinion that Officer Joshua Patterson, on the day of May 18th 2010, did not take the proper safety precautions, considering the intoxication level of Josh Chatwin and being handcuffed, on a concrete surface, as it pertains to the prisoner safety, and did not use the proper arrest control tactics, weapon retention tactics, and use of force, while interacting with an arrestee, as proper law enforcement training would have provided.

It is my opinion, based upon review of the facts presented, the materials referenced in this report and my training and experience, that Officer Patterson used excessive force in executing the arrest of Josh Chatwin, expecially in view of the fact that Josh Chatwin was handcuffed behind his back, was intoxicated, and therefore unsteady on his feet.

It is also my opinion, that Officer Patterson failed to use proper procedures that are designed to ensure the safety of the officers and an arrestee, who is handcuffed and intoxicated.

It is my futher opinion, that the training provided by Draper City to it's officers concerning the proper procedures to execute the arrest of a hancuffed/intoxicated individual was completely inadequate.

In Officer Joshua Patterson's deposition, Officer Patterson admits to receiving training in the Utah State Police Officer's Standards and Training (POST) on a "proper search". Officer Patterson testifies to, "all the techniques of doing a safe search, of officer safety, of suspect safety". Officer Patterson's deposition he states, "It's mostly procedures of incoming suspect standing, kneeling prone, techniques to use for your safety, techniques to use for their safety". In this case, were the proper precautions taken towards the "suspect safety"?

It is my opinion that the proper safety precautions, for the officers and suspect, were not taken into consideration. In Officer Patterson's deposition, he testifies that due to the intoxication level of Josh Chatwin, he has to hold Josh Chatwin up, so he doesn't fall and hit the ground. Officer Patterson testifies to his knowledge of performing a "search incident to arrest" of individuals who are standing, kneeling, and prone. Officer Patterson also testifies to moving Josh Chatwin to Officer Harris' patrol truck, in an attempt to keep Josh Chatwin in a standing position. In my opinion, the proper safety precautions, when dealing with a heavily intoxicated person, would be to put them into kneeling or prone position, and consider the surface in which the search is being conducted, where the arrestee was not a risk of falling during the search. In my opinion, moving Josh Chatwin next to Officer Harris' patrol truck to conduct a search of his person puts Josh Chatwin at a greater risk of injury, if he does fall, because Officer Harris' patrol truck is located on concrete.

According to depositions from the officers, Josh Chatwin is constantly swaying and barely able to keep his own balance, yet Officer Patterson is the only officer, out of 3 officers on scene, dealing with Josh Chatwin. Officer Harris performs an inventory search of Josh Chatwin's vehicle and leaves Officer Patterson to search and secure Josh Chatwin. There is no urgency to search a vehicle with no other occupants, prior to searching and securing an arrestee. In my opinion, Officer Harris either felt that Officer Patterson was capable of securing Josh Chatwin himself, or Josh Chatwin was not a credible threat to the officer's safety.

Officer Baugh testified in her deposition that she was on scene to assist with this incident, yet Officer Baugh has only attended the National Animal Control Academy (NACA). Officer Baugh has been trained with the use of an ASP, pepper spray, and Taser, as it relates to animals. According to Officer

Baugh's deposition, she states that she works for the Draper City Police Department and has been ordered, by her supervisor Officer Wilson and Chief Mac Connole, to assist with police calls for service, even if they don't relate to an animal issue. Officer Baugh testifies that she has not attended the Utah Police Officer Standards and Training (POST) certification courses, nor had any formal training from the Draper City Police Department. Officer Baugh testified if someone aggressive came toward her that, "That is when my Taser would come handy, I am assuming", although Officer Baugh has not been certified in the use of a Taser against a person. In my opinion, Officer Baugh has been ordered to assist with law enforcement issues, when she has not been trained or certified to handle these types of calls.

Officer Baugh testifies to being present and observing this incident. Officer Baugh observes Josh Chatwin's fingers touching the front of Officer Patterson's duty belt, but does not observe Josh Chatwin attempt to remove Officer Patterson's duty weapon. Officer Baugh also does not hear the retention lock release on Officer Patterson's holster.

Officer Patterson testifies that he heard the retention lock on his duty holster unlock and see that Josh Chatwin has three fingers on his duty weapon. Officer Patterson also testified that he had a hold of the handcuffs, on Josh Chatwin, with his left hand. Officer Patterson then places his right hand on Josh Chatwin's bicep and "moves" him to the ground. At this same moment, Josh Chatwin becomes completely limp, falls to the ground, and hits his head on the concrete. In my opinion, proper weapons retention tactics, taught in local, state, and federal law enforcement, teaches you to place your hand on top of a suspect's hand, which is attempting to remove the duty weapon and push down, in an attempt to keep the weapon in the holster. The second part of these tactics, would be to move the duty weapon away from the threat and perform other soft hand techniques (i.e., wrist locks, twist locks, pain compliance, etc.) to break away the suspect's hold on the weapon. In my opinion, while Josh Chatwin is handcuffed, this not only restricts his ability to injury himself or others, but the handcuffs can be used to assist in twist lock controls. In my opinion, by moving Josh Chatwin away, turning him approximately 270 degrees away, while handcuffed and while he allegedly had a hold of the Officer Patterson's duty weapon, without the retention lock engaged, would allow the weapon to come out of the holster. This would in turn cause a greater threat to the officers, suspect, and bystanders. It is my opinion, that the fact that Josh Chatwin is in handcuffs, this in itself should be a safety consideration, before throwing him to the ground. Josh Chatwin does not have the ability to stop himself from falling or grab on to anything, because his hands are handcuffed behind his back. It is also my opinion, that if Officer Harris had been assisting in restraining Josh Chatwin, while Officer Patterson performed the search of Josh Chatwin's person, the injury to Josh Chatwin would have been avoided.

According to the witness statement of Kathy Torrence, she observes the entire incident on May 18th 2010. Kathy Torrence observed two officers take Josh Chatwin into custody, while they were located on a grassy area. Kathy Torrence observes the two officers conduct a search of Josh Chatwin's person, while on the grassy surface. One officer (Officer Harris) goes to Josh Chatwin's vehicle (to perform an inventory search), while the other officer (Officer Patterson) moves Josh Chatwin to a patrol truck located in the driveway. At this point, Officer Patterson throws Josh Chatwin to the ground, causing significant bodily injury to Josh Chatwin's head. In my opinion, according to Kathy Torrence's written statement, testimony at preliminary hearing, and deposition, two officers used the proper procedures, when initially taking Josh Chatwin into custody. Two officers assisted with placing Josh Chatwin in handcuffs. A search incident to arrest, was conducted on Josh Chatwin's person, by two officers, but Officer Harris leaves Officer Patterson to secure Josh Chatwin alone. In my opinion, if Josh Chatwin was resisting arrest and/or an unruly individual, Officer Harris should have assisted with securing Josh Chatwin safely in the patrol truck.

## VI. Methodology

The methodology used in coming to my opinions is standard methodology used by someone with my training and experience in evaluating the force used in an arrest, is the methodology generally accepted by my peers in the law enforcement community and is in accordance with standard, recognized, proper law enforcement procedures used by police departments, domestic and international, to determine whether an arrest was made with force under the circumstances.

## VII. The Reasons and Bases for my Opinions

The reasons and bases for my opinions are:

a) The materials examined
b) My years of experience as a law enforcement officer and instructor
c) My knowledge of use of force training, procedures, and evaluations
d) My publications, training curriculum, and policies, ensuring the safety of officers, suspects, and bystanders.

## VIII. Conclusion

My opinions, included in Section V, are that Officer Patterson did not take the proper officer/suspect safety precautions and did not use proper arrest control or weapons retention tactics on May 18th 2010. Officer Patterson used excessive force against Josh Chatwin. Officer Patterson, Officer Harris, and Office Baugh did not use the proper techniques or training to protect Josh Chatwin, an intoxicated individual, on concrete, in handcuffs and in custody, further described as a "prisoner" as defined in the Utah Code Annotated.

My opinions also include the fact that Officer Patterson and Officer Baugh, both employees with the Draper City Police Department on May 18th 2010, both testified that they either did not recall use of force training being provided to them by Draper City or they had never received use of force training, as it pertains to an intoxicated person.

_____        1/14/15
Signature                               Date