R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>             Plaintiff,<br><br>v.<br><br>DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>             Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND REPORTS OF CHRIS LAWRENCE**<br><br>Civil No. 2:14-cv-00375<br>Judge Dale A. Kimball |

Defendants Draper City, Officer J. Patterson, Officer David Harris, Officer Heather Baugh, and John Does 1-10 (collectively the "Defendants") hereby submit this Memorandum in Opposition to Plaintiff's Motion in Limine to Exclude Testimony and Reports of Chris Lawrence (the "Lawrence Motion").

## BACKGROUND

Defendants retained Chris Lawrence ("Lawrence") as an expert witness to testify and give an expert report regarding eyewitness perception. Lawrence's expert report provides

opinions on various factors that can affect eyewitness perception including familiarity with police training, tactics, and equipment, the positioning of eyewitnesses, human visual considerations, and focus of attention.  Lawrence Report, at ¶ 1. Plaintiff seeks to preclude Defendants from using Lawrence as an expert because Plaintiff claims that Lawrence is not qualified to opine on such matters, that his opinions usurp the role of the Court and jury, and that his opinions exceed the scope of his expert disclosure.

## ARGUMENT

**I.     STANDARD FOR DETERMINING THE ADMISSIBILITY OF NON-SCIENTIFIC EXPERT WITNESS TESTIMONY.**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011).  In *Daubert*, the Supreme Court interpreted Rule 702 as entrusting district courts with a "gatekeeping" function of ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but also reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Under *Daubert*, district courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

Generally, "[t]he district court retains broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)). Courts have applied the following factors in evaluating the reliability of an expert witness: "(1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the degree of the method's or conclusion's acceptance within the relevant scientific community; and (4) in the case of a particular scientific technique, the known or potential rate of error." *Id.* at 593–4. Relevancy or "fit" requires that the proposed expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

"[I]t is well established that the 'admission of expert testimony is a matter left to the discretion of the district court….' " *Lakeman v. Otis Elevator Co.*, 930 F.2d 1547, 1554 (11th Cir. 1991) (quoting *Wilmington v. J.J. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986)). As such, "[t]he district court retains broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)).

## II. LAWRENCE'S TESTIMONY REGARDING EYEWITNESS PERCEPTION IS ADMISSIBLE.

Lawrence's testimony regarding eyewitness perception is admissible for three reasons. First, eyewitness perception expert testimony may be properly admitted under *Daubert*. Second, Lawrence is qualified to testify regarding eyewitness perception because of his operational and

instructional experience on this topic.  Third, Lawrence's testimony regarding perception will assist the jury because of his specialized knowledge on eyewitness perception of police tactics.

    a. **Eyewitness perception testimony may be properly admitted under *Daubert*.**

In *United States v. Smith*, the Tenth Circuit addressed the admissibility of expert testimony on eyewitness identification: "We agree that expert testimony on eyewitness identification may be properly admitted under *Daubert* in certain circumstances…."  *See United States v. Smith*, 156 F.3d 1046, 1053 (10th Cir. 1998); *see also Robertson v. McCloskey*, 676 F. Supp. 351, 353–54 (D.D.C. 1988) (applying principles relating to eyewitness identification in criminal cases to a memory and perception expert in a civil matter).  Examples of the narrow circumstances where this type of expert testimony has been admitted include "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and [such] psychological phenomena as the feedback factor and unconscious transference." *Id.* at 1052–53 (quoting *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) (internal quotations and citations omitted)).  In addition to the *Daubert* factors, key factors implied in *Smith* in determining whether to admit this type of expert testimony "are the extent to which the [opposing party's] case is dependent upon the eyewitness evidence, and the number of eyewitnesses that will be testifying." *United States v. Oliver*, No. 2:00-CR-087ST, 2000 WL 35610160, at *2 (D. Utah Apr. 18, 2000) (citing *Smith*, 156 F.3d at 1054).

In this case, Lawrence is as an expert on eyewitness perception who seeks to testify in a civil matter involving police activity.  Plaintiff's version of the events in question relies entirely on the eyewitness testimony of Kathy Torrence ("Torrence").  As with an eyewitness identifying a perpetrator, a witness describing the type of police force she observed raises issues regarding perception sufficient to support the use of an expert on those matters.  Because the admission of

expert testimony on eyewitness perception is permissible within the broad discretion of the court, the court should deny Plaintiff's motion to exclude Lawrence's testimony and reports.[1]

    b. **Lawrence is qualified to testify regarding eyewitness perception because of his experience with police training on this topic.**

Contrary to Plaintiff's contentions, Lawrence does in fact provide sufficient details regarding his experience and qualifications in order to testify as an expert on eyewitness perception. In general, Rule 702 has a liberal standard regarding expert qualifications such that "the court's discretion in determining the competency of an expert is broad." *See United States v. Gomez*, 67 F.3d 1515, 1525–26 (10th Cir. 1995) (citing *United States v. Markum*, 4 F.3d 891, 896 (10th Cir. 1993) (additional citations omitted)). Lawrence's qualifications with respect to eyewitness perception include 20 years as an instructor on this issue for purposes of police training and 36 years of police operational and training experience. Lawrence Report, at ¶¶ 3–4. Lawrence specifically states, "I have trained police officers in respect to human performance issues (e.g., reaction and response times) and limitations of human perception during rapidly unfolding, tense, uncertain events and the impact these factors might have on an investigation." Lawrence Report, at ¶ 6. In addition, Lawrence has presented at a police training conference, has acted as a facilitator and instructor in a police certification course, and has previously testified as an expert on the topic of "human factors associated with police use of force." Lawrence Report, CV. Given the court's broad discretion in determining the competency of an expert, the above qualifications are sufficient for Lawrence to testify as an expert regarding eyewitness perception.

---

[1] Lawrence's expert report should be admitted in its entirety. However, to the extent that the court finds the report to include improper opinions, only those portions of the report should be excluded. Lawrence should otherwise be permitted to testify as an expert witness on eyewitness perception.

c. **<u>Lawrence's testimony regarding eyewitness perception will assist the jury.</u>**

Plaintiff claims that Lawrence's testimony improperly usurps the role of the jury and the Court, but fails to elaborate on how this is the case.[2] In reality, Lawrence's testimony will help the jury by providing information outside the experience of a layperson in order to help them evaluate the differing accounts of the events in question. Courts consider various factors to determine whether expert testimony will assist the trier of fact including "whether the testimony 'is within the juror's common knowledge and experience and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). Generally, courts must "conduct a 'common-sense inquiry' into whether a juror would be able to understand certain evidence without specialized knowledge." *Id.* (quoting *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000)).

Plaintiff fails to acknowledge Lawrence's firsthand experience as a perception expert through 16 years of experience as a police officer. Lawrence Report, at ¶ 4. Both Lawrence's operational experience as a police officer and his instructional experience on police training provide specialized knowledge regarding eyewitness perception of police tactics. For example, Lawrence's opinions regarding eyewitness perception of a gun holster will assist the jury because an ordinary layperson does not understand the typical means and time required to remove a gun from a gun holster and to fire it. Further, Lawrence's report does not state legal conclusions nor does it improperly evaluate the credibility of Torrence or Officer Patterson. Rather, Lawrence's report *compares the various factors that could affect Torrence's perception*

---

[2] Plaintiff apparently finds fault with Lawrence's reliance on books and studies for his expert report without explaining why this is inappropriate.

*with the factors that could affect Officer Patterson's perception. See* Lawrence Report, at ¶ 71 ("Each has their own interpretation based on context of the circumstances, their individual experience, and expectations, particularly as they compare to each other."). Because Lawrence's expert testimony regarding eyewitness perception will be helpful to the jury, it should be admitted pursuant to the court's broad discretion to admit expert testimony.

### III. LAWRENCE'S TESTIMONY REGARDING EYEWITNESS PERCEPTION OF POLICE TRAINING AND TACTICS IS ADMISSIBLE.

#### a. Lawrence's testimony does not violate Rule 26 because it is within the scope of his disclosed expertise on eyewitness perception.

Lawrence's expert report does not violate Rule 26 by providing opinions regarding police policy and reasonableness. Rule 26(a)(2) requires that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). While the precise nature of Plaintiff's allegation of a Rule 26 violation is never explained, Plaintiff appears to claim that Lawrence's report violates Rule 26 because it allegedly contains opinions that exceed the scope of his disclosed expertise on eyewitness perception.

Plaintiff misconstrues Lawrence's report. Lawrence's discussion of police training and tactics is within the scope of his disclosure because it serves as background information to explain and support his opinions on eyewitness perception. As explained in the first paragraph of his report, Lawrence discusses issues relating to "police training in subject control and self-defense" in order to explain "*how that training might impact the interpretation of an event from a police point of view compared to that of a person who has not had or is unfamiliar of [sic] this type of training.*" Lawrence Report, at ¶ 1 (emphasis added). Lawrence's main

opinion[3] on this topic is summarized as follows: "Members of the public, unfamiliar with police procedures, training, or experience with a physical struggle while trying to take a person into custody, may not fully understand or could misinterpret what they experience." Lawrence Report, at ¶ 31. Lawrence then gives more specific opinions illustrating this main opinion, such as his opinion that while testing indicates that "…it is possible to disarm a police officer while remaining handcuffed…, this would surprise many persons inexperienced with how some holsters are designed and the constraints handcuffs actually impose." Lawrence Report, at ¶ 36. Because Lawrence's opinions relate to eyewitness perception, Lawrence's Report does not exceed the scope of his disclosure as an expert witness on the issue of perception and therefore does not violate Rule 26. Moreover, to the extent that any portion of Lawrence's report overlaps with Ken Wallentine's opinions, this does not preclude Lawrence from testifying due to the differing purpose and scope of Lawrence's testimony.

      b. **Alternatively, Lawrence's testimony does not prejudice Plaintiff.**

Even if Lawrence's expert report includes opinions on police policy and reasonableness that exceed the scope of disclosure, these opinions do not prejudice Plaintiff. In order to avoid prejudice to the opposing party, parties must disclose the substance of an expert witness's testimony. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002). Expert reports "are intended not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2) advisory committee note

---

[3] In Section C of Plaintiff's Motion in Limine, Plaintiff takes issue with Lawrence's alleged failure to reference his expert opinion on perception in the concluding section of his report. Plaintiff misconstrues Lawrence's conclusions by merely quoting one paragraph of many simply because that paragraph (perhaps unartfully) begins with the words "[i]n sum." Lawrence actually provides numerous opinions and supporting reasons found throughout his report, as exemplified in this section.

(1993)). "Such disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *Id.* (quoting Fed. R. Civ. P. 26(a)(2) advisory committee note (1993)).

Here, Lawrence's expert report fully disclosed the substance of his testimony by setting forth his opinions on eyewitness perception and explaining how those opinions relate to police training and tactics. To the extent that Lawrence's expert report includes opinions on police policy and reasonableness unrelated to perception, these opinions do not prejudice Plaintiff. Plaintiff has not been deprived of a reasonable opportunity to prepare for effective cross-examination or to arrange for expert testimony from other witnesses. On the contrary, Plaintiff's own experts also opine on issues of police policy and reasonableness, rendering Plaintiff capable of effectively cross-examining Defendants' expert witnesses on this topic as well. *See Lakeman v. Otis Elevator Co.*, 930 F.2d 1547, 1554 (11th Cir. 1991) (affirming the denial of a motion for a new trial on the basis that expert witnesses "testified on matters outside their identified areas of expertise" because "counsel was well versed" on the matter and "capable of cross-examining [the expert witnesses] effectively."). Given that Lawrence's testimony would not prejudice Plaintiff, it should be admitted notwithstanding any alleged Rule 26 violation.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion in Limine to Exclude Testimony and Reports of Chris Lawrence.

DATED this 18th day of August, 2016.

**DURHAM JONES & PINEGAR**

  /s/ R. Blake Hamilton
R. BLAKE HAMILTON
ASHLEY M. GREGSON

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served this 18th day of August, 2016, via electronic filing upon the following:

Lisa A. Marcy
CLYDE SNOW & SESSIONS
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

John K. Johnson
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, UT 84101

                                                /s/ Sarah Peck
                                                Secretary