**EXHIBIT 17**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| JOSHUA CHATWIN, | : | |
| Plaintiff, | : | |
| vs. | : | No. 2:14-cv-375 |
| DRAPER CITY, *et al.*, | : | Report of Kenneth R. Wallentine |
| Defendants. | | in response to Kirk M. Torgensen |
| | : | report |

The following report of Kenneth R. Wallentine is submitted after review of the following documents, pleadings, records, and reports:

    Draper City Police Department report and DUI report

    Draper City Police policies relating to use of force

    Joshua Chatwin deposition transcript

    Joshua Patterson deposition transcript

    Mehdi Mahmoudi deposition transcript

    David Harris deposition transcript

    John Eining deposition transcript

    Heather Baugh deposition transcript

    Kathy Torrence deposition transcript

    Steven Merrin deposition transcript

*Chatwin v. Draper City, et al.*
*Report of Kenneth R. Wallentine*
*in response to Kirk M. Torgensen*     1

parts one and two. Police trainees were also required to successfully complete scenario exercises and demonstrate appropriate use of force in compliance with state and federal constitutional parameters and statutes. A trainee could not be certified as a law enforcement officer in the state of Utah without passing a comprehensive written test that particularly tested knowledge of the laws addressing use of force.

Though the Draper Police Department 2010 use of force policy was later amended to its current form–similar to the overwhelming majority of Utah agencies–the policy provided sufficient guidance for an officer to know the agency's policy on the proper and constitutionally-permissible use of force by a police officer. Draper Police Department officers who were certified as law enforcement officers by the Utah Peace Officer Standards and Training Division were trained to the standards then generally accepted on the proper and constitutionally-permissible use of force and had successfully passed examinations essential to certification and hiring as a police officer.

Many police executives recognized a need for more clearly-expressed and detailed policy statements to guide police officers and to shape police procedures and training. In the few years preceding the adoption of the 2013 Draper Police Department policy 300, a committee formed under the direction of the Utah Chiefs of Police Association studied then-existing policies, possible inadequate explanations of policy, and policy-drafting options. That committee's work lead directly to widespread policy changes at many agencies, including Mr. Torgensen's former agency and the Draper Police Department.

The Draper Police Department adequately trained its officers to arrest persons, including intoxicated persons. Police officers receive training on arrest control techniques during the Utah

*Chatwin v. Draper City, et al.*
*Report of Kenneth R. Wallentine*
*in response to Kirk M. Torgensen*                    3

# EXHIBIT A

# Expert Witness Report of Kirk Torgensen
# In the matter of Josh Chatwin v. Draper City et al.

I. Statement of Assignment

I have been retained to perform a review of the Draper City policies and procedures and training with respect to use of force issues. My opinions expressed herein are based upon review of the material summarized herein in section III. My firm is being compensated at the rate of $150 per hour for all tasks performed in connection with this matter. I have not testified as an expert in any case prior to this case. I have not published any articles.

II. Background and qualifications

I have a law degree from the University of Utah and became a member of the bar in 1986. I went into the United State Air Force in 1986 as a Judge Advocate General and remained for four years. In 1990 I Joined the Utah Attorney General Office as an Assistant Attorney General. In 1991 I became the section Chief of the Civil Rights section and remained in that position for several years. I left the AG office in 1998 to become the Director of Adult Probation and Parole. After 3 years in this position I was appointed the Chief Deputy Attorney General a position I held for 13 years. I am currently working for Private OPS a local private investigation firm in Salt Lake City.

I have been asked to review the policy and procedures for Draper City PD on the use of force and training provided by the department in 2010 at the date prior to the incident in question in this case. My background and experience allows me to review these issues as I have spent over 23 years teaching police officers and criminal justice students about the constitutional and statutory requirements associated with the use of force. In 1990 I began teaching at the Utah Police Academy and I taught the legal curriculum to basic cadets trying to become certified as police officers. This was a 40 hour legal block that included the legal issues surrounding the use of force. We discussed the constitutional issues and the case law that gives guidance as to how the use of force would be viewed by courts and juries to determine if it was reasonable. I taught this curriculum on average at least 5 to 6 times a year. This included also teaching within the Advanced Officer training program. This included officers who were already certified and had been police officers for years. This training was certified by the Police Academy and was part of the 40 hours officers are required to complete each year to maintain their certification. I also provided similar training to departments upon their request.

Over the 23 years of providing this training I spent hundreds of hours and taught thousands of officers on these issues. I also taught as an adjunct professor for Weber State University in their Criminal Justice program. I taught there for 24 years and in that capacity I also taught the constitutional and statutory issues associated with a police officers use of force. We reviewed case law and examined all the factors a court

would look at to determine if the force used was constitutionally acceptable. Over the 24 years at Weber State I taught well over a thousand students on these issues.

As a police academy certified instructor and adjunct professor I also taught officers and students about the use of policy and procedure, and its importance in guiding officers on important legal standards and how to comport with those standards. I explained the need for policy and procedure to be straight forward and simple, but also to be thorough enough that it could guide a relative inexperienced officer in what was expected of them and how to meet those expectations. We discussed how critical solid policy is in protecting against liability and how critical it is to train officers with respect to the policy and the issues involved.

As the Chief Deputy Attorney General for 13 years I had responsibility to create policy and procedure office wide, which included policy and procedure for the 30 plus sworn officers in the office. I reviewed policy for adequacy and approved policies as part of the office policy manual. This included use of force policy and procedure for the sworn officers and associated training on that policy. I also was responsible to review use of force complaints and issues and discipline officers if they violated the policy or did not meet the expected standard. I did this for the entire 13 years I was the Chief Deputy.

In addition, in August 2011 I was awarded a contract with a partner to provide Federal court ordered training to the entire Atlanta Georgia police department. This training was mandated by the Federal court as a result of losing a civil rights lawsuit. The training was on the fourth amendment and focused heavily on search and seizure constitutional issues as well as training on the departments policy and procedure and the necessity to know and follow policy and procedure. Over 2000 officers had to receive four hours training on these issues. I spent several weeks providing this training.

II. Materials Examined

I have reviewed:
  (a) the complaint in Chatwin v. Draper City et al
  (b) The deposition of Deputy Chief Eining
  (c) The deposition of Officer Joshua Patterson
  (d) The deposition of Officer Harris
  (e) The deposition of Officer Baugh
  (f) Witness statement of Kathy Torrence
  (g) 2010 use of force policy at Draper PD
  (h) 2013 use of force policy at Draper PD
  (i) The deposition of Kathy Torrence
  (j) The deposition of Joshua Chatwin
  (k) The deposition of Mehdi Mahmoudi
  (l) The deposition of Steven Merrin
  (m) The deposition of Jason Scott
  (n) The criminal preliminary hearing transcript of Joshua Chatwin
  (o) The criminal Information of Joshua Chatwin
  (p) The 2011 training documents provided by the defendants

III. Opinions, Basis and Reasons for Opinions

After reviewing all the material stated herein it is my opinion that the Draper policy in place at the time of this incident on May 18, 2010 was extremely inadequate and did not provide sufficient guidance and direction on the constitutional and statutory issues that an officer faces in use of force situations. The policy is completely lacking in any concrete guidance on the factors to consider to determine if the use of force was reasonable as dictated by the Constitution and Utah state statutes. Furthermore, there is no evidence of any training provided to Officer Patterson by the department as there are no training records. Also Officer Patterson admits in his deposition that he could not recall receiving any such training.

The 2010 use of force policy in place at the time of this incident simply cites the Utah state statute which states that force may be used which is reasonably believed to be necessary to affect an arrest. In other words, the officers are told simply to use force that is reasonable. This type of conclusory statement is of little or no help to officers. There is nothing within the policy that helps an officer analyze and dissect what factors should be considered in deciding if any particular use of force is reasonable under the circumstances. This coupled with the fact that Draper PD did not produce any evidence of any training provided to Officer Patterson since joining the force and Patterson's own admission that he could not recall receiving any such training shows a lack of attention to the department's legal obligations. The department, in my opinion, was woefully inadequate in having sufficient policy and procedure, and associated training, to assure officers would meet their legal obligations. The basis and the reasons for my opinion are as follows: The 2010 policy is nothing more than a cite to the state statute that says the force used must be reasonable. This statement provides no clear guidance or instruction on how to determine what use of force is reasonable. It does not provide any factors to consider or any concrete guidelines on how to ascertain the amount of force that would be reasonable. It is merely a statement that states the standard without any factors or guidance on how to meet that standard.

Having a comprehensive and through policy is only the first step in assuring that an officer is prepared to only use the force that is reasonable. Training is an absolute critical component. An officer must be trained thoroughly on how to deal with situations and circumstances in a reasonable way so when confronted with that situation their training helps them react appropriately. An officer will react according to their training if that training has been conducted appropriately and with sufficient repetition. That is why on-going training on such situations and appropriate responses is critical. In this case, Draper PD has not provided much, if any evidence, of any such training.

I also reviewed the 2013 policy adopted by Draper PD and compared it to the 2010 policy. The 2013 policy is a much more comprehensive policy. For example this policy covers critical topics like the fact the officer cannot be the aggressor and it importantly lists factors to be considered in determining if the force is reasonable. Factors listed are (a) through (q) and contain factors like the effects of drugs and alcohol

and the subject's mental state or capacity. Also the degree to which the subject has been effectively restrained and their ability to resist must be factored in to the situation All of these issues end up being critical issues in the incident on May18 2010. The 2013 policy is an example of a policy that gives concrete factors to be aware of and of course if there is solid training that teaches officers on how to consider these factors and others, it greatly increases the likelihood of a desired outcome. The training received at the police academy is meant to provide just the minimum amount of training necessary and it is the departments responsibility to continue to train the officer on critical issues like the use of force.

My opinions are based upon my twenty four plus years of study and review of writing proper policy and procedures and my teaching and training of others on how to do the same, and my years of producing and implementing policy and procedure and providing training for employees of the Utah Attorney General office. I also have spent hundreds of hours studying case law on the factors in the use of force and training officers on those issues and what the legal standards are with respect to those issues.

IV. Conclusion

I conclude that Draper PD. Did not have a sufficient policy and procedure in place in May 2010 to meet their obligations under the constitution, to train and guide officers in the department in the proper and legal use of force. They also did not provide evidence of specific sufficient training on the proper use of force that is required to meet their obligations under the law.

_____          __1/12/16_____
         Signature                        Date

## **ADDENDUM TO EXPERT REPORT OF KIRK TORGENSEN**

I will use:

    1.    Draper City's policies and procedures on the use of force by police officers on arrestees in effect in 2010 and 2013 produced by Defendants and identified by Defendants as such;

    2.    Documents produced by Defendants and identified by Defendants as training procedures on the use of force by police officers on arrested persons;

I may use:

    1.    A summary chart to explain or illustrate my opinions and conclusions;
    2.    Other documents produced by the defendants in this case;
    3.    Photographs and illustrations, including computerized images, of an example of ex-Officer Patterson's handcuffs, gun and holster used in the arrest of Mr. Chatwin;
    4.    Illustrations, including computerized images and photographs, of the location of the arrest; and,
    5.    An example of the type of gun, handcuffs and holster used by ex-Officer Patterson in Mr. Chatwin's arrest.

# Kirk Torgensen

385-216-5607
e-mail: ktorgens@gmail.com

## Qualifications Summary

Over 27 years of legal experience including Prosecutor, Defense Counsel, Civil Litigator and Law Instructor. Management experience includes over 13 years of managing over 400 employees and budgets of over 50 million dollars. Significant experience with human resource and personnel issues, budget and budget development, employee motivation and organizational management.

## Professional Experience

PrivateOps/CourtOps                                              November 2015 to Present

Chief Deputy Attorney General                                    January 2001 to January 2015
State of Utah

~Responsible for the day-to-day management of the Utah Attorneys General office. This includes supervision of over 210 Attorney's and over 200 support personnel. Direct management of a budget exceeding 50 million dollars. Direct supervision of all legal decisions within the office including capital homicide and murder cases, antitrust cases, white-collar criminal cases, securities fraud cases, civil rights cases, litigation and child welfare cases. Developed the first ever manager training for the Utah Attorneys General office.

Director of Adult Probation and Parole                           June 1998 - December 2000
Utah Department of Corrections

~Responsible for the entire department of AP&P, which included the statewide supervision of over 600 employees and supervision of over 15,000 probationers and parolees. Managed a budget of over 35 million dollars.

Section Chief, Financial Crimes Prosecution Unit                 July 1994 - June 1998
Utah Attorneys General Office

~Started the first statewide Financial Crimes Prosecution Unit. Responsible for statewide prosecution of financial crimes. Drafted the state's first money laundering statute passed into law.

Section Chief, Civil Rights Litigation Section                July 1991 - July 1994
Utah Attorneys General Office

~Defended the state in all civil rights litigation cases. Included all aspects of litigation from the beginning of a case completely through trial. Supervised over 40 employees.

Assistant Attorney General, Criminal Appeals Division          August 1990 - July 1991
Utah Attorneys General Office

~Handled criminal appeals and evidentiary hearings. Handled all post convictions Writs of Habeas Corpus filed in the state.

Judge Advocate General                                         August 1986 - August 1990
United States Air Force, Zweibrucken, Germany

~Prosecuted and defended over 40 jury trials throughout Europe.

## Awards

I was recognized by the Utah Police Chief's Association in 2004 as the outstanding contributor to Law Enforcement.

I was given the Nelson Kempsky award in 2006 as the top manager by the Conference of Western Attorneys General.

In 2013 I was recognized again by the Conference of Western Attorneys General as the Jim Jones award recognizing outstanding commitment to public service.  I have been the only person to receive both the Kempsky and Jones award.

## Academic Positions

Adjunct Professor                                              1998 present
Weber State University

~Teaching in the Criminal Justice Program focusing on Criminal Law and Constitutional Law.

Adjunct Professor                                              1999 present
University of Utah

~Teaching legal classes in the Masters of Public Administration Program focusing on

Constitutional Law and Administrative Law

Instructor                                                                                           1987 - 1990
City College of Chicago, European Branch, Germany

~Taught Business and Criminal Law

Instructor                                                                                           1988 - 1996
Salt Lake Community College, Utah

~Taught in the Paralegal Program. Classes ranged from Criminal and Constitutional Law to Wills and Estates.

Instructor                                                                                           1990 - present
Utah Police Academy

~Involved in developing the entire legal curriculum for the Peace Officers Academy. Includes teaching statewide for over 20 years.

## Additional Instructor Experience

~Mountain West College, Utah. Paralegal Program.

~Narcotics Officer Training, Utah. Training for narcotic officers on search and seizure and use of force.

## Education

J.D.                                                                                                 1986
University of Utah College of Law

Leary Scholar (Top 20% of class)

B.A.                                                                                                 1983
Utah State University

G.P.A. 3.9; History and Political Science Major
Magna cum Laude;
Named Outstanding Graduating Senior, College of Humanities, Arts and Social Sciences
Who's Who in American Colleges 1984-1985

## Volunteer Work

~General Counsel for the Utah Narcotic Officers Association.

~Small Claims Judge in Salt Lake City, Murray and Sandy courts in Utah.

~Mentor in the Juvenile Court Mentor program.