R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>                        Plaintiff,<br><br>v.<br><br>DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>                        Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PROPOSED EXPERT WITNESS WALTER REICHERT, M.D.**<br><br>Civil No. 2:14-cv-00375<br>Judge Dale A. Kimball |

Defendants hereby submit this Reply Memorandum in support of Defendants' *Daubert* Motion *in Limine* to Exclude Testimony of Proposed Expert Witness Walter Reichert, M.D.

## BACKGROUND

Plaintiff requested that Walter Reichert, M.D. ("Dr. Reichert") opine on issues relating to Mr. Chatwin's neurological condition, yet he also offers analysis and opinions on type and amount of force, shoulder injuries, effects of alcohol, hearing impairment and tinnitus, and

depression and migraines. To the extent that Dr. Reichert's testimony is outside the scope of his expertise as a neurologist, it is not reliable or helpful to the jury and should be excluded.

**ARGUMENT**

I.   **DR. REICHERT'S TESTIMONY ON MATTERS OUTSIDE THE SCOPE OF HIS EXPERTISE AS A NEUROLOGIST IS NOT RELIABLE OR HELPFUL TO THE JURY.**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Fed. R. Evid. 702 (2011). In *Daubert*, the Supreme Court interpreted Rule 702 as entrusting district courts with a "gatekeeping" function of ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but also reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Under *Daubert*, district courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

The purpose of *Daubert* is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The court must determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id.* (citation omitted) (quoting *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)). Under the *Daubert* inquiry, "any step that renders the analysis unreliable…renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Id.* (citation omitted) (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994)).

Expert testimony must "fall within the reasonable confines of [the witness's] expertise." *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 806–07 (10th Cir. 2016) (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013)).  The fact that an expert witness "can parrot the *results* of a model does not mean that he is qualified to explain how the model works or to opine on the statistical validity or interpretation of the results*."  Petersen v. Daimler Chrysler Corp.*, No. 1:06-CV-00108-TC, 2011 WL 2491026, at *2 (D. Utah June 22, 2011) (quoting *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)).  "When a testifying expert relies upon another's conclusions, facts, or data, the expert must have a familiarity with the methods or reasoning used." *Id.* at *4 (citing *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993); *Dura Auto. Sys. of Indiana v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be a mouthpiece of a scientist in a different specialty.")).

"The proponent of expert testimony bears the burden of demonstrating the expert's qualification." *Taber*, 642 F. App'x at 807 (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n. 4 (10th Cir. 2001)).  Plaintiff has failed to meet that burden with regard to the areas of expertise beyond the scope of Dr. Reichert's expertise in neurology.  Plaintiff's reliance on the *Poche* case is inapposite because the doctor in that case testified regarding "matters in the overlapping areas of expertise of general surgery and gastroenterology," while in this case, none of the ensuing areas of expertise overlap with neurology.  *See Poche v. Joubran*, 389 F. App'x 768, 773 (10th Cir. 2010).  Dr. Reichert may not testify regarding the following areas outside his expertise: (1) the type and amount of force used on Plaintiff and his shoulder injuries, (2) the effects of alcohol on Plaintiff, (3) hearing impairment or tinnitus, and (4)

depression and migraines.[1]  *See NexMed Holdings, Inc. v. Beta Techs., Inc.*, 2009 WL 2578854, at *1 (D. Utah Aug. 19, 2009) ("While [the expert] is thus qualified to render an opinion on technical matters concerning the products involved, many of the matters discussed by [the expert] in his expert report are outside of his expertise, or are improper subjects for expert testimony and therefore, are not calculated to assist the trier of fact in understanding the evidence.").  The portions of Dr. Reichert's testimony regarding matters outside the scope of his expertise should therefore be excluded from this case as unreliable and unhelpful to the jury.

    a. **Type and Amount of Force and Shoulder Injuries**

Dr. Reichert is not qualified to give opinions regarding the type and amount of force used by police or shoulder injuries.  In his Report, Dr. Reichert's opinion regarding the type of force allegedly used against Chatwin is that his injuries stemmed from being thrown to the cement. (Report of Expert Witness Walter Reichert, M.D. [D.E. 35] ("Reichert Report"), Exhibit A to Defendant's *Daubert* Motion *in Limine* to Exclude Testimony of Proposed Expert Witness Walter Reichert, M.D. [D.E. 65], at 1).  Dr. Reichert also opines that the amount of force used must have been "significant" in order to produce a shoulder injury.  (Reichert Report, at 2).

Plaintiff claims that Dr. Reichert is qualified to testify regarding the type and amount of force used against Chatwin and the extent of Chatwin's shoulder injuries because of his personal experience as a doctor.  (Plaintiff's Memorandum in Opposition to Defendants' *Daubert* Motion in *Limine* to Exclude Testimony of Proposed Expert Witness Walter Reichert, M.D. [D.E. 72] ("Plaintiff Opp."), at 4).  In *Haynes*, the Ninth Circuit held that an expert in "Human Factors"

---

[1] Plaintiff's contention that Defendant's expert witness Dr. Goldman testifies about the "very same subjects" as Dr. Reichert is without merit.  On the contrary, Dr. Goldman states multiple times in his report that he would defer to other experts with regard to conditions outside the scope of his expertise.

was not qualified to testify on matters outside of his expertise, such as medicine, public health, epidemiology, deep vein thrombosis ("DVT"), or train travel. *Haynes ex rel. Haynes v. Nat'l R.R. Passenger Corp.*, 2009 WL 631280, 319 F. App'x 541, 542 (9th Cir. 2009). The Court reasoned that although the expert had "extensive qualifications and education" in his area of expertise, "that expertise simply does not qualify him to render expert opinions" on those areas beyond his expertise. *Id.* Moreover, the Court also noted that "[n]othing in the record demonstrates that [the expert] has any independent expertise qualifying him to give an opinion" on those matters. *Id.*

Here, Plaintiff argues that Dr. Reichert is not testifying about causation as between the use of force and Chatwin's shoulder injuries, but rather about the existence or extent of Chatwin's shoulder injuries. (Plaintiff Opp., at 4). While Plaintiff appears to concede that Dr. Reichert is not qualified to testify on the area of expertise of police use of force, Dr. Reichert's extensive expertise in neurology does not qualify him to testify on the area of expertise of orthopedics either. Further, although Plaintiff makes conclusory assertions as to Dr. Reichert's personal experience as a doctor, the Plaintiff has failed to provide any evidence in the record to demonstrate that he has any independent expertise to qualify him to testify on matters within the expertise of an orthopedic specialist. Most significantly, Dr. Reichert himself admits in his deposition that he cannot testify regarding the type or amount of force required to cause a shoulder injury. (Deposition of Walter Reichert, M.D. ("Reichert Depo."), relevant portions attached hereto as **Exhibit A**, at 15:8–23; 43:5–25). Because Dr. Reichert is unqualified to testify regarding type and amount of force and shoulder injuries, any opinions and analysis on these matters should be excluded as unreliable.

### b. Effects of Alcohol

Dr. Reichert both lacks sufficient qualifications and failed to use proper methodology to give opinions regarding the effects of blood alcohol levels on a patient's behavior. Dr. Reichert opines in his report that Chatwin's blood alcohol level was extremely high and explained the effects of varying blood alcohol levels on behavior. (Reichert Report, at 3). Plaintiff asserts that Dr. Reichert is qualified to testify as to the effects of alcohol because of his experience as a doctor. (Plaintiff Opp., at 7). Plaintiff relies on Dr. Reichert's one-year internship at a hospital over forty years ago as sufficient experience to qualify him as an expert on the effects of alcohol. (Plaintiff Opp., at 7). Given the brevity and remoteness of this experience, this does not constitute sufficient "independent expertise" to qualify him to testify on the effects of alcohol. *See Haynes*, 319 F. App'x at 542. In fact, Dr. Reichert acknowledges in his deposition that he does not treat or detox alcoholics and that the "exact correlation between alcohol levels and behavior should be determined by people who do that all of the time." (Reichert Depo., at 52:13–18). As such, Dr. Reichert's testimony regarding the effects of alcohol should be excluded as unreliable given that he is unqualified to testify on this matter.

Plaintiff also claims that Dr. Reichert's methodology of using a Google search of online medical databases was proper because at least one of the sites he used was peer-reviewed. (Plaintiff Opp., at 8). In *Haynes*, the court held that the expert's "Google search and CNN.com report, which would both ordinarily be a basis for little more than lay speculation, do not provide an appropriate basis for expert opinion on the reasonable foreseeability of DVT." *Id.* at 543. Similarly, in *Bielskis*, the Seventh Circuit excluded the testimony of an expert who had "located the articles by using the Internet search engine Google and typing in the phrase 'brittle fracture.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011). The Court reasoned that

"the district court was within its discretion to conclude that [the expert's] methodology sounded more like the sort of '[t]alking off the cuff'—without data or analysis—that we have repeatedly characterized as insufficient." *Id.* (quoting *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000)).

Here, even though the "UpToDate" site used by Dr. Reichert is peer-reviewed, his methodology of using a Google search as the sole basis of his opinion is improper. When asked about his methodology for forming his opinions regarding the effects of alcohol, Dr. Reichert stated, "I just went online and plowed through it." (Reichert Depo., at 51:13–18). Such methodology is "little more than lay speculation" and cannot form the basis of an expert opinion on the effects of alcohol. *See Haynes*, 319 F. App'x at 543. If Dr. Reichert were permitted to testify on the effects of alcohol at trial, his testimony would consist of "talking off the cuff" based on his Google search. *See Bielskis*, 663 F.3d at 894.[2] Therefore, Dr. Reichert's opinions and analysis regarding the effects of alcohol should be excluded as unreliable and unhelpful to the jury due to his improper methodology.

### c. Hearing Impairment and Tinnitus

Dr. Reichert is neither qualified nor used the properly methodology to give opinions regarding hearing impairment or tinnitus. Dr. Reichert opines that Chatwin's tinnitus was caused by his injury and that he does not expect his hearing to improve. (Reichert Report, at 2–3). Plaintiff claims that Dr. Reichert is qualified to testify regarding hearing impairment and tinnitus because he studied audiology and has sufficient experience as a doctor. (Plaintiff Opp., at 8). Contrary to Plaintiff's assertion, Dr. Reichert has not "studied audiology" as evidenced by the

---

[2] *See also Dura Auto. Sys. of Indiana v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be a mouthpiece of a scientist in a different specialty.")).

lack of any mention of such study in his CV as well as his own admission during his deposition: "…I have not undertaken a degree in audiology…." (Reichert Depo., at 18:22–25;19:1–14). With regard to his experience, Dr. Reichert merely examines cranial nerves (one of which affects hearing) as part of a complete *neurological* examination, but does not perform hearing tests. *Id.* Thus, neither Dr. Reichert's education nor his experience as a doctor qualify him to testify regarding hearing impairment or tinnitus, and opinions and analysis on this topic should be excluded.

Further, Dr. Reichert's methodology in forming these opinions is improper. When asked when he had last diagnosed a patient with tinnitus, Dr. Reichert responded: "I don't diagnose people with tinnitus. They say, I've got a ringing in my ear. I say, you've got tinnitus" and that specialists "can't diagnose it any more than I can than I just did with you." (Reichert Depo., at 21:2–15). Similarly, when the expert in *Bielskis* was questioned as to his methodology, he "replied that he had relied on 'basic engineering intelligence' and 'solid engineering principles that any other engineer would use.'" *Bielskis,* 663 F.3d at 894. The Court ultimately affirmed the exclusion of the expert's testimony, reasoning that although "'shaky' expert testimony may be admissible, subject to attack on cross-examination," "the district court was within its discretion to conclude that [the expert's] testimony was unreliable, not simply shaky." *Id.* (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010)). In this case, Dr. Reichert's opinions regarding hearing impairment and tinnitus are both "shaky" and unreliable because of his vague, generalized statements regarding his methodology much like in the *Bielskis* case. The court should therefore exclude Dr. Reichert's opinions regarding hearing impairment and tinnitus due to the unreliable methodology used in forming those opinions.

### d. Depression and Migraines

Dr. Reichert's methodology in forming his opinions regarding migraines is improper, and he is unqualified to give opinions regarding depression. Dr. Reichert's opinion is that Chatwin's migraines have worsened since his brain injury. (Reichert Report, at 2). Plaintiff contends that Dr. Reichert is qualified to give a differential diagnosis of "worsening posttraumatic migraines." (Plaintiff Opp. at 9–10). "A differential diagnosis satisfies a *Daubert* analysis if the expert uses reliable methods." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The *Ervin* case explained the methodology for a differential diagnosis as follows;

> "Differential diagnosis generally provides a framework in which all reasonable hypotheses are 'ruled in' as possible causes of a medical problem and some of these possible causes are then 'ruled out' to the extent scientific evidence makes it appropriate to do so. The goal is to identify the last remaining, or most probable, 'ruled in' cause of a medical problem."

*Id.* at 903. In this case, Plaintiff fails to explain or provide evidence that Dr. Reichert actually completed a differential diagnosis of Chatwin's condition. Without proper methodology, Dr. Reichert's opinions regarding migraines amount to nothing more than opinions regarding Chatwin's credibility as a "reliable historian." (Reichert Report, at 2). Such testimony is both unreliable and improperly invades the province of the jury and should therefore be excluded.

Finally, Dr. Reichert opines that Chatwin's complaints of depression are reliable. (Reichert Report, at 2). Plaintiff asserts that Dr. Reichert is qualified to testify regarding depression because of a psychiatry rotation he completed over forty years ago in which he prescribed medications and treated patients for psychiatric conditions. (Plaintiff Opp., at 11). Much like his experience with the effects of alcohol, this experience with psychiatry is far too brief and remote to satisfy *Daubert* standards. Moreover, although he is certified by the American Board of Psychiatry and Neurology, Dr. Reichert clarified in his deposition that his

expertise is limited to neurology. (Reichert Depo., at 70:24–25; 71:1–10). This is also evidenced by his inclusion of the word "Neurology" in parentheses after listing this certification on his Curriculum Vitae. (Reichert Report, CV). Dr. Reichert lacks both the experience and any certifications that would qualify him to give opinions or analysis regarding depression, and testimony on this topic should therefore be excluded as unreliable and unhelpful to the jury.

## CONCLUSION

Thus, for the reasons stated herein, this Court should exclude the testimony of Dr. Reichert as to the matters identified above.

SUBMITTED this 7th day of September, 2016.

**DURHAM JONES & PINEGAR**

By /s/ R. Blake Hamilton
    R. BLAKE HAMILTON
    ASHLEY M. GREGSON
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was served this 7th day of September, 2016, via electronic filing upon the following:

Lisa A. Marcy
CLYDE SNOW & SESSIONS
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

John K. Johnson
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, UT 84101

                                                  /s/ Sarah Peck
                                                  Secretary