Lisa A. Marcy (#5311)
lmarcy@clydesnow.com
**CLYDE SNOW & SESSIONS, P.C.**
201 South Main Street, 13th Floor
Salt Lake City, Utah  84111
Telephone:  801-322-2516

John K. Johnson (#3815)
jkjohnson1080@hotmail.com
**JOHN K. JOHNSON, LLC**
10 West 300 South, Suite 800
Salt Lake City, Utah  84101
Telephone:  801-915-2616

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br> Plaintiff,<br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br> Defendants. | PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND REPORTS OF CHRIS LAWRENCE<br><br><br>Civil No. 2:14-cv-375<br>Judge Dale A. Kimball<br>Magis. Judge Dustin B. Pead |

  Plaintiff, Joshua Chatwin, by and through his counsel, hereby replies to Defendants'

Memorandum in Opposition to Plaintiff's Motion in Limine to Exclude Testimony and Reports

of Chris Lawrence ("Opposition") as follows:

{01043821-1}

**ARGUMENT**

I.  **CHRIS LAWRENCE'S ("LAWRENCE") TESTIMONY DOES NOT MEET ALL OF THE *DAUBERT* FACTORS TO DETERMINE WHETHER THE EXPERT TESTIMONY IS RELIABLE.**

Every case cited by Defendants centers on the admissibility of an eyewitness identification expert in a criminal case. The courts focus on whether the experts' opinions are reliable about the ability of a "victim/eyewitness" to identify the perpetrator. *See United States v. Smith*, 156 F.3d 1046 (10th Cir. 1998); *Robertson v. McCloskey*, 676 F. Supp. 351, 353-54 (D.D.C. 1988); *United States v. Harris*, 995 F.2d 532 (4th Cir. 1993); *United States v. Oliver*, 2000 WL 35610160 (D. Utah Apr. 18, 2000). Of the five *Daubert* factors, Lawrence cannot satisfy the first and fifth: "Whether the theory or technique can and has been tested," and "whether the technique has gained general acceptance in the scientific community." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-95 (1993).

A.  **Whether the Theory or Technique Can and Has Been Tested.**

All of the experts, with the exception of one in *Robertson*, discussed in those cases cited by Defendants concern eyewitness identification of alleged perpetrators by their victims. The subject of "perception" has never been tested. For instance, in the *Oliver* case, Judge Ted Stewart looked initially at whether the expert, Dr. David H. Dodd, had sufficient "experience with victim-eyewitness research." The *Oliver* court found that although Dr. Dodd did not have any firsthand experience with this victim-eyewitness research, he held a "Master's degree and Ph.D. in cognitive psychology, the study of how people learn, think, and acquire knowledge." Because Dr. Dodd also had taught for thirty-three years in the area of cognitive psychology, had published articles and textbooks in that field as well as testified in state court "20 or 30" times, Dr. Dodd was qualified to testify as an expert witness. *Oliver*, 2000 WL 35610160 at *3. Chris

Lawrence does not have any similar degree. Instead, he holds himself out only as an expert on the use of force by police officers. He is an instructor at the Ontario Police College in "appropriate officer safety tactics." He holds a Master's degree in "leadership and training specializing in Justice and Public Safety" from British Columbia's Royal Roads University. Since 2004, he has served as Technical Advisor to the Force Science Research Center. He is a Team Leader specializing in defensive tactics, officer safety, and firearms. *See*, Filing No. 55-1 at CM/ECF pp. 56-91, Curriculum Vitae of Chris Lawrence attached to Expert Report of Chris Lawrence. Moreover, Lawrence's CV contains not a single word about being a perception expert, let alone an expert on eyewitness identification. All of his knowledge and experience center on policy and reasonableness. *Id*.

In *Robertson*, the court granted the motion in limine to exclude the testimony of an expert of psychodynamics of memory and perception:

> The bulk of Dr. Erdelyi's proposed testimony concerns matters that are squarely within the comprehension of the average juror. It is no secret that memory decreases over time, that individuals can selectively remember or even fabricate events, or that stress can have an impact on memory or perception. In *United States v. Affleck,* 776 F.2d 1451 (10th Cir. 1985) the only decision located that involved a memory expert as opposed to an eyewitness expert the court affirmed the trial court's exclusion of the expert and stated:
>
> Specialized testimony explaining memory, however, is improper. The average person is able to understand that people forget; thus, a faulty memory is a matter for cross-examination.

*Id*. at 354.

B.  **Perception Testimony has not Gained "General Acceptance in the Scientific Community."**

The *Oliver* court discussed whether the theory of eyewitness identification received general acceptance in the scientific community, because there was a consensus among the experts that certain factors must be considered in regard to this eyewitness reliability such as the length of time between the observation of a person and the *identification of that person* by the eyewitness, *the impact of a weapon being brandished by the person to be identified, and the impact of fear or arousal on the subsequent ability to identify the person causing the fear*." *Oliver*, 2000 WL 35610160 at *4, citing *United States v. Smith*, 156 F.3d 1046, 1052-53 (10th Cir. 1998) (quoting *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) (emphasis added)). In their Opposition, Defendants admit that expert testimony in this other area of eyewitness identification may be only admitted in narrow situations ("cross-racial identification, identification after a long delay, identification after observation under stress and [such] psychological phenomena as the feedback factor and unconscious transference."). *Id*. "Outside of such narrowly constrained circumstances, jurors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness' testimony can be brought out with skillful cross-examination." *Harris*, 995 F.2d at 535. "[O]utside these specialized circumstances, expert psychological testimony is unlikely to assist the jury -- skillfull cross-examination provide an equally, if not more, effective tool for testing the reliability of an eyewitness at trial." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006).

Kathy Torrence, the neighbor and percipient witness of the interaction between Officer Patterson and Plaintiff, was not facing any stress. She was not subject to any danger, nor was she

a victim. She was standing safely behind her front window, watching the events unfold across the street. Exhibit 1, Deposition of Kathy Torrence dated November 11, 2016 ("Torrence Depo."), 15:9-19. Since the other factors discussed by the *Smith* and *Harris* courts do not apply to Kathy Torrence's situation, no narrow circumstances are sufficient to support the introduction of Lawrence's expert testimony, even if Lawrence were an expert on eyewitness identification.

II. **THE SIGNIFICANT FACTORS IN DETERMINING WHETHER TO ADMIT EXPERT TESTIMONY ON EYEWITNESS RELIABILITY–THE EXTENT TO WHICH THE GOVERNMENT'S CASE IS DEPENDENT UPON THE EYEWITNESS EVIDENCE, AND THE NUMBER OF EYEWITNESSES THAT WILL BE TESTIFYING AS IMPLIED BY THE *SMITH* COURT–DO NOT EXIST IN THIS CASE.**

"The *Smith* court implied that significant factors for the trial court to consider in determining whether to admit expert testimony on eyewitness reliability are the extent to which the government's case is dependent upon the eyewitness evidence, and the number of eyewitnesses that will be testifying." *Oliver*, 2000 WL 35610160 at *2 (citing *Smith*, 156 F.3d at 1054). Defendants claim that because "Plaintiff's version of the events in question relies entirely on the eyewitness testimony of Kathy Torrence," the court should deny Plaintiff's motion to exclude Lawrence's testimony and reports. *See*, Opposition at ¶¶ 4-5. Notably, Defendant Draper City plans to call three eyewitnesses, the three officers at the scene. Plaintiff, however, only has one eyewitness, Kathy Torrence. It is the Plaintiff, not the Defendants, therefore, who is relying upon the testimony of only one eyewitness. Consequently, even if Lawrence were designated as an expert on eyewitness identification–and not perception–the fact that Torrence is Plaintiff's only eyewitness is not one of the *Smith* factors.

### III. LAWRENCE'S EXPERTISE IN POLICY AND REASONABLENESS ABOUT THE USE OF FORCE DOES NOT QUALIFY HIM TO TESTIFY AS TO THE PERCEPTIONS OF WITNESSES.

Although Rule 702, Fed. R. Evid., does indeed have a liberal standard regarding expert qualifications, as stated by Defendants, Lawrence's qualifications with respect to his self-proclaimed expertise as a use of force expert have no relation to psychology, including cognitive psychology, like Dr. David Dodd. Defendants' insistence that Lawrence's qualifications with respect to eyewitness perception are based upon "police training," "police operational and training experience," "facilitator and instructor in a police certification course," and "reaction and response times" is a complete distortion of his qualifications. Lawrence simply does not have the expertise.

### IV. EVEN IF THE EXPERTISE OF PERCEPTION EXISTED, LAWRENCE'S TESTIMONY WOULD NOT ASSIST THE TRIER OF FACT.

The *Smith* court affirmed the district court's exclusion of its expert on eyewitness identification, because in that case, the court found that the expert's testimony would not assist the trier of fact. The expert's testimony touched "on areas of common knowledge." *Smith*, 156 F.3d at 1053.

> It is fundamental that the testimony of witnesses, both in civil and criminal cases, is admissible if predicated upon concrete facts within their own observation and recollection that is, facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.
>
> …
>
> *The identity of persons* may be established in various ways, and considerable latitude is permitted the trial court in the admission of evidence relative thereto. The general rule is that a person of ordinary intelligence, who qualifies to testify upon the subject by showing that he had the opportunity for personal observation, may give opinion testimony as to *a person's identity* from any fact that

> leads him to believe that he knows the identity of the person in question. A witness must ordinarily confine his testimony to matters within his actual knowledge, i.e., *perception of fact by the senses*.
>
> . . .
>
> Generally, expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men. Put another way, the test of admissibility is often predicated upon the proposition that opinion evidence cannot usurp the functions of the jury or be received if it touches the very issue before the jury.

*United States v. Brown*, 540 F.2d 1048, 1053-54 (10th Cir. 1976) (emphasis added).

Even though all of these cases concern the eyewitness identification of a perpetrator, and not the observation of a perceived event, the admissibility of Defendants' expert would still not meet the *Brown* test. Defendants have made no allegations that Torrence is incapable of testifying as to what she perceived, in other words, that she is not intelligent and capable of describing what she saw in the realm of "common knowledge, experience and education." Defendants are cloaking their challenges to Torrence's credibility as arguments about the admissibility of Lawrence's testimony. The determination of Torrence's credibility is within the unique province of the jury. *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997). Torrence is a percipient witness.

**V.     LAWRENCE'S REPORT PLAINLY CONTAINS TESTIMONY ABOUT POLICE TRAINING AND SUBJECT CONTROL, POLICE POINT OF VIEW, OPERATION OF HOLSTER DESIGN, POLICY AND REASONABLE ISSUES, AND USE OF FORCE THAT COMPLETELY CONTRADICTED THIS COURT'S MARCH 14, 2016, ORDER AND SHOULD BE STRICKEN.**

Defendants' argument that Lawrence's discussion about all of these topics serve merely as "background information" is unsupported by a plain reading of this Court's order and Lawrence's expert report. Defendants' attempt to support their argument by stating that

Lawrence discussed police training "in order to explain 'how that training might impact the interpretation of an event from a police point of view compared to that of a person who has not had or is unfamiliar of [sic] this type of training'" and "[m]embers of the public, unfamiliar with police procedures, training, or experience with a physical struggle while trying to take person into custody, may not fully understand or could misinterpret what they experience" is again an effort to attack Torrence's credibility, a clear intrusion into the province of the jury. Stated another way, Lawrence's statements should be translated as "trust us, we are police officers and should therefore be believed." Those statements weigh the evidence and are further proof that Lawrence's testimony about police practices is improper and a violation of Rule 26 as well as this Court's order. Furthermore, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

VI.     **LAWRENCE'S TESTIMONY PREJUDICES PLAINTIFF.**

Whereas it is true that Plaintiff was aware, as a result of Defendants' motion to extend the time period in which to file expert reports, Plaintiff is still prejudiced. If this court allows Lawrence to testify as an expert witness about a subject involving the purview of a jury, the jury may assign greater credibility to his testimony as an expert about common knowledge and therefore endanger a fair presentation of the case. Moreover, since no such field of expertise as "perception" exists, Plaintiff was unable to hire any such expert. Given that no such area of expertise exists and that Lawrence is from Canada, Plaintiff did not go to the unnecessary and burdensome cost to fly his counsel to Ontario to take Lawrence's deposition.

## **CONCLUSION**

Based upon the foregoing reasons, this Court should grant Plaintiff's Motion in Limine to Exclude Testimony and Reports of Chris Lawrence.

DATED this 7th day of September 2016.

CLYDE SNOW & SESSIONS

/s/ Lisa A. Marcy
Lisa A. Marcy
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September 2016, I caused a true and accurate copy of the foregoing Plaintiff's Reply to Defendants' Memorandum in Opposition Motion in Limine to Exclude Testimony and Reports of Chris Lawrence to be filed via the Court's ECF system, which in turn sent copies to counsel of record in accordance with the Court's protocols.

/s/ Michelle Carter