R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 E. Broadway, Suite 900
PO Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email: bhamilton@djplaw.com
        agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>                              Plaintiff,<br><br>v.<br><br>DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>                              Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Civil No. 2:14-cv-00375<br>Judge Dale A. Kimball |

Pursuant to DUCivR 56-1 and Rule 56 of the Federal Rules of Civil Procedure,

Defendants Draper City, Officer J. Patterson, Officer David Harris, and Officer Heather Baugh

(collectively "Defendants"), by and through their undersigned counsel, hereby submit this Reply

Memorandum in support of Defendants' Motion for Partial Summary Judgment on Plaintiff's Fourth Cause of Action for Deprivation of Constitutional Rights.

## INTRODUCTION

In the Court's Memorandum Decision and Order filed November 9, 2015 [Docket No. 30], the Court denied Defendants' motion for judgment on the pleadings as to the Fourth Cause of Action for deprivation of constitutional rights against Draper City.  Plaintiff has now obtained discovery from Defendants, but there is still no evidence of a lack of training that caused the harm alleged.  In his Memorandum in Opposition, Plaintiff also argues that Defendants' policy was lacking and therefore caused the harm alleged.  However, without any evidence of either inadequate training or policies, summary judgment must be granted in Defendants' favor as to the Fourth Cause of Action.

## REPLY TO PLAINTIFF'S RESPONSES TO STATEMENTS OF UNDISPUTED MATERIAL FACTS

Plaintiff admitted that at least 10 of Defendants' identified facts are not disputed.[1]  For those facts that Plaintiff claims are disputed, Plaintiff fails to state a genuine issue of fact. Instead, Plaintiff either provides mere immaterial arguments and commentary to dispute the fact, or points to testimony that is unrelated and non-responsive to the undisputed facts in question in an attempt to create a dispute of fact where none exists.

---

[1] To assist the Court in review of the statements of fact, Defendants have attached a table reflecting their initial statements of fact, Plaintiff's responses, and Defendants' replies.  *See* **Exhibit A**, Table of Statements of Fact.

2

<u>**RESPONSES TO "PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS"**</u>

In response to Plaintiff's Additional Disputed Facts, and for purposes of their Motion for Partial Summary Judgment only, Defendants state as follows[2]:

1.      On May 18, 2010, Sgt. Harris responded to an "ATL broadcast" (attempt to locate) on a vehicle that had left the State liquor store.  Dispatch ran the license plate provided by the liquor store clerk and the associated address was 12534 South 150 East, Draper [Chatwin's parents' house].  Harris waited at that address.  The vehicle arrived.  Ex. 8 to Plaintiff's Memorandum, Prelim Tr. 5:7-25.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed except that Harris waited *near* the reported address, which is not a material fact.  *See* Ex. 8 to Plaintiff's Memorandum, Prelim Tr. 5:15-18.

2.      Officer David Harris testified that on May 18, 2010, he arrested Joshua Chatwin for a DUI.  Ex. 10 to Plaintiff's Memorandum, Harris Depo 18:18-19.

---

[2] Defendants object generally to all of Plaintiff's Statements of Additional Facts because they do not conform to the requirements of DUCivR56-1(c)(2)(D).  Due to the fact that Plaintiff is now asserting a lack of training claim, Plaintiff's opposition addresses additional elements which were not stated by Defendants, and therefore Plaintiff should have included a statement of additional elements and facts.

**RESPONSE:**  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, the deposition page and lines cited do not reflect Harris' testimony, but Defendants do not dispute that Officer Harris arrested Joshua Chatwin for a DUI.

3.      When Sgt. Harris initially interacted with Chatwin, he stated that Chatwin was "very quiet." For instance, Chatwin handed the keys to Sgt. Harris without saying anything. Exhibit 10 to Plaintiff's Memorandum, Harris Depo 72:23-77:10.  As for the degree of potential threat, Sgt. Harris concedes that Chatwin was compliant.  Sgt. Harris stated that Chatwin was "very cooperative up to that point [the last field sobriety test]." Ex. 10 to Plaintiff's Memorandum, Harris Depo 82:21-24.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed as to Sgt. Harris' testimony regarding Chatwin's behavior prior to the last field sobriety test.

4

4.      He turned Chatwin over to Officer Patterson while he went to prepare Chatwin's vehicle for impound.  When he turned around from photographing the vehicle, he noticed Chatwin lying on the ground, unconscious.  He called for medical help.  Ex. 10 to Plaintiff's Memorandum, Harris Depo 18:23-19:12.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

5.      When Sgt. Harris turned around, he saw Chatwin's head in the gutter and his body was face down.  Ex. 10 to Plaintiff's Memorandum, Harris Depo 23:21-25.

**RESPONSE:**  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

6.      Blood was emanating from Chatwin's left ear facing down on the ground. Ex. 10 to Plaintiff's Memorandum, Harris Depo 24:5-15.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

7.      Sgt. Harris was worried about Chatwin's condition, so he called dispatch a second time, because they were taking a long time to arrive. Ex. 10 to Plaintiff's Memorandum, Harris Depo 26:10-27:5.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, it is undisputed that Sgt. Harris called dispatch a second time because he felt it was taking a long time for them to get there. Exhibit 10 to Plaintiff's Memorandum, Harris Depo 26:18-19.

8.      Sgt. Harris took photographs of Chatwin after the incident on May 18, 2010. Ex. 10 to Plaintiff's Memorandum, Harris Depo 40:16-41:20. *See* Photos attached to Harris Depo as Exhibit 5.

**RESPONSE**: It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact

6

is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

9. Sgt. Harris testified that although Chatwin became argumentative during the last field sobriety test, he did not yell, fight, squirm or take any aggressive actions toward him. Ex. 10 to Plaintiff's Memorandum, Harris Depo 87:8-88:8.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

10. Patterson testified, however, that Chatwin became louder and more argumentative, more uncooperative, agitated and more aggressive and was moving around during the same field sobriety test. Ex. 1 to Plaintiff's Memorandum, Patterson Depo 86:9-87:17. Patterson stated that Chatwin became verbally combative and angry. Chatwin squirmed and "pulled against [him]." Ex. 1 to Plaintiff's Memorandum, Patterson Depo 90:4-19; 91:23-25.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs. It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material

7

and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

11. Patterson claims that Chatwin began fumbling with the front of Patterson's gun belt. Ex.1 to Plaintiff's Memorandum, Patterson Depo at 92:6-20.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

12. Patterson escorted Chatwin over to Sgt. Harris' patrol vehicle and leaned him over the vehicle in an attempt to get more control. Ex. 1 to Plaintiff's Memorandum, Patterson Depo at 93:18-94:13.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

13. Patterson testified that he told Chatwin to comply but Chatwin kept saying "F___ you, A__hole. Let go of me." He continued to struggle when Patterson heard the retention lock on his weapon holster unlock. Seeing that Chatwin had unlocked it and had his right hand on the gun, he feared for his safety as well as the other officers. Patterson ordered Chatwin to let go, as

Chatwin arched his back and swung his head back toward Patterson's face, attempting to head-butt him.  Patterson attached his left hand on the handcuffs and pulled his hands away from Patterson's weapon.  Patterson then attached his right hand on Chatwin's right bicep and "moved him down and away from [his] primary weapon side."  Ex. 1 to Plaintiff's Memorandum, Patterson Depo 95:13-96:8; 102:9-103:16.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

14.     Patterson was trained to take those actions at the Police Academy only.  Ex. 1 to Plaintiff's Memorandum, 103:17-20.

**RESPONSE:**  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed except to the fact that Patterson's cited testimony does not indicate that the Academy was the *only* source of that training.

9

15.     Patterson stated that he pivoted Chatwin around and that is when Chatwin fell to the ground.  Ex. 1 to Plaintiff's Opposition, Patterson Depo 105:16-18.  When Patterson moved Chatwin away, Chatwin went limp.  Ex. 1 to Plaintiff's Opposition, Patterson Depo 106:15-18. He claimed that he "placed" Chatwin into a prone position, meaning lying down on the ground, lying flat.  Ex. 1 to Plaintiff's Opposition, Patterson Depo 106:19-22.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

16.     Witness Mehdi Mahmoudi, a neighbor, testified that while changing a car tire in his driveway, he heard a noise like something dropping on the ground.  He looked up and saw Chatwin on the ground not moving.  Exhibit 11 to Plaintiff's Opposition, Deposition of Mehdi Mahmoudi dated November 20, 2015 ("Mahmoudi Depo") 10:20-25.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material

10

and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

17.    Patterson testified that he had control of Chatwin with both hands on him until he ended on the ground.  He directed him into a prone position on the ground, face down.  Ex. 1 to Plaintiff's Opposition, Patterson Depo 111:13-112:11.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

18.    Patterson stated that he had to turn Chatwin at least 270° as he moved him to the ground.  Ex. 1 to Plaintiff's Opposition, Patterson Depo 139:3-23.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

19.    Witness Jason Scott testified that on May 18, 2010, he saw Chatwin face down on the driveway.  He stated that the police officers were laughing in a group.  Ex. 7 to Plaintiff's Opposition, Scott Depo 82:20-83:1; 101:20-103:2; and Witness Statement attached to Scott Depo as Plaintiff's Exhibit 2.  No officers were attending to the subject or moving him.  However, Sgt.

11

Harris and Patterson stated that they remained with Chatwin the entire time near the end of the

driveway until the paramedics arrived.  Ex. 1 to Plaintiff's Opposition, Patterson Depo. 143:11-

21; Ex. 10 to Plaintiff's Opposition, Harris Depo 46:3-9.  Jason Scott testified that:

> A.  . . . they were jolly and giggly and kind of like different than I would
> be if I had just seen a person either – if that person fell down on their
> own, I guess they might think that's funny, but I guess I don't.  If they
> somehow took him to the ground and he got hurt, that's also not the
> way I'd react.  Either way, I'd be down there checking on the guy.
>
> Q.  So go head and tell us more about what you mean by – what did you
> say giggly?
>
> A.  They had all smiles and they were all like pretty pleased with
> themselves with whatever happened.
>
> Q.  How do you know that?
>
> A.  Smiles and joking back and forth and giggly like they were, you know,
> and then when I came over there, they went more quiet and then they,
> you know.

Ex. 7 to Plaintiff's Opposition, Scott Depo 64:22-65:11.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it

contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It

appears that this statement of fact relates to the second element of a lack of training *Monell*

claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are

conceding that element for purposes of summary judgment, this statement of fact is not material

and therefore no response is necessary.  To the extent that a response is necessary, this paragraph

is undisputed, however Defendants point out that Mr. Scott testified that he saw the officers

being "jolly and giggly" after Mr. Chatwin had been taken to the hospital, and that when he

wrote his witness statement he had combined those events with what he observed when Mr.

Chatwin was on the ground.  **Exhibit B**, Deposition of Jason Scott, at 65:12-17; 102:2-12.

Defendants also clarify that Sgt. Harris testified that he was "either next to [Mr. Chatwin], touching him, or within feet of him" from the time he saw Mr. Chatwin on the ground to the time the paramedics arrived. **Exhibit C**, Deposition of Sgt. Harris, at 46:3-9.

20.     Patterson testified at the criminal preliminary hearing that "I mean, it seemed like he hit his head pretty hard." Ex. 8 to Plaintiff's Opposition, Prelim. Tr. 37:21.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. To the extent that a response is necessary, this paragraph is undisputed.

21.     However, an independent witness who actually saw the incident, Kathy Torrence, a neighbor of Chatwin, reported that she was standing in front of her window across the street from Chatwin's house. She watched the officers conduct a field sobriety test. She saw the first officer arrive (Sgt. Harris), the second officer (Patterson) and an animal control officer (Heather Baugh). She watched Sgt. Harris stay with the car and go through the car. Ex. 9 to Plaintiff's Opposition, 17:7-20:17. She watched the officers walk Chatwin, handcuffed, back to one of the trucks close to the end of the driveway. Ex. 9 to Plaintiff's Opposition, Torrence Depo 22:3-23:18. From her window, she could see Chatwin's hands and the officer's belt. Ex. 9 to Plaintiff's Opposition, Torrence Depo 27:18-28:17. They were two feet apart. Ex. 9 to Plaintiff's Opposition, Torrence Depo 29:3-12. She saw Chatwin looking to his right, say something to Patterson, and then Patterson "grabbed him and threw him to the ground." She saw

13

his lips moving but could not hear anything.  Ex. 9 to Plaintiff's Opposition, Torrence Depo 30:15-33:21.  She saw Chatwin land on his head.  Ex. 9 to Plaintiff's Opposition, Torrence Depo 35:1-6.  She testified that Patterson "whipped [Chatwin] around so hard that when he hit the pavement, his head bounced up."  Ex. 9, to Plaintiff's Opposition, Torrence Depo 53:24-54:17.  Torrence was absolutely positive and guaranteed that Chatwin did not undo the gun clip on the officer's belt.  Ex. 9 to Plaintiff's Opposition, Torrence Depo 61:2-62:9.  Chatwin also did not jerk back simultaneously.  Ex. 9 to Plaintiff's Opposition, Torrence Depo 61:2-62:5.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, this paragraph is undisputed.

22.     Plaintiff's expert on the use of force by police officers, Trevor Petersen, currently holds instructor certifications with the Federal Bureau of Investigations (FBI) and the National Technical Officers Association (NTOA). He was a certified law enforcement officer for the Utah State Parks and Recreation, Kane County Sheriff's Office as a narcotic and undercover agent, and the Weber County Sheriff's Office, serving in many capacities, including, patrol, Field Training Officer, SWAT, less-lethal weapons/chemical munitions instructor, firearms instructor, gang/organized crime investigator, homicide investigator, and Use of Force Committee Member,

14

criminal intelligence, financial crime investigator, Internet Crimes Against Children (ICAC) Investigator, and Utah (POST) police academy instructor.  As an instructor, Petersen drafted and instructed training and policies designed to ensure the safety of law enforcement officers, arrestees, and citizens.  He also conducted training classes involving the use of force involving individuals under the influence of alcohol.  Exhibit 12 to Plaintiff's Opposition, Trevor Petersen Deposition dated July 13, 2016 ("Petersen Depo") 36:4-23; 38:11-14; and Exhibit 13 to Plaintiff's Opposition, Expert Report of Trevor Petersen, dated January 14, 2016 ("Petersen Report"), at 1-2.

      **RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

      23.     Petersen explained how the level of intoxication of an individual affects the amount of force to be used.  For example, one has to identify the potential arrestee's state of mind, their abilities dealing with reaction time, and delayed responses.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 45:14-48:9.

      **RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It

appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

24.     As a member of the Use of Force Committee with the Weber County Sheriff's Office, Petersen would meet quarterly with the other members to review all of the incidents where officers used force.  Petersen reviewed anywhere from 60 to 100 incidents per yearly quarter.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 72:2-19. During those committee meetings, the members, including Petersen, would consider, while evaluating the use of force, the mental and physical condition of the person being arrested, the types of force, soft- and hard-hand techniques, aerosols, tasers, and impact weapons.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 72:20-73:4.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

16

25.     Petersen also reviewed another officer's use of force to determine whether it was reasonable.  In 2010 or 2011, Grand County Sheriff requested that Weber County Sheriff's Office assist with the investigation of Brody Young, a State Park Ranger who was shot multiple times in Moab, Utah.  Petersen was assigned to be the use-of-force investigator to evaluate whether the officer had used appropriate force.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 71:9-23.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary. Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

26.     During that time, Petersen also taught many law enforcement related courses involving arrest control. Ex. 13 to Plaintiff's Opposition, Petersen Report at 2.  He wrote, drafted and instructed training and policies designed to ensure the safety of law enforcement officers, arrestees, and citizens.  Ex. 13 to Plaintiff's Opposition, at 3.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are

17

conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

27.     Petersen served as a Law Enforcement Professional (LEP) in Afghanistan.  He trained the Afghanistan National Police and Coalition forces on law enforcement related subjects, including detainee operations, the use of less-lethal munitions and use of force.  Ex. 13 to Plaintiff's Opposition, Petersen Report, at 3.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

28.     Following that employment, he served as a Police Advisor, working with the United States Department of State and the United Nations in Haiti as an Assistant Team Lead for the United Nations Special Weapons and Tactics (SWAT) Unit.  In 2014-2015, Petersen provided training and oversight of the Hatian and Jordanian SWAT teams.  He trained and evaluated the SWAT teams on many subjects, including arrest control tactics and use of force.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 3; Ex. 12 to Plaintiff's Opposition, Petersen Depo 80:10-18.

18

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  Furthermore, this paragraph is irrelevant.  To the extent that a response is necessary, this paragraph is undisputed.

29.     Petersen concluded that on May 18, 2010, Officer Patterson did not take the proper safety precautions, considering the intoxication level of Chatwin, Chatwin being in handcuffs on a concrete surface, and Patterson's failure to use the proper arrest control tactics, weapon retention tactics and use of force, while interacting with an arrestee, as proper law enforcement training would have provided.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 4.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

SLC_2971720.1

30.     It is Petersen's opinion that Patterson used excessive force in executing the arrest of Josh Chatwin. Ex. 13 to Plaintiff's Opposition, Petersen Report at 3.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs. It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary. Furthermore, this statement is not a statement of fact but rather a statement of opinion. To the extent that a response is necessary, this paragraph is undisputed.

31.     He further concluded that the training provided by Draper City to its officers concerning the proper procedures to execute the arrest of a handcuffed, intoxicated individual was "completely inadequate." Ex. 13 to Plaintiff's Opposition, Petersen Report at 4. Petersen gave certain bases for his opinions. For example, he explained that because Chatwin was so intoxicated, pursuant to Patterson's testimony, Patterson should have put Chatwin into a kneeling or prone position, considering the concrete, so that he did not fall during the search. Placing Chatwin next to the patrol truck to conduct a search of Chatwin's person put him at greater risk of injury, because the truck was located on concrete. Ex. 13 to Plaintiff's Opposition, Petersen Report at 4.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs. It

20

appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary. Furthermore, this statement is not a statement of fact but rather a statement of opinion. To the extent that a response is necessary, this paragraph is undisputed.

32.     Petersen noted that according to the testimony of the three officers at the scene, Chatwin was constantly swaying and barely able to keep his balance, yet Patterson was the only officer, out of three, who was dealing with Chatwin. Although one of the officers performed a search of Chatwin's vehicle, there was no urgency to search such a vehicle without any other occupants. Petersen concluded that the officers determined that either Patterson was able to secure Chatwin himself, or Chatwin was not a credible threat to the officers' safety. Ex. 13 to Plaintiff's Opposition, Petersen Report at 4.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs. It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations. In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary. Furthermore, this statement is not a statement of fact but rather a statement of opinion. To the extent that a response is necessary, this paragraph is undisputed.

33.     Petersen was concerned that an animal control officer, with no law enforcement training on defensive tactics, Officer Baugh, was assisting Patterson.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 5; Exhibit 14 to Plaintiff's Opposition, Trevor Petersen Rebuttal Report to Ken Wallentine ("Petersen Rebuttal"), at 2.

**RESPONSE:** It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary. Furthermore, this statement is not a statement of fact but rather a statement of opinion. To the extent that a response is necessary, this paragraph is disputed: This statement is not supported by the record.  Nowhere in these citations does Petersen state that he is "concerned" by Officer Baugh's presence.  However, this fact is not material to the claim at issue here.

34.     Petersen opined that even given Patterson's testimony of events that conflicted with those of Kathy Torrence, the proper weapons retention tactics, taught in local, state and federal law enforcement, instructs an officer to place his hand on top of the suspect's hand which is attempting to remove the duty weapon and push it down in order to keep the weapon in the holster.  Then the officer must move the weapon away from the threat and perform "soft hand techniques," such as pain compliance to break the hold.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 5.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It

appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

35.     While Chatwin was handcuffed, Petersen stated that the handcuffs restrict his ability to injure himself or others but can also be used in "twist lock controls."  By moving Chatwin away, turning him approximately 270°, while handcuffed and while Chatwin allegedly had a hold of Patterson's duty weapon, would have allowed the weapon to come out of the holster, causing a greater threat to the officers, suspect and bystanders.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 5.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed for purposes of this Motion only.

36.     Because Chatwin was in handcuffs, his safety was not considered, because he did not have the ability to stop himself from falling or grabbing on to anything.  If Sgt. Harris, the first officer on the scene, had been assisting in restraining Chatwin, the injury to Chatwin would have been avoided.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 5; Ex. 12 to Plaintiff's Opposition, Petersen Depo 59:16-61:16.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary. Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

37.     Petersen testified that you have to consider the totality of the circumstances to make a conclusive opinion regarding how the incident could have been avoided.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 63:5-20.

**RESPONSE:**  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of

fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

38.     Because of the testimony of Patterson and the injuries that Chatwin sustained, those two things, according to Petersen, did not add up.  Petersen based his opinion upon his own experience.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 90:23-92:2.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

39.     When discussing the statements of Torrence, Petersen stated that the two officers initially performed proper procedures when taking Chatwin into custody.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 6.

**RESPONSE:**  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of

SLC_2971720.1

fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

40.     Petersen concluded that Patterson did not take the proper precautions and use proper arrest control or weapons retention techniques on May 18, 2010, on Chatwin.  The three officers did not use proper techniques or training to protect Chatwin, because he was intoxicated, on concrete, in handcuffs, and in custody.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 7.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

41.     Petersen reached these conclusions, in part, because Patterson testified that he did not recall the use of force training being provided to him by Draper City, and Animal Control Officer Heather Baugh never received use of force training because it "does not apply to me" as it pertained to an intoxicated person.  Ex. 13 to Plaintiff's Opposition, Petersen Report at 5; Exhibit 15, Deposition of Heather Baugh dated December 9, 2015 ("Baugh Depo"), 73:14-20.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It

26

appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement of fact is not material and therefore no response is necessary.  To the extent that a response is necessary, it is undisputed that Petersen so opined, however statement is not accurately reflecting the record: Baugh never testified that she didn't receive use of force training.

42.      Petersen also stated that in his own experience, he conducted numerous searches of individuals who were handcuffed behind their backs and were touching and grabbing equipment located on his belt, including his firearm.  He used the proper weapon retention tactics he described, none of which included throwing an individual to the ground.  Patterson's decision and technique that he used to throw Chatwin to the ground was not "in the real of reasonable tactical responses."  Ex. 14 of Plaintiff's Opposition, Petersen Rebuttal at 1.

**RESPONSE:**  Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs.  It appears that this statement of fact relates to the second element of a lack of training *Monell* claim, namely, exceeding constitutional limitations.  In light of the fact that Defendants are conceding that element for purposes of summary judgment, this statement is not material and therefore no response is necessary.  Furthermore, this statement is not a statement of fact but rather a statement of opinion.  To the extent that a response is necessary, this paragraph is undisputed.

43.     Petersen stated that it "is imperative that each agency implement its' [sic] own policies and provide training to its' [sic] employees.  In this case, Draper City did not have any use of force policies in place and clearly did not consider the importance as they ordered an animal control officer (who had not been certified as a law enforcement officer or had any formal use of force training) to perform law enforcement functions."  Ex. 14 to Plaintiff's Opposition, Petersen Rebuttal, at 3.

**RESPONSE:** Objection: this paragraph violates DUCivR56-1(c)(2)(C) because it contains multiple facts instead of setting each fact forth in separately numbered paragraphs. Furthermore, this statement is not a statement of fact but rather a statement of opinion and therefore no response is necessary.  To the extent a response is necessary, Defendants do not dispute that Petersen so testified, but dispute the accuracy of the statement that "Draper City did not have any use of force policies in place."  Plaintiff knows this statement is false as he has identified a use of force policy which was in place at the time of these events.  *See* **Exhibit D**, 2010 Use of Force Policy.

44.     With his experience of dealing with many individuals who were under the influence of drugs, narcotics, or alcohol as well as participating on the Use of Force Committee at Weber County for several years, evaluating officers' use of force, Petersen stated that this training and experience helped him formulate the opinion that the incident could have been avoided.  Ex. 12 to Plaintiff's Opposition, Petersen Depo 64:10-22; 66:12-25.

**RESPONSE:** Objection: this statement is not a statement of material fact and therefore no response is required. Furthermore, this statement is not a statement of fact but rather a

28

statement of opinion.  To the extent a response is required, Defendants do not dispute this paragraph.

45.     Petersen also testified that at the time he was at the Weber County Sheriff's Office during 2009-2012, the Weber County Sheriff's Office was a "CALEA-accredited law enforcement agency, which is a nationally recognized accreditation nationally [sic] who comes in and actually evaluates our SOPs, our standard practices, and evaluates and makes sure that Weber County Sheriff's Office was to the national standard."  Ex. 12 to Plaintiff's Opposition, Petersen Depo 68:4-25; 69:20-23; 70:4-9.

**RESPONSE:**  Objection: this statement is not a statement of material fact and therefore no response is required.  To the extent a response is required, Defendants do not dispute this paragraph.

46.     Defendant's expert of the use of force by police officers, Kenneth R. Wallentine ("Wallentine"), testified that "prior to 2010 . . . a discussion arose with the Chiefs of Police Association, which . . . I was a member of  . . . about the state of policy in the state of Utah."  Exhibit 16 to Plaintiff's Opposition, Deposition of Kenneth R. Wallentine dated June 28, 2016 ("Wallentine Depo"), 43:12-18.

**RESPONSE:**  Objection: this statement is not a statement of material fact and therefore no response is required.  Defendants also object due to the fact that this is not an exact quote from Mr. Wallentine's testimony.  To the extent a response is required, Defendants do not dispute the substance of the statement in this paragraph.

47.     Wallentine could not recall an exact date, but testified that it was during the 2008 to 2010 time period.  Ex. 16 to Plaintiff's Opposition, Wallentine Depo 50:19-23.

**RESPONSE:**  Objection: this statement is not a statement of material fact and therefore no response is required.  To the extent a response is required, this paragraph is undisputed.

48.     Wallentine testified that the group was a collaboration of Chiefs of Police and Sheriffs' Association soliciting input from other groups.  Ex. 16 to Plaintiff's Opposition, Wallentine Depo 52:5-9.

**RESPONSE:**  Objection: this statement is not a statement of material fact and therefore no response is required.  Defendants also object due to the fact that this is not an accurate representation of Mr. Wallentine's testimony.  To the extent a response is required, Defendants do not dispute that Wallentine testified that the group was collaboratively assembled by the executives of the Utah Chiefs of Police Association and the Utah Sheriff's Association soliciting input from some other groups.  Ex. 16 to Plaintiff's Opposition, Wallentine Depo 52:5-9.

49.     Wallentine further testified that the purpose of the committee was to provide uniform and best practices of policies as they pertain to critical issues in use in the state of Utah, and that those critical issues included use of force.  Ex. 16 to Plaintiff's Opposition, Wallentine Depo 52:22-53:7.

**RESPONSE:**  Objection: this statement is not a statement of material fact and therefore no response is required.  To the extent a response is required, this paragraph is undisputed.

50.     Wallentine additionally testified that the committee looked at, researched, and considered outside police policy service providers.  One of those service providers was a group

SLC_2971720.1

from California named Lexipol.  Ex. 16 to Plaintiff's Oppositionn, Wallentine Depo 53:10-54:17.

**RESPONSE:** Objection: this statement is not a statement of material fact and therefore no response is required.  To the extent a response is required, this paragraph is undisputed.

51.     Wallentine testified that "I certainly agree that the 2013 policy is more comprehensive."  Ex. 16 to Plaintiff's Opposition, Wallentine Depo 120:17-18.

**RESPONSE:** Objection: this statement is not a statement of material fact and therefore no response is required.  To the extent a response is required, Defendants do not dispute that Wallentine testified "I certainly agree that the 2013 policy is more comprehensive than any of its factors (a) through (q)."

52.     The 2013 DCPD Use of Force Policy was provided to Draper and published by Lexipol.  Exhibit 5 to Plaintiff's Opposition, at Footer.

**RESPONSE:** Objection: this statement is not a statement of material fact and therefore no response is required.  This statement is also vague as to who provided the Use of Force Policy to Draper.  To the extent a response is required, Defendants do not dispute that the Policy was published by Lexipol.

## ARGUMENT

## I.     MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

The United States Supreme Court held that municipalities may be held liable for violations of civil rights, if the municipality has adopted or otherwise promulgated a policy or custom that violated the plaintiff's constitutional rights.  *Monell v. Dep't of Social Services*, 436

31

U.S. 658, 690 (1978).  "A municipality is liable only when the official policy [or unofficial custom] is the 'moving force behind the injury alleged.'"  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997)).  A plaintiff must not only show that his injury was the result of a custom or policy, but that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 769 (10th Cir. 2013).  Generally, the three required elements for imposing liability on a municipality are: (1) an official policy or custom, (2) causation, and (3) state of mind.  *Id.*

"The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible."  *Schneider*, 717 F.3d at 769. (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  An official policy or custom may take the form of: (1) a formal regulation or policy statement; . . . or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.  *Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir. 2010). Although Defendants' Motion argued the first theory of liability based on a formal regulation or policy statement, Plaintiff's Opposition primarily focused on a failure to train.  As such, both theories of liability are addressed below.

### A.  Failure to Train

In order to succeed "on a claim against a municipality for *failure to train* its police officers in the use of force," the plaintiff must prove the following five elements: "[1] the

training was in fact inadequate ... [;] [2] the officers exceeded constitutional limitations on the use of force; [3] the use of force arose under circumstances that constitute a usual and recurring situation[ ] with which police officers must deal; [4] the inadequate training demonstrates a deliberate indifference on the part[ ] of the city toward persons with whom the police officers come into contact[;] and [5] there is a direct causal link between the constitutional deprivation and the inadequate training." *Alusa v. Salt Lake Cty.*, No. 2:11-CV-184, 2013 WL 3946574, at *11 (D. Utah Aug. 1, 2013) (citing *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003)).

## 1. *Inadequate Training*

"In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a Plaintiff must first prove the training was in fact inadequate." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).  While a government's decision not to provide adequate training may in certain circumstances rise to the level of an official policy for purposes of a section 1983 claim, "'(a) municipality's culpability for a deprivation of rights **is at is most tenuous where a claim turns on a failure to train**.'" *Montoya v. Newman*, 115 F. Supp. 3d 1263, 1283 (D. Colo. 2015) (emphasis added) (quoting *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359 (2011)).  "Most often, failure to train claims are based on a pattern of incidents in which citizens were injured." *Id.*  A single incident may be sufficient to support a failure to train claim, but "[t]he single incident exception is extremely narrow." *Id.* at 1284.  To support a failure to train claim based on a single incident, a "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.*

33

Plaintiff has failed to meet his burden to show that Defendants' police training was in fact inadequate.  Plaintiff relies primarily on two contentions to support his allegation of inadequate training.  First, Plaintiff argues that Kirk Torgensen's expert opinion that Defendant's use of force policy was inadequate is sufficient to show inadequate training.  However, "expert witness opinions alone are insufficient to show either the inadequacy of training or the deliberate indifference required to establish municipal liability."  *Fuston-Lounds v. Torres*, 2005 WL 1950349, at *6 (W.D. Okla. Aug. 11, 2005), *aff'd sub nom. Lounds v. Torres*, 217 F. App'x 755 (10th Cir. 2007) (citing *Carr*, 337 F.3d at 1230).  When an expert opines "that additional training allegedly could have assisted the officers in dealing with a specific encounter," these opinions "'merely demonstrate the omniscience of hindsight.'"  *Id.* (quoting *Carr*, 337 F.3d at 1230).  Here, Torgensen's opinion that Defendants' use of force policy could have been better has no factual basis, but rather is based solely on hindsight.[3]  Torgensen's testimony therefore does not constitute evidence of inadequate training.

Second, Plaintiff contends that an inference of inadequate training should be drawn because Defendants do not have certain training records.  Plaintiff's reliance on the *Montoya* case is inapposite.  *Montoya* does not stand for the proposition that "spoliation of evidence can be sufficient to support a theory of official capacity liability."  Pl. Opp., at 4.  Rather, the court in *Montoya* merely found that "[t]he inference from spoliation alone is not sufficient to support this theory of official capacity liability."  *Montoya v. Newman*, 115 F. Supp. 3d 1263, 1288 (D. Colo.

---

[3] To the extent that Torgensen's opinion is based on Draper City's 2013 policy on use of force, this evidence is inadmissible under Federal Rule of Evidence 407.

34

2015).[4]  The court emphasized that "[i]n the context of an official capacity claim, reliance solely on an inference from spoliation is particularly inappropriate" because "'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employees.'"  *Id.* (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)).  Given that the *Montoya* case does not recognize an inference of spoliation, Plaintiff has no basis for seeking such an inference.  Further, as emphasized in *Montoya*, Plaintiff may not rely on this inference without providing additional evidence of inadequate training, which he has failed to do.

In sum, Plaintiff's sole evidence of inadequate training are conclusory allegations with no factual basis.  Plaintiff's conclusory arguments "do not constitute 'other evidence' of training inadequacy."  *Sumpter v. Ahlbrecht*, 2012 WL 252980, at *18 (D. Colo. Jan. 26, 2012) (citing *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir .2009) ("the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment")).  Therefore, Plaintiff has failed to meet its burden of showing a material dispute of fact with regard to inadequate training.

## 2. *Exceeded Constitutional Limitations*

Plaintiff makes detailed factual allegations to support its contention that Defendants exceeded constitutional limitations on use of force.  For purposes of this motion only, Defendants concede the element of exceeding constitutional limitations.  *See Hildebrant v. Sedgwick Cty. Sheriff*, 2014 WL 2573331, at *4, n.22 (D. Kan. June 9, 2014).  Defendants make

---

[4] Plaintiff mistakenly identifies the *Montoya* case as a District of Oklahoma case.

35

this concession in order to avoid having to argue the merits of Plaintiff's excessive use of force claim, a disputed claim, which forms the basis of causes of action that are not at issue here.

### 3. *Usual and Recurring Situation*

This element requires that "the use of force arose under circumstances that constitute a usual and recurring situation[ ] with which police officers must deal." *Alusa v. Salt Lake Cty.*, No. 2:11-CV-184, 2013 WL 3946574, at *11 (D. Utah Aug. 1, 2013) (citing *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003)). As with the previous element, Defendants concede, for purposes of this motion only, the element of usual and recurring situation. *See Hildebrant v. Sedgwick Cty. Sheriff*, 2014 WL 2573331, at *4, n.22 (D. Kan. June 9, 2014).

### 4. *Causal Link*

To establish the causation element, the challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting Martin A. Schwartz, Section 1983 Litigation Claims & Defenses, § 7.12[B] (2013) ("Schwartz")). This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. Plaintiff must therefore "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405. "The causation element is applied with especial rigor when the municipal policy or practice is itself

36

not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." Schwartz, at § 7.12.

Here, Plaintiff claims that "Patterson's and Harris' actions were directly attributable to their lack of training." Pl. Opp. at 11. In other words, Plaintiff's basis for seeking municipal liability is a single incident of use of force. To support a failure to train claim based on a single incident, a "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Montoya v. Newman*, 115 F. Supp. 3d 1263, 1283 (D. Colo. 2015). In support of his argument, Plaintiff again points to Defendants' lack of records showing training during a period of over five years ago. Plaintiff also relies on Patterson's inability to remember certain aspects of his training. Finally, Plaintiff relies on Trevor Petersen's expert opinion on Patterson's use of force and Officer Heather Baugh's presence at the scene. Simply stating that there was a lack of training or other issues in the evidence does not satisfy this element. Plaintiff must point to record evidence, not opinion, showing a causal link, and he has failed to do so. Plaintiff has failed to produce evidence of this element at all, let alone to the extent necessary to satisfy the rigorous standard applicable to municipalities particularly.

### 5. *Deliberate Indifference*

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407

(1997); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  The deliberate indifference standard may be satisfied when the "'the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'"  *Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).  To put it differently, deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).

As explained by the United States Supreme Court, the purpose of this higher standard for failure to train claims is to avoid "*de facto respondeat superior* liability on municipalities—a result we rejected in *Monell*."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–92 (1989) (citing *Monell*, 436 U.S. at 693–94).  The Supreme Court cautioned that a more liberal standard for failure to train claims would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs," which is "an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism."  *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362, 378–380 (1976)).

Following the reasoning in *Canton*, other circuits have recognized that "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 816 (6th Cir. 2005) (citation omitted); *see also Marable v. W. Pottsgrove Twp.*, 176 F.

38

App'x 275, 282–83 (3d Cir. 2006) (citation omitted) ("[A] mere showing that particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability under § 1983 for failure to train."); *Guerra v. Montgomery Cty., Md.*, 118 F. App'x 673, 676 (4th Cir. 2004) (citation omitted) ("[T]he fact that more or better training could have been instituted is not enough by itself to establish a claim for deliberate indifference.").[5]

Unfortunately for Plaintiff, with respect to Draper City, he has done no more than call into question the training of one officer, Officer Patterson, and speculate through his expert's opinions that his injuries could have been avoided with different training. This simply is not enough to show that Defendants acted, or failed to act, with deliberate indifference with respect to training.

### B.  Formal Regulation or Policy Statement

Throughout Plaintiff's arguments regarding training he also makes passing references policy deficiencies. Therefore, to ensure thorough briefing on all the issues before the Court, Defendants also address the elements of a *Monell* claim regarding policies. Generally, the three

---

[5] The District of Utah has also adopted this reasoning in stating, "[i]t is not enough to simply point out 'that a particular officer may be unsatisfactorily trained' or 'that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.'" *Swasey v. W. Valley City*, 2015 WL 476114, at *7 (D. Utah Feb. 5, 2015) (quoting *City of Canton*, 489 U.S. at 390–91). The court summarized this standard as follows: "Simply put, even 'adequately trained officers occasionally make mistakes[.]'" *Id.* (quoting *City of Canton*, 489 U.S. at 391); *see also Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003) ("[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

required elements for imposing liability on a municipality are: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 769 (10th Cir. 2013).

First, an official policy or custom may take the form of "a formal regulation or policy statement." *Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir. 2010). Plaintiff appears to identify the use of force policy as the policy in question for purposes of this portion of his *Monell* claim. However, Plaintiff does not dispute that his own expert has testified that this policy correctly stated the law on use of force.

Second, "[a] municipality is liable only when the official policy [or unofficial custom] is the 'moving force behind the injury alleged.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997)). Plaintiff has failed to show, even through his expert's opinions (which are not sufficient for purposes of summary judgment), that the use of force policy was the moving force behind Officer Patterson's alleged use of excessive force. No evidence shows that, had the use of force policy been more specific or informative as far as what factors to consider, Officer Patterson would have acted differently. No testimony or evidence reflects that Officer Patterson considered that specific policy when acting on the day in question. Therefore, Plaintiff has failed to show a causal connection sufficient to hold Draper City liable for the actions of its employee here.

Third, a plaintiff must not only show that his injury was the result of a custom or policy, but that "the policy was enacted or maintained with deliberate indifference to an almost

40

inevitable constitutional injury." *Schneider*, 717 F.3d at 769.  Plaintiff attempts to show deliberate indifference through the testimony of Defendants' police practices expert, Ken Wallentine.  Mr. Wallentine testified regarding a group created by the Utah Chiefs of Police Association and the Utah Sheriff's Association to review and update policies in approximately 2008 through 2010.  The group apparently was formed out of an awareness that policies needed improvement.  However, Plaintiff does not explain how, or even if Defendant Draper City was involved in these decisions, but merely mentions that Draper City was one of the Utah Chiefs of Police Association's many members.   Plaintiff fails to link any general awareness that policies may have needed updating in Utah to *Draper City* specifically.  Furthermore, even if the fact that a group of law enforcement officials identified the need to update policies and began to take steps to do so may show that they were on notice of inadequacies, it does not show that they were deliberately indifferent to those inadequacies.  Certainly each and every member of the organization should not be penalized for recognizing areas where improvement was needed and taking steps to do so: that is not deliberate indifference.  For these reasons, Plaintiff has failed to produce evidence to show that Defendant Draper City is liable under a policy *Monell* theory.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment should be granted and Plaintiff's Fourth Cause of Action should be dismissed with prejudice.

DATED this 3rd day of October, 2016.

**DURHAM JONES & PINEGAR, P.C.**


/s/ R. Blake Hamilton
R. Blake Hamilton
Ashley M. Gregson
ATTORNEYS FOR DEFENDANTS

42

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 3rd day of October, 2016, via electronic filing upon the following:

Lisa A. Marcy
CLYDE SNOW & SESSIONS
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

John K. Johnson
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, UT 84101

/s/ Sarah Peck
Secretary

43

SLC_2971720.1