# EXHIBIT A

SUMMARY JUDGMENT TABLE OF FACTS

Supporting Defendants' Motion for Summary Judgment
*Joshua Chatwin v. Draper City*, et al., No. 2:14-cv-00375

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | **Official Policy** | |
| 1 | Plaintiff's Amended Complaint alleges that "[Defendants] developed and maintained policies, practices and/or customs exhibiting deliberate indifference" to the laws "prohibiting unlawful seizures" and "excessive force," the laws "requiring provision of necessary and immediate medical care," and the laws "prohibiting deprivation of the constitutional rights of citizens, including Plaintiff." (Amended Complaint ¶¶ 242-245). | Undisputed. | |
| 2 | The Court's Memorandum Decision and Order filed November 9, 2015 [Docket No. 30], attached hereto as **Exhibit A**, *states* on page 6: Whether or not Draper City had a specific policy, there is enough alleged regarding practices and customs to allow a failure to train claim to move forward. The court | Undisputed. | |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | finds that Chatwin's *Monell* claim adequately puts Draper City on notice of the alleged failures that occurred which led to his harm. Moreover, Chatwin asserts and the court agrees that he cannot identify specific policies that may have contributed to the alleged harm until Draper City turns over the relevant information in discovery. | | |
| 3 | The parties have now conducted discovery, and the deadlines for fact discovery and expert discovery have now passed. (*See* Docket). | Undisputed. | |
| 4 | Plaintiff has not identified any explicit policy as the moving force behind the harm alleged. | Disputed. Specifically controverting the statement contained in paragraph 4, Plaintiff has stated from the time that he filed his Notice of Claim that the City's inadequate training and lack of any adequate City policy on the use of force led to the injuries he sustained from Patterson on May 18, 2010. Patterson actually testified that he did not remember getting any training on controlling a combative person who was resisting arrest after he left the Academy (Peace Officers Training Academy, a state-run program, "POST"). Exhibit 1, Deposition of Joshua Patterson dated December 7, 2015 ("Patterson Depo."), 30:12-24. Patterson testified that he could not recall, but assumed, that Draper City Police Department ("DCPD") provided training on defensive tactics. Ex. 1, Patterson Depo. 42:20-43:3; 48:4-8. Patterson | Plaintiff does not raise a genuine issue as to this undisputed fact.  Instead, Plaintiff points to testimony that is unrelated and non-responsive to the fact in question.  It is undisputed that Plaintiff has not identified any explicit policy as the moving force behind the harm alleged.  Raising testimony regarding the lack of policies or training does not dispute this statement.  Plaintiff has still failed to identify a policy that was the moving force behind the harm alleged. |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | testified that the last time he received use of force training was "at the academy." Ex. 1, Patterson Depo. 48:20-49:11. Patterson also testified that he and his field training officer only discussed the Utah Code section on deadly force. He could not remember what they discussed. Ex. 1, Patterson Depo. 58:12-59:2. Patterson testified that he did not recall any training on restraining individuals. Ex. 1, Patterson Depo. 67:10-21. Patterson testified that he did not recall receiving any training from DCPD on reasonable force. Ex. 1, Patterson Depo. 69:11-70:19, 24-71:1. Patterson continued that determining the use of force is "vague," because every case is different. The officer must meet the level of force. Ex. 1, Patterson Depo. 71:2-9; 72:1-16. Patterson agreed that police officers fight but rarely train whereas their military cousins train and rarely fight, as discussed in a PowerPoint entitled "Draper City Police Department Defensive Tactics 05/05/2009." He agreed with Plaintiff's counsel that budget and time restraints make it, as noted in the PowerPoint presentation, difficult to provide training. Ex. 1, Patterson Depo. 80:23-82:24.<br><br>    In response to Plaintiff's Interrogatory No. 2: "Identify any custom and/or procedure that you qualify as training on the use of force, including excessive force, for Draper City Police Officers in effect from 2005 to 2010. For each custom and/or procedure that you qualify as training on the use of force, identify and describe the name of the custom and/or procedure, the details of the custom and/or procedure; including the use of force on an individual in handcuffs, the name and contact information for | |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | the provider(s) of said training, the reason(s) for using the provider(s), the process for implementation of the custom and/or procedure, the training dates, if any, of the custom and/or procedure, and the dates, if any, when each of the defendant officers participated in the custom and/or procedure," Defendants admitted that they had "few records for this time frame [2005-2010] because there was a change in training coordinators and procedure for record keeping." Defendants have never produced any training documents for the time period when Chatwin was injured. Exhibit 2, Response to Interrogatory No. 2, Defendants' Mack Connole and Draper City's Responses to Plaintiff's First Set of Interrogatories ("Draper Interrog. Response"); Exhibit 3, Draper City Police 30(b)(6) Deposition dated December 8, 2015 ("30(b)(6) Depo."), 15:14-19:21.<br><br>Kirk Torgensen, Plaintiff's expert witness on the use of force policies of police departments, explained why the Draper City policy was inadequate. He testified that "the problem with the policy is that it is so bare bones, and it is so – it states the **conclusion** that force has to be reasonable. And in my many years of experience, that is not sufficient to guide somebody in what it means, how to comport yourself with it." Exhibit 4, Deposition of Kirk Torgensen dated June 17, 2016 ("Torgensen Depo."), 39:13-18 (emphasis added). He further explained that the policy was inadequate because it should not just state what the law was at the time, that when the officer has to use reasonable force, it must be reasonable. He explained that the policy has to give specifics directing and guiding officers who are responsible for | |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | using force. He called the policy "useless." Ex. 4, Torgensen Depo., 41:1-22. Torgensen further testified that because the policy was lacking with respect to providing guidance on the use of reasonable force, it was therefore unconstitutional. Ex. 4, Torgensen Depo., 42:7-16. He further opined that because the policy was ambiguous and not clear, it sent a message to the police "that it was not important." Ex. 4, Torgensen Depo., 44:13-24. He explained why the policy was "tremendously lacking." He noted that the many factors listed in the new Draper City Police Department policy adopted in 2013 were an example of a policy that attempted to put in writing what factors need to be considered, such as impairment, including intoxication, the size of the individuals, whether the person is handcuffed, under control, attitude, and type of resistance that the suspect can apply. Ex. 4, Torgensen Depo., 45:13-46:10; 50:8-11, 18-53:23; 78:16-79:13; 80:3-12; Exhibit 5, 2013 DCPD Use of Force Policy attached to 30(b)(6) Depo. as Exhibit 13. He testified that the policy was completely lacking, that it had "absolutely no substance." Ex. 4, Torgensen Depo., 47:4-5. Torgensen further explained that these factors must be considered in their totality and that a sound policy with solid training is critical. "One without the other is not sufficient." Ex. 4, Torgensen Depo., 52:3-6; 80:17-19. Torgensen also confirmed that it was important for cities to have additional training aside from POST, because the POST Academy is limited. He explained that the POST training could not come close to the amount of training that a police officer has to get to become "really proficient at their job." | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
|   |   | He explained that is why mandatory hours have to be done every year. Ex. 4, Torgensen Depo., 111:5-25. The POST training provides only a foundation for training on the use of force. Ex. 4, Torgensen Depo., 112:1-15. Torgensen was asked by Defendants' counsel about his recollection of Ken Wallentine talking to Torgensen about the need to change policies on the use of force while both individuals worked at the Attorney General's office. Ex. 4, Torgensen Depo. 37:20-38:13. |   |
| 5 | Plaintiff has produced no evidence of a pattern of incidents in which citizens were injured by the DCPD. | Undisputed. |   |
| 6 | Plaintiff has disclosed Kirk Torgensen as an expert witness and filed Mr. Torgensen's Expert Report on January 15, 2016 [Docket No. 34], attached hereto as **Exhibit B**. In his Expert Report, Mr. Torgensen concludes (1) that the DCPD's use of force policy was inadequate because it lacks "any concrete guidance on the factors to consider" to determine when use of force is proper, and (2) that the training provided to Officer Patterson by the DCPD was inadequate. (Torgensen Expert Report, pgs. 3-4). | Undisputed that Mr. Torgensen gave these opinions; however, disputed in that Mr. Torgensen made additional conclusions on how the DCPD's use of force policy was inadequate. *See* Response to Statement No. 4. | Plaintiff has not identified a genuine dispute of fact.  The fact that Torgensen offered other opinions in his report does not negate the fact that he offered these two general conclusions in his report. Plaintiff has simply provided argument and commentary in an attempt to create a dispute of fact, which is not appropriate. *See Davis v. Morrell*, 2010 WL 1329787, *1 n.1 (D. Utah March 26, 2010) ("Although Plaintiff's opposition memo argues against Defendants' interpretation of some of the facts, it does not specifically controvert any of Defendant's stated material acts, as required by Rule 56."). |
| 7 | Mr. Torgensen's Expert Report also states that he based his opinions in | Disputed. Specifically controverting the statements made in paragraph 7. Torgensen actually stated that | Plaintiff has not identified a genuine dispute of fact.  The statement at issue |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
|  | part on the fact that in 2013, about three years after the events at issue, the DCPD updated its use of force policy. (Torgensen Expert Report, pgs. 3-4). | whereas he compared the 2010 and 2013 policies, he did so to show that the 2013 policy "is an example of a policy that gives concrete factors to be aware of and of course if there is solid training that teaches officers on how to consider these factors and others, it greatly increases the likelihood of a desired outcome." Ex. 4, Torgensen Depo., Exhibit A, Expert Report of Kirk Torgensen Report. Torgensen also noted that the 2013 policy was an example of the kind of policy that gave some factors for an officer to consider when using excessive force. Ex. 4, Torgensen Depo. 45:16-25. Torgensen testified: "[s]o the 2013 policy, for me, was a huge step in the right direction in stating things that an officer has to think about and be aware of." Ex. 4, Torgensen Depo. 46:4-5.<br><br>    Q. Okay. And so you relied upon the 2013 policy when you were making your decision or stating your opinion regarding the 2010 policy?<br>    A. **I don't think I relied on it.**<br>    …<br>    Q. You didn't do any comparisons. You don't -- in your report, you're not making any comparisons to any other report, except for the 2013 policy, correct?<br>    A. **I did not make any comparisons**.<br>Ex. 4, Torgensen Depo. 46:24-47:2; 48:10-14. | does not allege that Torgensen compared the 2010 and 2013 statutes, which Plaintiff apparently disputes. Instead, it simply alleges that Torgensen relied upon the fact that the policy was updated in 2013, which Plaintiff apparently does not dispute. |
| 8 | In Mr. Torgensen's deposition ("Torgensen Depo."), he admits that Draper City's use of force policy is a correct statement of the law. Torgensen Depo. 39:23-40:6, | Undisputed that Mr. Torgensen said that Draper City's use of force policy "is a correct statement of the law"; however, it is disputed as to the mischaracterization of that statement. Specifically controverting the statement contained in paragraph 8, | Plaintiff fails to raise a genuine issue of fact, but instead points to testimony that is unrelated and non-responsive to the fact in question. |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | excerpt attached hereto as **Exhibit C.** | although Torgensen stated that it was a correct restatement of the Utah State statute at that point, he explained that a policy cannot "simply flat out state -- what the law is. The policy is to be useful in directing and guiding and making sure that people who are responsible comply with it. To state a conclusion that it has to be reasonable, basically tells someone almost nothing." Ex. 4, Torgensen Depo., 39:23-41:22. Torgensen stated that Draper's conclusory policy, while a true statement of law, was "useless." He found the policy to be unconstitutional. Ex. 4, Torgensen Depo., 42:5-16. | |
| 9 | Plaintiff has not produced evidence of inadequate training. Plaintiff's expert witness, Mr. Torgensen, has stated that in his opinion, one officer, Officer Patterson, received inadequate training due to a lack of evidence of training provided to him by the DCPD. | Disputed. Specifically controverting the facts contained in paragraph 9, Defendants have made no citation to the record. Torgensen never testified as such. Patterson actually testified that he did not remember getting any training on controlling a combative person who was resisting arrest after he left the Academy. Ex. 1, Patterson Depo. 30:12-24. Patterson testified that he could not recall, but assumed, that DCPD provided training on defensive tactics. Ex. 1, Patterson Depo. 42:20-43:3; 48:4-8. Patterson testified that the last time he received use of force training was "at the academy." Ex. 1, Patterson Depo. 48:20-49:11. Patterson also testified that he and his field training officer only discussed the Utah Code section on deadly force (the same circuitous language of "reasonableness" in question). He could not remember what they discussed. Ex. 1, Patterson Depo. 58:12-59:2. Patterson testified that he did not recall any training on restraining individuals. Ex. 1, Patterson Depo. 67:10-21. Patterson testified that he | Plaintiff fails to point to admissible evidence to create a genuine issue of fact. Instead, Plaintiff points to testimony of other witnesses when this fact deals with a statement from one particular witness, Kirk Torgensen. |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
|   |   | did not recall receiving any training from DCPD on reasonable force. Ex. 1, Patterson Depo. 69:11-70:19-71:1. Patterson continued that determining the use of force is vague, because every case is different. The officer must meet the level of force. Ex. 1, Patterson Depo. 71:2-9; 72:1- 16. Patterson agreed that police officers fight but rarely train whereas their military cousins train and rarely fight, as discussed in a PowerPoint entitled "Draper City Police Department Defensive Tactics 05/05/2009." He agreed with Plaintiff's counsel that budget and time restraints make it, as noted in the PowerPoint presentation, difficult to provide training. Ex. 1, Patterson Depo. 80:23-82:24.<br><br>    In response to Plaintiff's Interrogatory No. 2: "Identify any custom and/or procedure that you qualify as training on the use of force, including excessive force, for Draper City Police Officers in effect from 2005 to 2010. For each custom and/or procedure that you qualify as training on the use of force, identify and describe the name of the custom and/or procedure, the details of the custom and/or procedure; including the use of force on an individual in handcuffs, the name and contact information for the provider(s) of said training, the reason(s) for using the provider(s), the process for implementation of the custom and/or procedure, the training dates, if any, of the custom and/or procedure, and the dates, if any, when each of the defendant officers participated in the custom and/or procedure," Defendants admitted that they had "few records for this time frame [2005-2010] because there was a change in training coordinators and procedure for record keeping." |   |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | Defendants have never produced any training documents for the time period when Chatwin was injured. Ex. 2, Draper Interrog. Response; Ex. 3, 30(b)(6) Depo. 15:14-19:21. | |
| 10 | Officer Patterson entered the police academy in January of 2009 and graduated about ten months later, in late 2009. Deposition of Joshua Patterson ("Patterson Depo.") 11:17-19, 13:17-14:8, attached hereto as **Exhibit D**. | Undisputed. | |
| 11 | The incident at issue regarding the alleged injury to Plaintiff occurred about eight months after Officer Patterson graduated from the police academy. | Disputed. No citation to the record exists here; however, it is undisputed that the incident at issue occurred on May 18, 2010. | Plaintiff's dispute is immaterial, as the date of the incident is not in dispute. |
| 12 | Officer Patterson received training on use of force at the Academy. Patterson Depo. 49:6-11; Torgensen Depo. 23:13-25:7. | Undisputed. | |
| 13 | Officer Patterson also received training on use of force from his field training officer when he joined the DCPD. Patterson Depo. 49:25-52:18, 54:5-56:3, 58:8-59:2. | Disputed. Specifically controverting the facts contained in paragraph 13: Patterson did not testify that he received training from his field training officer when he joined the DCPD. He actually testified as follows: Patterson's field training officer and Patterson only discussed training, but Patterson could not recall what he and his field training officer discussed about the category "violently resist during control and restraint," "violently resist after being restrained," "department policy," "intoxicated | Plaintiffs fail to raise a genuine issue as to this undisputed fact.  It is undisputed that Patterson testified he could not recall specific training but that he did recall discussing use of force during his field training. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | persons" and "use of force." Ex. 1, Patterson Depo. 56:18-58:1, 12-59:2. | |
| | **Causation** | | |
| 1 | Plaintiff has failed to provide or identify any evidence during discovery of an official custom or policy that was the "moving force" behind the constitutional violations alleged in his Amended Complaint. | Disputed. Specifically controverting the statement contained in paragraph 1, Plaintiff has stated from the time that he filed his Notice of Claim that the City's inadequate training and lack of any adequate City policy on the use of force led to the injuries he sustained from Patterson on May 18, 2010. Patterson actually testified that he did not remember getting any training on controlling a combative person who was resisting arrest after he left the Academy. Ex. 1, Patterson Depo. 30:12-24. Patterson testified that he could not recall, but assumed, that DCPD provided training on defensive tactics. Ex. 1, Patterson Depo. 42:20-43:3; 48:4-8. Patterson testified that the last time he received use of force training was "at the academy." Ex. 1, Patterson Depo. 48:20-49:11. Patterson also testified that his field training officer and he only discussed the Utah Code section on deadly force. He could not remember what they discussed. Ex. 1, Patterson Depo. 58:12-59:2. Patterson testified that he did not recall any training on restraining individuals. Ex. 1, Patterson Depo. 67:10-21. Patterson testified that he did not recall receiving any training from DCPD on reasonable force. Ex. 1, Patterson Depo. 69:11-70:19, 24-71:1. Patterson continued that determining the use of force is "vague," because every case is different. The officer must meet the level of force. Ex. 1, Patterson Depo. 71:2-9; 72:1-16. Patterson agreed that police | Plaintiff does not raise a genuine issue as to this undisputed fact. Instead, Plaintiff points to testimony that is unrelated and non-responsive to the fact in question. It is undisputed that Plaintiff has not identified any explicit policy as the moving force behind the harm alleged. Raising testimony regarding the lack of policies or training does not dispute this statement. Plaintiff has still failed to identify a policy that was the moving force behind the harm alleged. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | officers fight but rarely train whereas their military cousins train and rarely fight, as discussed in a PowerPoint entitled "Draper City Police Department Defensive Tactics 05/05/2009". He agreed with Plaintiff's counsel that budget and time restraints make it, as noted in the PowerPoint presentation, difficult to provide training. Ex. 1, Patterson Depo. 80:23-82:24.<br><br>    In response to Plaintiff's Interrogatory No. 2: "Identify any custom and/or procedure that you qualify as training on the use of force, including excessive force, for Draper City Police Officers in effect from 2005 to 2010. For each custom and/or procedure that you qualify as training on the use of force, identify and describe the name of the custom and/or procedure, the details of the custom and/or procedure; including the use of force on an individual in handcuffs, the name and contact information for the provider(s) of said training, the reason(s) for using the provider(s), the process for implementation of the custom and/or procedure, the training dates, if any, of the custom and/or procedure, and the dates, if any, when each of the defendant officers participated in the custom and/or procedure," Defendants admitted that they had "few records for this time frame [2005-2010] because there was a change in training coordinators and procedure for record keeping." Defendants have never produced any training documents for the time period when Chatwin was injured. Ex. 2, Draper Interrog. Response; Ex. 3, 30(b)(6) Depo. 15:14-19:21.<br><br>    Kirk Torgensen, Plaintiff's expert witness on the use of force policies of police departments, | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | explained why the Draper City policy was inadequate. He testified that "the problem with the policy is that it is so bare bones, and it is so – it states the **conclusion** that force has to be reasonable. And in my many years of experience, that is not sufficient to guide somebody in what it means, how to comport yourself with it." Ex. 4, Torgensen Depo. 39:13-18 (emphasis added). He further explained that the policy was inadequate because it could not just state what the law was at the time "that when the officer has to use reasonable force, it must be reasonable." He explained that the policy has to give specifics on directing and guiding officers who are responsible for using force. He called the policy "useless." Ex. 4, Torgensen Depo. 41:1-22. Torgensen further testified that because the policy was lacking with respect to providing guidance on the use of reasonable force, it was therefore, unconstitutional. Ex. 4, Torgensen Depo. 42:7-16. He further opined that because the policy ambiguous and not clear, it sent a message to the police that "it was not important." Ex. 4, Torgensen Depo. 44:13-24. He explained why the policy was "tremendously lacking." He noted that the many factors listed in the new policy adopted in 2013 were an example of a policy that attempted to put in writing what factors need to be considered, such as impairment, including intoxication, the size of the individuals, whether the person is handcuffed, under control, attitude, and type of resistance that the suspect can apply. Ex. 4, Torgensen Depo. 45:13-46:10; 50:8-11, 18-51:23; 78:16-79:13; 80:3-12. He testified that the policy was completely lacking, that it had "absolutely no substance." Ex. 4, Torgensen Depo. 47:4-5. | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | Torgensen further explained that these factors must be considered in their totality and that a sound policy with solid training is critical. "One without the other is not sufficient." Ex. 4, Torgensen Depo. 52:3-6; 80:17-19. Torgensen also confirmed that it was important for cities to have additional training aside from POST, because the POST Academy is limited. He explained that the POST training could not come close to the amount of training that a police officer has to get to become "really proficient at their job." He explained that is why these mandatory hours have to be done every year. Ex. 4, Torgensen Depo. 111:5-25. The POST training provides only a foundation for training on the use of force. Ex. 4, Torgensen Depo. 112:1-15. | |
| 2 | In Mr. Torgensen's deposition, he admits that Draper City's use of force policy is a correct statement of the law. Torgensen Depo. 39:23-40:6. | Undisputed that Mr. Torgensen said that Draper City's use of force policy "is a correct statement of the law"; however, it is disputed as to the mischaracterization of that statement. Specifically controverting the statement contained in paragraph 8, although Torgensen stated that it was a correct restatement of the Utah State statute at that point, he explained that a policy cannot "simply flat out state -- what the law is. The policy is to be useful in directing and guiding and making sure that people who are responsible comply with it. To state a conclusion that it has to be reasonable, basically tells someone almost nothing." Ex. 4, Torgensen Depo. 39:23-41:22. Torgensen stated that Draper's conclusory policy, while a true statement of law, was "useless." He found the policy to be unconstitutional. Ex. 4, Torgensen Depo. 42:5-16. | Defendants have not mischaracterized Mr. Torgensen's statement.  Instead of raising a genuine issue of fact, Plaintiff provides immaterial arguments and commentary. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| 3 | Plaintiff has not challenged the Utah state statute or the use of force policy as being unconstitutional or incorrect on their face. | Disputed. Specifically controverting the statement made in paragraph 3, Plaintiff stated in his Amended Complaint: <br><br> 209. Draper City, the Draper City Police Department, and Police Chief Connole possess the final decision-making authority to create the unconstitutional policies or practices, which resulted in the deprivation of rights suffered by Plaintiff. <br><br> 210. Draper City, the Draper City Police Department, and Police Chief Connole possess the final decision-making authority to create the unconstitutional policies or practices, which resulted in the damages suffered by Plaintiff. <br><br> 211. Draper City, the Draper City Police Department, and Police Chief Connole were the moving forces behind the constitutional violations suffered by Plaintiff. <br><br> … <br><br> 214. Draper City, the Draper City Police Department, and Police Chief Connole, through their agents and employees, were responsible for the policies and practices of the Draper City Police Department. <br><br> … <br><br> 236. By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Patterson. <br><br> 237. By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Harris. | Plaintiff fails to raise a genuine issue of material fact, but instead points to allegations in the Complaint which are not record evidence and are unrelated or non-responsive to the undisputed fact in question. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | 238. By omissions, or acts of commission, Draper City, the Draper City Police Department and Police Chief Connole failed to properly train, supervise and/or discipline Officer Baugh. Docket No. 12. In addition, Kirk Torgensen, when asked by Plaintiff's counsel, whether he thought that the use of force policy was unconstitutional, he replied that it was. Ex. 4, Torgensen Depo. 42:5-16. | |
| 4 | Plaintiff has produced no evidence in discovery of an official or unofficial policy or custom that was the moving force behind the harms alleged. | Disputed. Specifically controverting the statement contained in paragraph 4, Plaintiff has stated from the time that he filed his Notice of Claim that the City's inadequate training and lack of any adequate City policy on the use of force led to the injuries he sustained from Patterson on May 18, 2010. Patterson actually testified that he did not remember getting any training on controlling a combative person who was resisting arrest after he left the Academy. Ex. 1, Patterson Depo. 30:12-24. Patterson testified that he could not recall, but assumed, that DCPD provided training on defensive tactics. Ex. 1, Patterson Depo. 42:20-43:3; 48:4-8. Patterson testified that the last time he received use of force training was "at the academy." Ex. 1, Patterson Depo. 48:20-49:11. Patterson also testified that his field training officer and he only discussed the Utah Code section on deadly force. He could not remember what they discussed. Ex. 1, Patterson Depo. 58:12-59:2. Patterson testified that he did not recall any training on restraining individuals. Ex. 1, Patterson Depo. 67:10-21. Patterson testified that he did not recall receiving any training from DCPD on reasonable force. Ex. 1, Patterson Depo. 69:11-70:19, 24-71:1. | Plaintiff does not raise a genuine issue as to this undisputed fact. Instead, Plaintiff points to testimony that is unrelated and non-responsive to the fact in question. It is undisputed that Plaintiff has not identified any explicit policy as the moving force behind the harm alleged. Raising testimony regarding the lack of policies or training does not dispute this statement. Plaintiff has still failed to identify a policy that was the moving force behind the harm alleged. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | Patterson continued that determining the use of force is "vague," because every case is different. The officer must meet the level of force. Ex. 1, Patterson Depo. 71:2-9; 72:1-16. Patterson agreed that police officers fight but rarely train whereas their military cousins train and rarely fight, as discussed in a PowerPoint entitled "Draper City Police Department Defensive Tactics 05/05/2009." He agreed with Plaintiff's counsel that budget and time restraints make it, as noted in the PowerPoint presentation, difficult to provide training. Ex. 1, Patterson Depo. 80:23-82:24. | |
| | | In response to Plaintiff's Interrogatory No. 2: "Identify any custom and/or procedure that you qualify as training on the use of force, including excessive force, for Draper City Police Officers in effect from 2005 to 2010. For each custom and/or procedure that you qualify as training on the use of force, identify and describe the name of the custom and/or procedure, the details of the custom and/or procedure; including the use of force on an individual in handcuffs, the name and contact information for the provider(s) of said training, the reason(s) for using the provider(s), the process for implementation of the custom and/or procedure, the training dates, if any, of the custom and/or procedure, and the dates, if any, when each of the defendant officers participated in the custom and/or procedure," Defendants admitted that they had "few records for this time frame [2005-2010] because there was a change in training coordinators and procedure for record keeping." Defendants have never produced any training | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | documents, including for any officers, for the time period when Chatwin was injured. Ex. 2, Draper Interrog. Response; Ex. 3, 30(b)(6) Depo. 15:14-19:21.<br><br>    Kirk Torgensen, Plaintiff's expert witness on the use of force policy of Draper City, explained why the Draper City policy was inadequate. He testified that "the problem with the policy is that it is so bare bones, and it is so – it states the **conclusion** that force has to be reasonable. And in my many years of experience, that is not sufficient to guide somebody in what it means, how to comport yourself with it." Ex. 4, Torgensen Depo. 39:13-18 (emphasis added). He further explained that the policy was inadequate because it could not just state what the law was at the time, "that when the officer has to use reasonable force, it must be reasonable." He explained that the policy has to give specifics on directing and guiding officers who are responsible for using force. He called the policy "useless." Ex. 4, Torgensen Depo. 41:1-22. Torgensen further testified that because the policy was lacking with respect to providing guidance on the use of reasonable force, it was therefore unconstitutional. Ex. 4, Torgensen Depo. 42:7-16. He further opined that because the policy was ambiguous and not clear, it sent a message to the police that it was not important. Ex. 4, Torgensen Depo. 44:13-24. He explained why the policy was "tremendously lacking." He noted that the many factors listed in the new policy adopted in 2013 were an example of a policy that attempted to put in writing what factors need to be considered, such as impairment, including intoxication, the size of the individuals, whether the | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | person is handcuffed, under control, attitude, and type of resistance that the suspect can apply. Ex. 4, Torgensen Depo. 45:13-46:10; 50:8-11, 18-51:23; 78:16-79:13; 80:3-12. He testified that the policy was completely lacking, that it had "absolutely no substance." Ex. 4, Torgensen Depo. 47:4-5. Torgensen further explained that these factors must be considered in their totality and that a sound policy with solid training is critical. "One without the other is not sufficient." Ex. 4, Torgensen Depo. 52:3-6; 80:17-19. Torgensen also confirmed that it was important for cities to have additional training aside from POST, because the POST Academy is limited. He explained that the POST training could not come close to the amount of training that a police officer has to get to become "really proficient at their job." He explained that is why these mandatory hours have to be done every year. Ex. 4, Torgensen Depo. 111:5-25. The POST training provides only a foundation for training on the use of force. Ex. 4, Torgensen Depo. 112:1-15. | |
| 5 | Plaintiff has produced no evidence in discovery of a pattern of incidents in which citizens were injured by the DCPD. | Undisputed. | |
| 6 | Plaintiff has not produced evidence of inadequate training. Plaintiff's expert witness, Mr. Torgensen, has stated that in his opinion, one officer, Officer Patterson, received inadequate training due to a lack of evidence of training provided to | Disputed. Specifically controverting the statement in paragraph 6, Defendants have made no citation to the record. Torgensen did not testify as such. Patterson actually testified that he did not remember getting any training on controlling a combative person who was resisting arrest after he left the Academy. Ex. 1, Patterson Depo. 30:12-24. Patterson testified that he | Plaintiff fails to point to admissible evidence to create a genuine issue of fact. Instead, Plaintiff points to testimony of other witnesses when this fact deals with a statement from one particular witness, Kirk Torgensen. |

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | him by the DCPD. | could not recall, but assumed, that DCPD provided training on defensive tactics. Ex. 1, Patterson Depo. 42:20-43:3; 48:4-8. Patterson testified that the last time he received use of force training was "at the academy." Ex. 1, Patterson Depo. 48:20-49:11. Patterson also testified that his field training officer and he only discussed the Utah Code section on deadly force. He could not remember what they discussed. Ex. 1, Patterson Depo. 58:12-59:2. Patterson testified that he did not recall any training on restraining individuals. Ex. 1, Patterson Depo. 67:10-21. Patterson testified that he did not recall receiving any training from DCPD on reasonable force. Ex. 1, Patterson Depo. 69:11-70:19, 24-71:1. Patterson continued that determining the use of force is "vague," because every case is different. The officer must meet the level of force. Ex. 1, Patterson Depo. 71:2-9; 72:1-16. Patterson agreed that police officers fight but rarely train whereas their military cousins train and rarely fight, as discussed in a power point entitled "Draper City Police Department Defensive Tactics 05/05/2009." He agreed with Plaintiff's counsel that budget and time restraints make it, as noted in the PowerPoint presentation, difficult to provide training. Ex. 1, Patterson Depo. 80:23-82:24.<br><br>     In response to Plaintiff's Interrogatory No. 2: "Identify any custom and/or procedure that you qualify as training on the use of force, including excessive force, for Draper City Police Officers in effect from 2005 to 2010. For each custom and/or procedure that you qualify as training on the use of force, identify and describe the name of the custom and/or procedure, the details of the custom | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | and/or procedure; including the use of force on an individual in handcuffs, the name and contact information for the provider(s) of said training, the reason(s) for using the provider(s), the process for implementation of the custom and/or procedure, the training dates, if any, of the custom and/or procedure, and the dates, if any, when each of the defendant officers participated in the custom and/or procedure," Defendants admitted that they had "few records for this time frame [2005-2010] because there was a change in training coordinators and procedure for record keeping." Defendants have never produced any training documents, including for any other officers, for the time period when Chatwin was injured. Ex. 2, Draper Interrog. Response; Ex. 3, 30(b)(6) Depo. 15:14-19:21. | |
| 7 | Officer Patterson entered the police academy in January of 2009 and graduated about ten months later, in late 2009. Patterson Depo. 11:17-19, 13:17-14:8. | Undisputed. | |
| 8 | The incident at issue regarding the alleged injury to Plaintiff occurred about eight months after Officer Patterson graduated from the police academy. | Disputed. This statement contains no citations to the record; however, the incident at issue occurred on May 18, 2010. | Plaintiff fails to raise a genuine issue of fact, as it is undisputed that the events in question took place on May 18, 2010. |
| 9 | Officer Patterson received training on use of force at the academy. Patterson Depo. 49:6-11; Torgensen Depo. 23:13-25:7. | Undisputed. | |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| 10 | Officer Patterson also received training on use of force from his field training officer when he joined the DCPD. Patterson Depo. 49:25-52:18, 54:5-56:3, 58:8-59:2. | Disputed. Specifically controverting the facts contained in paragraph 10: Patterson did not testify that he received training from his field training officer when he joined the DCPD. He actually testified as follows: Patterson's field training officer and Patterson only discussed training, but Patterson could not recall what he and his field training officer discussed about the category "violently resist during control and restraint," "violently resist after being restrained," "department policy," "intoxicated persons" and "use of force." Ex. 1, Patterson Depo. 56:18-58:1, 12-59:2. | Plaintiff fails to raise a genuine issue as to this undisputed fact.  It is undisputed that Patterson testified he could not recall specific training but that he did recall discussing use of force during his field training. |
| | **State of Mind** | | |
| 1 | Plaintiff alleges in his Amended Complaint that "[Defendants] developed and maintained policies, practices and/or customs exhibiting deliberate indifference." (Amended Complaint ¶¶ 242-45). | Disputed. Defendants failed to include the rest of the language contained in those paragraphs: Paragraph 242 ends with "to the laws prohibiting unlawful seizures." Paragraph 243 ends with "to the laws prohibiting the use of excessive force." Paragraph 244 ends with "to the laws requiring the provision of necessary and immediate medical care. Paragraph 245 ends with "to the laws prohibiting deprivation of the constitutional rights of citizens, including Plaintiff." Undisputed that Plaintiff alleged deliberate indifference. | Plaintiff fails to raise a genuine dispute of fact, as it is undisputed that he has alleged deliberate indifference. |
| 2 | Plaintiff has not produced or identified any evidence that Draper City acted with deliberate indifference. | Disputed. Specifically controverting the statements contained in paragraph 2, Plaintiff's expert Kirk Torgensen testified extensively about the unconstitutional policies and Draper City's failure to train. Ex. 4, Torgensen Depo. 23:13-25:7; 39:13-18, 23-41:22; 42:5-16; 44:13-24; 45:13-46:10; 47:4-5; 50:8-11, 18-19; 51:6, 8-23; 52:3-6, 17-53:22; 78:16- | Plaintiff fails to raise a genuine issue of fact with respect to this statement and instead provides immaterial arguments and reference to unrelated testimony. |

22

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
|  |  | 79:13; 80:3- 12; 80:17-19; 111:5-25; 112:1-15. Defendants themselves admitted that they possessed few records concerning the years 2005 through 2010. They have never produced any training records for the year 2010. Ex. 2, Draper Interrog. Response; Ex. 3, 30(b)(6) Depo. 15:14-19:21; 25:17- 28:23; 35:10-18. After taking a break with its counsel during a pending question, the 30(b)(6) designee, Deputy Police Chief John Eining, returned and pointed to the three pages about reasonableness as being the only use of force policies for 2010, Ex. 3, 30(b)(6) Depo. 49:3-20; Exhibit 6, Draper City Police Department's 2010 Use of Force Policy [Bates Nos. 3273-3275]. The 30(b)(6) designee for Draper City claimed that records were missing on the training on the use of force in 2010. Ex. 3, 30(b)(6) Depo. 56:23-60:16; 118:4-13.<br><br>          "Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). Witness Jason Scott provided testimony that instead of attending to Chatwin, the officers were at the other end of the driveway, smiling and laughing. Exhibit 7, Deposition of Jason Scott dated November 20, 2015, ("Scott Depo."), 82:20-83:1; 101:20-103:2; and Witness Statement attached to Scott Depo. as Plaintiff's Exhibit 2. "[A] highly predictable consequence of the failure to train [is] the delay or denial of medical care to an acutely ill inmate." *Montoya*, 115 F. Supp. 3d at 1285. "Essentially, the officer must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the |  |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
| | | inference.' Where disputed material facts implicate either of the two questions of whether a serious medical need existed or whether an officer was deliberately indifferent to it, a court may not grant summary judgment." *Olsen*, 312 F.3d 1304, 1315-16 (internal citations omitted). | |
| 3 | Plaintiff has not produced or identified any evidence of a pattern of tortious conduct by the DCPD. | Disputed. Specifically controverting the statements contained in paragraph 3, Officer Patterson testified that he pivoted Chatwin around 270° while Chatwin was handcuffed, standing on concrete. Ex. 1, Patterson Depo. 139:3-23. Witness Jason Scott testified that he saw Chatwin face down on the driveway and that the police officers were laughing in a group. Ex. Scott Depo. 82:20-83:1; 101:20-103:2; and Witness Statement attached to Scott Depo. As Plaintiff's Exhibit 2. Patterson testified at the criminal preliminary hearing that Chatwin hit his head "pretty hard." Exhibit 8, Transcript of Preliminary Hearing ("Prelim. Tr."), 37:21. The only independent witness, neighbor Kathy Torrence, reported that despite Patterson's testimony at the preliminary hearing, and as stated in his police officer's report, that he moved Chatwin to the ground because Chatwin had unlocked the officer's retention gun and was arching his back to head-butt the officer, Torrence said that absolutely did not happen. She guaranteed it. She could see Chatwin's hands and the officer's belt. All Chatwin did was to say something to Patterson and then Patterson grabbed Chatwin and threw him to the ground. Chatwin also did not jerk his head back in such a fashion as described by Patterson. Exhibit 9, Deposition of Kathy Torrence dated November 19, 2015 ("Torrence Depo."), 27:18-28:9; 30:11-32:5; | Plaintiff fails to raise a genuine dispute of fact but instead raises argument and commentary based upon other factors. Nothing in Plaintiff's response indicates that he indeed has identified evidence that can be used to argue this element. |

SLC_2977650.1

| ¶ | Defendants' Statement | Plaintiff's Response | Defendants' Reply |
|---|---|---|---|
|   |   | 33:8-35:6; 60:3-10; 61:2- 62:5; 63:4-64:1. Torrence testified that Chatwin was thrown to the ground while handcuffed behind his back, while the officers failed to check on him or provide any medical attention. Ex. 9, Torrence Depo. 106:22-107:10. |   |
| 4 | Officer Patterson received training on use of force at the academy. Patterson Depo. 49:6-11; Torgensen Depo. 23:13-25:7. | Undisputed. |   |
| 5 | Officer Patterson also received training on use of force from his field training officer when he joined the DCPD. Patterson Depo. 49:25-52:18, 54:5-56:3, 58:8-59:2. | Disputed. Specifically controverting the facts contained in paragraph 5: Patterson did not testify that he received training from his field training officer when he joined the DCPD. He actually testified as follows: Patterson and his field training officer only discussed training, but he recognized that he could not recall what he and his field training officer discussed about the category "violently resist during control and restraint," "violently resist after being restrained," "department policy," "intoxicated persons" and "use of force." Ex. 1, Patterson Depo. 56:18-58:1, 12-59:2. | Plaintiffs fail to raise a genuine issue as to this undisputed fact.  It is undisputed that Patterson testified he could not recall specific training but that he did recall discussing use of force during his field training. |

SLC_2977650.1