IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>                  Plaintiff,<br><br>vs.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON; OFFICER DAVID HARRIS; AND OFFICER HEATHER BAUGH,<br><br>                  Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:14cv375DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendants Draper City, Draper City Police Department ("DCPD"), Police Chief Mac Connole, Officer J. Patterson, Officer David Harris, and Officer Heather Baugh's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Walter Reichert M.D., Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Trevor B. Petersen, Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Kirk Torgensen, Plaintiff Joshua Chatwin's Motion in Limine to Exclude Testimony and Reports of Chris Lawrence, and Plaintiff's Motion in Limine to Exclude Portions of the Testimony of Ken Wallentine. On November 9, 2016, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Lisa A. Marcy, and Defendants were represented by R. Blake Hamilton. The court took the motions under advisement. The court has considered carefully the

memoranda submitted by the parties and the law and facts relating to the motion.  Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On May 18, 2010, in a residential area of Draper, Utah, Draper City Police Officer David Harris pulled over the car Plaintiff Joshua Chatwin was driving for suspicion of driving under the influence of alcohol.  Officer Harris had Chatwin perform field sobriety tests and arrested him for driving under the influence of alcohol.  Officer J. Patterson and Officer Heather Baugh arrived in a second police vehicle.  Officer Patterson performed a search incident to arrest of Chatwin and his vehicle.

During Officer Patterson's search of Chatwin, he allegedly threw Chatwin to the ground while Chatwin was handcuffed behind his back.  A witness, Kathy Ann Torrence, testified in Chatwin's criminal proceedings that she saw Chatwin say something to Officer Patterson before Officer Patterson threw Chatwin to the ground but she did not see Chatwin physically provoke or move toward Officer Patterson prior to being thrown to the ground.  Torrence testified that Patterson appeared angry when he threw Chatwin to the ground.  Torrence further testified that she did not see any of the officers investigate whether Chatwin was injured.

Another witness, Jason Scott, observed the events that occurred after Officer Patterson threw Chatwin to the ground.  Scott gave a written statement to the Draper Police stating that the officers did not assist Chatwin after he was on the ground and appeared unconscious.  Two other witnesses gave witness statements that Chatwin appeared to be unconscious.

Chatwin alleges that as a result of Officer Patterson throwing him to the ground, he fractured his skull, suffered contusions and gashes, a concussion, bleeding in his brain, additional

head injuries, and a separated shoulder.  Chatwin spent two days in the Intensive Care Unit in the hospital.  Chatwin further alleges that he lost noticeable hearing in his left ear, developed tinnitus in his left ear, and has permanent scarring.  His tinnitus cannot be fixed through surgery, prevents him from sleeping well and doing quiet daily activities, like reading, and causes him depression and anxiety.

The officers charged Chatwin with disarming a peace officer, assault by a prisoner, driving under the influence of alcohol, interfering with arresting officer, driving on a suspended license, alcohol restricted driver, and operating or being in actual physical control without an ignition interlock system.  Within days of being released from the hospital, the Draper City Police Department sent ten SWAT team members and their canine units to Chatwin's house to arrest him.  Plaintiff spent two months in jail on the charges and lost his job.  Chatwin pleaded guilty to driving under the influence of alcohol and ignition interlock.  The Salt Lake County District Attorney's Office dismissed the three remaining charges related to provoking a police officer.

## DISCUSSION

### Defendants' Motion for Partial Summary Judgment

Defendants seek summary judgment on Chatwin's claim against Draper City, arguing that Chatwin has not met his burden to disclose evidence that an official policy, custom, or lack of training by Draper City caused a violation of his constitutional rights under § 1983.  In *Monell*, the Supreme Court determined that municipalities cannot be held liable for civil rights violations under a theory of respondeat superior but can be held liable only upon a showing that the "execution of a government's policy or custom . . . inflicts injury."  *Monell v. Dept. of Social*

*Servs.*, 436 U.S. 658, 694 (1978).  A *Monell* claim must plead three elements: (1) existence of an official policy or custom, (2) causation, and (3) deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

Chatwin asserts that Draper's excessive force policy and failure to train on that policy caused the injuries at issue in this case.  The Supreme Court has specifically recognized that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton Ohio v. Harris*, 498 U.S. 378, 387 (1989).  A municipality may be liable under Section 1983 where a failure to train amounts to deliberate indifference to the plaintiff's constitutional rights.  *Id.* at 388.  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.  "A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Schneider v. City of Grand Junction Police* Dept., 717 F.3d 760, 773 (10th Cir. 2013) (quoting *Canton*, 498 U.S. at 390).

In this case, Draper's policy on use of force stated only that the force used must be reasonable.  Chatwin's expert, Kirk Torgensen, explained that Draper City's policy was too bare bones to be instructive or useful for officers.  Torgensen outlined that the policy should provide more specifics on the use of force in situations involving impairment, intoxication, and resistance, and take into consideration the person's size, whether the person is handcuffed, and

4

the person's attitude and level of control. Buy failing to address any of these considerations in its policy, Draper failed to give its officers any specific directions to follow.

In addition, Draper did not produce any training records for the year of the incident. Draper argues that training records for that year are irrelevant because the officer in question, Officer Patterson, graduated from the police academy during the year and had received adequate training at the academy. However, there are no training records in evidence demonstrating the level of training any of the officers received on the proper use of force. Moreover, Patterson testified that although he received some basic training at the police academy, he did not remember any training on controlling someone who is resisting arrest, defensive tactics, restraining individuals, or reasonable force. He also testified that, with respect to the use of force, he and his field training officer only discussed the Utah code section on deadly force.

The court must view the evidence before it in the light most favorable to Chatwin, the nonmoving party. In doing so, the court concludes that a reasonable jury could find that the policymakers of the city were deliberately indifferent to the need for an adequate use of force policy to protect members of the public from its officers' use of excessive force. The evidence in the light most favorable to Chatwin demonstrates that Chatwin said something to Officer Patterson, Officer Patterson got angry and threw Chatwin to the ground, while he was handcuffed behind his back. There is no evidence that Officer Patterson had any training as to the proper use of force in situations involving a person in handcuffs or under the influence of alcohol, despite the fact that he likely interacted with such individuals on a daily or weekly basis. "[T]he practice of dealing with drunken, rude, and potentially violent suspects is 'usual and recurring.'" *Diaz v. Salazar*, 924 F. Supp. 1080 (D. N.M. 1996).

Although there is no evidence that Draper had a recurring problem with excessive force complaints, the allegedly blatant use of excessive force in this situation with a handcuffed suspect highlights a plainly obvious problem with the city's bare bones policy of reasonableness and lack of training.  "[D]eliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999).  A jury could find that the injury in this case was a direct result of Officer Patterson's lack of training or direction from the city policymakers in how to handle the situation.

Even for purposes of seeking summary judgment, the city makes no attempt to view the facts in the light most favorable to Chatwin.  Defendants arguments also seek to discredit the neighbor's eyewitness testimony by claiming that she did not see or perceive the situation correctly. While such arguments are appropriate at trial, the court is bound by the standard for summary judgment.  Even if Defendants could prove that Chatwin was attempting to reach for Officer Patterson's gun, it is still a hard sell to a jury that an officer, who chooses to throw someone who is handcuffed behind his back down to the ground with no way to protect himself from the impact rather than merely taking a step away from him to prevent him from reaching the weapon, was properly trained in how to handle the situation.  Whether or not Officer Patterson's actions were justified, they demonstrate the need for more clarity in a policy than merely stating that the force must be reasonable.

The court, therefore, concludes that the lack of specificity or substance in the policy and the lack of evidence with respect to any training could support a jury finding that Draper was deliberately indifferent to the constitutional needs of Chatwin and other members of the public

with respect to the use of excessive force by its officers. Accordingly, the court denies Defendants' motion for partial summary judgment.

## Motions to Exclude Expert Testimony

Defendants have moved to exclude three of Chatwin's experts and Chatwin has moved to exclude the testimony and report of one expert and portions of the testimony of another expert.

**1. Defendants' Motion to Exclude Expert Testimony of Walter Reichert, M.D.**

Defendants seek an order excluding the testimony of Walter Reichert, M.D. as unreliable and unhelpful to the factfinder under FRE 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Chatwin retained Dr. Reichert to give an expert report and testimony based on a medical analysis of Chatwin's injuries. Dr. Reichert is a neurologist who also did a residency in psychiatry.

Defendants argue that Dr. Reichert offers analysis and opinions outside the scope of his expertise and any testimony unrelated to Chatwin's neurological condition is unreliable. Defendants contend that Dr. Reichert opines on (1) the type and amount of force used on Chatwin, (2) the effects of alcohol on Chatwin, (3) hearing impairment or tinnitus, (4) depression and migraines, and (5) shoulder injuries or other non-neurological injuries.

(1) Force

First, Defendant objects to Dr. Reichert statement that a significant amount of force would have been required to produce a shoulder injury. However, Chatwin asserts that Dr. Reichert is not testifying as to the amount of force necessary to cause the injury or opining on whether Chatwin was in fact thrown down. He is only testifying as to the injuries that were sustained and documented in Chatwin's medical records. The court finds nothing disqualifying

in Dr. Reichert's testimony.

(2) Effects of Alcohol

Dr. Reichert testified that he has no special expertise to diagnose conditions of a person that is intoxicated and obtained his information on google. Dr. Reichert may have googled a medical treatise, but that is not the same as getting information from google. Google was only the search engine he used to get to the respected medical literature. It is not a basis for excluding his testimony. Defendants can question Dr. Reichert on his opinion and credibility at trial. The court does not think he should be disqualified from testifying altogether on this issue.

(3) Hearing Impairment

Defendants also assert that Dr. Reichert is not an ear, nose, and throat doctor and is not qualified to offer an opinion on issues relating to hearing. He studied audiology and part of a complete neurological examination is an examination of all cranial nerves, some of which are associated with hearing. Therefore, as a neurologist, Dr. Reichert has experience with hearing issues and can testify as to the issues involved with Chatwin's hearing. If Defendants believe his testimony at trial exceeds his knowledge in this area, they can point it out on cross examination.

(4) Depression and Migraines

Defendants object to Dr. Reichert's opinion that Chatwin is suffering from "worsening posttraumatic migraine" because it is based on Chatwin's self-reported history and the fact that Dr. Reichert considers Chatwin to be a reliable historian. Defendants argue that Dr. Reichert cannot testify that he considers Chatwin to be credible or truthful because evidence of truthful character is not admissible under FRE 608(a).

The only evidence that Chatwin's migraines were worsening was Chatwin's statements.

The same is true for Dr. Reichert's opinion with regard to depression.  However, Dr. Reichert is able to use Chatwin's medical history without running afoul of testifying that Plaintiff is credible or truthful.  Dr. Reichert can also testify as to why migraines can get worse after a traumatic event.  Explaining trends neurologists see in their practice is appropriate.  The court finds no basis for precluding testimony regarding migraines or depression.

(5) Shoulder Injuries

Dr. Reichert should be precluded from offering any opinion as to alleged shoulder injuries because he is not an orthopedic doctor.  He admits he does not have any expertise in diagnosing a separated shoulder.  As a medical doctor, however, Dr. Reichert is capable of discussing Chatwin's shoulder injury.  Defendants can question him on the extent of his knowledge in this area at trial.  It is more appropriately a matter for cross examination than a disqualification under *Daubert*.

Dr. Reichert's examination of the damages is based on methodologies and expertise as a medical doctor.  In his role as a neurologist, Dr. Reichert has extensive experience in regard to concussions, brain injuries, mental conditions, and headaches.  His report and testimony comport with FRE 702.  Dr. Reichert's testimony about Chatwin's medical and mental health are relevant and reliable.  In addition, his opinions will assist a trier of fact. Defendants' motion is a pretrial attempt to argue the weight and credibility of Dr. Reichert's trial testimony.  Therefore, the court denies Defendants' motion.

**2. Defendants' Motion to Exclude Expert Testimony of Trevor B. Petersen**

Defendants seek an order excluding the testimony of Trevor B. Petersen as unreliable and unhelpful to the factfinder under FRE 702 and *Daubert*.  Chatwin retained Mr. Petersen as an

expert to testify on police procedures relating to safety and use of force.  Mr. Petersen is a police officer, who served as a field training officer and a SWAT member for Weber County Sheriff's office.  Petersen conducted classes on the use of force involving individuals under the influence of alcohol.  He also trained international forces on the use of force and worked for the United Nations Special Weapons and Tactics Unit.

Defendants argue that Petersen's testimony is not relevant, reliable, or helpful to the jury because he fails to lay a proper foundation for his conclusory opinions and he fails to explain how his experience leads to the conclusions he reached.  In addition, Defendant contends that Petersen's testimony includes impermissible legal conclusions that Officer Patterson used excessive force.

Petersen's experience is clear on the record.  He explained that his experience qualified him to evaluate force.  He has been trained and taught about national standards for use of force.  He does not need a "use of force" methodology.  Petersen can testify as to correct practices and but cannot not give an opinion on the ultimate legal conclusion, which is a question for the jury.  However, there are many areas on which he can opine that would be helpful information for the jury.  Therefore, Defendants' motion is denied.

**3.  Defendants' Motion to Exclude Expert Testimony of Kirk Torgensen**

Defendants seek an order excluding the testimony of Kirk Torgensen as unreliable and unhelpful to the factfinder under FRE 702 and *Daubert*.  Chatwin retained Torgensen as an expert on Draper City's policies, procedures, and training.  Torgensen was the Chief Deputy Attorney General for Utah for fourteen years, where he supervised all civil rights cases.  He was Chief of the Civil Rights Litigation Section at the Utah Attorney General's office.  He is an

adjunct professor in the criminal justice program at Weber State University and has taught classes on constitutional law at the University of Utah.  He has been an instructor at the Utah Police Academy since 1990.  He developed the entire legal curriculum for the Police Officers Academy.  He is an instructor for the Narcotics Officer Training, Utah, and trains officers on search and seizure and use of force.

Defendants contend that Torgensen is in no better position that a layperson to offer testimony on policies dealing with the use of force because he has never drafted or made such policies.  The court finds this position wholly without merit given Torgensen's background and experience.

In addition, Defendants argue that Torgensen's proposed testimony with regard to Draper City's use of force policy should be excluded because it is based on legal questions, not factual or evidentiary issues.  He cannot testify that the Draper City use of force policy is legally inadequate.  Torgensen is clearly qualified and can provide the trier of fact helpful information regarding use of force policies.  Although Defendants' counsel asked Torgensen at his deposition to make legal conclusions, Torgensen did not make any.  Instead, based on his many years of experience, he explained that the policy did not give guidelines on how police officers needed to comport themselves.  Torgensen can testify that the policy did not give the officers adequate direction or guidance.  Torgensen, and all lawyers, can testify as to legal matters when those matters involve questions of fact and do not invade the province of the court or jury.  He is also aware of what type of training an officer receives at the Police Academy and what type of training should happen within the city.  All of this information is helpful to the jury and admissible.  Accordingly, Defendants' motion is denied.

**4. Plaintiff's Motion to Exclude Testimony and Report of Chris Lawrence**

Chatwin moves to strike the report of Chris Lawrence and exclude his testimony at trial pursuant to FRE 402, 403, and 702. Defendants retained Lawrence as a perception expert. The Tenth Circuit has held that "expert testimony on eyewitness identification may be properly admitted under *Daubert* in certain circumstances." *United States v. Smith*, 156 F.3d 1046, 1053 (10th Cir. 1998). Circumstances where this type of expert testimony has been admitted include "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and [such] psychological phenomena as the feedback factor and unconscious transference." *Id.* at 1052-53. However, in this case, there is no issue with eyewitness identification because the parties agree about which actors were involved in the circumstances at issue. Chatwin's version of the events relies almost entirely on the eyewitness testimony of his neighbor, Kathy Torrence. Defendants' perception expert questions what Torrence claims to have seen because she did not perceive the situation the way a police office would.

Lawrence claims that the neighbor did not perceive what she saw correctly because she does not know about police training. But the neighbor is merely testifying as to the facts of what she saw. She has testified that she did not see Chatwin reach for Officer Patterson's gun. Defendants can cross examine her with respect to how well she could see the scene on cross examination. However, Defendants seek to go a step further and not only attack what she claims to have seen but her ability to assess the situation. The neighbor's testimony does not include any assessments of why anyone was doing what they were doing. Her testimony is limited to what she saw. An expert witness is not necessary to counter a factual witness. In addition, to the

12

extent that the neighbor perceived that Officer Patterson threw Chatwin to the ground because of something Chatwin had said--based on the fact that she saw Chatwin say something to Officer Patterson, she saw Officer Patterson get an angry look on his face, and then she saw Officer Patterson throw Chatwin to the ground–Lawrence is not qualified to testify as to general perceptions that all members of the public may have in a given situation.  At most, his training and experience would allow him to testify as to police officers' perceptions of certain situations.  Therefore, Lawrence is not allowed to opine on whether the neighbor's perception was correct or incorrect.

In addition, Defendants appear to be using Lawrence to bolster Officer Patterson's testimony.  For example, Lawrence gives an opinion: "My opinion is that Officer Patterson simply had difficulty explaining what occurred because the outcome was unintended."  This type of opinion is not the result of expertise on eyewitness perception.  It is just an attempt to support Officer Patterson.  Lawrence's background and training does not make him an expert on why a given person would have difficulty explaining an event.

Similarly, Lawrence's summation of his opinion does not have anything to do with perception.  He gives an opinion that Officer Patterson was responding to a breach of his personal safety, that he intended to take Chatwin to the ground to establish control and ensure his safety, and that Chatwin's collision with the ground was an unintended consequence.  However, this type of testimony would be what Officer Patterson himself should be testifying to, not an expert.  Lawrence has training to speak to police training and perception.  Defendants can establish through Lawrence how a police officer may perceive a situation differently than a regular member of the public.  However, Lawrence cannot opine as to what a witness did or did

not see. He cannot usurp the jury's role in determining which witness is credible or believable. He can testify as to how an adequately trained officer would respond to a situation as explained by Officer Patterson, but he cannot opine that it actually happened that way. Defendants can use Lawrence in only these limited ways. Chatwin's motion, therefore, is granted in part and denied in part.

**5. Plaintiff's Motion to Exclude Portions of Ken Wallentine's Testimony**

Chatwin moves to exclude portions of Ken Wallentine's testimony that do not relate to reasonableness and/or use of force. Defendants retained Ken Wallentine as an expert on police policy and reasonableness issues. Defendants argue that it was Chatwin's counsel who raised the issue of perception during Wallentine's deposition and Defendants do not intend for him to testify as to perception. The parties appear to agree, therefore, that as long as Chatwin does not ask Wallentine about perception, he will not testify as to it. Accordingly, the court finds Chatwin's motion to be moot.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is DENIED, Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Walter Reichert M.D. is DENIED, Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Trevor B. Petersen is DENIED, Defendants' *Daubert* Motion in Limine to Exclude Expert Testimony of Kirk Torgensen is DENIED, Plaintiff Joshua Chatwin's Motion in Limine to Exclude Testimony and Reports of Chris Lawrence is GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion in Limine to Exclude Portions of the Testimony of Ken Wallentine is MOOT.

```
```
DATED this 8th day of December, 2016.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge