# EXHIBIT A

```
              30(b)(6) DEPOSITION OF DRAPER CITY POLICE                1
```

```
 1                IN THE UNITED STATES DISTRICT COURT

 2           FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

 3                             -ooOoo-

 4    JOSHUA CHATWIN,              : CIVIL NO. 2:14-cv-375

 5          Plaintiff,              : 30(b)(6) DEPOSITION OF:
                                      DRAPER CITY POLICE
 6    v.                           :
                                     REPRESENTED BY DEPUTY
 7    DRAPER CITY; DRAPER CITY     : POLICE CHIEF JOHN EINING
      POLICE DEPARTMENT;
 8    OFFICER J. PATTERSON, in    : TAKEN: December 8, 2015
      his individual and
 9    official capacity;           : Judge Dale A. Kimball
      OFFICER HEATHER BAUGH,
10    in her individual and
      official capacity;
11    OFFICER DAVID HARRIS, in
      his individual and
12    official capacity;
      OFFICER KURT IMIG, in
13    his individual capacity;
      SUPERVISOR TBA; and JOHN
14    DOES 1-10,

15          Defendants.

16    _____

17

18                             -ooOoo-

19          30(b)(6) Deposition of DRAPER CITY POLICE,

20    represented by Deputy Police Chief John Eining, taken

21    on behalf of the plaintiff, at 201 South Main Street,

22    Suite 1300, Salt Lake City, Utah, before PHOEBE S.

23    MOORHEAD, Certified Shorthand Reporter for the State

24    of Utah, pursuant to Notice.

25
```

1  to stop the threat that's coming at you. And that's
2  what we train our guys, regardless of what the threat
3  might be.
4           So if it's a guy in handcuffs, and he's acting
5  out, or he's being threatening, you have to evaluate
6  that. And then you have to act with a reasonable force
7  that is necessary to stop the threat.
8      Q.  Okay. Well, what about the opposite ways?
9  When I'm talking about Paragraph 9 here, you know, we're
10 talking about the safety. What if he's -- you're saying
11 when he's acting out. What if he's not? What if he's
12 immobilized and compliant, for instance?
13     A.  Then there would be no reason to use force.
14     Q.  How about number -- when we look at Paragraph
15 No. 10. What we're looking for is "Who in Draper City,
16 since May 1, 2010, has made the final decision to create
17 these policies, procedures, training, practices and/or
18 customs of the police department on the use of force?"
19     A.  So from May 2010 to May 2013, I'm assuming
20 that it would be Chief Mac Connole that has the final
21 say on all policies. From 2013 to the present, it's
22 Chief Roberts makes the final decision.
23     Q.  Do you have any input into those policies?
24     A.  I do. So my job is to -- periodically,
25 Lexipol will go through, and they do policy updates.

1  these policies from 2010 to Lexipol in 2013?
2     A.  Yes.  The decision had to be the chief of
3  police.
4     Q.  Who was the chief of police at the time?
5     A.  In 2013?
6     Q.  Yes.
7     A.  It was Brian Roberts.  Let me qualify that for
8  just a minute.  He became the chief of police in August
9  of 2013, so not the entire year of 2013.
10    Q.  Okay.  Thank you.  So anything else about --
11 about Lexipol and its purpose?
12           MR. HAMILTON:  Objection.  Form.
13           THE WITNESS:  Not that -- not that I'm --
14 BY MS. MARCY:
15    Q.  That was a bad question.  What I mean is do
16 you -- any further information about -- as far as
17 Paragraph 8 here -- as far as why the policies were
18 changed to use Lexipol services?
19    A.  No.
20    Q.  Going back to -- we were talking about the use
21 of force.  I just want to be sure -- the use of force in
22 Paragraph 1.  We talked about the years 2010, 2011,
23 2012, 2013.  I'm just asking, for 2014 and 2015, did
24 they -- did those policies change?
25    A.  Policy numbers changed.  I don't believe

1     A.   For use of force?
2     Q.   Right.
3     A.   From 2010 to 2015?
4     Q.   Right.
5     A.   We have brought in some people. For example,
6  just last year, we brought in some SWAT members from the
7  Los Angeles County Sheriff's Office that gave us some
8  instruction on use of force. I know when Chief Roberts
9  first came here, he also brought out some instructors
10 from California to train our SWAT team members.
11          There is occasion where we do what's called
12 "outside training," where the officers have the ability
13 to put in for outside training. And that outside
14 training could have covered use of force topics. I'm
15 just not specifically sure what those vendors were, or
16 what specifically those training requests were. But all
17 in-house training, I think we've covered.
18    Q.   So -- but I'm talking about any training, so
19 including third-party here. So when you talk about the
20 outside training, do you know how long Draper -- the
21 police department -- the Draper City Police Department
22 has used outside training at times?
23    A.   I think -- yeah. Outside training has always
24 been available. From 2010 to 2015, I'm sure the
25 officers have always had the opportunity to put in for

```
 1   and then you start eliminating the options there.
 2        Q.   Where was that policy in 2010?
 3        A.   Where was that policy in 2010?
 4        Q.   About discipline.
 5        A.   I think it comes under -- let me see if I can
 6   find it again.  "Complaints Against Personnel," I think
 7   there's something in there about that.  So baseline
 8   2957.  That's going to be pages 48 and 57.
 9             And let me see if there's something else that
10   talks about -- again, I don't --
11        Q.   Are you reading off of one of the exhibits?
12        A.   Exhibit 12.  I think it's in that one.  Now,
13   specifically, when you say -- I don't think, in this
14   policy, or the policy from 2013 to 2015, it talks about,
15   specifically, what the range of punishment might be.
16   That's discretionary, based on what the chief of police
17   decides.  I'm saying that that's what's available to
18   him.  It's not necessarily a policy that -- there could
19   be a verbal recommend; there could be documented
20   counseling; there could a letter of reprimand or
21   suspension, whatever.  That's not specifically outlined.
22             What the policy does dictate is how the
23   investigations are going to be conducted and what the
24   different findings could be, whether it's going to be
25   exonerated, substantiated, unsubstantiated, unfounded,
```

1  suspect.  It could even include another officer.  If an
2  officer witnesses something, it could be an internal
3  complaint that comes forward.  And therefore, we go
4  through that exact same process.
5       Q.  Is that process considered mandatory?  In
6  other words, if it's not the person who's injured, but
7  it's a witness who says there was -- who makes an
8  allegation of excessive force, does the police
9  department have to investigate that allegation?
10      A.  I say, yes, policy dictates you do.
11      Q.  Okay.  What about those use of force review
12  boards?  We talked -- you talked a little about that.
13  You said they didn't exist in 2010.  When did they begin
14  to exist?
15      A.  I believe it was in 2013 that they started.
16      Q.  Why -- why -- maybe you can tell me the
17  details.  Who started it?  Why?
18      A.  Chief Roberts started it.
19      Q.  And why did they -- why did he start these
20  review boards?
21      A.  I would dare not try to speculate on what he
22  was thinking at the time.
23      Q.  Well, but as a designee as Draper City, do you
24  know why?
25      A.  Well, I think -- no.