Lisa A. Marcy (#5311)
lmarcy@clydesnow.com
CLYDE SNOW & SESSIONS, P.C.
201 South Main Street, 13th Floor
Salt Lake City, Utah  84111
Telephone:  801-322-2516

John K. Johnson (#3815)
jkjohnson1080@hotmail.com
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, Utah  84101
Telephone:  801-915-2616

Dominic J. Gianna, *Pro Hac Vice*
dgianna@aarongianna.com
AARON & GIANNA
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana  70170
Telephone:  504-569-1805

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>　　　Plaintiff,<br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>　　　Defendants. | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 6: TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING THEORIES OF MUNICIPAL LIABILITY OTHER THAN USE OF FORCE POLICY AND TRAINING<br><br><br>Civil No. 2:14-cv-375<br><br>Judge Dale A. Kimball<br>Magis. Judge Dustin B. Pead |

　　　Plaintiff, Joshua Chatwin, by and through his counsel, Lisa A. Marcy, John K. Johnson

and Dominic Gianna, respectfully submit this Memorandum in Opposition to Defendants'

Motion in Limine No. 6 to Exclude Evidence and Testimony Regarding Theories of Municipal Liability Other Than Use of Force Policy and Training ("MIL No. 6").

## ARGUMENT

Defendants suggest to this Court that based upon Plaintiff's Special Jury Instruction No. 7 (incorrectly identified as no. 6), Chatwin intends to pursue new and different theories of *Monell* liability than he has pursued throughout the entirety of this litigation. MIL No. 6, p. 4 ("Instead, it identifies all available forms of *Monell* liability, including a widespread practice, policymaking decisions, ratification, and failure to supervise."). Defendants ignore the reality that Draper City's bare-bones policy, or lack of a policy, amounts legally to an official practice, policy, or custom that Chatwin will show at trial subjects Defendants to *Monell* liability.

Throughout their *MIL No. 6,* Defendants improperly attempt to limit the evidence and testimony Chatwin can introduce at trial relative to *Monell* liability by alleging that Chatwin abandoned all other theories except for two: "the formal policy on use of force and a lack of training on use of force". MIL No. 6, p. 3. Defendants acknowledge that Chatwin has, since the onset of this litigation, pursued multiple theories of *Monell* liability and that the Court held Chatwin had pled enough to maintain his cause of action upon these theories. MIL No. 6, p. 2, ¶¶ 1-4. For Defendants to suggest in their motion that Chatwin only now raises certain theories of *Monell* liability is entirely disingenuous.

   I.   **Defendants have known Chatwin was pursuing all available theories of *Monell* liability since this case's inception.**

Defendants admit that Chatwin pled all available theories in his Complaint and Amended Complaint. MIL No. 6, p. 2, ¶¶ 1-2. Defendants also admit they moved for judgment on the

pleadings relative to the *Monell* claim, *id.* at p. 2, ¶ 3. However, this is where Defendants' interpretation of the proceedings in this case becomes problematic. First, Defendants incorrectly suggest to the Court that the Court's opinion on Defendants' Motion for Judgment on the Pleadings ("MJOP") narrowed Chatwin's theories of *Monell* liability to only two. Specifically, to this effect, the Court wrote:

> Defendants argue that Chatwin's Amended Complaint is deficient because Chatwin only states that there are policies and customs that caused his harm without any well-pleaded facts as to what those policies and customs entail. The challenged policy or practice must be closely related to the alleged violation and "the municipality must be the moving force behind the alleged injury." *Id.* at 770. However, **"in the absence of an explicit policy or an entrenched custom, 'the inadequacy of police training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact."** *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002). **Chatwin alleges that Defendants have allowed similar acts to occur without the requisite discipline. Such a practice could foster excessive force** and be the moving force behind the alleged conduct in this case. **Whether or not Draper City had a specific policy, there is enough alleged regarding practices and customs to allow a failure to train claim to move forward.** The court finds that **Chatwin's *Monell* claim adequately puts Draper City on notice of the alleged failures that occurred which led to his harm.** Moreover, Chatwin asserts and the court agrees that he cannot identify specific policies that may have contributed to the alleged harm until Draper City turns over the relevant information in discovery.

Memorandum Decision and Order dated November 9, 2015, p. 6; *Chatwin v. Draper City*, 2015 U.S. Dist. LEXIS 151955, at *8-9 (D. Utah Nov. 6, 2015) (emphasis added). As is clear from the Court's initial analysis of Chatwin's *Monell* claim, Chatwin adequately **put Defendants on notice** that he would be pursuing *Monell* liability under multiple theories of recovery, including (i) a specific policy that was deficient, (ii) the absence of a true policy, and (iii) tacitly or expressly approved practices or customs within the Draper City – each of which shows a lack of training by Draper City. Consequently, Defendants have known since the initial pleading stage of

this case, or <u>at least</u> since the Court's decision on Defendants' *MJOP*, that Chatwin is pursuing <u>all available</u> theories of *Monell* liability, all of which are interrelated. **The fact that Defendants did not attempt to discover the additional bases for *Monell* liability for which Chatwin will seek to hold them responsible is not Chatwin's fault and Chatwin should not be penalized for it.** This *MIL No. 6* is designed to excuse Defendants' failure to conduct adequate discovery on these other theories, and it should be denied.

Approximately a year after the Court denied their *MJOP,* and after Defendants conducted what they apparently believed was sufficient discovery on the *Monell* liability issue, Defendants filed a Motion for Partial Summary Judgment ("Partial MSJ") on Chatwin's *Monell* claim. In reciting the basis for the motion, the Court explained "Defendants seek summary judgment on Chatwin's claim against Draper City, arguing that Chatwin has not met his burden to disclose evidence that an **official policy, custom, or lack of training** by Draper City caused a violation of his constitutional rights under § 1983." Memorandum Decision and Order dated December 8, 2016 ("Dec. 8 Decision"), p. 3; *Chatwin v. Draper City,* 2016 U.S. Dist. LEXIS 170289, at *4-5 (D. Utah Dec. 8, 2016) (emphasis added). The Court ultimately denied the Partial MSJ, rendering a number of findings relative to the *Monell* liability issue. Dec. 8 Decision, pp. 3-7; *Chatwin v. Draper City,* 2016 U.S. Dist. LEXIS 170289, at *4-10 (D. Utah Dec. 8, 2016) (emphasis added).

Most recently, Chatwin presented his proposed jury instructions to Defendants, which apparently caused Defendants to file this MIL No. 6. MIL No. 6, p. 4 ("…Plaintiff's proposed jury instruction on *Monell* is not limited to a formal use of force policy or training on use of force."). Defendants argument is curious, since Chatwin's proposed Special Jury Instruction No. 7 sets forth the proper law on the policy/custom issue for *Monell* liability:

> "An official policy or custom may take the form of: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions- and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused."

MIL No. 6, p. 8. *See also Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir. 2010). **In fact, Defendants' Partial MSJ quotes this <u>exact same language</u>.** Partial MSJ, p. 3. Defendants appear to suggest to the Court that Chatwin's avenues for pursuing *Monell* liability have been somehow limited in this case. Defendants' MIL No. 6 lacks adequate support for this contention.

In spite of this, and despite clear evidence that Defendants have been on notice of – and themselves acknowledged – the five theories available to Chatwin to pursue *Monell* liability against Defendants, Defendants now claim Chatwin somehow abandoned all other theories of *Monell* liability besides the two, which Defendants narrowly characterize as "a formal use of force policy or training on use of force." MIL No. 6, p. 4.

Defendants point to the arguments made by Chatwin in response to **Defendants'** Partial MSJ as one basis for finding Chatwin abandoned other theories of *Monell* liability. MIL No. 6, p. 3-4 ("When Defendants moved for summary judgment on the *Monell* claim, Plaintiff responded only with citations to record evidence regarding official policy and training."). Defendants ignore the fact that Chatwin's response to **Defendants' Partial MSJ** only required him to respond to the arguments they raised in support. Why would Chatwin address other theories of liability <u>not</u> challenged by Defendants in their Partial MSJ? This argument is invalid.

Defendants also point to Chatwin's designation of two experts that would testify concerning "written policies and training on use of force issues" and "officer training on use of force issues" as supporting the notion that these were the only two theories of *Monell* liability Chatwin would pursue. *MIL No. 6, p. 2, ¶¶ 5-6* ("When Plaintiff identified expert witnesses, it limited their testimony to official policy and training.") *Id*. p. 3. ("Not only have Defendants limited their expert testimony to only address these areas, Defendants have prepared their case for trial in anticipation of these two arguments.") *Id*. p. 4. Despite Defendants' characterization of the witnesses' testimony, at their depositions, the witnesses actually testified as to a number of issues that bear on <u>all</u> of the theories for *Monell* liability. Obviously, there are two predominant theories of *Monell* liability that Chatwin will support with his own expert's testimony, but this does not mean the jury cannot find Draper responsible under other theories of *Monell* liability through the testimony of these experts, or even, without expert testimony.

Finally, Defendants allege that because nothing in the discovery <u>they chose to conduct</u> revealed that Chatwin would pursue other theories of *Monell* liability (besides Draper City's bare-bones excessive force policy, and lack of training altogether), that this means Chatwin abandoned those other theories. MIL No. 6, p. 4 ("Defendants have reason to believe that Plaintiff may attempt to present evidence on all available forms of *Monell* liability at trial. To do so would be changing theories of liability at an extremely late stage of the case, which would be extremely prejudicial to Defendants. MIL No. 6, p.4. Not only have Defendants limited their expert testimony to only address these areas, Defendants have prepared their case for trial in anticipation of these two arguments. They have not had the benefit of conducting additional discovery and trial preparation for other theories which, by all indications, the Court disposed of early on and Plaintiff has not pursued for some time." *Id*.). Again, it is the responsibility of

Defendants to conduct comprehensive discovery. Defendants were entitled to conduct discovery on **whatever theories** of *Monell* liability they wanted. They simply did not or at least did not do so thoroughly. At no point did Chatwin represent to Defendants or this Court that he would be limiting or intended to limit the theories of *Monell* liability he would pursue at trial.

With that said, Chatwin acknowledges that he is not pursuing *Monell* liability under the theory that a **pattern** of excessive force incidents existed and was ignored. However, as the Court correctly recognized,

> There is **no evidence that Officer Patterson had any training as to the proper use of force in situations involving a person in handcuffs or under the influence of alcohol, despite the fact that he likely interacted with such individuals on a daily or weekly basis.** "[T]he practice of dealing with drunken, rude, and potentially violent suspects is 'usual and recurring.'" *Diaz v. Salazar*, 924 F. Supp. 1088 (D. N.M. 1996).
>
> Although there is no evidence that Draper had a recurring problem with excessive force complaints, **the allegedly blatant use of excessive force in this situation with a handcuffed suspect highlights a plainly obvious problem with the city's bare bones policy of reasonableness and lack of training**. "[D]eliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). **A jury could find that the injury in this case was a direct result of Officer Patterson's lack of training or direction from the city policymakers in how to handle the situation.**

Dec. 8 Decision, pp. 5-6; *Chatwin v. Draper City,* 2016 U.S. Dist. LEXIS 170289, at *7-8 (D. Utah Dec. 8, 2016) (emphasis added).

## II.   The Unpublished Jurisprudence Relied Upon by Defendants is Distinguishable.

The cases Defendants cite in support of their MIL No. 6 – both of which are unpublished[1] – are distinguishable.

---

[1] "[A]n unpublished opinion provides little support for the notion that the law is clearly established on a given point." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129-30 (10th Cir. 2013).

First, Defendants rely on an unpublished, Eastern District of California opinion and their incorrect interpretation of same to argue to the Court that if Chatwin presents "evidence on all available forms of *Monell* liability at trial", that doing so, "would be changing theories of liability at an extremely late stage of the case, which would be extremely prejudicial to Defendants." *See* MIL No. 6 p. 4 (citing *see, e.g., Cotta v. County of Kings*, 2015 WL 521358, *6 (E.D. Cal. Feb. 9, 2015) (unpublished)).

In *Cotta v. County of Kings*, 2015 U.S. Dist. LEXIS 15397 (E.D. Cal. Feb. 9, 2015) (unpublished), the case cited by Defendants, the defendants moved for reconsideration of the court's decision to grant in part and deny in part defendants' MSJ. Specifically, the defendants asked the Court to reconsider its decision to deny their MSJ concerning plaintiffs' cause of action against the defendant County for *Monell* liability and the plaintiffs' cause of action for violation of their Fourteenth Amendment due process rights. *Id.* at *2. The court granted the defendants' motion to reconsider and thus, Defendants' MSJ, finding "permitting Plaintiffs to assert a theory of liability of which Defendants had no fair notice would prejudice Defendants." *Id.* at *17. The court reached this conclusion after determining that the plaintiffs had "discovered evidence that apparently altered their theory of liability". *Id.*

Defendants also cite to another unpublished opinion from the Tenth Circuit for the proposition that "[a]llowing Plaintiff to proceed under these essentially new theories of liability would require delay of trial and additional discovery, which is unreasonable at this point in the case." MIL No. 6, p. 4. The unpublished case opinion cited by Defendants, *Arias v. Pacheco*, 380 Fed. Appx. 771, 775 (10th Cir. 2010) (unpublished), is also distinguishable. In *Arias,* on the morning of trial, the plaintiffs made an oral motion to amend the pre-trial order to present "to the

jury the issue of whether the Plaintiffs were so excessively detained that they were wrongfully arrested." *Id.* at 773. The district court denied the motion:

> The District Court found Plaintiffs did not mention wrongful arrest in either their Complaint or the Pretrial Order and there was no discussion of the issue throughout the depositions. Additionally, Plaintiffs did not mention the issue at any point in preparation for trial or throughout the presentation of motions. The issue was raised in their requested jury instructions which were filed five days late and after hours on the Friday evening before trial was scheduled to begin the following Monday. The District Court held that Plaintiffs had failed to provide proper notice.

*Id.* The plaintiffs' appeal was denied. On appeal, the Tenth Circuit held that "when a party d[oes] not include [an] issue in the pre-trial report, … it [i]s not part of the case before the district court." *Id.* (internal quotation marks and citation omitted). It was upon this principle that the Tenth Circuit concluded the defendants were not put on notice that the plaintiff intended to argue the theory of liability at issue. For this reason, the court concluded:

> The earliest point at which this issue was raised was in the form of Plaintiffs' requested jury instructions. Not only were these requested instructions filed four days late, they were filed after the courthouse had closed on the Friday evening before the Monday when trial was scheduled to begin. Such late notice would have caused prejudice to Defendants and prevented them from adequately preparing against Plaintiffs' new theory of the case. *See Davey v. Lockheed Martin Corp.,* 301 F.3d 1204, 1210-11 (10th Cir. 2002)] ("[T]he timing of the motion in relation to the commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise.").
>
> The only way Defendants could have adequately dealt with Plaintiffs' new theory of wrongful arrest would have meant the delay of the trial and more discovery. Given that the jury had already been chosen and was waiting to begin trial when Plaintiffs asked to present their new theory of wrongful arrest, if that had been permitted, the jury would have had to be dismissed. Significant judicial resources and time would have been wasted by delaying the start of trial.

*Id.* at 775.

The facts of *Arias* and our facts here are markedly different. As Defendants have admitted, Chatwin previously identified **all** theories of *Monell* liability as avenues he intends to pursue in both his Complaint and Amended Complaint. MIL No. 6, p. 2, ¶¶ 1-2. Defendants likewise recognized the law on this issue contemplates pursuit of the "official policy or custom" prong to prove *Monell* liability contemplates five different theories of liability. *See* Partial MSJ, p. 3. Unlike the plaintiff in *Arias,* Chatwin is not attempting to surprise Defendants by springing supposed new theories of liability on Defendants at the eleventh hour. These theories of liability have always been pled and were always fair game; whether Defendants adequately discovered the theories is another issue. This MIL No. 6 is simply an attempt by the Defendants to save themselves from the reality that they may not have conducted sufficient discovery.

The reality is, the parties have not filed a pre-trial order framing the issues for trial, thereby making *Arias* entirely inapposite. Moreover, <u>if</u> the pre-trial order set out theories of liability that were actually new, <u>then and only then</u>, would Defendants have any ground to object. *See, e.g., Wilson v. Muckala,* 303 F.3d 1207, 1215-16 (10th Cir. 2002):

> When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings' because 'the pretrial order is the controlling document for trial.' *Expertise Inc., v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e). As such, claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim. Should a new claim or defense appear for the first time in the pretrial order, it is incumbent upon opposing counsel to meticulously examine the order, taking exception, if necessary, to the additions, and recording their objection in the pretrial order. Meanwhile, the party seeking to add a claim or defense should do so with specificity and clarity so as to minimize the ill effects of that practice. Specificity and clarity provide the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date. Fed. R. Civ. Pro. 15(a).").

*Id.* This simply is not the case, despite Defendants' protestations.

## **CONCLUSION**

The record shows that Defendants were adequately put on notice that Chatwin intended to pursue all theories of *Monell* liability. The fact that Defendants failed to conduct discovery on some of the theories is not a valid reason for the granting of a motion in limine. For the above reasons, Plaintiff Joshua Chatwin respectfully requests the Court deny Defendants' MIL No. 6.

DATED this 5th day of January 2017.

CLYDE SNOW & SESSIONS

/s/ Lisa A. Marcy
Lisa A. Marcy
*Attorneys for Plaintiff*

/s/ John K. Johnson
John K. Johnson
*Attorneys for Plaintiff*

AARON & GIANNA

/s/ Dominic J. Gianna
Dominic J. Gianna
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January 2017, I caused a true and accurate copy of the foregoing Opposition to Defendants Motion in Limine No. 6 to be filed via the Court's ECF system, which in turn sent copies to counsel of record in accordance with the Court's protocols.

/s/ *Lisa A. Marcy*