R. BLAKE HAMILTON (Bar No. 11395)
ASHLEY M. GREGSON (Bar No. 13716)
**DURHAM JONES & PINEGAR, P.C.**
111 E. Broadway, Suite 900
PO Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email: bhamilton@djplaw.com
       agregson@djplaw.com

ATTORNEYS FOR DEFENDANTS

---

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

---

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>            Plaintiff,<br><br>v.<br><br>DRAPER CITY; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>            Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANTS' WITNESSES AND EXHIBITS**<br><br><br>Civil No. 2:14-cv-00375<br>Judge Dale A. Kimball |

---

Defendants Draper City, Officer Patterson, Officer Harris, and Officer Baugh (collectively, "Defendants"), through their undersigned counsel, hereby submit this Memorandum in Opposition to Plaintiff's Motion in Limine to Exclude Defendants' Witnesses and Exhibits.

## PREFERRED DISPOSITION AND SUPPORTING GROUNDS

Defendants request that the Court deny Plaintiff's Motion in Limine (the "Motion") or otherwise wait for the additional context of trial before ruling to exclude the evidence Plaintiff has referenced in his Motion.  The Motion, for the most part, is vague and ambiguous as to what evidence or testimony Plaintiff specifically wishes the Court to exclude.  The Court should therefore wait until the evidence is adduced a trial to rule on Plaintiff's objections.  The majority of the evidence Plaintiff requests be excluded was listed as "may use" in Defendants' pre-trial disclosures.  Defendants do not intend to offer this evidence unless necessary to respond to Plaintiff's own arguments at trial or to impeach Plaintiff's witnesses.  Furthermore, evidence relating to Plaintiff's other bad acts and repeated behavior is admissible under Federal Rules of Evidence 404(b)(2) and 406, and evidence relating to his past criminal convictions is allowed by Federal Rule of Evidence 609.  Testimony and evidence relating to Plaintiff's alleged damages are relevant and admissible to establish what damages, if any, Plaintiff has suffered.  And testimony and evidence relating to the character for truthfulness of Plaintiff's witness is also allowed pursuant to Federal Rule of Evidence 608.  Accordingly, the Motion should be denied.

## ARGUMENT

A motion in limine is generally granted only if "the evidence plainly is 'inadmissible on all potential grounds.'"  *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007) (citation omitted).  Although rulings on in-limine motions "can work a savings in time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Id.*  And a court "should typically defer rulings on relevancy and

2

unfair prejudice objections until trial when the factual context is developed." *Id.*  In this case, the evidence Plaintiff seeks to exclude is admissible under the Federal Rules of Evidence and the Motion should be denied.  But to the extent the Court is unclear on questions of relevancy or prejudice, Defendants request that the Court wait until the factual context is further developed at trial before ruling to exclude Defendants' exhibits and witnesses.  *Id.*

I.      **Evidence and argument relating to Defendant Draper City's policies, training, defensive tactics, and training assessments from 2011 to 2015 should not be excluded.**

Evidence and argument relating to Defendant Draper City's policies, training, defensive tactics, and training assessments from 2011 to 2015 should not be excluded.  As an initial matter, Plaintiff's Motion in this regard is vague, unspecific, and unclear as to what evidence he is actually proposing that the Court exclude.  In other words, the scope of the evidence Plaintiff requests that the Court preclude from trial is not sufficiently defined to allow Defendants to adequately respond.  Records relating to Draper City's policies, training, and training assessments were listed as "may use" on Defendants' pre-trial disclosures.  Defendants, however, do not intend to use these documents unless necessary to show that Draper City was not "deliberately indifferent to an almost inevitable constitutional injury" in order to defend against Plaintiff's *Monell* claim.  *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013).  If Plaintiff proceeds on his *Monell* claim to argue that Draper City was deliberately indifferent to his constitutional rights by failing to train its law enforcement officers, Defendants would be entitled to offer policy and training records to show that its

3

officers were adequately trained.[1]  Furthermore, it is unclear to Defendants whether Plaintiff

intends to argue that Draper City continued to inadequately train its officers past the 2010 event.

If he does, then Defendants will necessarily offer the policies, trainings, and assessments at issue

in its defense.  The evidence is therefore admissible under Federal Rules of Evidence 401 and

402.

Federal Rule of Evidence 403 does not require that the evidence be excluded.  Rule 403

allows the Court to exclude relevant evidence when its probative value is substantially

outweighed by the danger of misleading the jury or confusion.  Fed. R. Evid. 403.  The probative

value of the policy and training records is high because they demonstrate that Draper City was

engaged in training its officers and evaluating the officers' performance, thereby refuting

Plaintiff's claim that Draper City was deliberately indifferent.  Additionally, these records

demonstrate that Draper City was training its officers even if, in a particular year, the City was

not focused specifically on use-of-force training.  This probative value is not substantially

outweighed by the danger that the jury will be misled or confused.  The records at issue are

labeled with a date and the jury will be able to see that the trainings and assessments occurred

after 2010.  The jury will also not be required to sift through hundreds of pages of training

records and policies as Plaintiff suggests.  Rather, Defendants would offer as evidence those

records that properly respond to whatever argument Plaintiff raises in support of his *Monell*

---

[1] Based on the content of this litigation, Defendants believe that Plaintiff's *Monell* claim is limited to challenging Draper City's policies and the training of its officers.  Defendants have filed a motion in limine requesting that the Court limit Plaintiff's evidence to these two theories of *Monell* liability.  However, if that motion is denied and Plaintiff argues liability on some other basis, such as custom, Defendants may offer this evidence to defend itself. This is therefore an additional reason why this portion of the Motion should be denied.

4

claim.  Thus, the evidence should not be excluded under Rule 403.

## II.     The contents of the Draper City employment files and corresponding testimony should not be excluded.

The contents of the Draper City employment files and corresponding testimony should not be excluded as Plaintiff requests.  Defendants have designated this evidence as "may use" and do not intend to offer it unless Plaintiff calls into question the Defendant Officers' performance.  Defendants do not intend to offer wholesale the 114 pages of documentation as Plaintiff claims.  Defendants' use of the documents would be limited to whatever evidence is needed to refute Plaintiff's arguments at trial.  Plaintiff argues that his claims are based on the limited facts of what occurred on May 18, 2010.  (Motion at 4.)  However, he asserts that Officer Patterson was inadequately trained at the time.  To the extent Plaintiff argues at trial that Officer Patterson, or any of the other Defendant Officers, performed poorly due to the alleged inadequate training, Defendants should be able to offer documents in the employment files as evidence to the contrary.

## III.    Defendants should be permitted to inquire into facts contained in police reports relating to Plaintiff's witnesses and if Plaintiff's witnesses fail to respond truthfully, use the police reports as impeachment evidence.

Defendants should be permitted to inquire into facts contained in police reports relating to Plaintiff's witnesses and if Plaintiff's witnesses fail to respond truthfully, use the police reports as impeachment evidence.  Defendants are also permitted under the Federal Rules of Evidence to present evidence of Plaintiff's other wrongful acts for non-character related purposes under Rule 404(b)(2), to show Plaintiff's habits under Rule 406, and to challenge Plaintiff's character for truthfulness under Rule 609.  The police reports identified in the Motion were listed

5

on Defendants' "may call" list and, for the most part, will be used only in impeachment situations if a particular witness is not forthcoming as described in more detail below, falling well outside the scope of Rule 404(a).

### A.   Records relating to Plaintiff Joshua Chatwin.

Plaintiff seeks to exclude his criminal record and police reports as irrelevant under Rules 401 and 402, unduly prejudicial under Rule 403, and not relating to his character for truthfulness under Rule 608.  (Motion at 4–5.)  However, many of these acts may be inquired into on cross-examination to establish Plaintiff's biases and credibility.  *See* Fed. R. Evid. 611(b).  If Plaintiff responds truthfully to defense counsel's questions relating to his history of public intoxication and harming himself while intoxicated, which includes numerous interactions with Draper City police officers, then there will be no reason to admit additional records.  But if Plaintiff lies on the stand and testifies contrary to the information contained in the police reports, then Defendants are within their right to offer the reports as impeachment evidence. *See United States v. Lara*, 956 F.2d 994, 997 (10th Cir. 1992) (affirming trial court's admission of impeachment evidence relating to witness's prior bad acts to challenge the truthfulness of the witness's testimony that he never had previous trouble with the law).

Moreover, evidence pertaining to Plaintiff's public intoxication and his losing control of himself while intoxicated is admissible under Rule 404(b)(2) and Rule 406.  First, this evidence is relevant under Rule 401 because it makes the Defendant Officers' version of events much more probable—i.e., that Plaintiff was physically and verbally combative with Officer Patterson, that he attempted to head-butt Officer Patterson, and that Plaintiff's body went limp when

Officer Patterson was attempting to move him away from Officer Patterson's duty weapon, which resulted in Plaintiff's injuries.  Second, evidence of crimes, wrongs, or other acts is admissible for purposes such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2). Evidence showing that Plaintiff has routinely injured himself or been injured while intoxicated in public establishes a lack of mistake or accident in this case.  *See United States v. Welch*, 238 Fed. App'x 944, 945 (4th Cir. 2007) ("The evidence of Welch's prior assault on Merlin Brown while intoxicated and his purported lack of memory was admissible under Rule 404(b) and was not unfairly prejudicial.  The similarity of the conduct alleged tends to demonstrate the absence of mistake or accident and reveals a pattern in which Welch claims that due to his intoxication he does not remember his bad acts.").

For example, in February 2013, a Draper City police officer encountered Plaintiff intoxicated and walking in heavy snow without a coat after he had slipped and fallen in the snow. In January 2014, a Draper City officer responded when Plaintiff was intoxicated at a movie theater.  Plaintiff fell down the movie theater's stairs and hit his head.  And in May 2015, a Draper City officer responded to a report that someone had fallen in a parking lot.  Plaintiff was found at the parking lot and explained to the officer that he had been drinking vodka all day and had tripped while walking and hit his head on the ground.  Evidence of these incidents are thus admissible for non-character reasons under Rule 404(b)(2) because they demonstrate a lack of mistake or accident in Plaintiff's losing control of his body on May 18, 2010 and falling to the ground.

7

Also, pursuant to Rule 406, "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit . . . . The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." A habit is "a regular practice meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set circumstance." *Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir. 1986). In the majority of Plaintiff's citations for public intoxication the police were called because Plaintiff had fallen and injured himself. It is thus Plaintiff's habit not only to be intoxicated in public, of which there is extensive evidence, but also that he has the habit of being injured while intoxicated. The jury should be allowed to hear this evidence.

Defendants are also permitted to offer evidence of Plaintiff's past criminal convictions in order to attack his character for truthfulness as a witness. Fed. R. Evid. 609(a). Specifically, evidence "must be admitted, subject to Rule 403, in a civil case" for a crime "that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year." *Id.* This is commonly understood to refer to felonies. *See United States v. Howell*, 285 F.3d 1263, 1268 (10th Cir. 2002) ("The implicit assumption of Rule 609 is that prior felony convictions have probative value.") (citation omitted). Plaintiff has been convicted of two felonies in the last ten years for theft by receiving stolen property and possession of vehicle parts without identification. Defendants are therefore permitted to admit evidence relating to these felonies if Plaintiff testifies. Fed. R. Evid. 609(a); *Howell*, 285 F.3d at 1268–69. The probative value of these convictions for Plaintiff's character for truthfulness is not substantially outweighed by the danger of unfair prejudice. Indeed, these convictions are highly probative to Plaintiff's "regard

8

for the truth." *United States v. Halbert*, 668 F.2d 489, 495 (10th Cir. 1982). "Truthfulness . . . is a quality which a generally upstanding person is likely to have. It is improbable that one who undertakes to rob a bank with a gun will prove to be a person of high character who is devoted to truth." *Id.* Likewise, a person who receives stolen property is unlikely to have a high regard for the truth.

Furthermore, evidence relating to injuries Plaintiff has suffered before and after the May 18, 2010 incident is relevant to Plaintiff's claims for damages. Plaintiff has fallen while intoxicated and hit his head on multiple occasions as explained above. These incidences are relevant to the chronic injuries that he alleges were caused by Defendants, since they have a "tendency" to make a "fact of consequence"—whether Defendants caused Plaintiff's chronic conditions—more or less probable. Fed. R. Evid. 401. Defendants are entitled to offer evidence of these injuries as they are potential sources of the harm for which Plaintiff seeks to recover in this case. *See also* Plaintiff's Proposed Jury Instruction No. 12, *infra* Part V.

Plaintiff seeks further to exclude a report on October 20, 2012 that includes a summary of a conversation between Plaintiff and Defendant Officer Harris. Defendants have not designated this report as a "will use" or "may use" exhibit. Plaintiff's request to exclude this report is therefore moot.

### B.      Records relating to Kathy Torrence.

Plaintiff asks the Court to exclude police reports relating to his witness, Kathy Torrence, as irrelevant and containing hearsay. (Motion at 6.) He also argues that the reports should be excluded under Rule 611(a)(3) to protect Ms. Torrence from harassment or undue

9

embarrassment.  (*Id.*)  Plaintiff repeatedly argues that the reports contain hearsay and are being offered for the truth of the matter asserted.  However, Defendants have designated these reports as "may use" only and they do not intend to offer the reports at trial unless necessary to impeach Ms. Torrence.  Defendants are within their right to inquire about Ms. Torrence's interactions with Draper City law enforcement and her conduct while intoxicated as such testimony goes to her potential biases and hostilities in this case.  *See United States v. DeSoto*, 950 F.2d 626, 629 (10th Cir. 1991) ("Defense counsel should ordinarily be given wide latitude when cross-examining a witness about credibility or bias.").  On cross-examination, Defendants' counsel "should be allowed 'to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).  If Ms. Torrence is not truthful in her testimony regarding her past interactions with law enforcement officers, then Defendants are entitled to use the reports as impeachment evidence.  *See Lara*, 956 F.2d at 997.  Defendants do not intend to harass or embarrass Ms. Torrence through their inquiries, but they must be allowed to probe the witness's motivations for testifying and any potential hostilities against Defendants.

### C.      Records relating to Jason Scott, Steven Merrin, and Mehdi Mahmoudi.

Plaintiff also requests that the Court exclude "any evidence or argument" relating to incidences involving his witnesses, Jason Scott, Steven Merrin, and Mehdi Mahmoudi.  (Motion at 7–8.)  The reports identified by Plaintiff relating to Steven Merrin and Mehdi Mahmoudi have not been designated by Defendants as "will use" or "may use" exhibits.  Plaintiff's requests as to these reports is therefore moot.  The January 24, 2013 accident report relating to Jason Scott

10

should not be excluded.  This report has been designated as "may use" only and Defendants do not intend to offer it in their case-in-chief.  Rather, Defendants plan on asking Mr. Scott about the accident wherein he made certain misrepresentations to a law enforcement officer.  Since such inquiry goes to Mr. Scott's character for truthfulness, it is permissible.  *See* Fed. R. Evid. 608(b) ("[T]he court may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness.")  If Mr. Scott is not truthful regarding the information contained in the accident report, Defendants are entitled to offer the report as impeachment evidence.  *See Lara*, 956 F.2d at 997.

## IV. Defendants are entitled to probe Kirk Torgensen's biases and past interactions with law enforcement officers and his character for truthfulness.

Plaintiff requests that the Court preclude Defendants from putting forth "any evidence or argument about Kirk Torgensen's police report, plea information, jail release, mugshot, Information, court dockets, minutes regarding his plea, and news articles.  These documents have been designated as "may use" only by Defendants and they do not intend to offer them as part of their case-in-chief.  However, Defendants are entitled to inquire about Mr. Torgensen's past interactions with law enforcement officers and his alcohol use to probe whether he has any potential biases in this case.  *See Adam v. Lab. Corp. of Am.*, 760 F.3d 1322, 1333 (11th Cir. 2014) ("Bias in an expert witness's testimony is usually a credibility issue for the jury.") (citing *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001)).  As an expert, Mr. Torgensen's credibility is particularly important as he will be testifying to matters outside the knowledge of a lay person.  Mr. Torgensen's violation of a restraining order and his subsequent confrontation with the arresting officers is highly relevant to whether he may be biased against

11

Defendants.  Furthermore, these documents, including the news articles regarding Mr. Torgensen's role as the chief deputy to former Attorney General John Swallow, relates to Mr. Torgensen's character for truthfulness.  Defendants are thus allowed to inquire about the information contained in these documents on cross-examination under Rule 608(b).

Plaintiff complains that Defendants' disclosure of these documents was untimely.  Yet Mr. Torgensen's charge of domestic battery, violation of the subsequent restraining order, and actions while chief deputy to Attorney General Swallow were all discussed at length during Mr. Togensen's deposition.  (*See, e.g.*, Deposition of Kirk Torgensen, 62:12–65:24; 69:6–73:11; 86:5–97:23, excerpt attached hereto as **Exhibit A**.)  And Plaintiff should have knowledge of his own expert's background.  Therefore, there is no prejudice to Plaintiff for an alleged lack of notice or untimely disclosure.

## V.     Defendants are entitled to put forth evidence and argument relating to Plaintiff's employment history.

Plaintiff requests that the court preclude Defendants from putting forth "any evidence or argument" about Plaintiff's employment records.  (Motion at 8.)  Plaintiff argues that he is not making a lost wages claim.  (*Id.*)  However, Plaintiff is clearly seeking damages for lost earning potential which directly implicates his employment history.  Plaintiff's proposed Special Jury Instruction No. 12 states as follows:

The elements of damages that you may consider are as follows:

. . . .

2. A sum to compensate Joshua Chatwin for any loss of earning power you find from the evidence he will probably suffer in the future . . . .

12

> In determining the amount of future loss, you should compare what Joshua Chatwin's health, physical ability and earning power were before the incident with what they are now; . . . . The objective is to determine the effect, if any, on future earning capacity, and the present value of any loss of future earning power that you find Joshua Chatwin will probably suffer in the future.  In that connection, you should consider Joshua Chatwin's work life expectancy, ***taking into account his occupation***, ***his habits***, his past health record, his state of health at the time of the incident ***and his employment history***.

(Docket #103 at 14 (emphasis added).)  Plaintiff cannot on the one hand argue that his employment records and testimony from former employers are not relevant but on the other hand request the jury to award him damages for lost earning potential calculated based on his employment history.  Plaintiff's own proposed jury instruction, therefore, makes clear that his employment history is relevant to this case and Defendants are entitled to offer evidence, including records and testimony, to establish that history.

Plaintiff argues further that admission of his employment history would be unfairly prejudicial because he had "numerous jobs over a relatively short time" which "indicate[s] instability," thereby creating "a bias against him."  (Motion at 8.)  But the jury would have to take into account these facts in order to determine Plaintiff's damages.  Accordingly, any bias against him is not unfair under Rule 403 but must be admitted for Plaintiff to prove his damages. In other words, Plaintiff has chosen to put his employment history at issue by claiming damages for lost future earnings.  Plaintiff cannot keep Defendants from defending themselves because his employment history creates a bias against him.

**VI.    Defendants are entitled to inquire into the employment history of Plaintiff's expert witness, Trevor Petersen.**

Plaintiff asks the Court to preclude Defendants from putting forth "any evidence or

13

argument about Trevor Petersen's employment records." (Motion at 9.) Defendants listed Mr. Petersen's employment records as "may use" only and do not intend to introduce them at trial. However, during the discovery phase of this case, Defendants learned that Mr. Petersen had lied on the resume he submitted in support of his expert report. Under his professional experience, Mr. Petersen stated that he was the "Director of Investigations" at Cyber OPS. (*See* Dkt. #33-1 at 11.) But at his deposition, Mr. Petersen admitted that he was only an independent contractor at the time and not actually an employee of Cyber OPS or Court OPS at all. (*See* Deposition of Trevor Petersen, 25:2–23, excerpt attached hereto as **Exhibit B**.) Pursuant to Rule 608(b), Defendants are entitled to inquire of Mr. Petersen whether he lied on his resume submitted to the Court in identifying himself as the Director of Investigations at Cyber OPS, as that goes directly to his character for truthfulness. If he, for whatever reason, reasserts that he was a Director at Cyber OPS, then Defendants should be allowed to offer the employment records that show he was not and never has been a Director at Cyber OPS. *See Lara*, 956 F.2d at 997.

Plaintiff's reference to an incident of prior disciplinary action against Mr. Petersen while he was a Washington County Sheriff is a surprise to Defendants, as they previously did not have any knowledge about the disciplinary action. It is also Defendants' understanding that Mr. Petersen was a Weber County Deputy, not a Washington County Sheriff. Defendants, therefore, do not intend to offer any evidence of this disciplinary action, as they have none.

## VII. Defendants are entitled to offer evidence and argument relating to Plaintiff's Renaissance Ranch and Valley Mental Health records.

Plaintiff requests that the Court preclude Defendants from offering "any evidence or argument about Josh Chatwin's Renaissance Ranch and Valley Mental Health records." (Motion

14

at 9.)  Plaintiff's basis for this request is that he does not dispute that he suffers from alcoholism and depression, but that "[t]hose conditions are not relevant in any way to the allegations of this case."  This is inaccurate.  Plaintiff is seeking compensatory damages for pain and suffering and emotional distress allegedly caused by Defendants' actions.  (*See* Dkt. #103 at 14.)  When a plaintiff claims non-economic damages, such as pain and suffering and emotional distress, the plaintiff's "past medical history, medical conditions, drug and alcohol abuse, psychological problems, and stressors in her life are relevant to such a claim."  *Magelky v. BNSF Ry. Co.*, No. 1:06-cv-025, 2008 WL 238451, at *11 (D.N.D. Jan. 28, 2008).  By pursuing non-economic damages, Plaintiff has "opened the door" to the admissibility of his health records from the Renaissance Ranch and Valley Mental Health, as they go directly to the mental anguish and emotional distress Plaintiff has experienced since the May 18, 2010 incident.  *Id.*  Defendants must therefore be allowed to offer this evidence in order to defend themselves against Plaintiff's claim for damages.  The Renaissance Ranch records, for example, establish that around the time of the incident Plaintiff was ordered by a court to undergo rehabilitation treatment but that Plaintiff failed to comply.  This indicates that Plaintiff was not attempting to improve his health and that his problems were likely exacerbated as a result.  Defendants should not be held liable for the pain and suffering and emotional distress related to Plaintiff's alcoholism and depression when these issues predate the incident and are not a result of Defendants actions.  And Plaintiff cannot claim that admission of this evidence is done to harass or embarrass him.  He is, after all, the one who put his mental well-being at issue in this case by suing Defendants for mental distress.

15

Plaintiff argues that these records should not be admitted because Defendants untimely disclosed them on November 29, 2016.  But Plaintiff's delay in signing the necessary medical releases was the reason for any delay in disclosure.  Moreover, these medical records belong to Plaintiff.  They do not include any information that should be surprising or unknown to him. Plaintiff thus cannot credibly claim that he has been prejudiced by the alleged late disclosure.

**VIII.  Defendants do not intend to offer any evidence or argument relating to the opinions of Draper City's 30(b)(6) designee, John Eining.**

Plaintiff requests that the Court preclude Defendants from offering evidence or argument about the opinions of Draper City's 30(b)(6) designee, Deputy Police Chief John Eining. (Motion at 10.)  Defendants do not intend to do so.  Deputy Chief Eining is a Rule 30(b)(6) factual witness only and Defendants never anticipated soliciting opinion testimony from him. The portion of testimony from Deputy Chief Eining's deposition that Plaintiff cites in the Motion is questioning by Plaintiff's own counsel wherein she asked Deputy Chief Eining to "elaborate" on certain topics, which Deputy Chief Eining understood to mean that he was being asked for his "opinion and [his] experiences."  (Draper City 30(b)(6) Deposition, 88:3–89:1.)  To which Plaintiff's counsel responded, "[y]eah, I guess just answer it that way.  That will be fine."  (*Id.*) This exchange does not indicate that Defendants will ask this witness for his opinions at trial.

**IX.  Defendants are entitled to put forth evidence and argument regarding Private OPS/Court OPS invoices and forms.**

Plaintiff asks the Court to exclude evidence and argument about invoices and forms from Private OPS and Court OPS because he believes these invoices are irrelevant.  (Motion at 10.) These invoices relate to the amount Plaintiff's experts, Kirk Torgensen and Trevor Petersen,

16

have been paid in this case.  It is well-understood that the amount of compensation received by an expert to provide opinions in a case is relevant and admissible.  *See, e.g.*, *Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2016 WL 153044, at *4 (D. Nev. Jan. 12, 2016) ("Expert compensation is relevant and admissible as it may impact bias."); *Brandon Int'l, Inc. v. Clark-Reliance Corp.*, No. 2:07-cv-0175, 2008 WL 4630561, at *1 (W.D. Pa. Oct. 17, 2008) ("[T]he amount of an expert's hourly or flat fee to serve as an expert for a party is admissible at time of trial.").  The invoices and forms are therefore admissible.

**X.    Defendants are entitled to offer the testimony of Trina Leone, Stacey Easter, and Georjane Branham regarding Ms. Torrence's character for truthfulness.**

Plaintiff requests that the Court exclude the testimony of Trina Leone, Stacey Easter, and Georjane Branham.  Plaintiff claims that Ms. Torrence's "character is not at issue" and that Defendants' disclosure of these individuals was untimely.  (Motion at 10.)  Ms. Torrence is Plaintiff's primary witness and her character for truthfulness, as with any witness, is at issue. Rule 608(a) states that "[a] witness's credibility may be attacked . . . by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."  Ms. Leone, Ms. Easter, and Ms. Branham have each worked with Ms. Torrence at Delta Airlines for an extended amount of time, as Plaintiff acknowledges.  Each has the foundation to provide her opinion as to Ms. Torrence's character for truthfulness.  Each of these individuals also has the foundation to provide Ms. Torrence's reputation for truthfulness.  Their testimony is therefore clearly admissible and should not be excluded.  Plaintiff's argument that such testimony is irrelevant simply because it "would

involve Torrence's behavior at work" is unavailing.  A person with a truthful character will tell the truth whether at work, at home, or in the courtroom.

Also, Defendants' disclosure of these witnesses was not untimely.  Plaintiff will have had sufficient time to prepare for these witnesses prior to trial and there is no prejudice.  If Plaintiff wishes to depose any of these witnesses, Defendants would agree.  Defendants would also not object under Rule 608(a) to Plaintiff calling a witness to rehabilitate Ms. Torrence's character for truthfulness or calling character witnesses to challenge the truthful character of Ms. Leone, Ms. Easter, and Ms. Branham.[2]

## XI.    Plaintiff is not entitled to a blanket exclusion of Defendants witnesses.

Plaintiff requests "a pretrial ruling on defendants' over-inclusive witness and exhibit list to avoid unnecessary trial preparation, trial objections, and trial delay."[3]  (Motion at 11.) Plaintiff complains that Defendants' list of witnesses is too long and apparently his counsel does not want to prepare for each of the witnesses Defendants have identified.  Plaintiff claims that the "vast majority of the witnesses" on Defendants' "may call" list do not relate to the issues presented.  Defendants disagree.  First, the fact that Plaintiff does not dispute that he was intoxicated on May 18, 2010 does not render Jenessa Huff's or Juanita Gonzales' testimony irrelevant or a waste of time.  These two individuals were the employees at the liquor store where Plaintiff went on May 18, 2010 to obtain more alcohol after he had been drinking all night.  They

---

[2] However, Defendants reserve the right to make any other objections to these potential witnesses as appropriate.
[3] Although Plaintiff complains that Defendants' exhibit list is over-inclusive he offers no further explanation or example of which exhibits he claims to be irrelevant or subject to exclusion.  Furthermore, Plaintiff's request for a "pretrial ruling" on Defendants witnesses and exhibits is the purpose of an in-limine motion and Defendants are somewhat confused as to what relief Plaintiff seeks under this section of his Motion that he could not address in a more direct and accessible manner.

SLC_3076455.1

will testify as to Plaintiff's demeanor and capacity that morning.  Specifically, they will testify

that he was so intoxicated that he could not park his car straight, could not walk straight, and was

stumbling through the store.  Indeed, their testimony goes to the degree of Plaintiff's

intoxication, and Plaintiff cannot prevent Defendants from calling Ms. Huff or Ms. Gonzales as

witnesses just because he admits that he was intoxicated.

Second, the fact that Plaintiff does not dispute that he was agitated "after he was thrown

to the ground," (Motion at 12), does not negate the relevancy of the testimony of the officers and

paramedics who were at the scene on May 18, 2010.  The testimony of each of these officers

may provide additional pieces of the factual puzzle and Defendants will not know until Plaintiff

presents his case at trial which officers' or paramedics' testimony will best refute Plaintiff's case.

It would therefore be reversible error for the Court on an in-limine motion to exclude any of

these witnesses.

Third, the fact that Plaintiff claims in the Motion that he is not making a lost wages claim

does not undermine Defendants right to present evidence of Plaintiff's employment history,

including testimony, if necessary, from his former managers.  As explained above, Plaintiff's

own proposed jury instruction on compensatory damages puts his employment history squarely

at issue.  *See supra* Part V.  Defendants must be prepared to challenge Plaintiff's claim for

damages based on lost future earnings.  Records and testimony relating to his previous jobs is

therefore highly relevant and not a waste of time.

## XII.   Defendants are entitled to use the video from Alpine Reporting of the scene inspection and accompanying movie clips.

Plaintiff asks the Court to preclude Defendants from using the video recording of the

19

parties' scene inspection taken on April 5, 2016.  Plaintiff argues that the video is irrelevant and

a waste of time because it cannot be used by Defendants' expert, Chris Lawrence, to testify as to

Ms. Torrence's perception.  (Motion at 12.)  However, the video itself can properly be used by

Defendants as a demonstrative exhibit.  The video will merely provide the jury with a

perspective similar to that of scene photographs.  There is no prejudice to Plaintiff through use of

the video, and Defendants anticipate that Plaintiff will likely use the video at trial for

demonstrative purposes as well.  Defendants do not intend to play the video's audio for their

demonstrative purposes and do not object to the video being played without audio.

## **CONCLUSION**

Based on the foregoing, Defendants request that the Court deny Plaintiff's Motion in

Limine or withhold its rulings on certain evidence until trial.


DATED this 10th day of January, 2017.

> **DURHAM JONES & PINEGAR, P.C.**


> /s/ R. Blake Hamilton
> R. Blake Hamilton
> Ashley M. Gregson
> ATTORNEYS FOR DEFENDANTS

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 10th day of January, 2017, via electronic filing upon the following:

Lisa A. Marcy
CLYDE SNOW & SESSIONS
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

John K. Johnson
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, UT 84101

Dominic J. Gianna
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170


/s/ Sarah Peck
Secretary

21