Lisa A. Marcy (#5311)
lmarcy@clydesnow.com
CLYDE SNOW & SESSIONS, P.C.
201 South Main Street, 13th Floor
Salt Lake City, Utah  84111
Telephone:  801-322-2516

John K. Johnson (#3815)
jkjohnson1080@hotmail.com
JOHN K. JOHNSON, LLC
10 West 300 South, Suite 800
Salt Lake City, Utah  84101
Telephone:  801-915-2616

Dominic J. Gianna, *Pro Hac Vice*
dgianna@aarongianna.com
AARON & GIANNA
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana  70170
Telephone:  504-569-1805

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA CHATWIN,<br><br>    Plaintiff,<br>v.<br><br>DRAPER CITY; DRAPER CITY POLICE DEPARTMENT; POLICE CHIEF MAC CONNOLE; OFFICER J. PATTERSON, in his individual and official capacity; OFFICER DAVID HARRIS, in his individual and official capacity; OFFICER HEATHER BAUGH, in her individual and official capacity; and JOHN DOES 1-10,<br><br>    Defendants. | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4: TO EXCLUDE REBUTTAL TESTIMONY FROM WALTER REICHERT, M.D.<br><br>Civil No. 2:14-cv-375<br>Judge Dale A. Kimball<br>Magis. Judge Dustin B. Pead |

Pursuant to Fed. R. Evid. 401, 402 and 403, Plaintiff, Joshua Chatwin ("Chatwin"), by

and through his counsel, Lisa A. Marcy, John K. Johnson and Dominic Gianna, responds to

Defendants' Motion in Limine No. 4 to Exclude Rebuttal Testimony from Walter Reichert, M.D. ("MIL No. 4") as follows.

## ARGUMENT

I.   **Dr. Reichert's opinion testimony should be included**.

Defendants agree that under the Amended Scheduling Order, this Court allowed Chatwin to file "counter-reports to all three of Defendants' expert reports" on May 16, 2016. On May 16, 2016, Chatwin did submit a report of expert witness Walter Reichert, M.D. Defendants' MIL No. 4, ¶¶ 2 and 4, p. 2; Dkt. No. 58. One of Defendants' three expert reports was that of Dr. Alan Goldman. Dr. Reichert, however, did not rebut Dr. Goldman's report. Instead, he clarified and explained the information contained in his previous report. He did not once respond to any opinions of Dr. Goldman. He "restates" portions of his report. He also explained that contrary to his initial report, Chatwin did not require a further neurological consultation because a "follow-up CT did not show depression of his skull fracture." Report of Dr. Walter Reichert, dated May 16, 2016, ¶ 3, p. 2, attached hereto as Exhibit A. He also clarifies that "If my report implies that [Chatwin] needs to wear a helmet during daily life, that is a misunderstanding. He does, however, need to be sure to wear a helmet and take precautions to avoid additional head injuries." *Id*. at ¶ 5. Dr. Reichert explained the issue concerning the helmet because Dr. Goldman raised it as an issue in his rebuttal report. Dr. Reichert was merely clarifying the information contained in his report. This allows the Court to exercise "reasonable control over the mode and order of examining witnesses" in order to make the trial process effective for determining the truth. Fed. R. Evid. 611(a)(1).

Even if it were determined to be a rebuttal opinion, no rule exists that a party cannot call an initial expert as a rebuttal witness. "A district court has 'broad discretion in determining

whether to admit or exclude expert testimony.'" *Blake v. Securitas Services, Inc.*, 292 F.R.D. 15. Under Rule 702, Fed. R. Evid., of course, trial courts must act as gatekeepers who may only admit expert testimony if it is both relevant and reliable. Such testimony is "relevant if it will assist the trier of fact to understand the evidence presented in the case." *Id.* (citations omitted). Even if Dr. Reichert's testimony is considered as rebuttal, his testimony "cannot be used to advance new arguments or new evidence." *Larsen v. Wisc. Cent. Ltd.*, 2012 WL 368378 at * 4 (E.D. Wisc. Feb. 3, 2012). Dr. Reichert did not advance any new arguments or new evidence. Instead, he clarified his original report.

## CONCLUSION

Because of Dr. Goldman's misunderstanding of Dr. Reichert's report, Dr. Reichert had to explain his opinions. Consequently, Dr. Goldman raised the issues. This Court has great discretion in deciding whether to allow expert testimony, and this Court should allow Dr. Reichert to clarify his opinions. No rule exists where Dr. Reichert cannot be both the initial and rebuttal expert.

DATED this 10th day of January 2017.

CLYDE SNOW & SESSIONS

/s/ Lisa A. Marcy
Lisa A. Marcy
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of January 2017, I caused a true and accurate copy of the foregoing Memorandum in Opposition to Defendants' Motion in Limine No. 4 to be filed via the Court's ECF system, which in turn sent copies to counsel of record in accordance with the Court's protocols.

/s/ Michelle Carter

05/16/2016

Ms. Lisa Marcy

Clyde Snow
Attorneys at law
One Utah Center
13th floor
201 S. Main St.
Salt Lake City, Utah
84111

Dear Ms. Marcy,

I am responding to your quest for additional information concerning Mr. Chatwin, and his record review by Dr. Goldman.

In that review under the heading Discussion, I respond to the points raised as follows:

1. At the time of his neurological evaluation I reviewed Mr. Chatwin's CTs of the brain. I now re state that my review of his CT scans of the brain from his admission, show loss of the left hemisphere gyral sulcal markings compared with right hemisphere gyral and sulcal markings. Although this finding was not mentioned by radiology along with other findings, the loss of gyral and sulcal markings are compatible with edema of the left hemisphere. There was no shift.

2. Mr. Chatwin may have had a degree of intra-parenchymal bleeding or subarachnoid hemorrhage. Dr. Stephenson's CT scan of the brain report indicates that there is "a small focus of cortical versus extra-axial blood in or adjacent to the posterior left frontal lobe adjacent to the calvarium." His MRI of the brain showed a tiny focus of hemorrhage, extra-axially. The latter may be subarachnoid blood products/hemosiderin. Extradural hemosiderin remains a possibility.

**EXHIBIT A**

254830  JOSHUA CHATWIN   05/16/2016                                    Page: 2

3. Mr. Chatwin does not require neurosurgical consultation. Followup CT did not show depression of his skull fracture.

4. The chance of posttraumatic epilepsy remains a possibility, and the patient's risk of developing this as a complication from his head injury continues and will continue throughout the remainder of his life.. The risk of posttraumatic seizures is greater in patients who have had a significant head injury, including skull fracture, evidence of bleeding, amnesia, and alcohol use. His normal EEG is reassuring, but does not exclude this as a possibility. There is a wide range of developing posttraumatic epilepsy in the literature. If the patient had subarachnoid bleeding, as remains a possibility, his risk is greater.

5. If my report implies that he needs to wear a helmet during daily life, that is a misunderstanding. He does, however, need to be sure to wear a helmet and take precautions to avoid additional head injuries. The medical literature, sports literature and and lay press are rife with discussions concerining chronic traumatic encephalopathy as a sequela of multiple head injuries

Regards,


Walter H. Reichert, MD